The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; and PATRICIA PRITCHARD,

Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

Defendant.

NO. 3:20-cv-06145-RJB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS
[Case No. 3:20-cv-06145-RJB]

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................1

II.  BACKGROUND ..................................................................................3

     A.   C.P. and His Mother Patricia Pritchard Seek Coverage for
          Medically Necessary Treatment for C.P.'s Gender
          Dysphoria. .............................................................................3

     B.   BCBSIL Is a Covered Entity That Must Comply with
          Section 1557. ..........................................................................6

     C.   Procedural History ..................................................................7

III. LAW AND ARGUMENT .....................................................................8

     A.   Legal Standard. .......................................................................8

     B.   Plaintiff Plausibly Alleged a Claim for Discrimination on
          the Basis of Sex Under Section 1557. ....................................8

     C.   Caselaw Confirms that Administration of a Categorical
          Coverage Exclusion of Treatment Related to
          "Transgender Reassignment Surgery" Is Discrimination
          on the Basis of Sex. ..............................................................11

     D.   The 2020 HHS Rule Does Not Permit BCBSIL's
          Administration of the Transgender Health Exclusion. .........14

     E.   BCBS May Not Assert a RFRA Defense and, In Any Event,
          Such a Defense Would Fails on the Merits. .........................18

     F.   Plaintiffs have Constitutional Standing to Bring this
          Litigation. .............................................................................22

     G.   BCBSIL Can Administer the Plan without Discrimination,
          and Without Impairing CHI's Religious Beliefs. ................23

IV.  CONCLUSION ................................................................................24

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – i
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

## TABLE OF AUTHORITIES

### CASES

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,*
  968 F.3d 1286 (11th Cir. 2020)........................................................................14

*Am. Friends Serv. Comm. Corp. v. Thornburgh,*
  951 F.2d 957 (9th Cir. 1991)............................................................................26

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ..........................................................................................9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..........................................................................................9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ........................................................................................10

*Bostock v. Clayton Cty.,*
  140 S. Ct. 1731 (2020) ..............................................................2, 3, 11, 14, 18, 23

*Boyden v. Conlin,*
  341 F. Supp. 3d 979 (W.D. Wis. 2018)..............................................2, 13, 15, 16

*Bray v. Alexandria Women's Health Clinic,*
  506 U.S. 263 (1993) ........................................................................................12

*Briscoe v. Health Care Serv. Corp.,*
  281 F. Supp. 3d 725 (N.D. Ill. 2017) .................................................................7

*Burwell v. Hobby Lobby Stores, Inc.,*
  573 U.S. 682 (2014) ........................................................................................25

*Carr v. United Healthcare Servs.,*
  2016 U.S. Dist. LEXIS 182561 (W.D. Wash. May 31, 2016)...........................28

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*
  467 U.S. 837 (1984) ........................................................................................21

*Christian Legal Soc'y v. Martinez,*
  561 U.S. 661 (2010) ........................................................................................12

*Condry v. Unitedhealth Grp., Inc.,*
  2018 U.S. Dist. LEXIS 111233 (N.D. Cal. June 27, 2018)................................8

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – ii
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Cruz v. Zucker*,
    195 F. Supp. 3d 554 (S.D.N.Y. 2016) ............................................................15

*Cruz v. Zucker*,
    218 F. Supp. 3d 246 (S.D.N.Y. Nov. 14, 2016) ...........................................28

*D.T. v. NECA/IBEW Family Med. Care Plan*,
    2017 U.S. Dist. LEXIS 195186 (W.D. Wash. Nov. 28, 2017) ...........................9

*Davis v. Quam*,
    932 F.3d 822 (9th Cir. 2019)...........................................................................13

*Doe v. CVS Pharm., Inc.*,
    982 F.3d 1204 (9th Cir. 2020)...........................................................1, 2, 11, 13

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019)........................................................................5, 20

*Edmo v. Idaho Dep't of Correction*,
    358 F. Supp. 3d 1103 (D. Idaho 2018), *order clarified*, 2019 WL
    2319527 (D. Idaho May 31, 2019), *and aff'd in part, vacated in part,*
    *remanded sub nom* ...........................................................................................5

*EEOC v. Pac. Press Publ'g Ass'n*,
    676 F.2d 1272 (9th Cir. 1982)........................................................................26

*Equal Emp. Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes,*
    *Inc.*,
    884 F.3d 560 (6th Cir. 2018), *aff'd on other grounds sub nom* ...................23, 26

*Fernandez v. Wynn Oil Co.*,
    653 F.2d 1273 (9th Cir. 1981).........................................................................23

*Flack v. Wis. Dep't of Health Servs.*,
    328 F. Supp. 3d 931 (W.D. Wis. 2018)........................................................2, 15

*Flack v. Wisconsin Department of Health Services*,
    395 F. Supp. 3d 1001 (W.D. Wis. 2019)..........................................................20

*Fletcher v. Alaska*,
    443 F. Supp. 3d 1024 (D. Alaska 2020) ......................................................2, 15

*Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 932 (N.D. Tex. 2019)...........................25

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – iii
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303    FAX (206) 223-0246

*Franciscan All., Inc. v. Burwell,*
    227 F. Supp. 3d 660 (N.D. Tex. 2016)...................................................................17, 22

*Gen. Conf. Corp. of Seventh-Day Adventists v. McGill,*
    617 F.3d 402 (6th Cir. 2010)..................................................................................23

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
    546 U.S. 418 (2006) ...............................................................................................26

*Grimm v. Gloucester Cnty. Sch. Bd.,*
    972 F.3d 586 (4th Cir. 2020)............................................................................14, 20

*Hall v. United States Dep't of Agric.,*
    984 F.3d 825 (9th Cir. 2020)..................................................................................27

*Hankins v. Lyght,*
    441 F.3d 96 (2d Cir. 2006).....................................................................................24

*Hennessy-Waller v. Snyder,*
    2021 U.S. Dist. LEXIS 61383 (D. Ariz. Mar. 30, 2021)......................................16

*Kadel v. Folwell,*
    446 F. Supp. 3d 1 (M.D.N.C. 2020) ...........................................................2, 15, 16

*Karnoski v. Trump,*
    926 F.3d 1180 (9th Cir. 2019)................................................................................13

*Kastl v. Maricopa Cty. Cmty. Coll. Dist.,*
    325 F. App'x 492 (9th Cir. 2009)...........................................................................14

*Listecki v. Off. Comm. of Unsecured Creditors,*
    780 F.3d 731 (7th Cir. 2015)..................................................................................23

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,*
    416 F.3d 940 (9th Cir. 2005)....................................................................................9

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...............................................................................................27

*Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n,*
    138 S. Ct. 1719 (2018) ...........................................................................................25

*MGIC Indem. v. Weisman,*
    803 F.2d 500 (9th Cir. 1986)....................................................................................4

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – iv
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303    FAX (206) 223-0246

*Molina Healthcare of Cal., Inc. v. United States*,
    133 Fed. Cl. 14 (2017) ................................................................................1

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) ..................................................................10

*Pac. Shores Props., LLC v. City of Newport Beach*,
    730 F.3d 1142 (9th Cir. 2013) ................................................................13

*Parrino v. FHP. Inc.*,
    146 F.3d 699 (9th Cir. 1998) ....................................................................4

*Plumb v. Fluid Pump Serv., Inc.*,
    124 F.3d 849 (7th Cir. 1997) ..................................................................29

*Prescott v. Rady Children's Hosp.-San Diego*,
    265 F. Supp. 3d 1090 (S.D. Cal. 2017) ......................................2, 14, 21

*Religious Sisters of Mercy v. Azar*,
    2021 WL 191009 (D.N.D. Jan. 19, 2021) ..............................................25

