HONORABLE JUDGE ROBERT J. BRYAN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; and PATRICIA PRITCHARD,<br><br>                                        Plaintiff,<br><br>          vs.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>                                        Defendants. | Case No. 3:20-cv-06145-RJB<br><br>**BCBSIL's REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiffs allege that the Exclusion violates the Affordable Care Act (ACA) § 1557, 42 U.S.C. § 18116.  Complaint, ¶¶ 85–91.  But Plaintiffs lack standing to bring a claim to invalidate the Exclusion: even if the Exclusion were not in this Plan, the Plan would not cover surgery for C.P. because he is a minor.

Plaintiffs' claims fail on the merits as well.  Plaintiffs' sole claim is that the Exclusion violates Section 1557 of the ACA, which incorporates Title IX of the Civil Rights Act's prohibition of discrimination on the basis of sex.  This claim fails as a matter of law.  Health and Human Services (HHS) is the agency Congress has directed to interpret the ACA, and HHS's interpretation of Section 1557 is binding on the Court, and dispositive on the question of whether the Exclusion violates the statute.  HHS has unequivocally stated that a categorical exclusion of

gender affirming surgery is not discrimination on the basis of sex prohibited by Section 1557. BCBSIL may also offer plans that contain the Exclusion because it is protected by the RFRA.

## I.   Plaintiffs Lack Standing to Bring this Claim.

Plaintiffs lack standing to bring a claim to invalidate the Exclusion because if the Exclusion were not in this Plan, the Plan would not cover surgery for C.P. because he is a minor.  BCBSIL's Medical Policy requires that to be eligible for gender realignment surgery, the individual must have reached the age of majority and have the "capacity to make a fully informed decision and to consent for treatment."  *See* Complaint ¶ 58; Dkt. 1-7 at 2–3.  "To have standing under Article III, a plaintiff must demonstrate that . . . it is likely, and not merely speculative, that her injury will be redressed by a favorable decision."  *J.T. v. Regence BlueShield*, 291 F.R.D. 601, 609 (W.D. Wash. 2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Here, the injury alleged by Plaintiffs would not be remedied by a decision in their favor because the surgery is not medically necessary for him for independent reasons.  Plaintiffs do not attempt to and cannot distinguish the case directly on point:  *Cruz v. Zucker*, 195 F. Supp. 3d 554, 570 (S.D.N.Y.), *reconsideration on other grounds,* 218 F. Supp. 3d 246 (S.D.N.Y. 2016) (plaintiff lacked standing to challenge a state Medicaid ban on coverage for gender dysphoria for individuals under 18 because the surgery she sought was not medically necessary for her due to the fact that she was a minor).   Therefore, Plaintiffs lack standing and the Court should dismiss the Complaint on this basis alone.

Plaintiffs' only response to this clear lack of standing is to note that the BCBSIL Medical Policy does cover *other* services for adolescents with gender dysphoria: "The following services may be considered medically necessary for the treatment of gender dysphoria for children and adolescents: Hormone therapy (such as puberty-suppressing hormones or masculinizing/feminizing hormones); •Psychological services, including but not limited to psychotherapy, social therapy and family counseling; and/or Chest surgery for FtM [female-to-male] individuals." Dkt. No. 1-7, p. 6 of 25. But Plaintiffs do not seek these covered services here.  Plaintiffs request that the Court

BCBSIL'S REPLY IN SUPPORT OF
MOTION TO DISMISS – 2

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

invalidate the Plan's exclusion for "treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery."   Complaint, ¶5.   Plaintiffs never explain why the fact that the Plan allows C.P. to receiver other services overrides the Plan's age-based restriction on the services for which he is suing.

## II.   BCBSIL's Exclusion Does Not Violate Section 1557's Prohibition of Discrimination on the Basis of Sex.

Congress has charged HHS with interpreting and administering the ACA.   42 U.S.C. § 300gg–92.   And HHS has answered the question at issue here.

### A.   HHS's 2020 Rule Explicitly States that Section 1557 Allows Categorical Exclusions of Gender Reassignment Surgery.

