UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C.P., by and through his parents, Patricia Pritchard and Nolle Pritchard; and PATRICIA PRITCHARD,<br><br>      Plaintiffs,<br><br>  v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>      Defendant. | CASE NO. 3:20-cv-06145-RJB<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on Defendant Blue Cross Blue Shield of Illinois' Motion to Dismiss (Dkt. 17). The Court has considered the pleadings filed in support of and in opposition to the motion and the file herein. Both parties request oral argument, but the Court finds that it is not necessary to fairly decide the motion.

The fundamental issue in this motion is whether a plaintiff who alleges that he was denied insurance coverage for medical treatment because he is transgender states a claim for sex discrimination under Section 1557 of the Affordable Care Act ("ACA"). The Court finds that he does.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 1

# I. FACTS AND PROCEDURAL HISTORY

A. **FACTS**

1. Background

Plaintiffs are C.P., a fifteen-year-old boy, and his mother, Patricia Pritchard. Dkt. 1. C.P. is a transgender male, which means that he has a male gender identity even though the sex assigned to him at birth was female. *Id.* C.P. has been living as a male since 2015, and his birth certificate, legal name, social security information, and passport all reflect his male identity. *Id.*

Patricia Pritchard receives health care coverage through her work under the Catholic Health Initiatives Medical Plan ("the Plan"), and C.P. is enrolled in that plan as her dependent. *Id.* The Plan sponsor is Catholic Health Initiatives. *Id.* Defendant, Blue Cross Blue Shield of Illinois ("BCBS"), is the claims administrator. *Id.*

C.P. has gender dysphoria. *Id.* Gender dysphoria is a feeling of clinically significant stress and discomfort that can result from being transgender, or, more specifically, from having an incongruence between one's gender identity and the sex assigned to that person at birth. *Id.* at 5. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5") recognizes gender dysphoria as a medical condition that can be extremely serious, resulting in anxiety, depression, or even death. Dkt. 1 at 6.

2. The Insurance Plan:

The fundamental dispute in this matter is over an exclusion in the Plan ("the Exclusion"), which states:

> ***Transgender Reassignment Surgery***
> <u>Not Covered</u>:
> Benefits shall not be provided for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery.

Dkt. 1-1 at 61.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 2

Two provisions of BCBS's Medical Policies are also relevant.[1] First, a provision that defines when gender reassignment surgery is "Medically Necessary":

> Gender reassignment surgery – also known as transsexual surgery or sex reassignment surgery – and related services **may be considered medically necessary when meeting the criteria for gender dysphoria listed below.** Otherwise, gender reassignment surgery and related services **will be considered not medically necessary**.
> Criteria for Coverage of Gender Reassignment Surgery and Related Services:
> The individual being considered for surgery and related services must meet **ALL** the following criteria. The individual **must have**:
> - Reached the age if majority; AND
> - The capacity to make a fully informed decision and to consent for treatment; **AND (ALERT** – For <u>Gender Reassignment Surgery and Related Services for Children and Adolescents</u> within this coverage, **proceed down** through this coverage section to the area following **NOTE 4.)** …

Dkt. 1-7 at 2–3 ("Age Exclusion").

Second, "NOTE 4," which reads:

> Gender Reassignment Surgery and Related Services for Children and Adolescents: The following services **may be considered medically necessary** for the treatment of gender dysphoria for children and adolescents:
> - Hormone therapy (such as, puberty-suppressing hormones or masculinizing/feminizing hormones);
> - Psychological services, including but not limited to psychotherapy, social therapy, and family counseling; and/or
> - Chest surgery for FtM individuals.

*Id.* at 6.

Plaintiffs were denied coverage for treatment of C.P.'s gender dysphoria. Dkt. 1. In 2016, C.P.'s doctor determined C.P. needed a Vantas implant. Dkt. 1 at 9. A Vantas implant is a surgically implanted device that delivers hormones to delay the onset of puberty. *Id.* BCBS initially approved coverage for this Vantas implant, but later claimed the coverage approval was in error and subsequently covered only part of the implant and related treatment. *Id.* at 10.

