THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C. P., by and through his parents, Patricia
Pritchard and Nolle Pritchard; and
PATRICIA PRITCHARD,

Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

Defendant.

No. 3:20-cv-06145-RJB

**AMENDED COMPLAINT**

**(CLASS ACTION)**

## I.   INTRODUCTION

1.      The Affordable Care Act ("ACA") prohibits discrimination on the basis of sex in health care.  This includes the administration, application, and enforcement of any exclusions of gender affirming care by health insurance companies and claims administrators that receive federal financial assistance and participate in health care insurance marketplaces established under the ACA.

2.      As a health insurance company and claims administrator, Blue Cross Blue Shield of Illinois ("BCBSIL") participates in the health care insurance marketplaces and administers dozens of employer-provided benefit plans across the United States.  In doing so, and notwithstanding its legal obligation to not discriminate on the basis of sex pursuant to Section 1557 of the ACA, BCBSIL administers and enforces plan exclusions

AMENDED COMPLAINT – 1
[Case No. 3:20-cv-06145-RJB]

of gender affirming care that deprive transgender people of essential, and sometimes lifesaving, health care.  These exclusions, like the one applied to Plaintiffs, facially, and categorically, exclude coverage for gender affirming health care that transgender people may require, including but not limited to counseling, hormone replacement therapy, and surgical care.

3.     Plaintiffs are a fifteen-year-old transgender boy (C.P.) and his mother (Patricia Pritchard) who are being discriminated against on the basis of sex because Plaintiff C.P. is transgender.

4.     As part of the compensation for her employment, Plaintiff Patricia Pritchard receives health care coverage through the Catholic Health Initiatives Medical Plan ("Plan"), which is administered by BCBSIL. Plaintiff C.P. is enrolled in such Plan as a dependent of Ms. Pritchard.

5.     BCBSIL administers the Plan according to its terms and in a manner that deprives transgender enrollees of coverage for medically necessary gender affirming care, *i.e.* medically necessary treatment of gender dysphoria.

6.     Specifically, at the time BCBSIL denied coverage for C.P.'s treatment, the terms of the Plan stated:

> ### Transgender Reassignment Surgery
>
> Not Covered:
>
> Benefits shall not be provided for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery.

*App. A*, p. 61 (emphasis in original) (hereinafter referred to as the "Exclusion").

7.     The sweeping exclusion contained within the Plan, and those likely contained within other plans administered by BCBSIL, denies coverage for gender-affirming health care, including surgical care, and other health care provided in relation

AMENDED COMPLAINT – 2
[Case No. 3:20-cv-06145-RJB]

to a person's transgender status and/or gender transition, if BCBSIL determines that the care is provided "for or leading to gender reassignment surgery."

8.    Such exclusions contravene the well-established medical consensus that gender affirming health care can be medically necessary and even life-saving. Other Plan enrollees who are not transgender do not face a categorical exclusion barring coverage for health care that is medically necessary for them based on their sex and receive coverage for the same care that is denied to transgender enrollees.

9.    Plaintiffs have been denied coverage for medically necessary gender affirming health care because C.P. is transgender, based on the Exclusion of gender-affirming health care in the Plan. Plaintiffs have been forced to incur financial hardship without the financial protection afforded by coverage through the Plan. Plaintiffs have also suffered emotional distress, stigmatization, humiliation, and a loss of dignity because of the Plan's targeted discrimination against transgender enrollees, which wrongly deems their health care needs as unworthy of equal coverage.

10.    This targeted discrimination against transgender people, which BCBSIL administers and enforces, violates the ACA's Section 1557.

11.    Plaintiffs bring this lawsuit on behalf of themselves and a proposed class of similarly situated individuals for declaratory and injunctive relief preventing BCBSIL's administration, application, and enforcement of any exclusions, such as the Plan's Exclusion, that deny coverage for gender affirming health care, including counseling, hormone replacement therapy, surgical care, and any other health care provided in relation to a person's transgender status and/or gender transition.  Plaintiffs bring this lawsuit to obtain a judgment to remedy their injuries and that of the proposed class and to have the administration of such exclusions declared unlawful, thereby

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303    FAX (206) 223-0246

preventing their enforcement by BCBSIL.  Plaintiffs also seek damages for their own individual injuries resulting from BCBSIL's discriminatory administration of the Plan.