*Rosa v. Park West Bank & Trust Co.*,
    214 F.3d 213 (1st Cir. 2000) ..................................................................14

*Rweyemamu v. Cote*,
    520 F.3d 198 (2d Cir. 2008) ..................................................................24

*Schmitt v. Kaiser Health Plan of Washington*,
    965 F.3d 945 (9th Cir. 2020)......................................1, 3, 11, 12, 21

*Schwake v. Arizona Bd. of Regents*,
    967 F.3d 940 (9th Cir. 2020) ..................................................................11

*Schwenk v. Hartford*,
    204 F.3d 1187 (9th Cir. 2000) ........................................................2, 14

*Smith v. City of Salem*,
    378 F.3d 566 (6th Cir. 2004) ..................................................................14

*St. Francis Med. Ctr. v. Azar*,
    894 F.3d 290 (D.C. Cir. 2018) ..............................................................20

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999) ..................................................................24

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – v
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

*T. S. v. Heart of Cardon, LLC,*
   2021 U.S. Dist. LEXIS 49119 (S.D. Ind. Mar. 16, 2021) ................................... 30

*Toomey v. Arizona,*
   2019 WL 7172144 (D. Ariz. Dec. 23, 2019) .................................................... 15

*Tovar v. Essentia Health,*
   342 F. Supp. 3d 947 (D. Minn. 2018) ....................................................... 2, 8, 15

*Tovar v. Essentia Health,*
   857 F.3d 771 (8th Cir. 2017) ........................................................................ 13

*Twede v. Univ. of Washington,*
   309 F. Supp. 3d 886 (W.D. Wash. 2018) ......................................................... 9

*UNUM Life Ins. v. Ward,*
   526 U.S. 358 (1999) ..................................................................................... 29

*Walker v. Azar,*
   2020 U.S. Dist. LEXIS 202040 (E.D.N.Y. Oct. 29, 2020) ................................ 19

*Walker v. Azar,*
   480 F. Supp. 3d 417 (E.D.N.Y. 2020) ....................................................... 18, 20

*Whitaker v. Kenosha Unified Sch. Dist. No. 1,*
   858 F.3d 1034 (7th Cir. 2017) ...................................................................... 14

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.,*
   485 F. Supp. 3d 1 (D.D.C. 2020) ......................................................... 18, 19, 20

*Wong v. Bacon,*
   445 F. Supp. 1177 (N.D. Cal. 1977) .............................................................. 29

*Worldwide Church of God v. Phila. Church of God, Inc.,*
   227 F.3d 1110 (9th Cir. 2000) ...................................................................... 24

### STATUTES

29 U.S.C. § 1003(a) ......................................................................................... 8

29 U.S.C. §1132(a)(2) ..................................................................................... 29

42 U.S.C. § 18116 ........................................................................................... 17

42 U.S.C. § 18116(a) ............................................................................... 1, 3, 10

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

42 U.S.C. § 18116a ........................................................................................... 7

42 U.S.C. § 2000bb-1(b) ................................................................................... 26

42 U.S.C. § 2000bb-1(c) .............................................................................. 22, 23

**REGULATIONS**

45 C.F.R. § 92.101 ........................................................................................... 18

45 C.F.R. § 92.101(a) .................................................................................. 18, 22

45 C.F.R. § 92.207 ........................................................................................... 18

45 C.F.R. § 92.207(b)(1) ............................................................................. 18, 22

45 C.F.R. § 92.4 ............................................................................................... 18

45 C.F.R. § 92.5 ................................................................................................. 7

**OTHER AUTHORITIES**

81 Fed. Reg. 31,198 ........................................................................................ 20

81 Fed. Reg. 31,376 (May 18, 2016) ............................................................... 17

81 Fed. Reg. 31,444 ........................................................................................ 17

81 Fed. Reg. 31,471 ........................................................................................ 17

81 Fed. Reg. 37,244 ........................................................................................ 21

85 Fed. Reg. 37,160 (June 19, 2020) .............................................................. 18

Nat'l Acad. of Sciences, Engineering, and Medicine, *Understanding
     the Well-Being of LGBTQI+ Populations* (2020),
     https://perma.cc/XH5G-MT3L (last visited 3/25/21) ............................. 20

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

## I.   INTRODUCTION

The Patient Protection and Affordable Care Act ("ACA") ensured that all Americans have access to quality, comprehensive health coverage.  It was a "tectonic shift in the nation's [health] insurance market." *Molina Healthcare of Cal., Inc. v. United States,* 133 Fed. Cl. 14, 19 (2017).  In order to ensure comprehensive coverage for all Americans, the ACA eliminated pre-existing condition exclusions, medical underwriting, and discriminatory benefit design and administration, all of which had historically been used to avoid covering individuals and health conditions viewed by insurers as "undesirable" or "uninsurable."  Congress also ended the long-standing discrimination in the administration of health coverage and health benefits by outlawing discrimination on the basis of race, sex, disability and age in the delivery of health benefits.  *See* 42 U.S.C. § 18116(a).  Under ACA, health insurers and third-party administrators ("TPAs"), like Defendant Blue Cross Blue Shield of Illinois ("BCBSIL"), can no longer administer discriminatory exclusions.

The Ninth Circuit confirmed the far-reaching authority of the ACA's anti-discrimination law in two recent cases, *Schmitt v. Kaiser Health Plan of Washington,* 965 F.3d 945, 949 (9th Cir. 2020), and *Doe v. CVS Pharm., Inc.,* 982 F.3d 1204, 1207 (9th Cir. 2020).  In *Schmitt,* the Ninth Circuit held that enrollees may challenge health benefit designs that discriminate on any of the four grounds forbidden by Section 1557.  *See id.,* 965 F.3d at 949.  In *Doe,* the Circuit confirmed that TPAs can be liable for discriminatory administration of a plan benefit.  *See id.,* 982 F.3d at 1207.

This litigation is also governed by the landmark U.S. Supreme Court decision in *Bostock v. Clayton Cty.,* 140 S. Ct. 1731, 1737 (2020), which confirmed that discrimination on the basis of sex includes discrimination based on gender identity and transgender status.  *See also Schwenk v. Hartford,* 204 F.3d 1187, 1200 (9th Cir. 2000); *Fletcher v. Alaska,*

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 1
[Case No. 3:20-cv-06145-RJB]

Sɪʀɪᴀɴɴɪ Yᴏᴜᴛᴢ
Sᴘᴏᴏɴᴇᴍᴏʀᴇ Hᴀᴍʙᴜʀɢᴇʀ ᴘʟʟᴄ
3101 Wᴇsᴛᴇʀɴ Aᴠᴇɴᴜᴇ, Sᴜɪᴛᴇ 350
Sᴇᴀᴛᴛʟᴇ, Wᴀsʜɪɴɢᴛᴏɴ  98121
Tᴇʟ. (206) 223-0303   Fᴀx (206) 223-0246

443 F. Supp. 3d 1024, 1030 (D. Alaska 2020).  Consistent with the decision in *Bostock* and Title IX caselaw, other district courts have concluded that Section 1557 prohibits discrimination on the basis of gender identity and transgender status when it outlawed discrimination on the basis of sex.  *See Kadel v. Folwell*, 446 F. Supp. 3d 1, 14 (M.D.N.C. 2020); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 951 (W.D. Wis. 2018); *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 953 (D. Minn. 2018); *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1099 (S.D. Cal. 2017).