Plaintiffs claim the 2020 Rule is "silent on the legality of categorical exclusions related to gender dysphoria."  Dkt. 20 at 25.  This is false - the 2020 Rule both addresses the issue at length, and explicitly allows this Exclusion.  The 2020 Rule explicitly addresses exclusions related to gender dysphoria:  "There is no statutory authority to require the provision or coverage of [gender transition] procedures under Title IX protections from discrimination on the basis of sex."  85 Fed. Reg. at 37,198 and 37,199; *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs*., 485 F. Supp. 3d 1, 14 (D.D.C. 2020).

The 2016 Rule did prohibit categorical exclusions, but it was overturned by the courts (*Franciscan All., Inc. v. Burwell,* 227 F. Supp. 3d 660, 684-96 (N.D. Tex. 2016)) and also was replaced by HHS with the 2020 Rule.  In the 2020 Rule, HHS emphasized that the 2016 Rule exceeded its statutory authority when it attempted to ban categorical exclusions for gender affirming surgery.  *Whitman-Walker*, 485 F. Supp. 3d at 46 (quoting 85 Fed. Reg. at 37,198; see also id. at 37,199).  "HHS expressly confronted its prior policy regarding prohibitions on categorical coverage exclusions and delivered a sufficiently reasoned explanation for its new position.  In promulgating the 2020 Rule, the agency consulted scientific studies, government reviews, and comments from a host of medical professionals regarding treatment for gender dysphoria."  *Id.*  "The upshot, according to HHS, was that 'the medical community is divided on many issues

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

related to gender identity, including the value of various "gender-affirming" treatments for gender dysphoria (especially for minors).'" *Id.* "That division counseled against a blanket prohibition on categorical coverage exclusions of gender-affirming care. According to the agency, eliminating the prohibition would enable providers and insurers 'to use their best medical judgment' when delivering and covering care, as informed by 'ongoing medical debate and study' regarding gender-affirming treatment." *Id.* (citing 85 Fed. Reg. 37,187).

Far from silent, the 2020 Rule explicitly interprets Section 1557 as allowing categorical exclusions such as the Exclusion.

**B.** **The Court Must Defer to the 2020 Rule Unless the Court Concludes that it is "Arbitrary, Capricious, Or Manifestly Contrary To Statute."**

The 2020 Rule allows categorical exclusions, and it is the governing law. Plaintiffs request that this Court invalidate the 2020 Rule under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984). *See* Dkt. 20 at 25. But *Chevron* actually makes clear that the Court must give deference to the 2020 Rule. To depart from the 2020 Rule, this Court must conclude that the 2020 Rule's allowance of categorical exclusions is clearly contrary to Congress's intent or arbitrary and capricious. In *Chevron*, the Supreme Court held that federal courts are bound by an administrative agency's interpretation of a statute it administers unless the *interpretation* is "arbitrary, capricious, or manifestly contrary to statute." 467 U.S. at 843-44[1]; *Household Credit Servs., Inc. v. Pfennig,* 541 U.S. 232, 239 (2004). (the court must give the agency's rule "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute"). This means that the Court "may not substitute its own construction" for HHS's interpretation of Section 1557 in the 2020 Rule. *Chevron*, 467 U.S. at 844. Courts "should not disturb" an agency

---

[1] *Chevron* involved review of an agency rulemaking proceeding—not private litigation between two private parties filed in federal court. *Chevron*, 467 U.S. at 841. Nonetheless, *Chevron* applies in the private litigation context as well. *See, e.g., Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016) (noting that in private litigation, *Chevron* makes an agency's interpretation the law, subject to deferential review, if the agency's interpretation is accompanied by the formalities of rulemaking or administrative adjudication); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 882 (7th Cir. 2002) (Easterbrook, J., concurring) (same); *Phillips Co. v. Denver & Rio Grande W. R.R. Co.*, 97 F.3d 1375, 1377 (10th Cir. 1996) (applying *Chevron* deference in a suit to quiet title between private parties); Kathryn A. Watts, *Adapting to Administrative Law's Erie Doctrine*, 101 Nw. U. L. Rev. 997, 1055, n.301 (2007).