---

[1] It is not clear whether the Medical Policies are binding terms of the Plan, but the Court will assume for purposes of this motion that they are.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 3

In 2019, C.P.'s doctors concluded that a second Vantas implant, a mastectomy, and chest reconstruction surgery were medically necessary to treat his gender dysphoria. *Id.* at 11. BCBS denied coverage for these procedures and related treatment. *Id.* BCBS has since covered the cost of some medications related to C.P.'s second Vantas implant, but not medications or treatment related to his chest surgery. *Id.* at 12.

### 3. The Affordable Care Act

Plaintiffs allege that the Exclusion violates Section 1557 of the ACA, 42 U.S.C. § 18116(a). Section 1557, which is the nondiscrimination provision of the ACA, reads:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Acts of 1964 (42 U.S.C. 2000d *et seq.*), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*), the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), or [the Rehabilitation Act] section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

Essentially, Section 1557 incorporates long-standing anti-discrimination laws, like Title IX of the Education Amendments, 20 U.S.C. 1681 *et seq.*, and Title VI of the Civil Rights Acts, 42 U.S.C. 2000d *et seq*, and applies them to healthcare.

### B. PENDING MOTION

Plaintiffs' sole claim is that categorically excluding medically necessary care "for, or leading to, gender reassignment surgery" is sex discrimination and violates Section 1557. Dkt. 1.

In the pending motion, BCBS moves to dismiss for three reasons: (1) because Plaintiffs lack Constitutional standing; (2) because the Exclusion is not sex-based discrimination according

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 4

to federal regulations and case law; and (3) because the Religious Freedom and Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.*, permits the Exclusion.

The Court will discuss each argument in order.

## C. STANDARD FOR MOTION TO DISMISS

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

## II. DISCUSSION

### A. STANDING

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). To do so, a plaintiff must establish three familiar and "irreducible" requirements: (1) injury-in-fact, (2) causation, and (3)

redressability. *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 833 (9th Cir. 2020) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)).

BCBS argues that Plaintiffs lack standing because they fail to demonstrate a redressable injury. Dkt. 17. To be redressable, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal citation omitted).

According to BCBS, Plaintiffs do not have a redressable injury because even if the Exclusion were not in the Plan, they would not qualify for the coverage they seek because C.P. is a minor, and the Plan excludes coverage for gender reassignment surgery and related costs for minors. Dkt. 22 at 2. Plaintiffs seek coverage for a Vantas implant, mastectomy, chest reconstruction surgery and ongoing related treatments. Dkt. 1 at 14

Defendant's argument is unpersuasive. Although the Age Exclusion excludes coverage for "gender reassignment surgery" and related treatment for minors, it does not define what it excludes in specific terms. Dkt. 1-7. However, it incorporates NOTE 4, which is specific and states that it "may" cover "hormone therapy" and "[female to male] chest surgery" for children and adolescents.

For BCBS's argument to succeed, a Vantas implant, mastectomy, and chest reconstruction surgery must be considered excluded "gender reassignment surgery." The inclusion of NOTE 4 designates that hormone therapy and chest surgery are not categorically excluded. Hormone therapy likely includes a Vantas implant and/or its related medications, which deliver hormones, and chest surgery likely includes a mastectomy and chest reconstruction surgery. *See* Dkt. 1-7 at 10–11. Absent the Exclusion, BCBS's Medical Policies,

specifically NOTE 4, likely entitle Plaintiffs to at least some of the coverage they seek because BCBS would have to pay for these treatments if Plaintiffs prevail.

Plaintiffs, therefore, demonstrate a redressable injury that is traceable to the Exclusion, and they have standing to bring their claim.

## B. SEX DISCRIMINATION UNDER SECTION 1557

Section 1557 incorporates Title IX, among other antidiscrimination statutes, to prohibit discrimination based on sex in healthcare. 42 U.S.C. § 18116(a); *see Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020) ("Section 1557 is an affirmative obligation not to discriminate in the provision of health care…").