## II.  PARTIES

12.     ***Plaintiff C.P.*** Plaintiff C.P. is a fifteen-year-old transgender boy who is enrolled in the Plan, a health plan administered by BCBSIL. C.P. brings suit by and through his next friends and parents, Patricia Pritchard and Nolle Pritchard.

13.     ***Plaintiff Patricia Pritchard.*** Plaintiff Patricia Pritchard is the mother of C.P.  She is employed at St. Michael Medical Center in Bremerton, Washington, which is part of the Catholic Health Initiatives Franciscan Health System ("CHI"), now known as CommonSpirit Health. As part of her employment, Ms. Pritchard receives health coverage through the Plan, as administered by BCBSIL. C.P. receives health coverage through the Plan as a dependent of Ms. Pritchard. Ms. Pritchard and C.P. live in Bremerton, Washington.

14.     ***Blue Cross Blue Shield of Illinois.*** Defendant Blue Cross Blue Shield of Illinois (BCBSIL) is a health insurance company and claims administrator.  BCBSIL is a recipient of federal financial assistance and participates in health care insurance marketplaces established under the ACA. BCBSIL is the claims administrator of the Plan's schedule of benefits in which Plaintiff C.P. is enrolled as a dependent of Ms. Pritchard. BCBSIL is a division of Health Care Service Corporation, a mutual legal reserve company headquartered in Chicago Illinois. Defendant BCBSIL is not a religious organization.

## III.  JURISDICTION AND VENUE

15.     This action arises under Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

AMENDED COMPLAINT – 4
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

16.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

17.     Declaratory relief is authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by 28 U.S.C. §§ 2201 and 2202.

18.     Venue is proper under 28 U.S.C. § 1391(b)(2), because, *inter alia*, a substantial part of the events giving rise to the claim occurred in Kitsap County.

19.     The Court has personal jurisdiction over Defendant BCBSIL because by agreeing to administer the Plan, which covers residents of the State of Washington, BCBSIL has knowingly and deliberately engaged in significant activities within the State of Washington and has created continuing obligations between itself and residents of the this forum.

## IV.  FACTUAL BACKGROUND

### *Gender Dysphoria and Its Treatment*

20.     Every individual's sex is multifaceted, and comprised of a number of characteristics, including but not limited to chromosomal makeup, hormones, internal and external reproductive organs, secondary sex characteristics, and most importantly, gender identity.

21.     Gender identity is a person's internal sense of their sex. It is an essential element of human identity that everyone possesses, and a well-established concept in medicine. Gender identity is innate, immutable, and has biological underpinnings.

22.     For everyone, gender identity is the most important determinant of a person's sex and a fundamental component of human identity.

AMENDED COMPLAINT – 5
[Case No. 3:20-cv-06145-RJB]

23.     A person's sex is generally assigned at birth based solely on a visual assessment of external genitalia at the time of birth. External genitalia are only one of several sex-related characteristics and are not always indicative of a person's sex.

24.     For most people, these sex-related characteristics are all aligned, and the visual assessment performed at birth serves as an accurate proxy for that person's gender.

25.     Where a person's gender identity does not match that person's sex assigned at birth, however, gender identity is the critical determinant of that person's sex.

26.     The ability to live in a manner consistent with one's gender identity is vital to the health and wellbeing of transgender people.

27.     For transgender people, an incongruence between their gender identity and sex assigned at birth can result in a feeling of clinically significant stress and discomfort known as gender dysphoria.

28.     Gender dysphoria is a serious medical condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5"); the World Health Organization's International Classification of Diseases, which is the diagnostic and coding compendia for medical professionals; and by other leading medical and mental health professional groups, including the American Medical Association ("AMA") and the American Psychological Association ("APA"). The criteria for diagnosing gender dysphoria are set forth in the DSM-5 (302.85).

29.     In addition to clinically significant distress, untreated gender dysphoria can result in severe anxiety, depression, or even suicidality.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

30.     Untreated gender dysphoria often intensifies with time. The longer an individual goes without or is denied adequate treatment for gender dysphoria, the greater the risk of severe harms to the individual's health.

31.     Gender dysphoria can be treated in accordance with internationally recognized Standards of Care formulated by the World Professional Association for Transgender Health ("WPATH"). WPATH is an international, multidisciplinary, professional association whose mission is to promote evidence-based health care protocols for transgender people. WPATH publishes Standards of Care that are based on the best available science and expert professional consensus, and which are widely accepted as best practices for treating gender dysphoria.

32.     Under the WPATH Standards of Care, medically necessary treatments may include, among other things, "[h]ormone therapy" and "[s]urgery to change primary and/or secondary sex characteristics (e.g., breasts/chest, external and/or internal genitalia, facial features, body contouring)."

33.     The Standards of Care are recognized as authoritative by national medical and behavioral health organizations such as the AMA and APA, which have both called for an end to exclusions of gender-affirming care from health insurance and health benefit plans.

34.     The individualized steps that many transgender people take to live in a manner consistent with their gender, rather than the sex they were assigned at birth, are known as transitioning.

35.     Transitioning is particular to the individual but typically includes social, legal, and medical transition.

36.     Social transition entails a transgender individual living in accordance with their gender identity in all aspects of life. For example, social transition can include

AMENDED COMPLAINT – 7
[Case No. 3:20-cv-06145-RJB]

wearing attire, following grooming practices, and using pronouns consistent with that person's gender identity. The steps a transgender person can take as part of their social transition help align their gender identity with all aspects of everyday life.

37.     Legal transition involves steps to formally align a transgender individual's legal identity with their gender identity, such as legally changing one's name and updating the name and gender marker on their driver's license, birth certificate, and other forms of identification.

38.     Medical transition, a critical part of transitioning for many transgender people, includes gender-affirming care that bring the sex-specific characteristics of a transgender person's body into alignment with their gender. Gender-affirming care can involve counseling to obtain a diagnosis of gender dysphoria, hormone replacement therapy, surgical care, or other medically necessary treatments for gender dysphoria.

39.     Hormone replacement therapy involves taking hormones for the purpose of bringing one's secondary sex characteristics into typical alignment with one's gender identity. Secondary sex characteristics are bodily features not associated with external and internal reproductive genitalia (primary sex characteristics). Secondary sex characteristics include, for example, hair growth patterns, body fat distribution, and muscle mass development. Hormone replacement therapy can have significant masculinizing or feminizing effects and can assist in bringing a transgender individual's secondary sex characteristics into alignment with their true sex, as determined by their gender identity, and therefore is medically necessary care for transgender people who need it to treat their gender dysphoria.

40.     Gender-affirming surgical care might be sought by a transgender person to better align primary or secondary sex characteristics with their gender identity. Surgical care can include, but is not limited to, hysterectomies, gonadectomies,

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

mammoplasties, mastectomies, orchiectomies, vaginoplasties, and phalloplasties. These treatments are for the purpose of treating gender dysphoria.

41.     These various components associated with transition—social, legal, and medical transition—do not change an individual's sex, as that is already established by gender identity, but instead bring the individual's appearance, legal identity, and sex-related characteristics into greater alignment with the individual's gender identity and lived experience.

42.     The consequences of untreated, or inadequately treated, gender dysphoria are dire. Symptoms of untreated gender dysphoria include intense emotional suffering, anxiety, depression, suicidality, and other attendant mental health issues. Untreated gender dysphoria is associated with higher levels of stigmatization, discrimination, and victimization, contributing to negative self-image and the inability to function effectively in daily life. When transgender people are provided with access to appropriate and individualized gender-affirming care in connection with treatment of gender dysphoria, these symptoms can be alleviated and even prevented.

43.     The AMA, APA, American Psychiatric Association, Endocrine Society, American College of Obstetricians and Gynecologists, American Academy of Family Physicians, and other major medical organizations have recognized that gender-affirming care is medically necessary, safe, and effective treatment for gender dysphoria—and that access to such treatment improves the health and well-being of transgender people. Each of these groups has publicly opposed exclusions of coverage of this treatment by private and public health care administrators and payors, like the Exclusion at issue here.

44.     WPATH has stated that, like hormone replacement therapy and other gender-affirming treatments, the "medical procedures attendant to sex reassignment are

AMENDED COMPLAINT – 9
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

not 'cosmetic' or 'elective' or for the mere convenience of the patient," but instead are "medically necessary for the treatment of the diagnosed condition." Nor are they experimental, because "decades of both clinical research and medical research show that they are essential to achieving well-being for the [transgender] patient."

### BCBSIL's Administration of Health Plans and Exclusions

45.     BCBSIL offers health care plans in the health care exchanges established under the ACA.

46.     BCBSIL also administers health benefits plans for employer groups of various sizes across the United States, including for CHI.

47.     . Upon information and belief, the Plan administered by BCBSIL on behalf of CHI alone has thousands of enrollees and beneficiaries.

48.     Upon information and belief, other health benefit plans administered by BCBSIL may contain exclusions denying coverage for medically necessary gender affirming care, like the one described in paragraph 6 of this Amended Complaint, even though the same treatments are covered for cisgender plan enrollees and beneficiaries.

49.     In 2008, the AMA passed Resolution 122 recognizing gender dysphoria (then known as gender identity disorder) as a "serious medical condition" which, "if left untreated, can result in clinically significant psychological distress, dysfunction, debilitating depression, and for some people without access to appropriate medical care and treatment, suicidality and death." AMERICAN MED. ASS'N, *Resolution 122: Removing Financial Barriers to Care for Transgender Patients* (June 16, 2008). The AMA also opposes categorical exclusions of coverage for treatment of gender dysphoria because "many of these same treatments … are often covered for other medical conditions" and "the denial of these otherwise covered benefits for patients suffering from [gender dysphoria] represents discrimination based solely on a patient's gender identity." *Id.*

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

50.     In the past, public and private health administrators and payors excluded coverage for medically necessary treatment of gender dysphoria on the erroneous assumption that such treatments were cosmetic or experimental. Today, the medical consensus recognizes that exclusions of treatment for gender dysphoria on those grounds have no basis in medical science.

51.     At all relevant times, BCBSIL was and remains a "health program or activity" part of which receives federal financial assistance. 42 U.S.C. § 18116. As a result, BCBSIL was and continues to be a "covered entity" under the Affordable Care Act, Section 1557.

52.     BCBSIL provided assurances to the U.S. Department of Health and Human Services that it complies with the requirements of Section 1557. *See* 45 C.F.R. § 92.5.

53.     BCBSIL also provided written assurances to C.P. and his parents that it would comply with the requirements of Section 1557. *See **App. E,*** p. 3; *see also **Apps. F, K,*** and ***L*** (same).

54.     Despite these assurances, BCBSIL has administered the Plan's Exclusion of all treatment that BCBSIL construes to be "for, or leading to, gender reassignment surgery." BCBSIL continues to do so, to date.

***The Denial of Care to C.P.***

55.     Plaintiff C.P. is a boy who is transgender. That means that he was assigned the sex of female at birth but his gender identity is male.

56.     C.P.'s birth certificate, social security identification, and passport all identify him as male. C.P. has identified and lived as male since 2015.

57.     C.P. has been diagnosed with gender dysphoria.

58.     Although BCBSIL and the Plan have covered some of C.P.'s past treatment for gender dysphoria, including injected testosterone medication, treatment by Kevin

AMENDED COMPLAINT – 11
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

Hatfield, M.D., C.P.'s primary care provider, as well as mental health counseling related to this condition, BCBSIL has denied coverage for some of C.P.'s medically-necessary gender-affirming medical care because it is "for or leading to gender reassignment surgery."

59.     On October 14, 2016, BCBSIL initially approved C.P.'s request for preauthorization for a Vantas implant, which is a treatment to delay the onset of female puberty and was prescribed by Dr. Hatfield as medically-necessary to treat C.P.'s gender dysphoria.

60.     On November 11, 2016, C.P. received the Vantas implant and sometime thereafter, payment for the services related to the implant was made by BCBSIL.

61.     Despite the payment for services, on February 24, 2017, C.P.'s mother was told by a BCBSIL representative that coverage for the Vantas implant would be denied. *App. B*.

62.     On April 21, 2017, C.P.'s mother received a letter from BCBSIL which indicated that coverage was denied because "treatment for transgender services were [sic] allowed incorrectly under the medical plan." *App. C*.

63.     On May 25, 2017, C.P.'s parents appealed the BCBSIL denial. *App. D*.

64.     On October 19, 2017, C.P.'s parents received a letter from BCBSIL indicating that the appeal had been received on June 2, 2017, and that a decision would be made within 15 calendar days, or June 17, 2017, a date that had long since passed. *App. E*.

65.     No formal response from BCBSIL was received by C.P.'s parents until April 26, 2018, eleven months after the appeal was submitted. *App. F*. That letter denied coverage of the service because BCBSIL took the position that it was a "service related to gender-reassignment" and was therefore excluded under the Plan. However, BCBSIL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

indicated that it would not "clawback" the payments already made to C.P.'s providers related to the Vantas implant.

66.     In 2017, the Plan did not include an exclusion of coverage for "gender-reassignment" treatment or treatment for gender dysphoria.

67.     Starting January 1, 2018, the Plan added an exclusion for gender-affirming treatment. *See App. A*.

68.     BCBSIL administers and enforces the Plan Exclusion, denying coverage of medical care, treatment, and procedures when used to treat gender dysphoria even when such care, treatments, and procedures are medically necessary. BCBSIL applies the Exclusion even though it covers the same or similar procedures for other enrollees in the Plan.

69.     BCBSIL applies and enforces the Exclusion even though BCBSIL has determined that it is illegal for BCBSIL to apply the same or similar Exclusion in its own insured health plans. *See, e.g., App. G*.

70.     In 2018, C.P. was prescribed testosterone cream to treat his gender dysphoria.

71.     After going through a lengthy appeals process, an attorney representing the Plan (*but not BCBSIL*) wrote to C.P.'s attorneys and indicated that the Plan's Exclusion was limited to only "gender reassignment surgery." *App. H*. Specifically, he represented that "[I]n 2019, the only 'transgender health service' specifically excluded under the Plan is gender reassignment surgery."

72.     In July 2019, C.P. and his parents met with his treating physician, Dr. Hatfield, and his therapist, Sharon Booker, regarding C.P.'s need for a second Vantas implant and gender-affirming top surgery (specifically, chest reconstruction).

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

73.    C.P.'s medical and mental health providers concluded that both procedures were medically necessary to treat his gender dysphoria. ***Apps. I, J.***

74.    Requests for pre-authorization for both procedures were submitted to BCBSIL, and both were denied. ***Apps. K, L.***

75.    C.P. proceeded to have the procedure for the second Vantas implant on November 6, 2019.

76.    C.P. received chest reconstruction surgery on December 19, 2019.

77.    On December 2, 2019, C.P. and his parents appealed the BCBSIL denial. ***App. M***.

78.    On December 23, 2019, BCBSIL issued a denial of the appeal, but claimed that "our prior response dated April 26, 2018 completed the internal appeal process that is available to you" even though the 2019 appeal filed by C.P.'s parents was for two different procedures and the relevant plan language had changed since the 2017 denial and appeal. *See **App. N**.*

79.    After BCBSIL denied the appeal, it appears to have covered some of the cost of the medications related to the second Vantas implant, but not other related costs. *See **App. O**.* BCBSIL also continued to deny coverage of nearly all treatment related to C.P.'s mastectomy and chest reconstruction.

80.    BCBSIL has never claimed that C.P.'s treatment for his gender dysphoria is not medically necessary or is "experimental and investigational."

81.    BCBSIL agreed to administer the Exclusion in the Plan for CHI, even though BCBSIL knew that Plan enrollees with gender dysphoria needed medical treatment for their condition. It did so despite the non-discrimination assurances BCBSIL provided to the federal government and to the Plan's enrollees.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

82.     Based on information and belief, BCBSIL administered the Exclusion despite its own legal analysis that the Exclusion violates the Affordable Care Act's Section 1557.

83.     BCBSIL has administered the Exclusion to deny coverage of medically necessary treatment for C.P., because the requested treatment would treat his gender dysphoria.

84.     As a result of BCBSIL's deliberate discriminatory actions, C.P. has not received coverage of medically necessary treatment for his gender dysphoria and his parents have incurred over $10,000 in out-of-pocket expenses.

85.     C.P. and his parents anticipate that they will incur additional expenses related to his medically necessary treatment for gender dysphoria, if BCBSIL continues to administer and enforce the Plan's Exclusion.

86.     BCBSIL's administration of the Exclusion denies transgender enrollees with gender dysphoria the benefits and health coverage available to other insureds. It is discrimination on the basis of sex, which includes discrimination on the basis of sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, and gender transition.

87.     Plaintiff C.P. and his parents have appealed BCBSIL's denial of coverage for C.P.'s medically necessary treatment, but his appeals have been denied. While any further administrative appeals would be futile, no such appeal is required before a claim may be brought under §1557.

88.     Because of BCBSIL's administration and enforcement of the Exclusion, Plaintiffs have suffered emotional distress, humiliation, degradation, embarrassment, emotional pain and anguish, violation of their dignity, loss of enjoyment of life, and other compensatory damages, in an amount to be established at trial.

AMENDED COMPLAINT – 15
[Case No. 3:20-cv-06145-RJB]

## V.  CLASS ALLEGATIONS

89.     Plaintiffs, on behalf of themselves and all similarly situated individuals, bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

90.     ***Class Definitions.***  Plaintiffs assert their claims against BCBSIL on behalf of the following class.

91.     The proposed Class is defined as:  All individuals who have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. §1167(1)) administered by BCBSIL that contains a categorical exclusion denying or limiting coverage for gender affirming health care, like the "Transgender Reassignment Surgery" Exclusion contained in the CHI Plan, at any time on or after November 23, 2014; and who were, are, or will be denied pre-authorization or coverage of otherwise covered services due to BCBSIL's administration of such an exclusion.

92.     ***Size of Class.***  The proposed class is expected to be so numerous and geographically dispersed that joinder of all members is impracticable.

93.     ***Class Representative C.P.***  Named Plaintiff C.P. is a member of the proposed class.  C.P. is a beneficiary in a self-funded group health plan administered by BCBSIL that contains a categorical exclusion denying coverage for gender affirming health care, namely, the "Transgender Reassignment Surgery" Exclusion.  C.P. has been prescribed otherwise covered services under the group health plan which have been denied by BCBSIL under the "Transgender Reassignment Surgery" Exclusion.  C.P.'s claims are typical of the claims of other members of the proposed class and through his mother, he will fairly and adequately represent the interests of the class.

94.     ***Common Questions of Law and Fact***.  This action requires a determination of whether BCBSIL's administration of the Transgender Reassignment Surgery

AMENDED COMPLAINT – 16
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

Exclusion and other similar exclusions denying coverage for gender affirming health care in the ERISA self-funded plans that it administers, violates Section 1557 of the Affordable Care Act. Adjudication of this issue will in turn determine whether BCBSIL must reprocess all such denied claims and be enjoined from administering such exclusions now and in the future.

95.    *Separate suits would create risk of varying conduct requirements*.  The prosecution of separate actions by proposed class members against BCBSIL would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.  Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(1).

96.    *BCBSIL has acted on grounds generally applicable to the relevant class.* By administering and applying policies and exclusions that result in the denial of coverage of gender affirming care, BCBSIL has acted on grounds generally applicable to the relevant class, rendering declaratory relief appropriate respecting the entirety of the class for the particular claim.  Certification is therefore proper under Federal Rule of Civil Procedure 23(b)(2).

97.    *Venue.*  This action can be most efficiently prosecuted as a class action in the Western District of Washington, where Defendants do business and where C.P. resides.  The case is properly assigned to the Western District of Washington in Tacoma, because the claim arose in Kitsap County Washington, where Plaintiff resides.

98.    *Class Counsel.*  C.P. and Ms. Pritchard have retained experienced and competent class counsel.  Plaintiffs are represented by Sirianni Youtz Spoonemore Hamburger PLLC, a Seattle-based law firm with significant experience representing individuals who have been denied pension, health or disability benefits under plans governed by both state law and ERISA, as well as in class actions.  Plaintiffs are also

AMENDED COMPLAINT – 17
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

represented by Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"), the nation's oldest and largest legal organization dedicated to protecting the rights of lesbian, gay, bisexual, and transgender ("LGBT") people and everyone living with HIV. Lambda Legal has extensive federal court experience litigating on behalf of LGBT people, including regarding transgender people's access to nondiscriminatory health care, and has served as class counsel and putative class counsel in a number of LGBT-related cases.

**VI.  CLAIM FOR RELIEF:**
**VIOLATION OF SECTION 1557 OF THE AFFORDABLE CARE ACT,**
**42 U.S.C. §18116**

99.     Plaintiffs re-allege and incorporate each of the allegations in the paragraphs above, as though fully set forth herein.

100.    Plaintiffs state this cause of action on behalf of themselves and members of the proposed class for purposes of seeking declaratory and injunctive relief, and challenge the discriminatory sex-based discrimination arising out of the administration of the exclusions denying coverage for gender affirming care, such as the Exclusion, both facially and as applied to Plaintiffs and the proposed class. Named Plaintiffs also state this cause of action for their individual compensatory damages, including but not limited to out-of-pocket damages, and consequential damages.

101.    Section 1557 of the ACA, 42 U.S.C. § 18116, provides that "an individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 … be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

102.   Defendant BCBSIL is a covered "health program or activity" a part of which receives federal financial assistance and is therefore a "covered entity" for purposes of Section 1557.

103.   Discrimination on the basis of sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition is discrimination on the basis of "sex" under Section 1557.

104.   A covered entity, such as BCBSIL, cannot provide or administer health insurance or health benefit coverage which contains a categorical exclusion from coverage for gender-affirming health care, or otherwise impose limitations or restrictions on coverage for specific health services related to gender transition if such limitation or restriction results in discrimination against a transgender individual.

105.   Because BCBSIL is a covered entity under Section 1557 of the ACA, Plaintiffs and members of the proposed class have a right under Section 1557 to receive health benefits administered by BCBSIL free from discrimination on the basis of sex, sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition.

106.   The categorical exclusions of gender affirming care administered by BCBSIL, on their face and as applied to Plaintiffs and members of the proposed class, violate Section 1557's prohibition against discrimination on the basis of sex in a health program or activity receiving federal financial assistance.

107.   BCBSIL has administered and continues to administer exclusions of gender affirming care, despite the warning from the U.S. Department of Health and Human Services that "[a]n explicit, categorical (or automatic) exclusion or limitation of coverage for all health services related to gender transition is unlawful on its face." *See* 81 Fed. Reg. 31,429. It has done so despite the nondiscrimination assurances it gave to the federal

AMENDED COMPLAINT – 19
[Case No. 3:20-cv-06145-RJB]

government and its enrollees. It has done so despite its own conclusion that to engage in such discrimination in its insured plans is illegal.

108.    By administering the Exclusion as an exclusion of all medically necessary care "for, or leading to, gender reassignment surgery," BCBSIL has drawn a classification that discriminates on the basis of "sex." Specifically, BCBSIL has denied C.P. and other similarly situated individuals coverage for medically necessary services based on their sex, sex characteristics, gender identity, nonconformity with sex stereotypes, transgender status, or gender transition. Other enrollees whose gender identity conforms with their sex assigned at birth are able to receive these services, when medically necessary.

109.    By excluding coverage of all health care related to gender dysphoria or any other care BCBSIL determines is "for, or leading to, gender reassignment surgery," BCBSIL has intentionally discriminated, and continues to discriminate on the basis of sex, against Plaintiffs C.P. and Patricia Pritchard and similarly situated individuals in violation of Section 1557.

110.    BCBSIL has discriminated against Plaintiffs and the members of the proposed class on the basis of sex in violation of Section 1557 and have thereby denied Plaintiffs and the members of the proposed class the full and equal participation in, benefits of, and right to be free from discrimination in a health program or activity.

111.    Plaintiffs and the members of the proposed class have been and continue to be injured by BCBSIL's administration, application, and enforcement of exclusions to deny coverage for gender affirming care, such as the "Transgender Reassignment Surgery" Exclusion, and are entitled to reprocessing of all claims wrongfully denied and all medical expenses never submitted for consideration by the Plan as a result of any such exclusions.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303   FAX (206) 223-0246

112.    As a result of BCBSIL's administration of exclusions of coverage for gender affirming care, Plaintiffs have suffered harm, including but not limited to emotional distress, stigmatization, humiliation, a loss of dignity, and financial harm. By knowingly and intentionally offering and administering health care coverage to Plaintiffs that discriminates on the basis of sex, BCBSIL has intentionally violated the ACA, for which the named Plaintiffs are entitled to compensatory damages, including but not limited to out-of-pocket damages, and consequential damages.

113.    Without reprocessing, declaratory and injunctive relief from BCBSIL's ongoing, discriminatory administration of the exclusions of coverage for gender-affirming care, Plaintiffs and proposed class members have suffered and will continue to suffer irreparable harm.

## VII.  DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request that this Court:

1.    Enter judgment on behalf of Plaintiffs and the members of the proposed classes due to BCBSIL's discrimination on the basis of sex in violation of the Affordable Care Act's Section 1557;

2.    Declare that BCBSIL violated the rights of Plaintiffs and the members of the proposed classes under Section 1557 of the ACA when it administered and enforced the Plan's Exclusion and similar exclusions of all treatment "for, or leading to, gender reassignment surgery," and/or other Plan provisions, policies or practices that wholly exclude or impermissibly limit coverage of gender-affirming health care;

3.    Enjoin BCBSIL, its agents, employees, successors, and all others acting in concert with them, from administering or enforcing health benefit plans that exclude coverage for gender-affirming health care, including applying or enforcing the Plan's Exclusion of services "for, or leading to, gender reassignment surgery," and other similar

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

exclusions in the health benefit plans BCBSIL administers and enforces, in violation of the Affordable Care Act during the class period, now and in the future;

4.      Require BCBSIL, its agents, employees, successors, and all others acting in concert with them, to reprocess and when, medically necessary and meeting the other terms and conditions under the relevant plans, provide coverage (payment) for all denied pre-authorizations and denied claims for coverage during the Class Period that were based solely upon exclusions for gender-affirming care, including but not limited to, the Plan's Exclusion of services "for or leading to gender reassignment surgery;"

5.      Enter judgment in favor of the named Plaintiffs for damages in an amount to be proven at trial that would fully compensate Plaintiffs for their financial harm, emotional distress and suffering, embarrassment, humiliation, pain and anguish, violations of their dignity, and other damages due to BCBSIL's conduct in violation of Section 1557 of the Affordable Care Act;

6.      Award reasonable attorneys' fees, costs, and expenses under 42 U.S.C. §1988 and all other applicable statutes; and

7.      Award such other and further relief as is just and proper.

DATED:  September 10, 2021.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

     /s/ Eleanor Hamburger
Eleanor Hamburger (WSBA #26478)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email:  ehamburger@sylaw.com

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON  98121
TEL. (206) 223-0303   FAX (206) 223-0246

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

_/s/ Omar Gonzalez-Pagan_
Omar Gonzalez-Pagan*
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email:  ogonzalez-pagan@lambdalegal.org

JENNIFER C. PIZER*
4221 Wilshire Boulevard, Suite 280
Los Angeles, California 90010
Tel. (213) 382-7600; Fax (213) 351-6050
Email:  jpizer@lambdalegal.org

*Admitted _pro hac vice._

_Attorneys for Plaintiffs_

AMENDED COMPLAINT – 23
[Case No. 3:20-cv-06145-RJB]