Hewing closely to these precedents, Plaintiffs more than adequately pled a claim of discrimination under Section 1557 of the ACA.  They allege that BCBSIL is a covered entity subject to Section 1557 that administered a discriminatory exclusion of coverage for services "for or leading to gender reassignment surgery" (the "Transgender Health Exclusion" or "Exclusion").  Dkt. No. 1, ¶¶85-91.  Just like in *Schmitt,* BCBSIL's administration of this categorical exclusion raises the "inference of discrimination" against transgender enrollees like C.P.  Plaintiffs' claims are properly pled.

***BCBSIL fails to mention this controlling caselaw in its briefing altogether***. Instead, BCBSIL argues that it may impose the Exclusion because the U.S. Department of Health and Human Services ("HHS") promulgated rules days before the Supreme Court decision in *Bostock,* and effective in August 2020, that might allow it.  Dkt. No. 17, p. 8.  The problem for BCBSIL is that Plaintiffs seek to enforce the statutory requirements of Section 1557.  Since Section 1557 and related caselaw prohibit such discrimination, the 2020 HHS rule cannot authorize it.

BCBSIL also claims that even if the Exclusion is a form of illegal discrimination on the basis of sex, it may still administer the Exclusion on behalf of Catholic Health Initiatives ("CHI"), under the Religious Freedom Restoration Act ("RFRA").  *Id.*, p. 11.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – 2
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

BCBSIL, a secular corporation, is not permitted to discriminate by RFRA.  Nor can it shield its discriminatory acts by claiming that it was "just following orders" from a contracting religious entity.  Under the plain language of Section 1557, BCBSIL, a secular health program or activity, cannot discriminate in the administration of health care claims in any part of its business. 42 U.S.C. § 18116(a).

BCBSIL's last remaining argument – that Plaintiffs do not have constitutional standing to pursue this claim because the treatment sought by C.P. is never medically necessary for minors – does not get out of the starting gate.  Dkt. No. 17, p. 2.  BCBSIL's own medical policy confirms that the treatment for gender dysphoria sought by C.P. can be medically necessary for children and adolescents.  Dkt. No. 1-7, p. 6 of 25.

This Court should reject BCBSIL's Motion to Dismiss in full.

## II.   BACKGROUND

**A.     C.P. and His Mother Patricia Pritchard Seek Coverage for Medically Necessary Treatment for C.P.'s Gender Dysphoria.**

C.P. is a fifteen-year-old transgender boy, which means that he has a male gender identity even though the sex assigned to him at birth was female.  *See* Dkt. No. 1, ¶¶1, 19-25.  His birth certificate, legal name, social security information and passport all reflect his male identity.  Dkt. No. 1, ¶45.

C.P. is diagnosed with gender dysphoria, a serious medical condition recognized in the current version of the Diagnostic and Statistical Manual of Mental Disorders.  *Id.*, ¶27.  Gender dysphoria may be treated in accordance with internationally recognized standards of care formulated by the World Professional Association for Transgender

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 3
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

Health ("WPATH").  *Id.*, ¶30; *see Appendix A*.[1]  The WPATH standards of care are based on the best available science and expert professional consensus, and are widely accepted as best practices for treating gender dysphoria.[2]  Dkt. No. 1, ¶30.  Defendant BCBSIL relied upon the WPATH standards for its medical policy on "Gender Reassignment Surgery with Related Services."  Dkt. No. 1-7, p. 9-10 of 25.

C.P. is well-adjusted and healthy except for his gender dysphoria, which necessitated treatment with puberty blockers (Vantas implants),[3] testosterone treatment, and chest surgery.

When C.P. first sought coverage for a Vantas Implant in 2016, BCBSIL approved and paid for the service.  Dkt. No. 1, ¶¶48-50; Dkt. No. 1-2, pp. 2-3 of 3. BCBSIL later stated that the coverage had been approved in error, but not because it had an internal policy against such treatment for enrollees under the age 18.  Rather, BCBSIL told C.P. and his parents that coverage for "transgender services" was not permitted under the plan in which he was enrolled.  *Id.*, ¶¶50-51, Dkt. No. 1-3.

BCBSIL's authorization of the Vantas Implant was entirely proper.  At the time, there was no exclusion of coverage for services related to "gender reassignment surgery"

---

[1] *See* https://www.wpath.org/publications/soc (last visited 3/24/21).  On a Rule 12(b)(6) motion, the Court may take judicial notice of documents referenced in the complaint where authenticity is not in question and of matters of public record.  *Parrino v. FHP. Inc.*, 146 F.3d 699, 705 (9th Cir. 1998); *MGIC Indem. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[2] The WPATH standards of care "are the internationally recognized guidelines for the treatment of individuals with gender dysphoria." *Edmo v. Idaho Dep't of Correction*, 358 F. Supp. 3d 1103, 1111 (D. Idaho 2018), *order clarified*, No. 1:17-CV-00151-BLW, 2019 WL 2319527 (D. Idaho May 31, 2019), *and aff'd in part, vacated in part, remanded sub nom. Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019) (noting that "many of the major medical and mental health groups in the United States … recognize the WPATH Standards of Care as representing the consensus of the medical and mental health communities regarding the appropriate treatment for transgender and gender dysphoric individuals."). Under WPATH, "Chest surgery in FtM [female-to-male adolescent] patients could be carried out earlier, preferably after ample time of living in the desired gender role and after one year of testosterone treatment." *Appendix A*, p. 21.

[3] *See* https://www.webmd.com/drugs/2/drug-92124/vantas-implant/details (last visited 3/4/21).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 4
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

in the CHI Plan that was administered by BCBSIL, and BCBSIL's internal clinical coverage policy affirmatively authorized such treatment when medically necessary. *See* Dkt. No. 1, ¶55; Dkt. No. 1-4; Dkt. No. 1-7, p. 6 of 25.  BCBSIL's medical policy covers the treatment for which C.P. has sought coverage:

> <u>Gender Reassignment Surgery and Related Services for Children and Adolescents:</u>
>
> The following services may be considered medically necessary for the treatment of gender dysphoria for children and adolescents:
>
> - Hormone therapy (such as ***puberty-suppressing hormones*** or masculinizing/feminizing hormones)
>
> - Psychological services, including but not limited to psychotherapy, social therapy and family counseling; and/or
>
> - ***Chest surgery*** for FtM [female-to-male] individuals.

Dkt. No. 1-7, p. 6 of 25 (emphasis added).

After C.P. obtained authorization and payment for his first Vantas Implant, Pritchard's employer decided to add a categorical exclusion of coverage for transgender health services and BCBSIL agreed to administer it.  The exclusion first appeared in the CHI plan in 2018.  Dkt. No. 1, ¶56; *See e.g.,* Dkt. No. 1-1, p. 67 of 142.  It purported to exclude all coverage of treatment for gender dysphoria if it was considered to be "related" to gender reassignment surgery:

> **The Details – What's Covered and Not Covered**:
>
> …
>
> ***Transgender Reassignment Surgery***
>
> <u>Not Covered:</u>
>
> Benefits shall not be provided for gender reassignment surgery including, but not limited to, any treatments, drugs,

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 5
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

> medicines, therapy, counseling services or supplies related to
> such surgeries.

*See* Dkt. No. 1-1, pp. 37, 67 of 142 (emphasis and underlining in original).  Although the 2018 plan indicated that only services "related" to "gender reassignment surgery" (an undefined term in the plan) were not covered, BCBSIL informed C.P. and his parents that ***all coverage*** for "transgender services" would be denied. *See* Dkt. No. 1-3, pp. 2-3.

In 2019, after C.P. received testosterone treatment for more than a year, Plaintiffs sought pre-authorization for a second Vantas Implant for C.P., which BCBSIL denied. Dkt. No. 1, ¶¶61-65.  It also denied C.P.'s pre-authorization request for chest surgery.  *Id.*  BCBSIL denied coverage for both procedures as "not covered" due to the Transgender Reassignment Surgery Exclusion.  *Id.*

Plaintiffs appealed the denial of coverage for both services and BCBSIL denied the appeal asserting that the services were not "benefit[s] of the contract."  Dkt. No. 1, ¶¶66-67, Dkt. No. 1-13, 1-14, pp. 2-3.   BCBSIL never determined that C.P.'s Vantas Implant or chest surgery were "experimental/investigational" or not medically necessary.  Dkt. No. 1, ¶69.

**B.    BCBSIL Is a Covered Entity That Must Comply with Section 1557.**

BCBSIL receives federal financial assistance and participates in health insurance marketplaces established pursuant to the Affordable Care Act.  Dkt. No. 1, ¶13; *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 730 (N.D. Ill. 2017) ("BCBSIL and other HCSC divisions offer and administer plans directly through ACA Exchanges").   Thus, BCBSIL is a "health program or activity" part of which receives federal financial assistance.  42 U.S.C. § 18116a.  Dkt. No. 1, ¶71.  BCBSIL provided assurances to HHS that it complies with the requirements of Section 1557.  *See* 45 C.F.R. § 92.5.  It also provided written assurances to Plaintiffs that it would comply with the anti-discrimination requirements of Section 1557.  Dkt. No. 1-5, p. 7 of 9; Dkt. No. 1-6, p. 8 of

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 6
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

10; Dkt. No. 1-11, p. 5 of 5; Dkt. No. 1-12, p. 5 of 5.  *See also* Dkt. No. 1-1, p. 120-121 of 142. BCBSIL does not dispute these allegations in its Motion.  *See generally,* Dkt. No. 17.

BCBSIL is neither a religious organization nor one closely held by religious individuals.  Dkt. No. 1, ¶13.  BCBSIL does not assert it is a vehicle for its owners' exercise of religion in its Motion.  *See* Dkt. No. 17.  BCBSIL merely contracts with CHI to administer the CHI Plan for employees and dependents of CHI.  Dkt. No. 1, ¶13; Dkt. No. 17, p. 2.

## C.   Procedural History

This case was filed on November 23, 2020.  *See* Dkt. No. 1.  The litigation includes a single claim of discrimination on the basis of sex against BCBSIL for its activities as the TPA for CHI's employer-sponsored health benefit plan, commonly referred to as an "ERISA plan."  *See* 29 U.S.C. § 1003(a).  Defendant has argued elsewhere that this litigation is "governed by ERISA," but Defendant is wrong.  *See* Dkt. No. 14, p. 3. Plaintiffs' Section 1557 claim is properly asserted against BCBSIL, a covered entity, separately and apart from any coverage rights C.P. may have under ERISA. As the court in *Tovar* found:

> ERISA specifically carves out room for TPAs to comply with other federal laws: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). The Court will not construe ERISA to impair Section 1557. Nothing in Section 1557, explicitly or implicitly, suggests that TPAs are exempt from the statute's nondiscrimination requirements.

*Tovar*, 342 F. Supp. 3d at 954; *see e.g., Condry v. Unitedhealth Grp., Inc.*, 2018 U.S. Dist. LEXIS 111233, at *10-13 (N.D. Cal. June 27, 2018).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 7
[Case No. 3:20-cv-06145-RJB]

### III.  LAW AND ARGUMENT

**A.    Legal Standard.**

Under Federal Rule of Civil Procedure 12(b)(6), the court construes a complaint in the light most favorable to the non-moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  It must "accept as true" all well-pleaded allegations in the complaint, drawing reasonable inferences in favor of the plaintiff.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006).  The same holds true when a party challenges Article III standing under Rule 12(b)(1) and makes a facial attack on jurisdiction.  *Twede v. Univ. of Washington*, 309 F. Supp. 3d 886, 893 (W.D. Wash. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As a result, dismissal is improper "if there is any set of facts consistent with the allegations in the complaint that would entitle the plaintiff to relief."  *D.T. v. NECA/IBEW Family Med. Care Plan*, 2017 U.S. Dist. LEXIS 195186, at *3 (W.D. Wash., Nov. 28, 2017), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  This standard is exceedingly difficult, requiring the defendant to show that "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

**B.    Plaintiff Plausibly Alleged a Claim for Discrimination on the Basis of Sex Under Section 1557.**

With the ACA, Congress explicitly prohibited discrimination in "health programs or activities," any part of which receive federal financial assistance, on the same grounds as Title IX. Specifically, Section 1557 of the ACA provides that:

> [A]n individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 *et seq.*) … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 8
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

> financial assistance ….   The enforcement mechanisms
> provided for and available under … title IX… shall apply for
> purposes of violations of this subsection.

42 U.S.C. § 18116(a).  Under the plain language of this provision, any health program

that receives any federal financial assistance, including a health insurer acting as a TPA,

such as BCBSIL does here, is subject to the full scope of the law.

Section 1557 bans discrimination "on the basis of sex" by covered entities and

incorporates the "grounds" and "enforcement mechanisms" of the statutes listed in

Section 1557. 42 U.S.C. § 18116(a). Therefore, to state a claim for sex discrimination under

Section 1557, a plaintiff must plead that: (1) the defendant is a health program or activity,

any part of which receives federal funding; (2) the plaintiff was excluded from

participation in, denied the benefits of, or subjected to discrimination under any a health

program or activity; and (3) the latter occurred on the basis of sex.  *See Schwake v. Arizona*

*Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020).

Plaintiffs pled each of these required allegations.  ***First,*** Plaintiffs alleged that

BCBSIL is a covered entity receiving federal financial assistance, and subject to Section

1557's anti-discrimination protections. *See* Dkt. No. 1, at ¶¶13, 72-74, 86, 89-90.  ***Second,***

Plaintiffs alleged that BCBSIL administered the Exclusion which discriminates on the

basis of sex, by denying coverage for otherwise medically necessary, covered health care

services. *See* Dkt. No. 1, at ¶¶50-67, 75-80, 88.  ***Third,*** the denial of coverage occurred on

the basis of sex, including transgender status.  *See* Dkt. No. 1, at ¶¶1, 4-6, 8-9, 51, 60, 81,

88, 92.  No more is needed to properly plead a violation of Section 1557.

In its motion, BCBSIL only challenges Plaintiffs' claim on the third ground,

arguing that Plaintiffs have not adequately pled that BCBSIL's denial of coverage under

the Plan's "Transgender Reassignment Surgery" exclusion is discrimination on the basis

of sex, conceding that the first two grounds are properly alleged.  *See generally* Dkt.

No. 17.  Specifically, BCBSIL argues that the 2020 HHS rules related to Section 1557

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 9
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

permit it to administer the Transgender Health Exclusion, despite the ACA's prohibition on discrimination on the basis of sex. *See id.*, pp. 7-11. This argument ignores existing Ninth Circuit precedent in *Schmitt* and *Doe* directing how courts must analyze Section 1557 claims, as well as the U.S. Supreme Court's decision in *Bostock*.

In *Schmitt*, two hearing disabled insureds challenged a health insurer's blanket exclusion of all coverage for treatment for hearing loss, except for cochlear implants as violating Section 1557. *See id.*, 965 F.3d at 949. The Ninth Circuit held that health benefit design and administration "inherently involves intentional conduct" and that a categorical exclusion of coverage for a particular condition closely associated with a protected class raises "an inference of discrimination." *Id.*, at 949, 954. The Court held that once a plaintiff sufficiently pleads that a categorical exclusion is intentional discrimination in benefit design and administration under Section 1557, the covered entity must come forward with reasonable non-discriminatory standards for the imposition of the exclusion. *Id.*, at 957-58. The reasonableness of the covered entity's justification for the categorical exclusion, however, cannot be determined on a motion to dismiss. *See id.*

The categorical exclusion administered by BCBSIL is inherently discriminatory. Discrimination based on gender dysphoria is inextricably based on transgender status, such that the categorical exclusion at issue here, of ***all treatment*** "related to gender reassignment surgery" and by its terms encompassing more than just surgery, is a proxy for discrimination on the basis of transgender status. *See* Dkt. No. 1-3 ("For ***any*** future ***transgender services***, benefits will not be covered under the medical plan")(emphasis added). *Cf. Christian Legal Soc'y v. Martinez*, 561 U.S. 661, 689 (2010) (targeting same-sex conduct necessarily targets the status of being gay); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("A tax on wearing yarmulkes is a tax on Jews."); *Davis v.*

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 10
[Case No. 3:20-cv-06145-RJB]

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303   Fax (206) 223-0246

*Quam*, 932 F.3d 822, 837-838 (9th Cir. 2019); *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). Indeed, the Exclusion enforced by BCBSIL is entitled "***Transgender*** Reassignment Surgery" and it therefore discriminates, on its face, on the basis of transgender status. *See Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019).

Additionally, it makes no difference that the "covered entity" here is a TPA, rather than the plan itself. The law, on its face, applies to such entities – there is no "TPA" exemption if it is otherwise a "covered entity."   For that reason, challenges to discriminatory administration by TPAs (like BCBSIL) have been upheld in district courts in the Ninth Circuit and around the country.   For example, in *Doe v. CVS Pharm., Inc.*, disabled plaintiffs living with HIV/AIDS filed a Section 1557 claim of disability discrimination against CVS, a third-party prescription benefit manager, regarding its administration of prescription benefit plans for employer-based health plans.   *Id.*, 982 F.3d at 1207.   The Ninth Circuit confirmed that a Section 1557 claim is properly pled against a TPA which administers a benefit design that results in discrimination.   *Id.*, at 1212; *see also, Tovar v. Essentia Health*, 857 F.3d 771, 777 (8th Cir. 2017); *Boyden*, 341 F. Supp. 3d at 997.   If a TPA is subject to Section 1557 as BCBSIL is here, it cannot administer a health benefit that discriminates on the basis of sex.   The ACA demands no less.

## C.   Caselaw Confirms that Administration of a Categorical Coverage Exclusion of Treatment Related to "Transgender Reassignment Surgery" Is Discrimination on the Basis of Sex.

In *Bostock*, the U.S. Supreme Court confirmed that discrimination on the basis of an individual's transgender status is discrimination on the basis sex.   This has long been the law in the Ninth Circuit.   *See Schwenk v. Hartford*, 204 F.3d at 1201-02; *Kastl v. Maricopa Cty. Cmty. Coll. Dist.*, 325 F. App'x 492, 493 (9th Cir. 2009).   Other Circuits had reached the same conclusion.   *See, e.g., Whitaker v. Kenosha Unified Sch. Dist. No. 1*, 858 F.3d 1034,

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 11
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

1049 (7th Cir. 2017); *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004); *Rosa v. Park West Bank & Trust Co.*, 214 F.3d 213, 215-16 (1st Cir. 2000); *see also Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir. 2020); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286, 1305 (11th Cir. 2020).   Discrimination on the basis of sex under Section 1557 is properly guided by this jurisprudence since "federal courts regularly look to Title VII cases for guidance" when interpreting Title IX and therefore Section 1557. *Prescott*, 265 F. Supp. 3d at 1099.   "Because Title VII, and by extension Title IX, recognize that discrimination on the basis of transgender identity is discrimination on the basis of sex, the Court interprets the ACA to afford the same protections." *Id.*

Virtually every court to have considered a categorical exclusion of coverage for gender-affirming health care has held that it violates Section 1557's prohibition on sex discrimination.   For example, in *Kadel v. Folwell*, the district court found an exclusion like the one at issue here violates both Title IX and Section 1557 because:

> By denying coverage for gender-confirming treatment, the Exclusion tethers Plaintiffs to sex stereotypes which, as a matter of medical necessity, they seek to reject. …
>
> The Exclusion also discriminates on the basis of natal sex—that is, the sex one was assigned at birth—by denying equal access to certain medical procedures, depending on whether an individual's assigned sex is male or female. For example, a cisgender woman born without vagina may qualify for a vaginoplasty (the surgical creation of a vagina) to correct that congenital defect; however, a transgender woman (whose natal sex is male) would not be able to seek the same procedure, even if deemed medically necessary to treat gender dysphoria. Likewise, while a cisgender woman may opt to undergo breast reconstruction after a cancer-related mastectomy, a person whose assigned sex is male cannot receive coverage for breast augmentation to aid in gender transition. In this way, the Exclusion discriminates not just based on nonconformance with sex stereotypes, but based on employee's physical sex characteristics as well.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 12
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

*Id.*, 446 F. Supp. 3d at 14; *see also Boyden*, 341 F. Supp. 3d at 996-97; *Flack*, 328 F. Supp. 3d at 951; *Tovar*, 342 F. Supp. 3d at 952-953; *Cruz v. Zucker*, 195 F. Supp. 3d 554, 581 (S.D.N.Y. 2016); *cf. Fletcher*, 443 F. Supp. 3d at 1030 (Title VII); *Toomey v. Arizona*, 2019 WL 7172144, at *6 (D. Ariz. Dec. 23, 2019) (Title VII).  Health plans and TPAs cannot deny coverage of a medically necessary service simply based on the gender or gender identity of the patient.[4]

This makes perfect sense, since the same procedures used to treat medical conditions are used to treat gender dysphoria.  *Boyden,* 341 F. Supp. 3d at 989 ("For example, surgeons regularly perform mastectomies and chest/breast reconstruction, hysterectomies, salpingo-oophorectomies (surgical removal of fallopian tubes and ovaries), and orchiectomies (surgical removal of testes) to treat individuals with cancer or a genetic predisposition to cancer, such as the BRCA genes, or as part of treatment for a traumatic injury.").  It is also true for the plan administered by BCBSIL here.  *See* Dkt. No. 1-1, p. 19, 54 of 142 (BCBSIL administers coverage of mastectomies for women while denying chest surgery for C.P.).  The same codes and charges generally apply, whether the service is provided to treat a transgender or a cisgender person.  *Boyden*, 341 F. Supp. 3d at 989-990.  The exclusion administered by BCBSIL is facially discriminatory because

---

[4] The recent decision in *Hennessy-Waller v. Snyder*, 2021 U.S. Dist. LEXIS 61383, at *12 (D. Ariz. Mar. 30, 2021), is of no help to defendants.  In that case, "the Court conclude[d] Plaintiffs ha[d] not met the heightened standard for a mandatory injunction to issue," *Id.* at *35, on the basis that the two minor plaintiffs in that case had "not clearly shown the surgery is medically necessary for them." Id. at *25, and that the "relief sought [] would not preserve the status quo, but rather would completely change it and is identical to the ultimate relief sought in Plaintiffs' Complaint."  *Id*. at *34.  Importantly, the court did not dismiss any of the claims at issue.  What is more, the court's decision in *Hennessy-Waller* is an outlier that contains various factual and legal errors.  For example, *Hennessy-Waller* incorrectly asserts that *Kadel* "did not involve … minor plaintiffs. *Id*. *28-29.  Not true. *See Kadel*, 446 F. Supp. 3d at 11 (noting that Plaintiffs Connor Thonen-Fleck and C.B. are "minor plaintiffs").  In any event, unlike the Medicaid plan at issue in *Hennessy-Waller*, BCBSIL's internal policy documents that puberty suppressors (like the Vantas implant) and chest surgery may be medically necessary for the treatment of gender dysphoria in minors and adolescents. *See* Dkt. No. 1-7, p. 6 of 25.

it excludes otherwise covered services (hormone treatment and mastectomy) when those services are provided to treat a transgender patient.

**D.    The 2020 HHS Rule Does Not Permit BCBSIL's Administration of the Transgender Health Exclusion.**

Plaintiffs' claim of discrimination is based on Section 1557's statutory language and relevant caselaw, not any regulation promulgated by HHS. Nonetheless, BCBSIL asserts that "[t]he *current* HHS regulations explicitly permit categorical exclusion of gender-affirming treatments, and the courts have upheld these regulations." Dkt. No. 17, p. 8 (emphasis added). BCBSIL is wrong.

To understand the present status of the HHS rule, it is important to understand the history of Section 1557 rulemaking.  In 2016, HHS promulgated a final rule to provide guidance and clarify the scope of the protections in Section 1557 of the ACA, 42 U.S.C. § 18116.  *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,376 (May 18, 2016) (formerly 45 C.F.R. pt. 92) (the "2016 Rule"). HHS stated its intention to "promote understanding of and compliance with Section 1557 by covered entities and the ability of individuals to assert and protect their rights under the law." 81 Fed. Reg. at 31,444. The 2016 Rule also prohibited "categorical coverage exclusion[s] or limitation[s] for all health services related to gender transition." 81 Fed. Reg. at 31,471–72 (formerly codified at 45 C.F.R. § 92.207(b)(4)).

On December 31, 2016, a federal district court in Texas enjoined enforcement by HHS of portions of the 2016 Rule that prohibited discrimination on the basis of "gender identity" and "termination of pregnancy," leaving all remaining aspects of the rule in place. *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016) (addressing 45 C.F.R. § 92.4).  ***The remaining provisions, including 45 C.F.R. §§ 92.101(a) and 92.207(b)(1), remained in effect in 2019, when BCBSIL denied coverage of C.P.'s treatment.***

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 14
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

In 2020, HHS reversed course and repealed the 2016 Rule's prohibitions on gender identity discrimination, including 45 C.F.R. §§ 92.101 and 92.207, as well as the definitions of "on the basis of sex," "gender identity," and "sex stereotyping" contained in 45 C.F.R. § 92.4. *See* Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020) (to be codified at 42 C.F.R. pts. 438, 440, & 460 and 45 C.F.R. pts. 86, 92, 147, 155, & 156) (the "2020 Rule"). The 2020 Rule was released publicly just days before the Supreme Court issued its decision in *Bostock.* Yet, after *Bostock* was issued, HHS proceeded to publish the Rule in final form without taking into account the Supreme Court's decision.

Shortly after the 2020 Rule took effect, multiple lawsuits were filed challenging it under the Administrative Procedures Act ("APA"). In two of these cases, the courts preliminarily enjoined certain aspects of the 2020 Rule from taking effect. *See e.g., Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1 (D.D.C. 2020); *Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020). In *Walker*, the court enjoined the 2020 Rule's "repeal of the 2016 Rule's definition of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping' set forth in 45 C.F.R. § 92.4," as well as "the repeal of 45 C.F.R. § 92.206," which prohibits "'deny[ing] or limit[ing] health services that are ordinarily or exclusively available to individuals of one sex, to a transgender individual based on the fact that the individual's sex assigned at birth, gender identity, or gender otherwise recorded is different from the one to which such health services are ordinarily or exclusively available.'" *Walker v. Azar*, 2020 U.S. Dist. LEXIS 202040, at *8 (E.D.N.Y. Oct. 29, 2020). In *Whitman-Walker*, the court enjoined "the repeal of the 2016 Rule's definition of discrimination '[o]n the basis of sex' insofar as it includes 'discrimination on the basis of ... sex stereotyping.' 81 Fed. Reg. at 31,467," and the "incorporation of the

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 15
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

religious exemption contained in Title IX. *See* 45 C.F.R. § 92.6(b)." *Id.,* 485 F. Supp. 3d at 64.

Notably, the *Whitman-Walker* court found that the plaintiffs had standing to challenge the 2020 Rule's repeal of the prohibition on categorical exclusions for gender-affirming care, holding that "[a]n order restoring the 2016 Rule's prohibition on categorical coverage exclusions … would redress Plaintiffs' injury." *Whitman-Walker Clinic*, 485 F. Supp. 3d at 30. Yet, "[m]indful of the 'narrow' scope of arbitrary-and-capricious review," the court did not enjoin the repeal of the ban on categorical exclusions based on the limited APA arguments presented ***at that preliminary stage***. *Id.* at 46. The court pointedly noted that it was not resolving "the precise limits of HHS's authority to implement Section 1557's prohibition on sex discrimination," including whether "Section 1557 compels the inclusion of a prohibition on coverage exclusions." *Id.* BCBSIL's assertion that "[t]he *Whitman-Walker* court rejected the claim that *Bostock* prohibits exclusions such as the Exclusion" is a gross misrepresentation of the decision.[5]

---

[5] BCBSIL argues that the Exclusion is justified based on the ***preamble*** of the 2020 Rule. *See* Dkt. No. 17, *citing to Whitman-Walker, quoting* 81 Fed. Reg. 31,198-99. Of course, the preamble of a rule is not enforceable. *Walker*, 480 F. Supp. 3d at 429; *see St. Francis Med. Ctr. v. Azar*, 894 F.3d 290, 297 (D.C. Cir. 2018). Moreover, the *Whitman-Walker* court merely addressed the "limited argument" that "HHS 'did not offer a reasonable explanation' for its policy change" in deciding whether to impose a preliminary injunction, *id.,* 485 F. Supp. 3d at 30; it still has before it whether HHS acted unreasonably when promulgating the 2020 Rule, including HHS's statement in the preamble that "the medical community is divided on many issues related to gender identity."

To be sure, multiple courts, including the Ninth Circuit, have reached the opposite conclusion from HHS's observation in the preamble to the 2020 Rule. *See Edmo*, 935 F.3d at 770 (the medical consensus is that gender-affirming care for gender dysphoria "is safe, effective, and medically necessary in appropriate circumstances"); *Flack v. Wisconsin Department of Health Services*, 395 F. Supp. 3d 1001, 1018 (W.D. Wis. 2019) ("any attempt by defendants or their experts to contend that gender-confirming care – including surgery – is inappropriate, unsafe, and ineffective is unreasonable, in the face of the existing medical consensus"); *see also Grimm*, 972 F.3d at 595-96; Nat'l Acad. of Sciences, Engineering, and Medicine, *Understanding the Well-Being of LGBTQI+ Populations* (2020), at 12-14, https://perma.cc/XH5G-MT3L ("[A]vailable evidence generally indicates that gender-affirming medical interventions, including surgeries, are associated with improvements in gender dysphoria, mental health, and quality of life for transgender people") (last visited 3/25/21).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 16
[Case No. 3:20-cv-06145-RJB]

What is more, in defending the 2020 Rule, HHS **conceded** that "Adjudication or litigation may establish that Section 1557's prohibition on sex discrimination renders categorical coverage exclusions of gender-affirming care illegal." Mem. in support of Defs.' Mot. to Dismiss, *Whitman-Walker Clinic,* No. 1:20-cv-01630-JEB, pp. 14-15 (D.D.C. filed Sept. 29, 2020) (Dkt. No. 57-1).[6] This case seeks that precise adjudication. The plain language of the statute and ample case law shows that categorical exclusions for coverage of gender-affirming care are *per se* violative of Section 1557 of the ACA. *See* Part III.B.2, *infra*.

In sum, BCBSIL's claim that "the 2020 Rule allows the Exclusion," Dkt. No. 17, p. 11, misrepresents what the 2020 Rule actually states, what HHS says it did, and what courts evaluating the 2020 Rule have held. Ultimately, the most that anybody can glean from the operative text of the 2020 Rule is that it is **silent** on the legality of categorical exclusions related to gender dysphoria. *See* 81 Fed. Reg. 37,244 (newly promulgated 45 C.F.R. § 92.2)

In any event, there is no need for this Court to sift through the various iterations of HHS rules and preambles. Since "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984). The Court should "start with the statute's text." *Schmitt*, 965 F.3d at 952. Based upon the plain language of the ACA and existing case law, a categorical exclusion for coverage of gender affirming care, like the Exclusion here, discriminates on the basis of sex in violation of Section 1557. *See Prescott*, 265 F. Supp. 3d at 1105 ("[T]he ACA claim

---

6   Found at: https://www.courtlistener.com/recap/gov.uscourts.dcd.219155/gov.uscourts.dcd. 219155.57.1_1.pdf (last visited 3/29/21).

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 17
[Case No. 3:20-cv-06145-RJB]

and the Court's decision under the ACA do not depend on the enforcement or constitutionality of the HHS's regulation").[7]

Section 1557 and the overwhelming weight of caselaw hold that categorical exclusions of coverage for gender-affirming care are unlawful sex discrimination. Plaintiffs have stated a claim for relief that is plausible on its face.

**E.    BCBS May Not Assert a RFRA Defense and, In Any Event, Such a Defense Would Fails on the Merits.**

BCBSIL raises a defense under RFRA, broadly asserting that it may administer a discriminatory health benefits plan *based on someone else's religious practice*. BCBSIL is mistaken:  It is not only ineligible to raise a RFRA defense, but also such a defense would fail on the merits.

RFRA provides that, "*A person whose religious exercise has been burdened* in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief *against a government*." 42 U.S.C. § 2000bb-1(c) (emphasis added).  But BCBSIL, a secular business, does not identify any of its own religious exercise that could be burdened, let alone how such religious exercise is burdened by the Affordable Care Act's nondiscrimination mandate.  Simply put, based on RFRA's statutory language, BCBSIL is not able to assert a RFRA defense because it is not within the scope of those that RFRA seeks to protect. Further, BCBSIL does not acquire cognizable religious interests through a business interest in pleasing others. As

---

[7] Should the Court conclude that it is necessary to consider the federal agency's interpretation of Section 1557, it should defer to the Rule that was in effect at the time C.P.'s requests for services were denied, and not the 2020 Rule. Specifically, 45 C.F.R. §§ 92.101(a) and 92.207(b)(1), as provided for in the 2016 Rule, were not enjoined by *Franciscan Alliance*. *See* 227 F. Supp. 3d at 695. Because these provisions were in effect when coverage for C.P.'s treatment was denied, they expressly prohibited a covered entity like BCBSIL from administering health coverage in a manner that denies or limits coverage on the basis of sex.  Under the relevant statute, case law, and the agency rules in effect in 2019, BCBSIL was not permitted to discriminate on the basis of sex when it administered the Exclusion to deny C.P.'s treatment.

the Ninth Circuit has held, "customer preference based on sexual stereotype cannot justify discriminatory conduct." *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1277 (9th Cir. 1981); *cf. Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 586 (6th Cir. 2018) ("[W]e hold as a matter of law that a religious claimant cannot rely on customers' presumed biases to establish a substantial burden under RFRA."), *aff'd on other grounds sub nom. Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020).

What is more, RFRA may only be asserted as a defense "against a government." 42 U.S.C. § 2000bb-1(c). "Based on RFRA's plain language [and] its legislative history, … RFRA is not applicable in cases where the government is not a party." *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015); *see also R.G. &. G.R. Harris Funeral Homes*, 884 F.3d at 584 ("[I]f Stephens had initiated a private lawsuit against the Funeral Home to vindicate her rights under Title VII, the Funeral Home would be unable to invoke RFRA as a defense because the government would not have been party to the suit."); *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 410 (6th Cir. 2010) ("McGill cannot claim the benefit of RFRA, however, because as we explain, the defense does not apply in suits between private parties."); *Rweyemamu v. Cote*, 520 F.3d 198, 204 n.2 (2d Cir. 2008) ("[W]e do not understand how [RFRA] can apply to a suit between private parties, regardless of whether the government is capable of enforcing the statute at issue.").[8] The Ninth Circuit has expressed its agreement with this basic proposition. For example, in *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th Cir. 1999), the Ninth Circuit noted that Congress did not specify that RFRA applies to

---

[8] While the Second Circuit held that RFRA could be raised as a defense in litigation between private parties in *Hankins v. Lyght*, 441 F.3d 96 (2d Cir. 2006), the Circuit since has expressed its "own doubts about *Hankins*'s determination that RFRA applies to actions between private parties when the offending federal statute is enforceable by a government agency." *Rweyemamu*, 520 F.3d at 203.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 19
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

nongovernmental actors, as it typically does when intending to regulate private parties, and held that private parties could not be considered state actors under RFRA unless they acted jointly with government officials to violate free-exercise rights.  *Id.*, 192 F.3d at 834, 837–43; *see also Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000) ("It seems unlikely that the government action Congress envisioned in adopting RFRA included the protection of intellectual property rights against unauthorized appropriation."). It should go without saying but neither C.P. nor his mother is "a government."

BCBSIL's reliance on *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014); *Religious Sisters of Mercy v. Azar*, No. 3:16-CV-00386, 2021 WL 191009 (D.N.D. Jan. 19, 2021); and *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 932 (N.D. Tex. 2019), is misplaced, as each of those cases involved the government as a party, and the injunctive relief granted in *Religious Sisters* and *Franciscan Alliance* was against the federal government and not any private party, such as Plaintiffs.

Finally, even if this Court were to reach the RFRA defense (which it should not), such a defense would fail on the merits. That is because "while [] religious and philosophical objections are protected, it is a general rule that such objections do not allow business owners and other actors in the economy and in society to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018). The same general principle applies here. The ACA has brought about a new era of nondiscrimination in health care wherein Section 1557 explicitly prohibits actors in the health care economy from denying equal access to protected persons from the benefits of any health program or activity, so long as any part of them receives federal financial assistance.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 20
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

Under RFRA, "a person's exercise of religion" may be burdened if the "application of the burden to the person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). The test is met here. **First,** Section 1557 serves the compelling interest of eradicating invidious discrimination in health care. *Cf. EEOC v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1280 (9th Cir. 1982) ("By enacting Title VII, Congress clearly targeted the elimination of all forms of discrimination as a 'highest priority.' Congress' purpose to end discrimination is equally if not more compelling than other interests that have been held to justify legislation that burdened the exercise of religious convictions."), *abrogation on other grounds recognized by Am. Friends Serv. Comm. Corp. v. Thornburgh*, 951 F.2d 957, 960 (9th Cir. 1991). And "[f]ailing to enforce [Section 1557] against [BCBSIL] means … allowing a particular person—[C.P.]—to suffer discrimination, and such an outcome is directly contrary to the [] compelling interest in combating discrimination in [health care]." *R.G. &. G.R. Harris Funeral Homes*, 884 F.3d at 591. **Second,** requiring BCBSIL to comply with Section 1557's mandate "constitutes the least restrictive means of furthering the government's compelling interest in eradicating discrimination [in health care] on the basis of sex." *Id.,* at 597.

As the Supreme Court has acknowledged, "there may be instances where a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 421 (2006). Such is the case here, where there is no way to eradicate discrimination in health care but to prohibit all discrimination in health care. This includes the discrimination suffered by C.P. and his mother at the hands of BCBSIL.

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 21
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

**F.      Plaintiffs have Constitutional Standing to Bring this Litigation.**

BCBSIL argues that C.P. and his mother do not have Article III standing to pursue this litigation.   Such standing is demonstrated by showing that: (1) a plaintiff has suffered an "actual or threatened injury in fact;" (2) there is a causal connection between the injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision. *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 833 (9th Cir. 2020), *citing to Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

All three of these elements are present here.  Plaintiffs suffered an "injury in fact" when BCBSIL denied coverage of medically necessary services to treat C.P.'s gender dysphoria, including the Vantas Implant and chest surgery, pursuant to the discriminatory "Transgender Reassignment Surgery" exclusion.  As a direct result of BCBSIL's administration of the discriminatory exclusion, C.P. and his parents paid money out of pocket and suffered the effects of illegal discrimination on the basis of sex.  A favorable decision that enjoins BCBSIL from administering the illegal exclusion and directs BCBSIL to compensate C.P. and his mother for the illegal discrimination will provide C.P. with a remedy – coverage for the medically necessary services to treat his gender dysphoria, an injunction moving forward for any additional care C.P. needs, and a declaration that the exclusion is unlawful.  For the current purposes, it is not relevant whether the benefits are paid for by CHI or, as in the case of the earlier Vantas Implant, paid for by BCBSIL. All Plaintiffs want is for C.P. to receive the health benefits to which he is entitled without illegal discrimination on the basis of sex.

BCBSIL's claim that C.P. has no standing because he cannot demonstrate that the services for which he sought coverage – puberty blockers and chest surgery – were medically necessary is unfounded.  *See* Dkt. No. 17, p. 6.  ***BCBSIL failed to carefully review its own medical policy*** which, consistent with the WPATH standards of care,

Sirianni Youtz
Spoonemore Hamburger pllc
3101 Western Avenue, Suite 350
Seattle, Washington  98121
Tel. (206) 223-0303   Fax (206) 223-0246

expressly states that these services may be medically necessary for children and adolescents.  Dkt. No. 1-7, p. 3, 6 of 25.

In any event, whether or not the services sought by C.P. were medically necessary cannot be determined on a motion to dismiss.  Plaintiffs alleged that the services were medically necessary and attached extensive medical evidence to the Complaint to support the allegation.  Dkt. No. 1, ¶¶61-66; Dkt. Nos. 1-9, 1-10, 1-13.  To the extent there is a dispute over whether C.P.'s treatment was medically necessary, that dispute can **only** be resolved by the Court after discovery, upon summary judgment or at trial.  *Carr v. United Healthcare Servs.*, 2016 U.S. Dist. LEXIS 182561, at *7 (W.D. Wash. May 31, 2016); *see e.g., Cruz v. Zucker*, 218 F. Supp. 3d 246, 247 (S.D.N.Y. Nov. 14, 2016).

**G.    BCBSIL Can Administer the Plan without Discrimination, and Without Impairing CHI's Religious Beliefs.**

BCBSIL may argue on reply that, under ERISA, it must administer the literal terms of the plan put in place by CHI, even if the benefit design results in discriminatory administration under Section 1557.  The Court should reject any such claim.

Under ERISA, a TPA is never allowed the "discretion" to disobey federal law in favor of the terms of a specific plan.  When the literal terms of the plan would require discriminatory administration by a contracting TPA, the TPA must follow the law, and not the plan terms.  *See UNUM Life Ins. v. Ward*, 526 U.S. 358, 376-77 (1999); *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 861 (7th Cir. 1997) (the relevant law enters into the plan and modifies non-conforming terms).

When the CHI Plan added the Transgender Health Exclusion, BCBSIL, as the TPA with fiduciary duties to the enrollees like C.P., was faced with the following choices: (1) BCBSIL could have met the discriminatory demands of CHI, its customer, to avoid payment for transgender health services, **and**, at the same time, administered the plan in a non-discriminatory manner (i.e., without the illegal Exclusion) by absorbing the cost

PLAINTIFFS' OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS – 23
[Case No. 3:20-cv-06145-RJB]

of C.P.'s services that CHI refused to pay for, just as BCBSIL did with C.P.'s first Vantas Implant; (2) BCBSIL could have refused to act as a fiduciary and to administer the CHI plan since CHI sought to impose discriminatory coverage in violation of Section 1557; or (3) BCBSIL could have sought declaratory guidance from the courts under ERISA § 502, 29 U.S.C. §1132(a)(2) before taking on its fiduciary and legal responsibilities to C.P. and others.  *See Wong v. Bacon*, 445 F. Supp. 1177, 1185 (N.D. Cal. 1977).  ***BCBSIL took none of these reasonable steps.***

Instead, knowing full well that it was being asked to administer benefits in a way that conflicted with Section 1557, BCBSIL opted to place the interests of CHI and its own financial interests above the fiduciary and legal interests it owed to Plaintiffs and others. Dkt. No. 1, ¶¶75-77.  This Court should not countenance this discrimination.  Under Section 1557, BCBSIL is a covered entity which may not discriminate in any part of its operations, including when it administers a plan for CHI.  Under Section 1557, "'[a]ll operations' means 'all operations,' after all." *T. S. v. Heart of Cardon, LLC*, 2021 U.S. Dist. LEXIS 49119, at *27 (S.D. Ind. Mar., 16, 2021).  BCBSIL cannot participate in illegal discrimination on behalf of any customer.

## IV.  CONCLUSION

Under the plain language of the ACA and existing U.S. Supreme Court and Ninth Circuit precedent, an exclusion of coverage based upon an enrollee's status as a transgender person is discrimination based upon sex.  BCBSIL's administration of the "*Transgender* Reassignment Surgery" exclusion, which excludes all services "related" to gender reassignment surgery, including C.P.'s puberty blockers and chest surgery for treatment of his gender dysphoria, is such an exclusion.  At the very least, Plaintiffs have plausibly alleged that the Exclusion is illegal under Section 1557.  Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

1    DATED:  March 31, 2021.

2                                    SIRIANNI YOUTZ
                                     SPOONEMORE HAMBURGER PLLC
3

4                                     _/s/ Eleanor Hamburger_
                                     Eleanor Hamburger (WSBA #26478)
5                                    3101 Western Avenue, Suite 350
                                     Seattle, WA 98121
6                                    Tel. (206) 223-0303; Fax (206) 223-0246
                                     Email:  ehamburger@sylaw.com
7

8                                    LAMBDA LEGAL DEFENSE AND
                                     EDUCATION FUND, INC.
9

                                      _/s/ Omar Gonzalez-Pagan_
10                                   Omar Gonzalez-Pagan, _pro hac vice_
                                     120 Wall Street, 19th Floor
11                                   New York, NY 10005
                                     Tel. (212) 809-8585; Fax (212) 809-0055
12                                   Email:  ogonzalez-pagan@lambdalegal.org
13

14                                   Jennifer C. Pizer, _pro hac vice_
                                     4221 Wilshire Boulevard, Suite 280
15                                   Los Angeles, California 90010
                                     Tel. (213) 382-7600; Fax (213) 351-6050
16                                   Email: jpizer@lambdalegal.org
17

18                                   _Attorneys for Plaintiffs_

19

20

21

22

23

24

25

26

PLAINTIFFS' OPPOSITION TO                              SIRIANNI YOUTZ
DEFENDANT'S MOTION TO DISMISS – 25          SPOONEMORE HAMBURGER PLLC
[Case No. 3:20-cv-06145-RJB]                   3101 WESTERN AVENUE, SUITE 350
                                                 SEATTLE, WASHINGTON  98121
                                              TEL. (206) 223-0303   FAX (206) 223-0246