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

interpretation unless it clearly contradicts Congress' intent. *Id.* at 845 (quoting *United States v. Shimer*, 367 U.S. 374, 383 (1961)). The Court can only overturn the 2020 Rule if the agency never "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C.Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Every court that has addressed this issue has deferred to the 2020 Rule. *Whitman-Walker*, 485 F. Supp. 3d at 46 ("Even assuming that the 2016 Rule's prohibition on categorical coverage exclusions of gender-affirming care was lawful, the Court cannot presently conclude that the agency's decision to remove that prohibition was arbitrary and capricious."); *Religious Sisters of Mercy v. Azar*, No. 3:16-CV-00386, --- F.Supp.3d ---, 2021 WL 191009, at *6 (D.N.D. Jan. 19, 2021) (noting that after *Whitman-Walker* and other cases enjoined parts of the 2020 Rule, the 2020 Rule's "repeal of the insurance coverage mandate for gender-transition services" remains effective); *Hennessy-Waller v. Snyder*, No. CV-20-00335-TUC-SHR, 2021 WL 1192842, at *7 (D. Ariz. Mar. 30, 2021) (denying injunctive relief because plaintiffs were "unlikely to succeed on the merits of their claim" that Arizona's Medicaid program's policy of excluding gender reassignment surgery from coverage violates Section 1557); see also, *Franciscan*, 227 F. Supp. 3d at 687 (holding that the 2016 Rule's "HHS's expanded definition of sex discrimination exceeds the grounds incorporated by Section 1557"). Plaintiffs cannot distinguish these cases.

In order to determine whether *Chevron* deference applies here, the Court must address whether HHS administers Section 1557, whether the statute leaves room for HHS interpretation, and whether HHS's interpretation is arbitrary and capricious or contrary to Section 1557. There is no dispute here that Congress has charged HHS with administering the ACA. Under *Chevron*, the Court then analyzes whether the particular statute speaks directly on the issue. *Chevron*, 467 U.S. at 841. Here the answer is no. *Franciscan*, 227 F. Supp. 3d at 686 ("'Section 1557's definition of sex discrimination is ambiguous because it fails to explicitly address transgender

individuals and the Rule simply fills the statutory gap, implementing Section 1557.'") (quoting HHS's position in defense of the 2016 Rule).

Because the statute does not speak directly to this issue, HHS has authority to interpret Section 1557's prohibition of discrimination on the basis of sex.  *Chevron*, 467 U.S. at 843-44.  Where, as here, either the language of the statute is ambiguous or Congress's intent is not explicitly clear, "there is an express delegation of authority to the agency to elucidate a specific provision of the statute."  *Id.; see also Whitman-Walker*, 485 F. Supp. 3d at 46 (deferring to the 2020 Rule's change of the 2016 Rule's ban on categorical exclusions).

Therefore, the sole issue before this Court is whether the 2020 Rule is arbitrary and capricious.

## C.    The 2020 Rule is Not Arbitrary and Capricious or Contrary To Congress's Intent.

Plaintiffs make three arguments why the Court should invalidate the 2020 Rule.  First, Plaintiffs claim that *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020), prohibits the Exclusion.  *Bostock* held that Title VII prohibits termination of employees on the basis of transgender status.  Second, Plaintiffs cite district court cases decided before the 2020 Rule.  Third, in a footnote, Plaintiffs contend that "[s]hould the Court conclude that it is necessary to consider the federal agency's interpretation of Section 1557, it should defer to the Rule that was in effect at the time C.P.'s requests for services were denied, and not the 2020 Rule."  Dkt. 20 at 22-26, n. 7.  All of these arguments fail.

### 1.    *Bostock* does not prohibit the Exclusion.

Every case that has addressed the legality of categorical exclusions for gender reassignment surgery since *Bostock* holds that *Bostock* does not bar categorical exclusions for gender transition surgery.  *See Whitman-Walker*, 485 F. Supp. 3d at 46 ("Even assuming that the 2016 Rule's prohibition on categorical coverage exclusions of gender-affirming care was lawful, the Court cannot presently conclude that the agency's decision to remove that prohibition was arbitrary and capricious."); *Religious Sisters of Mercy v. Azar*, 2021 WL 191009, at *6 (noting

BCBSIL'S REPLY IN SUPPORT OF
MOTION TO DISMISS – 6

that after *Whitman-Walker* and other cases enjoined parts of the 2020 Rule, the 2020 Rule's "repeal of the insurance coverage mandate for gender-transition services" remains effective); *Hennessy-Waller*, 2021 WL 1192842, at *7 (denying injunctive relief because plaintiffs were "unlikely to succeed on the merits of their claim" that Arizona's Medicaid program's policy of excluding gender reassignment surgery from coverage violates Section 1557). Plaintiffs cannot distinguish these cases.

*Hennessy-Waller* dealt with this issue directly. The court emphasized that the "Supreme Court expressly limited its holding to Title VII claims involving employers who discriminated against employees because of their gay or transgender status when it wrote: 'An employer who fires an individual merely for being gay or transgender defies the law.'" *Id.* at *8 (quoting *Bostock*, 140 S. Ct. at 1754). "*Bostock* did not involve or purport to deal with a plan exclusion for surgical treatment for gender dysphoria in minors." *Id.* "*Bostock* does not apply to the ACA and . . . Plaintiffs have not clearly shown the surgical treatment they seek is safe and effective for adolescents. Accordingly, the merits of Plaintiffs' Equal Protection and § 1557 claims are doubtful." *Id.* at *9.

The *Whitman-Walker* court also upheld the 2020 Rule after *Bostock*. *Whitman-Walker*, 485 F. Supp. 3d at 46. The court considered *Bostock* in depth and enjoined parts of the 2020 Rule based on *Bostock*. *See id.* at 15, 37, 40-41. Yet the court concluded that with respect to "categorical coverage exclusions of gender-affirming care," "the Court cannot presently conclude that the agency's decision to remove that prohibition was arbitrary and capricious." *Id.* at 46.

**2.      Cases decided before the 2020 Rule do not support invalidating it.**

Plaintiffs urge this Court to follow decisions that pre-date the 2020 Rule. Dkt. 20 at 20 (citing *Kadel v. Folwell*, 446 F. Supp. 3d 1, 14 (M.D.N.C. 2020); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 996-97 (W.D. Wis. 2018); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 951 (W.D. Wis. 2018); and *Cruz v. Zucker,* 195 F. Supp. 3d 554, 581 (S.D.N.Y. 2016)).

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

This Court must defer to HHS's interpretation of the 2020 Rule under *Chevron* regardless of prior cases. *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). The prior cases preceded the 2020 Rule, and therefore did not review the 2020 Rule. The Court must reject Plaintiffs' authorities to the extent they are contrary to the 2020 Rule.

### 3. Contrary to Plaintiffs' assertion in a footnote, the 2020 Rule applies.

Plaintiffs cite no authority for their third argument that "[s]hould the Court conclude that it is necessary to consider the federal agency's interpretation of Section 1557, it should defer to the Rule that was in effect at the time C.P.'s requests for services were denied, and not the 2020 Rule." There is no authority whatsoever for the claim that the Court should apply an outdated and overturned regulation in this or any context. Regardless, this claim is factually wrong. The 2016 Rule was not effective when BCBSIL denied Plaintiffs' claim. The 2016 Rule had already been invalidated by the courts. In 2016, the *Franciscan* court ordered: "Defendants are hereby ENJOINED from enforcing the [2016] Rule's prohibition against discrimination on the basis of gender identity." *Franciscan*, 227 F. Supp. 3d at 695- 96 (caps original). This preliminary injunction remained in force until October 15, 2019, when the Court vacated the entire 2016 Rule, explicitly based on its reasoning and conclusion in 2016 that the 2016 Rule violated the ACA and RFRA. *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 941, 944, 947 (N.D. Tex. 2019).

For the foregoing reasons, the Exclusion does not violate the ACA's prohibition of discrimination on the basis of sex.

## III. The RFRA Also Allows BCBSIL to Sell and Administer Plans that Contain the Exclusion.

Plaintiffs cannot avoid the fact that courts have held that categorical exclusions for gender dysphoria are legal under the RFRA. *Religious Sisters of Mercy v. Azar*, WL 191009, at *3; *Whitman-Walker*, 485 F. Supp. 3d at 46 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)); *Franciscan*, 227 F. Supp. 3d at 686.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Plaintiffs try to convince the Court to ignore this clear authority with three arguments:  that a defendant may not raise RFRA in a dispute between private parties, but only against the government; that BCBSIL is a secular business and therefore cannot raise the RFRA; and finally claiming that that the importance of Plaintiffs' objective to "eradicate discrimination in health care" means that the Court should simply ignore RFRA.  All of these arguments fail.

A.      The RFRA Applies in Litigation Between Private Plaintiffs.

Plaintiff is wrong in their assertion that BCBSIL cannot rely on the RFRA because this case involves private parties.  There is no authority for this assertion at all.  Nor would it make any logical sense. Both the 2016 Rule and the 2020 Rule state that Section 1557 incorporates the  RFRA as an exception to Section 1557:

> The 2016 Rule excepted applications that "would violate applicable Federal statutory protections for religious freedom and conscience." 81 Fed. Reg. at 31,466 (formerly codified at 45 C.F.R. § 92.2(c)). More specifically, HHS explained that the RFRA "is the proper means to evaluate any religious concerns about the application of Section 1557 requirements." *Id.* at 31,380.  HHS went on to note that it would evaluate "individualized and fact specific" RFRA claims "on a case-by-case basis." *Id.*

*Religious Sisters of Mercy v. Azar*, WL 191009, at *3.  The 2020 Rule is the same.  "The 2020 Rule . . . explicitly acknowledges that Section 1557 is subject to RFRA's protections of religious conscience from government-imposed burdens, see 45 C.F.R. § 92.6(b) — protections the Supreme Court has confirmed are 'very broad.'"  *Whitman-Walker*, 485 F. Supp. 3d at 46 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014)).  Plaintiffs appear to be making the argument, with no authority, that BCBSIL is somehow barred from raising authority directly incorporated into the very statute and Rule at issue.  HHS has consistently interpreted Section 1557 as incorporating RFRA as an exception that must be applied in every case where a Defendant claims its protection. Indeed, HHS interpreted Section 1557 as including a RFRA exception in response to a directive from the Supreme Court.  *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020) ("our decisions all but instructed the Departments to consider RFRA going forward"); *see also Hankins v. Lyght*, 441 F.3d 96, 103–04 (2d Cir. 2006) (holding that the

defendant could raise RFRA as a defense in employment litigation between private parties where the EEOC could bring an action to enforce the same statute that the private plaintiff seeks to enforce); *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411 (6th Cir. 2010) (same).

### B.    BCBSIL Can Rely on the RFRA to Defend Its Right to Sell Plans Containing the Exclusion.

BCBSIL can rely on the RFRA to justify its ability to sell plans containing the exclusions. Plaintiffs Complaint and briefing allege that the Exclusion is religious-based.  Dkt. 20 at 11-12, 13-14, 28-29; Complaint ¶ 60 (citing Dkt. 1-8, App. H); *see also Religious Sisters of Mercy,* 2021 WL 191009, at *21-23; *Franciscan Alliance*, 227 F. Supp. 3d at 692.  There is no case law holding that a RFRA argument may be asserted only by the religious individual or entity whose religious freedom is at issue.  Plaintiffs cite no law to support this argument.  To the contrary: the courts uniformly hold that "vendors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function."  *Epona v. Cty. of Ventura*, 876 F.3d 1214, 1219 (9th Cir. 2017); 13A Wright & Miller, Fed. Prac. & Proc. Juris. § 3531.9.3 (3d ed.) ("Vendors are routinely accorded standing to assert the constitutional rights of customers and prospective customers.").  The Supreme Court explicitly rejected Plaintiffs' argument in *Hobby Lobby*.  There, the entity required to comply with the contraceptive mandate was Hobby Lobby, Inc., a for-profit corporation that sells craft supplies and is not a religious institution.  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707 (2014).  Yet the Court held that Hobby Lobby, Inc. had standing to raise the  RFRA. *Id.*  There is no authority to support the claim that BCBSIL cannot raise the RFRA here.

### C.    The Court Cannot Disregard the RFRA Exception to Section 1557.

Plaintiffs argue that even if Section 1557 is subject to a RFRA exception (as both the 2016 Rule and the 2020 Rule establish), the Court should disregard RFRA because "there is no way to eradicate discrimination in health care but to prohibit all discrimination in health care."  Dkt 20 at 28. Therefore, Plaintiffs argue, invalidation of the Exclusion "is the least restrictive means of furthering

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

that compelling governmental interest." *Id.* at 29.  Plaintiffs rely on the Supreme Court's recognition that generally businesses may not use religious objections to "deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law.'" Dkt 20 at 28 (quoting *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1727 (2018)).    Plaintiffs also argue that here is "'a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA.'" (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 421 (2006)).

These arguments do not justify the Court diverging from the clear authority.    Indeed, both *Masterpiece Cakeshop* and *Gonzales* upheld the religious objections at issue.  *Gonzales*, 546 U.S. 418; *Masterpiece Cakeshop*, 138 S. Ct. 1719.  But more to the point, neither of these cases involved whether the Court should enforce the RFRA exception to Section 1557 long recognized by HHS at the Supreme Court's direction.  In the context of applying the Section 1557, HHS and the Supreme Court have already balanced the interest that Plaintiffs seek to vindicate here against religious interest protected by the RFRA and as a result established the RFRA exception to Section 1557 set forth in the 2016 Rule and the 2020 Rule.  *Little Sisters*, 140 S. Ct. at 2388–89.  This Court must defer to HHS's determination that RFRA is an exception to Section 1557's requirements and apply RFRA.

The Exclusion does not violate Section 1557 because the statute itself, as consistently interpreted by HHS and the Supreme Court, provides that the RFRA limits Section 1557's requirements.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

DATED this 16th day of April, 2021.

KILPATRICK TOWNSEND & STOCKTON LLP

By_____/s/ Gwendolyn C. Payton_____
        Gwendolyn C. Payton, WSBA No. 26752
        gpayton@kilpatricktownsend.com
        John R. Neeleman No. 19752
        jneeleman@kilpatricktownsend.com
        1420 Fifth Ave., Suite 3700

1

2

Seattle, WA 98101
Telephone: (206) 626-7714
Facsimile: (206) 623-6793

3

4

*Counsel for Defendant Health Care Service Corporation, a Mutual Legal Reserve Company, doing business in Illinois as Blue Cross and Blue Shield of Illinois*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1

2

**CERTIFICATE OF SERVICE**

I certify that on the date indicated below I caused a copy of the foregoing document, BCBSIL's REPLY IN SUPPORT OF MOTION TO DISMISS to be filed with the Clerk of the Court via the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys of record:

Eleanor Hamburger
SIRIANNI YOUTZ SPOONEMORE HAMBURGER
3101 WESTERN AVENUE STE 350
SEATTLE, WA 98121
206-223-0303
Fax: 206-223-0246
Email: ehamburger@sylaw.com

Jennifer C Pizer
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC
4221 WILSHIRE BLVD., STE 280
LOS ANGELES, CA 90010
213-382-7600
Email: jpizer@lambdalegal.org

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. (NY)
120 WALL STREET
19TH FLOOR
NEW YORK, NY 10005
212-809-8585
Email: ogonzalez-pagan@lambdalegal.org

I affirm under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct to the best of my knowledge.

DATED this 16th day of April, 2021.

**Kilpatrick, Townsend & Stockton LLP**

By: */s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA #26752
gpayton@kilpatricktownsend.com

*Counsel for Defendant Health Care Service Corporation,
a Mutual Legal Reserve Company, doing business in
Illinois as Blue Cross and Blue Shield of Illinois*

CERTIFICATE OF SERVICE – 13

SYSTEM.OBJECT[]
76547013.2