Though the Supreme Court has not yet decided whether discrimination against a person for being transgender violates Title IX, it recently held in *Bostock v. Clayton Cnty.* that "[a]n employer who fires an individual merely for being gay or transgender violates Title VII," which prohibits sex discrimination in employment. 140 S. Ct. 1731, 1734 (2020). It would be logically inconsistent with *Bostock* to find that Title IX permits discrimination for being transgender. *See generally id.* at 1741 ("It is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.")

Accordingly, a plaintiff states a viable claim for sex discrimination under Title IX, and by extension Section 1557, by plausibly alleging: (1) the defendant is a healthcare program that receives federal financial assistance; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of healthcare services; and (3) the latter occurred on the basis of sex. *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020); *Kadel*, 446 F. Supp. 3d at 12–13. Only the second and third prongs are at issue here.

BCBS argues that Plaintiffs cannot possibly prove discrimination because rules promulgated by the Department of Health and Human Services ("HHS") and case law demonstrate that categorical exclusions of treatment for gender dysphoria are not discrimination. This argument fails.

A claim of discrimination in violation of Section 1557 does not depend on an HHS rule. *See e.g.*, *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 957 (D. Minn. 2018). Instead, "the Court's conclusion that Section 1557 prohibits discrimination based on gender identity relies solely on the plain, unambiguous language of the statute." *Id.*; *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1105 (S.D. Cal. 2017) ("the ACA claim and the Court's decision under the ACA do not depend on the enforcement or constitutionality of the HHS's regulation.").

Furthermore, case law cited by BCBS does not, as BCBS claims, find that exclusions like the one at issue here are not discrimination based on sex. Those cases considered challenges to HHS rules under the Administrative Procedures Act and made findings based on administrative law standards, like whether a rule was "arbitrary and capricious." *See e.g.*, *Whitman-Walker Clinic, Inc. v. U.S. Dept. of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 46 (D.D.C. 2020) ("Mindful of the 'narrow' scope of arbitrary-and-capricious review," the court found plaintiffs failed to justify a preliminary injunction requiring HHS rules ban categorical coverage exclusions related to gender transition); *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660 (N.D. Texas 2016).

Without these defenses, the following allegations remain: (1) BCBS is a healthcare provider that receives federal financial assistance; (2) Plaintiffs were denied healthcare coverage and discriminated against; and (3) the latter occurred because of sex. Plaintiffs provide enough

ORDER DENYING DEFENDANT'S MOTION TO DISMISS - 8

factual support to make these allegations plausible, and therefore, properly state a claim of sex discrimination under Section 1557.

### C. RFRA DOES NOT BAR PLAINTIFFS' CLAIM

Finally, BCBS argues Plaintiffs' claim fails because the Exclusion would be permitted under RFRA even if it is discriminatory.

RFRA states, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the Government "demonstrates that application of the burden to the person – (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000bb-1(a), (b). It continues, "[a] person whose religious exercise has been burdened in violation of this section may assert that violation <u>as a claim or defense</u> in a judicial proceeding and obtain appropriate relief <u>against a government</u>." 42 U.S.C. § 2000bb-1(c) (emphasis added).

RFRA provides relief against the government, but the government is not a party to this action. *See Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 736 ("Based on RFRA's plain language [and] its legislative history . . . RFRA is not applicable in cases where the government is not a party.")*; compare Burwell v. Hobby Lobby*, 573 U.S. 682 (2014) (challenge by employers to HHS rules requiring insurance coverage for birth control despite religious objection by employer). Furthermore, even assuming BCBS could use RFRA as a defense, this defense would not resolve Plaintiffs' claim at the motion to dismiss stage because it includes questions of fact. For example, whether BCBS is a "person whose religious exercise has been burdened."

RFRA, therefore, does not bar Plaintiffs' claim.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant's Motion to Dismiss (Dkt. 17) **IS DENIED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 4th day of May, 2021.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge