HONORABLE JUDGE ROBERT J. BRYAN

1

2

3

4

5

6

7

8

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10  C. P., by and through his parents,
Patricia Pritchard and Nolle Pritchard;
11  and PATRICIA PRITCHARD,

Case No. 3:20-cv-06145-RJB

12                              Plaintiffs,

**BLUE CROSS BLUE SHIELD OF
ILLINOIS'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION**
13       vs.

14  BLUE CROSS BLUE SHIELD OF
ILLINOIS,

**ORAL ARGUMENT REQUESTED**
15
                              Defendant.

**NOTE ON MOTION CALENDAR:
OCTOBER 28, 2022**
16

17

18

19

20

21

22

23

24

25

26

27

28

BCBSIL'S OPP TO MOT FOR CLASS CERTIFICATION

1

# **TABLE OF CONTENTS**

2

I.     INTRODUCTION ........................................................................................1

3

II.    STATEMENT OF MATERIAL FACTS ....................................................1

4

      A.     The Parties. ......................................................................................1

5

      B.     After Litigating C.P.'s Individual Claims for Relief for a Year,
Plaintiffs Amended the Complaint to Assert Class Claims and Then

6

              Broadened Their Class Definition in Their Motion. ........................2

7

      C.     Background on ERISA Self-Funded Plans. .....................................2

8

      D.     The ERISA Self-Funded Plans BCBSIL Administers Vary
Dramatically. ...................................................................................3

9

10

             1.     The exclusion language in the plans that BCBSIL administers can
and has been customized. ....................................................3

11

             2.     Some employers with exclusions also offer plans without an
exclusion. ............................................................................3

12

13

             3.     When health care costs rise, consumers are adversely affected. ................3

14

             4.     Only some plans with exclusions have actually denied claims based
on the exclusion. .................................................................3

15

      E.     Reasonable Minds Differ in the Scientific and Medical Community
on the Standard of Care for Transgender-Related Services. ...................4

16

      F.     C.P.'s Individual Claims History. ...................................................4

17

18

             1.     BCBSIL paid some of named plaintiff C.P.'s claims for
transgender-related services but denied claims for gender

19

                 reassignment surgery. ..........................................................5

20

              2.     Plaintiff C.P. received no psychiatric analysis prior to surgery. ................5

21

III.    ARGUMENT ..............................................................................................6

22

      A.     Class Certification Standard. ...........................................................6

23

      B.     Plaintiffs' New Class Definition Is Broader, Prejudices BCBSIL,
and Should Be Stricken. ..................................................................6

24

      C.     Plaintiffs Cannot Show the Putative Class Satisfies the
Commonality Requirement of Rule 23(a). ......................................8

25

26

             1.     The putative class lacks commonality because the exclusion
language, choices available to employees, and religious beliefs of

27

                 the employers vary widely among plans. ...........................9

28

BCBSIL'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

a. The exclusion language varies among plans. .............................9

b. For some employers, employees can choose whether they want to purchase transgender coverage or not..................10

c. Some plans have never denied a transgender claim. ................10

2. The Court must determine whether each class member is entitled to relief based on each class plaintiff's plan language and individual circumstances. ...........................................................................11

a. Plaintiffs' equitable claims require an individualized inquiry................................................................................11

b. Plaintiffs' claims also require an individualized inquiry into medical necessity..................................................12

3. The proposed class lacks commonality because plans have differing defenses, including that some exclusions are protected by RFRA............14

4. The cases Plaintiffs cite to support commonality do not apply here.........15

5. Indemnification is not a common legal question that applies to the class as a whole and is not relevant to Plaintiffs' claims. .........................15

D. The Named Plaintiffs' Claims are Not Typical of Other Proposed Class Members and Do Not Adequately Represent the Class..............................16

E. Certification of Plaintiffs' Class Is Improper Under 23(b)(1) and 23(b)(2)...........................................................................................................17

1. Plaintiffs cannot satisfy Rule 23(b)(1)(A)............................................18

2. Plaintiffs cannot meet their burden to certify the class under Rule 23(b)(1)(B). ........................................................................................18

3. The cases Plaintiffs rely on for certification under Rule 23(b)(1) do not apply. ..............................................................................................19

4. The Court cannot issue injunctive relief under Rule 23(b)(2) against BCBSIL that materially affects non-parties' interests. .................20

5. The relief Plaintiffs seek does not apply to the class as a whole under Rule 23(b)(2). ..............................................................................20

F. Plaintiffs' Class Claims are Limited by the Applicable Statute of Limitations..........................................................................................................22

G. Plaintiffs' Numerosity Expert Proffered an Unreliable Opinion that Cannot be Extrapolated on a Class-wide Basis. .........................................24

CONCLUSION .........................................................................................................24

CERTIFICATE OF SERVICE.........................................................................................26

BCBSIL'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Cases**

4

5

*Alexopulos By & Through Alexopulos v. S.F. Unified Sch. Dist.*,
817 F.2d 551 (9th Cir. 1987)..................................................................................23

6

*Alvarado v. Wal-Mart Assocs.*,
No. 2:20-CV-01926-AB, 2021 WL 6104234 (C.D. Cal. Nov. 3, 2021) ....................7

7

8

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...........................................................................................18

9

*B.K. by next friend Tinsley v. Snyder*,
922 F.3d 957 (9th Cir. 2019).............................................................................8, 10

10

11

*Burwell v. Hobby Lobby Stores Inc.*,
573 U.S. 682 (2014) ...........................................................................................14

12

*California Expanded Metal Prod. Co. v. Klein*,
No. C18-0659JLR, 2020 WL 9182723 (W.D. Wash. Oct. 19, 2020) ....................20

13

14

*Corns v. Laborers Int'l Union of N. Am.*,
No. 09-CV-4403 YGR, 2014 WL 1319363 (N.D. Cal. Mar. 31, 2014)..................23

15

*Day v. Humana Insurance Co.*,
335 F.R.D. 181 (N.D. Ill. 2020) .....................................................................13, 14

16

17

*Des Roches v. Cal. Physicians' Serv.*,
320 F.R.D. 486 (N.D. Cal. 2017) .........................................................................19

18

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022)................................................................11, 12, 13, 17

19

20

*Douglas v. Bank of Am.*,
No. C20-0193JLR, 2020 WL 6799010 (W.D. Wash. Nov. 19, 2020)................7, 15

21

*Escalante v. Cal. Physicians' Serv.*,
309 F.R.D. 612 (C.D. Cal. 2015) .........................................................................19

22

23

*Est. of Felts v. Genworth Life Ins. Co.*,
250 F.R.D. 512 (W.D. Wash. 2008).....................................................................19

24

*Fain v. Crouch*,
No. 3:20-0740, 2022 WL 3051014 (S.D. W. Va. Aug. 2, 2022) ......................15, 17

25

26

*Fosmire v. Progressive Max Insurance Co.*,
277 F.R.D. 625 (W.D. Wash. 2011)................................................................15, 21

27

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) .........................................................................16

28

BCBSIL'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

*In re Optical Disk Drive Antitrust Litig.,*
    303 F.R.D. 311 (N.D. Cal. 2014) ..................................................................16, 17

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,*
    208 F.R.D. 625 (W.D. Wash. 2002) ..........................................................................19

*Jammeh v. HNN Assocs.,*
    No. C19-0620JLR, 2020 WL 5407864 (W.D. Wash. Sept. 9, 2020)..........................7

*Johnson v. Dep'ts of Army & Air Force,*
    465 F. App'x 644 (9th Cir. 2012)...............................................................................23

*K.M. v. Regence Blueshield,*
    No. C13-1214 RAJ, 2014 WL 801204 (W.D. Wash. Feb. 27, 2014) .........................15

*Mazza v. Am. Honda Motor Co.,*
    666 F.3d 581 (9th Cir. 2012).......................................................................................7

*McClelland v. Deluxe Fin. Servs.,*
    431 F. App'x 718 (10th Cir. 2011)........................................................................23, 24

*Med. Soc'y of N.Y. v. UnitedHealth Grp.,*
    332 F.R.D. 138 (S.D.N.Y 2019)................................................................................19

*O'Connor v. Boeing North Am., Inc.,*
    180 F.R.D. 359 (C.D. Cal. 1997) ..............................................................................18

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022).........................................................................................7

*Palacios v. MedStar Health*, Inc.,
    298 F. Supp. 3d 87 (D.D.C. 2018) .............................................................................23

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014).....................................................................................16

*Perry v. Beneficial Finance Co. of N.Y.,*
    81 F.R.D. 490 (W.D.N.Y. 1979) ...............................................................................23

*Renton v. Kaiser Foundation Health Plan,*
    No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) ................14, 22

*Rivera v. Invitation Homes Inc.,*
    No. 18-cv-03158-JSW, 2022 WL 504161 (N.D. Cal. Feb. 18, 2022).....................7, 8

*Schubert v. Anthem Blue Cross,*
    No. CV-14-06221-MWF-JC, 2015 WL 13916131 (C.D. Cal. Oct. 2, 2015).......13, 14

*Smith v. Highland Hosp. of Rochester,*
    No. 17-CV-6781-CJS, 2018 WL 4748187 (W.D.N.Y. Oct. 2, 2018) ........................22

*Solis v. Our Lady of the Lake Ascension Cmty. Hosp.,*
    No. 18-56-SDD-RLB, 2020 WL 2754917 (M.D. La. May 27, 2020) ........................22

BCBSIL'S OPPOSITION TO PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................................ 11

*Sweet v. Pfizer*,
    232 F.R.D. 360 (C.D. Cal. 2005) .................................................................................... 21

*Takeda v. Nw. Nat. Life Ins. Co.*,
    765 F.2d 815 (9th Cir. 1985) ......................................................................................... 20

*Vega-Ruiz v. Northwell Health*,
    992 F.3d 61 (2d Cir. 2021) ............................................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................................. passim

*Ward v. Our Lady of the Lake Hosp.*,
    No. 18-00454-BAJ-RLB, 2020 WL 414457 (M.D. La. Jan. 24, 2020) ......................... 23

*Wit v. United Behavioral Health*,
    No. 20-17363, 2022 WL 850647 (9th Cir. Mar. 22, 2022) ........................................... 19

*Z.D. ex rel. J.D. v. Group Health Co-op*,
    No. C11-1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012) ............................. 15

**Statutes**

29 U.S.C. § 1167(1) ................................................................................................................. 2

42 U.S.C. § 18116 ................................................................................................................. 22

**Rules**

Civil Rights Act of 1964, Title IX ................................................................................. 22, 23

Civil Rights Act of 1964, Title VI ........................................................................................ 22

Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*
    533 (2016) ...................................................................................................................... 14

Patient Protection & Affordable Care Act § 1557 ........................................................ passim

Rehabilitation Act of 1973, § 504 ........................................................................................ 22

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## I.   INTRODUCTION

The Court should deny Plaintiffs' motion for class certification.  First, Plaintiffs cannot show that issues of fact or law are common to the putative class.  Blue Cross and Blue Shield of Illinois ("BCBSIL") administers 398 ERISA self-funded plans that contain some form of exclusion for transgender-related care, but the plans vary widely in the services excluded.  Some employers offering a plan with an exclusion also offer plans without it, so the employee voluntarily chose a plan containing the exclusion.  Some but not all plans are exempted from Section 1557 by the Religious Freedom Restoration Act ("RFRA").  The Court must adjudicate medical necessity of each claimant to determine entitlement to equitable relief or damages.

Second, the named Plaintiffs' claims are not typical of other proposed class members, and the named Plaintiffs do not adequately represent the class.  The named Plaintiffs' plan contains a unique exclusion for only gender reassignment surgery, and that language is not found in any other plan.  Some of C.P.'s treatments were actually covered, whereas other putative class members' claims were fully excluded.  The named Plaintiffs' plan is also protected by RFRA, which is not typical of the entire proposed class.

Third, there is no benefit to addressing all these disparate employers' plans in one class action.  The plans at issue have different language, different legal defenses, may allow employees to choose whether they want this coverage or not, and for each employee, different medical facts will lead to different entitlement to benefits.  The class is also fatally overbroad because it includes many members who suffered no harm.

Fourth, the putative class's claims are not cohesive.  The Court would be unable to administer the putative class's claims as one single, cohesive group due to different plan language, the fact that some employees chose the exclusion to save money, different legal defenses, and differences among employees' medical conditions, ages, and other factors.

Finally, Plaintiffs' putative class is overbroad also because some of Plaintiffs' class claims are well outside the applicable limitations period for Section 1557.

## II.   STATEMENT OF MATERIAL FACTS

### A.   The Parties.

The named Plaintiffs are C.P., a minor, and his mother, Patricia Pritchard.  Dkt 38 ("Am.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1
2
3
4
5
6

Compl."), ¶ 3.  Plaintiffs are covered under a health plan sponsored by CommonSpirit Health (f/k/a Catholic Health Initiatives) ("CHI" and the "CHI Plan") and governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  *See* Payton Decl., Ex. K.  BCBSIL is the third-party claims administrator.  Am. Compl. ¶ 14.  Under its license agreement, BCBSIL only administers self-funded health plans for businesses whose corporate headquarters are in the State of Illinois.  Payton Decl. ¶ 3.

7
8

**B.    After Litigating C.P.'s Individual Claims for Relief for a Year, Plaintiffs Amended the Complaint to Assert Class Claims and Then Broadened Their Class Definition in Their Motion.**

9
10
11

Plaintiffs filed their initial complaint on November 23, 2020, seeking only individual relief.  Dkt. 1.  A year later, Plaintiffs expanded their complaint to seek class relief on behalf of a proposed class of individuals denied coverage for transgender-related services:

12
13
14
15

> All individuals who have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by BCBSIL that contains a categorical exclusion denying or limiting coverage for gender affirming health care, like the "Transgender Reassignment Surgery" Exclusion contained in the CHI Plan, at any time on or after November 23, 2014; and who were, are, or will be denied pre-authorization or coverage of otherwise covered services due to BCBSIL's administration of such an exclusion.

16
17

Dkt. 38, ¶ 91.  Plaintiffs' motion for class certification contains a new, broader class definition, including all individuals who:

18
19
20

> (1)    Have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by [BCBSIL] during the Class Period and that contains a categorical exclusion of some or all of Gender-Affirming Health Care services; and

21
22

> (2)    have required, require, or will require treatment with excluded Gender-Affirming Health Care Services.

23

**C.    Background on ERISA Self-Funded Plans.**

24
25
26
27
28

Many employers, including CHI, are "self-insured": they directly assume financial responsibility for employees' medical claims, using their own money to pay their employees' health care costs.  Payton Decl., ¶ 4, Ex. A (Decl. of Lawton R. Burns ("Burns Decl.") at ¶ 17).  These self-insured employers hire administrators such as BCBSIL to assemble a network of providers, process claims, and handle provider billing.  *Id.*  Plaintiffs' proposed class definition is limited to ERISA self-insured plans.  Self-insured ERISA plans choose what they will cover or

not.  *Id.* ¶ 18.  The administrator—BCBSIL in this case—does not.

**D.  The ERISA Self-Funded Plans BCBSIL Administers Vary Dramatically.**

    **1.  The exclusion language in the plans that BCBSIL administers can and has been customized.**

BCBSIL administers 398 ERISA self-funded plans with some form of a transgender-related exclusion.  The specific exclusion language varies widely between plans. Payton Decl., Ex. C, Addendum A.  The exclusion in the CHI Plan states that "Benefits shall not be provided for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery."  Am. Compl. ¶ 6.  The CHI Plan is the only plan BCBSIL administers with this language, and this language has changed over time.  Payton Decl., Ex. D-E.

    **2.  Some employers with exclusions also offer plans without an exclusion.**

Some employers offering plans with a transgender-related exclusion also offer other plans without an exclusion.  Ex. C.  In other words, some putative class members chose a plan with an exclusion to suit their individual circumstances.  *Id.*; Burns Decl. ¶ 27.

    **3.  When health care costs rise, consumers are adversely affected.**

When the amount that employers pay for health care goes up, the end consumer – the employee – ultimately feels the impact.  Burns Decl. ¶ 19.  Rising prices impact employers who sponsor health plans, and ultimately the employees who enroll in these plans.  *Id.*  Employer payments for health insurance premiums ultimately come out of what would otherwise have been paid to employees as wages.  *Id.* ¶ 21.  Loss of choice in plan design harms employers and employees, who bear the burden of higher prices several ways.  First, higher health care costs translate into higher premiums.  Burns Decl. ¶ 27.  Second, members' cost share payments increase.  *Id.*  Third, as health care prices rise, some employers will stop offering insurance entirely, which would leave the employee uninsured or required to find coverage on their own in the individual market at a much higher price.  *Id.*  Fourth, those employers who continue to offer insurance will offset the increased cost through lower wages.  *Id.*

    **4.  Only some plans with exclusions have actually denied claims based on the exclusion.**

The putative class in the Amended Complaint is limited to those who "were, are, or will be denied pre-authorization or coverage" due to the administration of an exclusion for

transgender-related care.   Am. Compl. ¶ 91.   Of the ERISA self-funded group health plans BCBSIL administers, only 200 plans have denied any claims based on an exclusion.   *See* Ex. C. For approximately half of the 398 plans BCBSIL administers with some exclusion, there have been no denials of claims due to an exclusion.

**E.     Reasonable Minds Differ in the Scientific and Medical Community on the Standard of Care for Transgender-Related Services.**

There is ongoing debate and study in the medical community regarding transgender-related services.   Payton Decl., ¶ 5, Ex. B (Decl. of Michael K. Laidlaw ("Laidlaw Decl."), ¶ 14). The medical community is divided on many issues related to the appropriate medical care for gender identity and the necessity or value of certain transgender-related services.   *Id.*   Plaintiffs' experts opine that gender dysphoria is an immutable, permanent condition.   *Id.* ¶ 15.   But that is not the consensus in the medical community, and there is significant debate on this.   *Id.*

In particular, there is considerable division in the medical community about appropriate treatment for minors such as C.P.   Most medical professionals agree that treatment altering biological development in children should be used with extreme caution and regarded as a last resort.   *Id.* ¶ 11. Medical professionals remain concerned regarding the quality of medical care received by minors who undergo irreversible transgender-related services.   *Id.* ¶ 16.   One concern is that gender dysphoria treatments have become entangled with advocacy.   *Id.*   In contrast, Plaintiffs' experts each opine that for patients with gender dysphoria, the only acceptable standard of care is the approach endorsed by the World Professional Association for Transgender Health ("WPATH").   *Id.* ¶ 12.[1]

**F.     C.P.'s Individual Claims History.**

CHI (not BCBSIL) designed the CHI Plan and drafted the exclusion.   Payton Decl., Ex. G.   CHI chose the exclusion because "coverage of such procedures was 'determined not to align with the teachings and doctrine of the Catholic Church."   Am. Compl. ¶ 71, App. H at 4.   CHI hired BCBSIL to provide a network of providers, process claims, and handle provider billing.

---

[1] Recently, WPATH further separated itself from the mainstream medical science, issuing new standards that eliminate age minimums.  WPATH's new standards originally included a minimum age for treatments – 14 years old for cross-sex hormones and 15 years old for "top" surgery, *i.e.*, a double mastectomy. C.P. received hormone treatments at age 11 and top surgery at age 14, well below the minimum age for both treatments.  WPATH later issued a "correction" that eliminated the age limits.  *See* Exhibit F. WPATH's conflicting guidance emphasizes the division within the scientific and medical community as to the appropriate standard of care.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

### 1. BCBSIL paid some of named plaintiff C.P.'s claims for transgender-related services but denied claims for gender reassignment surgery.

In 2016, C.P. was diagnosed with gender dysphoria at age 10.  Payton Decl., Ex. H.  The same year, C.P. submitted a preauthorization request to BCBSIL for a Vantas implant to stop puberty.  Am. Compl. ¶ 59.  In 2016, Plaintiffs' plan did not contain language addressing transgender-related services.  Payton Decl., Ex. I.  BCBSIL initially stated the Vantas implant would be covered but later determined the procedure had been authorized in error because transgender-related services were "not covered under the terms of [Plaintiffs'] group health plan through Catholic Health Initiatives."  Ex. J.  Due to its error, BCBSIL itself paid for Plaintiffs' transgender-related claims but made clear that "any future claims for transgender services will not be covered as stated in the plan."  *Id.*  In 2018, CHI revised its plan to state that "Benefits shall not be provided for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery."  *Id.*, Ex. K.

In 2019, C.P. submitted a pre-authorization request for a second Vantas implant and chest reconstruction surgery. Ex. L.  Both procedures were denied based on the CHI Plan exclusion.  *Id.*  The CHI Plan is unusual in that transgender-related services (and only these services) are reviewed by actual CHI employees for a coverage determination as opposed to the administrator.  Ex. E.

### 2. Plaintiff C.P. received no psychiatric analysis prior to surgery.

C.P. received no psychiatric evaluation, and Plaintiffs have produced no evaluation from any psychiatrist concluding that the services for which Plaintiffs seek benefits were medically necessary or that C.P. was a suitable candidate for top surgery.  C.P. was only examined briefly for two hours by Sharon Booker, a mental health counselor.  Payton Decl., Ex. M.  Ms. Booker never spoke with C.P.'s doctors or reviewed any medical records.  *Id.*  Yet C.P.'s treating physician, Dr. Hatfield, falsely told BCBSIL that C.P. had "been in counseling" and was "otherwise free of any comorbid conditions" before Ms. Booker even met with C.P.  Ex. N.

Ms. Booker repeatedly admitted the only reason she met with C.P. was so Plaintiffs could secure a letter to support top surgery.  Exs. O-P.  Ms. Booker has never declined to write such a letter.  Ex. Q.  Ms. Booker has not met with or spoken to C.P. since she wrote the letter.  Ex. M.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1

## III.   ARGUMENT

2

### A.   Class Certification Standard.

3

The class action is "an exception to the usual rule that litigation is conducted by and on

4

behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349

5

(2011) (citation omitted).  To justify a departure from the rule, "a class representative must be

6

part of the class and possess the same interest and suffer the same injury as the class members."

7

*Id.* at 348-49.  Plaintiffs bear the burden of proving each element of Rule 23.  *Id.* at 349.

8

Plaintiffs must satisfy each of the four requirements of Rule 23(a) and at least one requirement of

9

Rule 23(b).  *Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 542 (9th Cir. 2013).

10

Under Rule 23(a), a district court may certify a class only if (1) the class is so numerous

11

that joinder of all members is impracticable; (2) there are questions of law and fact common to

12

the class; (3) the claims or defenses of the representative parties are typical of the claims or

13

defenses of the class; and (4) the representative parties will fairly and adequately protect the

14

interests of the class.

15

Rule 23(b) states that Plaintiffs must demonstrate either: (1) a risk of substantial prejudice

16

from separate actions; (2) "the party opposing the class has acted or refused to act on grounds

17

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief

18

is appropriate respecting the class as a whole;" or (3) there are "questions of law or fact common

19

to class members [that] predominate over any questions affecting only individual members, and

20

that a class action is superior to other available methods for fairly and efficiently adjudicating the

21

controversy." Fed. R. Civ. P. 23(b).  The district court should engage in a "rigorous analysis" to

22

ensure that the prerequisites of Rules 23(a) and (b) have been satisfied. *Dukes*, 564 U.S. at 349.

23

### B.   Plaintiffs' New Class Definition Is Broader, Prejudices BCBSIL, and Should Be Stricken.

24

Plaintiffs' Motion asserts a new class definition that is different from and broader than the

25

definition in the Amended Complaint.  Motion at 4.  The original proposed class was limited to

26

those who "were, are, or will be denied pre-authorization or coverage of otherwise covered

27

services due to BCBSIL's administration of such an exclusion," but the new class is expanded to

28

*all* individuals who "have required, require, or will require treatment" for gender-related care.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

A plaintiff can modify the proposed class only if the proposed modifications are (1) minor, (2) require no additional discovery, and (3) cause no prejudice to defendants. *Jammeh v. HNN Assocs.,* No. C19-0620JLR, 2020 WL 5407864, at *9 (W.D. Wash. Sept. 9, 2020).[2]  The Court "looks at the practical impacts that the new class definition will have on the opposing party and the conduct of the litigation in general." *Douglas v. Bank of Am.,* No. C20-0193JLR, 2020 WL 6799010, at *8 (W.D. Wash. Nov. 19, 2020); *see also Alvarado v. Wal-Mart Assocs.*, No. 2:20-CV-01926-AB, 2021 WL 6104234, at *6 (C.D. Cal. Nov. 3, 2021) (denying expansion of class allegations because it would "drastically broaden" relief); *Rivera v. Invitation Homes Inc.*, No. 18-cv-03158-JSW, 2022 WL 504161, at *3 (N.D. Cal. Feb. 18, 2022) (rejecting a new proposed class because would "significantly alter the scope of the case").

Here, Plaintiffs' modification is material and broadens the scope of the class beyond those who were denied coverage to encompass *all* members who were ever a member in a plan with an exclusion, regardless of whether the member received a denial.  This itself makes the class fatally overbroad.  The Ninth Circuit recently reiterated that "a court must consider whether the possible presence of uninjured class members means that the class definition is fatally overbroad.  When 'a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification.'"  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n. 14 (9th Cir. 2022) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (holding that the class definition in a false advertising action was fatally overbroad where many members knew the advertising was misleading before purchase or were never exposed to the advertisements)).  Absent class members also may therefore lack Article III standing.[3]  Plaintiffs' new proposed class definition will prejudice BCBSIL.  Plaintiffs have drastically expanded the number of plans and employees subject to the putative class without providing sufficient notice either to BCBSIL or to the employers, who designed the plans. *See Alvarado*, 2021 WL 6104234 at 6 ("[T]he Court finds Defendants will be prejudiced by this

---

[2] Plaintiffs' Motion cites to non-binding authority from other jurisdictions that have not taken the same approach as the Western District of Washington. *See Motio*n, at 4-5.

[3] In *Olean*, the court held that name class representatives need not establish Article III standing for absent class members insofar as injunctive relief is sought, but the defendants have filed a petition for writ of certiorari. 31 F.4th 651, 682 n. 32.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

modification because they have not had sufficient notice regarding this theory of liability, and additional discovery would have to be conducted . . . ."); *Rivera*, 2022 WL 504161, at *4 (finding the new proposed class would prejudice the defendant).   Plaintiffs' new class definition encompass twice as many ERISA plans, and with no notice expands the proposed class to the employers without any denials of transgender-related services and who are not on notice their plans may be impacted.   The Court should strike the new proposed class.

## C.   Plaintiffs Cannot Show the Putative Class Satisfies the Commonality Requirement of Rule 23(a).

To meet their burden of proof to show commonality, plaintiff must show that "there are questions of law or fact common to the class."   *Dukes*, 564 U.S. at 349; Fed. R. Civ. Pro. 23(a)(2).   Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."   *Id.*   This does not mean merely that they have all suffered a violation of the same provision of law.   *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019).   Instead, the putative class claims must depend upon a common contention, which "must be of such a nature that it is capable of class-wide resolution—which means that determination of [its] truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke."   *B.K.*, 922 F.3d at 968.

Plaintiffs' Amended Complaint alleges one common question of law or fact: "whether BCBSIL's administration of the Transgender Reassignment Surgery Exclusion and other similar exclusions denying coverage . . . violate[] Section 1557."   Am. Compl. ¶ 94.   In contrast, their Motion claims there are new "common legal questions:" "(1) whether BCBSIL is a 'covered entity' under Section 1557, (2) whether BCBSIL is prohibited from administering discriminatory Exclusions for employer-sponsored plans, and (3) whether BCBSIL's contractual indemnification provisions purporting to protect it from liability resulting from its administration of the Exclusions, is invalid as a matter of federal public policy."   Motion at 16.   For the reasons stated in BCBSIL's Motion for Summary Judgment, Dkt. 87, BCBSIL is not a covered entity under Section 1557 when it acts as a third-party administrator.   As to the second and third questions, there is no commonality amongst the 398 plans BCBSIL administers.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1.   **The putative class lacks commonality because the exclusion language, choices available to employees, and religious beliefs of the employers vary widely among plans.**

a.   **The exclusion language varies among plans.**

Claims alleging Civil Rights Act violations are generally not appropriate for class certification.  *See Dukes*, 564 U.S. at 350.  That is true here because there is no commonality among the proposed class.

First, Plaintiffs seek to adjudicate on a class-wide basis whether transgender-related exclusions appearing in hundreds of different plans designed by various non-parties violate Title IX.  BCBSIL administers a transgender-related exclusion for 398 employers, and within these plans, the specific exclusion language differs drastically.  The exclusion in the named Plaintiffs' CHI Plan, for example, provides that the following services are not covered: "Benefits shall not be provided for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery."  Am. Compl. ¶ 6.  The CHI Plan is the *only* plan BCBSIL administers with this language.  Payton Decl. Exs. D-E.

Some of the plans cover hormone treatments, while others do not:

| Example A | Covering "continuous hormone replacement (not oral not oral – see Prescription Drug Details section) (including laboratory testing to monitor safety)," but only up to a $75,000 per Member Lifetime Maximum. |
|---|---|
| Example B | Excluding "charges for sex transformation surgery, hormones related to the surgery, and any related expenses." |

Ex. C, Addendum A.  Some of the plans cover mental health counseling or psychiatric treatment, while others do not:

| Example C | "Evaluation of candidacy for sex reassignment surgery by a mental health professional is covered under the member's medical benefit, unless the services of a mental health professional are necessary to evaluate and treat a mental health problem, in which case the mental health professional's services are covered under the associate's behavioral health benefit." |
|---|---|
| Example D | Excluding "Gender reassignment Surgery (also referred to as transsexual Surgery, sex reassignment Surgery or intersex Surgery), including related services and supplies. This exclusion includes medications, implants, hormone therapy, surgery, medical or psychiatric treatment." |

*Id.*  Some of the plans cover most transgender-related services but exclude surgery, while others exclude all transgender-related services:

| Example E | "Benefits will be provided for services and supplies related to gender reassignment but excluding surgery." |
|---|---|
| Example F | Excluding all "Transsexual surgery or any treatment of gender identity disorders." |

*Id.*  Some of the plans cover transgender-related services for adults 18 and over but not for minors, while others, such as Example F above, do not:

| Example G | "Benefit is provided to associates only. All of the following criteria must be met: - Associate is at least 18 years old" |
|---|---|
| Example H | "Benefits will be provided for the gender reassignment surgery for persons age 18 and over with a Gender Identity Disorder, undergone a minimum of 12 months of continuous hormonal therapy when recommended by a mental health professional and provided under the supervision of a physician. Benefits for gender reassignment will be limited to a lifetime maximum of $75,000." |

*Id.*  Some of the plans cover transgender-related services to some extent but provide a cap on cost-sharing for those services amongst employees, while others do not.  *Id.*

### b.   For some employers, employees can choose whether they want to purchase transgender coverage or not.

Some employers with exclusions offer their employees the option of choosing plan designs without any transgender-related exclusion.  *Id.*  In other words, some of the putative class members chose a plan with an exclusion over one that did not.  This flexibility allows employers to provide more affordable healthcare options and greater access.  Burns Decl. ¶ 20.  Absent class members who could have purchased coverage for transgender-related services and chose not to cannot be victims of discrimination on the basis of sex.  They have not suffered discrimination on the basis of sex any more than an employee who opted out of the plan altogether.

### c.   Some plans have never denied a transgender claim.

Of the ERISA self-funded group health plans BCBSIL administers, only 200 plans ever actually denied any claim based on an applicable exclusion.  Payton Decl., Ex. C.  For almost half of the 398 plans, there have been no denials of transgender-related claims based on an exclusion.  This is also significant because, prior to Plaintiffs' new modification, the putative class was limited to those who were "denied pre-authorization or coverage" due to the administration of an exclusion.  Am. Compl. ¶ 91.

In sum, the specific exclusion language in each of the 398 plans require distinct analyses. Employers may have offered alternative plans without the exclusion, for a lower premium.  Some plans may never have denied coverage based on any exclusion.  A determination of whether Plaintiffs' CHI Plan exclusion language violates the Section 1557 will not resolve the claim as to the other class members in "one stroke."  *B.K.*, 922 F.3d at 968.  Thus, Plaintiffs' claim is not

capable of class-wide resolution and does not meet the commonality requirement.

> **2.    The Court must determine whether each class member is entitled to relief based on each class plaintiff's plan language and individual circumstances.**

The Court should not certify a class here because the Court would have to determine which specific provision(s) in the varied exclusion apply and then compare that information to each class plaintiff's medical history; the specific diagnosis, if any, of gender dysphoria; whether the member received sufficient mental health counseling; and if the putative class plaintiff is a minor, how the child or adolescent's age affects coverage under the plan.   The Court must examine each of these factors for each class member, and as a result, there is not and could not be commonality among the putative class.

> **a.    Plaintiffs' equitable claims require an individualized inquiry.**

Plaintiffs request class certification for their claims for declaratory and injunctive relief, including a mandatory class-wide injunction, as follows:

> Once certified, the class can obtain class-wide declaratory relief that the administration of the Exclusions by BCBSIL violates the ACA, and an injunction prohibiting BCBSIL from doing so in the future. Plaintiffs will also seek processing by BCBSIL of past claims for gender-affirming care that were administered in a discriminatory manner, or that would have been had the claims been submitted.

Motion at 3; Am. Compl. ¶¶ 11, 100, 113.

Equitable relief, including an injunction, is available only where a legal remedy—damages—cannot provide the relief sought.  The "necessary prerequisite" for a court to award equitable remedies is "the absence of an adequate remedy at law.'"  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020).  Thus, for each putative class member, Plaintiffs must prove they lack an adequate remedy at law—*i.e.*, that damages would not make them whole.

In this case, C.P. or any absent class member would suffer no irreparable harm if the Court did not order BCBSIL and employers to cover the employees' transgender-related claims. In *Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022), for example, the Court affirmed the denial of the named plaintiffs' request for a preliminary injunction because the plaintiffs "sought to compel Defendant to act prior to the entry of a final judgment" rather than seek a damages award that could later be reduced to a judgment.  *Id.* at 106, 111.  The Ninth Circuit reiterated that "[t]he

standard for issuing a mandatory preliminary injunction is high" and explained that "mandatory injunctions are not granted unless extreme or very serious damage will result." *Id.*

The same is true here. Plaintiffs request class certification for their claims for declaratory and injunctive relief, including a mandatory class-wide injunction. Motion at 3. In order to determine whether any claimant satisfies the high standard for a mandatory injunction, the Court must make a finding for each claimant that the transgender-related services sought are "medically necessary for them or safe and effective for correcting or ameliorating their gender dysphoria." *Snyder*, 28 F.4th at 106. The Ninth Circuit established the individualized inquiry required as to each plaintiff, based on individual "facts specific to Doe and the irreversible nature of the surgery." *Id.* at 106, 111. These individualized inquiries would be further complicated because, as Dr. Laidlaw testified, "[t]he medical community is divided on many issues related to the appropriate medical care for gender identity, and the necessity or value of gender affirmative care. This is especially true for minors." *Id.*

### b. Plaintiffs' claims also require an individualized inquiry into medical necessity.

Plaintiffs' damages claims also require individualized inquiry because transgender-related services are not medically necessary for all absent class members. In *Doe v. Snyder*, the Ninth Circuit affirmed the district court's finding that the plaintiffs "had not shown that male chest reconstruction surgeries were medically necessary for them or safe and effective for correcting or ameliorating their gender dysphoria." *Id.* In doing so, the Ninth Circuit emphasized the individualized inquiry required as to each plaintiff, holding that based on individual "facts specific to Doe and the irreversible nature of the surgery," the plaintiffs had failed to show that they were likely to succeed on the merits of their claimed permanent injunction. *Id.* at 106, 111.

The Ninth Circuit expressed concern because the plaintiff "failed to provide a declaration from any psychiatrist or medical doctor who is treating him that attested to the necessity and suitability of the surgery in his particular case." *Id.* at 112. To determine medical necessity for each claimant, the Court would also need to determine whether any minor had provided informed consent. In *Snyder*, the Ninth Circuit also affirmed based in part on concerns about the plaintiff's ability to give informed consent as a minor. *Id.* at 110.

*Snyder* demonstrates that, regardless of the remedy sought, courts cannot decide medical necessity on a class-wide basis.  In *Day v. Humana Insurance Co.*, 335 F.R.D. 181 (N.D. Ill. 2020), the named plaintiff sought coverage for proton beam radiation therapy ("PBRT") treatment.  *Id.* at 184.  The TPA determined that PBRT treatment was not covered under the plan language and denied the claim based on the plaintiff's medical history and individual diagnosis.  *Id.*  The plaintiff then brought ERISA class claims against the TPA, and the TPA moved to dismiss and strike the class allegations.  *Id.*

The court in *Day* concluded that adjudication on a class-wide basis was not possible under Rule 23 because (1) the relevant plan language varied by class member; and (2) each class member had individual medical circumstances that were crucial to determine medical necessity.  *Id.* at 199 ("For example, the analysis would involve consideration of each member's medical background, age, type of cancer, and stage and malignancy of cancer.").  The Court must undertake the same individualized process here: to hold BCBSIL liable under Section 1557, the Court must consider each putative class member's medical background and the services requested and then apply the language of that employee's specific plan to determine whether application of the exclusion violated Section 1557 of the ACA.

In *Schubert v. Anthem Blue Cross,* No. CV-14-06221-MWF-JC, 2015 WL 13916131 (C.D. Cal. Oct. 2, 2015), the court likewise denied class certification because the putative class suffered from a "a litany of individual issues." *Id.* at *8.  In *Schubert*, the named plaintiff sought coverage for alternative disc replacement surgery, and the TPA denied coverage after determining the surgery was an investigational treatment under the plan language.  *Id.* at *1.  Schubert brought ERISA claims against the TPA on behalf of himself and a proposed class of all persons who were denied coverage for the surgery. *Id.* at *5.  The court held that whether the surgery was medically necessary involved "a litany of individual issues," including medical histories, injuries suffered, availability of less-expensive alternative treatments, the number of discs damaged or replaced, the location of each damaged disc, the specific device used to replace the discs, and whether each device was FDA-approved. *See id.* at *8 ("[R]ecovery depends on a myriad of individual questions, such that no single trial can possibly resolve all class claims.").

In *Renton v. Kaiser Foundation Health Plan*, No. C00-5370RJB, 2001 WL 1218773, at

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

*1 (W.D. Wash. Sept. 24, 2001), the court denied class certification for these same individualized reasons. The named plaintiff alleged Kaiser breached its disclosure obligations for medical necessity determinations and sought to certify a class of persons who participated in eight different ERISA self-funded plans administered by Kaiser. *Id.* at *3. The court held that class certification was inappropriate based on the varying plan language at issue – each of the eight plans in *Renton* differed "in terms of its operation, contractual relations with medical groups and hospitals, and in the disclosure materials provided to plan participants." *Id.* Here, BCBSIL similarly administers plans on behalf of employers who have designed varying exclusions and have different defenses. As in *Day*, *Schubert*, and *Renton*, Plaintiffs' class allegations here are riddled with individualized issues and lack commonality.

### 3. The proposed class lacks commonality because plans have differing defenses, including that some exclusions are protected by RFRA.

Before the Court issues an injunction prohibiting BCBSIL from administering exclusions for transgender-related services, it must undertake an individualized inquiry into each plan. For example, some plans, such as the CHI Plan, designed the exclusion based on sincerely-held religious beliefs, so the exclusion is protected by RFRA. *See* Dkt. 87 at 4-7. RFRA also applies to secular entities if their owners design an exclusion for transgender-related services because of their own personal religious beliefs. *See generally Burwell v. Hobby Lobby Stores Inc.*, 573 U.S. 682 (2014); Dkt. 87 at 4-7.

As explained in BCBSIL's Motion for Summary Judgment, RFRA protects CHI's exclusion for transgender surgery. The courts and HHS agree that a TPA does not violate the ACA if it administers a plan exempted from compliance with the ACA by RFRA. *See* Dkt. 87 at 7-12. The existence of a RFRA defense for some but not all of the plans destroys Plaintiffs' ability to certify a class because it would require an individualized inquiry into the religious beliefs of each employer. "[A] class cannot be certified on the premise that [the defendant] will not be entitled to litigate its ... defenses to individual claims." *Dukes*, 564 U.S. at 367; *see also,* Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* 533 (2016) ("The court must determine what impact, if any, the affirmative defenses will have on the mix of common versus individualized issues[.]"). In *Fosmire v. Progressive Max Insurance Co.*, 277 F.R.D. 625 (W.D.

Wash. 2011), for example, the court concluded that "the existence of [a] potential defense to coverage under [the plaintiff's] policy ... threaten[s] to become a preoccupation," thus precluding class certification. *Id.* at 633, 635.

### 4.    The cases Plaintiffs cite to support commonality do not apply here.

Plaintiffs rely on authority that involved *one* uniform exclusion across all plans.   In contrast, here there are a wide variety of exclusions that have been designed by multiple employers, presumably for varied reasons.  In *K.M. v. Regence Blueshield*, No. C13-1214 RAJ, 2014 WL 801204, at *3 (W.D. Wash. Feb. 27, 2014), the plaintiff moved to certify a class of plan beneficiaries who were denied neurodevelopmental therapy coverage based on age.  *Id.* at *3. The purported class consisted of individuals universally impacted by a uniform exclusion.  *Id.* at *2-3, *7.  Likewise, in *Z.D. ex rel. J.D. v. Group Health Co-op*, No. C11-1119RSL, 2012 WL 1977962 (W.D. Wash. June 1, 2012), the plaintiff moved to certify a class of people denied neurodevelopmental therapy coverage due to age.  *Id.* at *1.  Again, the class claims were based on one uniform exclusion.  *Id*. at *12.  The same was true in *Fain v. Crouch*, No. 3:20-0740, 2022 WL 3051014 (S.D. W. Va. Aug. 2, 2022), *appeal filed*, No. 22-1927 (4th Cir. Sept. 6, 2022).  In *Fain*, the plaintiffs sought class action certification based on one blanket exclusion in West Virginia's Medicaid policy.  *Id.* at *4.  The court found that the named plaintiffs' claims were identical to those of the proposed class in part because the single exclusion applied to all Medicaid members in the state.  *Id.*

Here, by comparison, Plaintiffs' proposed class encompasses 398 separate ERISA self-funded plans that contain differing exclusion language, implicate different legal defenses, and include different plan design choices for employees – there is no common legal question across the entire class.

### 5.    Indemnification is not a common legal question that applies to the class as a whole and is not relevant to Plaintiffs' claims.

Plaintiffs, for the first time, assert that BCBSIL's indemnification agreements with some plans are a common question that applies to the class as a whole.  However, Plaintiffs' Amended Complaint makes no mention of indemnification, so this new theory of liability is improper.  *See Douglas*, 2020 WL 6799010 at *8.  Further, "indemnification" is not part of either Plaintiffs'

original or modified proffered class definitions.  Indemnification is irrelevant – BCBSIL is not raising indemnification as a defense in this litigation.  Plaintiffs also fail to demonstrate why BCBSIL's indemnification agreements with different plans present common questions; in fact, the indemnification agreements are not even before the Court, so the Court cannot determine whether they involve common questions.  Plaintiffs' argument that a class should be certified based on purported indemnification is a red herring.

### D.   The Named Plaintiffs' Claims are Not Typical of Other Proposed Class Members and Do Not Adequately Represent the Class.

The Court should refuse to certify the class because C.P.'s claims are not typical of, and Plaintiffs do not adequately represent, the class.  Plaintiffs bear the burden to show that the claims or defenses of the representative parties are typical of the class.  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); Fed. R. Civ. P. 23(a)(3).  Plaintiffs must show that "other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* at 685.  Thus, the court must consider whether the named Plaintiffs' individual circumstances are "markedly different" from "that upon which the claims of other class members will perforce be based." *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 317 (N.D. Cal. 2014).  Rule 23(a)(4) also requires an adequacy determination: that the named Plaintiffs fairly and adequately protect the interests of the class to ensure no conflicts of interest exist between the named plaintiffs and the absent class members. *Id.* at 317.[4]

C.P.'s claims are not typical of the putative class.  First, the exclusion in the CHI plan differs from all other plans that BCBSIL administers.  Payton Decl., Ex. D.  The CHI Plan is the *only* plan with its custom exclusion language, and that exclusion has changed over time.  Exs. D, K.  In addition, CHI created a custom review process in which CHI itself reviews all claims under the exclusion before a coverage decision is made.  Ex. E.  As a result, BCBSIL's application of the exclusion to determine coverage for C.P.'s claim was a unique process that differed from the rest of the putative class. *Parsons*, 754 F.3d at 685.

---

[4] BCBSIL does not contest the adequacy of class counsel separate and apart from the representativeness of the named plaintiffs. *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 490 (N.D. Cal. 2008) ("While counsel in this case are excellent, the test is whether the clients themselves, who ultimately control and drive the litigation, have the requisite typicality under Rule 23.")).

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1    Second, C.P.'s claims are not typical of the class because BCBSIL administers benefits on

2    behalf of CHI consistent with RFRA.  *See* BCBSIL's Motion for Summary Judgment, Dkt. 87, at

3    7-12.  While C.P.'s claims implicate a RFRA defense, many other putative class claims would

4    not.  C.P.'s claims are not typical or representative of the entire proposed class and could create

5    legal conflicts between C.P. and absent class members.

6        Third, C.P. does not adequately represent the proposed class because, unlike other class

7    members, BCBSIL covered some but not all of C.P.'s claims for transgender-related services.

8    Payton Decl., Ex. R.  Thus, C.P.'s claim requires an individualized examination into which of

9    C.P.'s claims were and were not covered, which is considerably different from the other putative

10   class members, who may have received outright denials.  *See In re Optical Disk*, 303 F.R.D. at

11   317.

12       Plaintiffs repeatedly rely on *Fain v. Crouch*, 2022 WL 3051014, but that case is contrary

13   to the 9th Circuit's decision in *Doe v. Snyder*, which controls here.  In *Fain*, the district court

14   failed to address the need to determine medical necessity for any individual plaintiff, but *Snyder*

15   requires an individualized inquiry.  28 F.4th at 106.  In *Snyder*, the Ninth Circuit affirmed the

16   district court's denial of an injunction because the plaintiffs failed to show they would suffer

17   irreparable harm if the court did not compel coverage for transgender surgery.  *Id. Fain* also does

18   not apply because plaintiffs there sought class certification based on one blanket exclusion in

19   West Virginia's Medicaid policy.  2022 WL 3051014, at *4.  Here, in contrast, the exclusion in

20   the CHI Plan was customized and differs from every other putative class plaintiff.

21       This Court's determination as to whether BCBSIL should have covered named plaintiff

22   C.P.'s individual claims for coverage would not answer any questions common to the other

23   members of the class, as required by Rule 23(a)(3).  Because C.P.'s claims are "markedly

24   different" from the rest of the putative class, Plaintiffs' Motion should be denied.[5]

25   **E.    Certification of Plaintiffs' Class Is Improper Under 23(b)(1) and 23(b)(2).**

26       Plaintiffs' class claims fail under Rules 23(b)(1) and (b)(2).  In their Amended Complaint,

27   Plaintiffs alleged a class was appropriate under Rule 23(b)(1)(A), *see* Am. Compl. ¶ 95, but have

28

---

[5] *Fain* is also a claim against a plan, not a TPA.  As explained in BCBSIL's Motion for Summary Judgment, Plaintiffs have no claim against BCBSIL as a TPA because it was not the source of any exclusion that violates Section 1557.  *See* Dkt. 87 at 4-7.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   now abandoned this argument.[6]   Instead, Plaintiffs move for class certification under Rule

2   23(b)(1)(B), which is not a basis for class relief alleged in the Amended Complaint.  For this

3   reason alone, Plaintiffs' motion for class certification should be denied under both subsections of

4   Rule 23(b)(1).

5       ### 1.      Plaintiffs cannot satisfy Rule 23(b)(1)(A).

6       Even if Plaintiffs had properly moved for class certification under Rule 23(b)(1)(A), the

7   class would fail because the "prosecution of separate actions by proposed class members" would

8   not "create a risk of inconsistent or varying adjudications with respect to individual class

9   members that would establish incompatible standards of conduct."  Fed. R. Civ. P. 23(b)(1)(A).

10  Rule 23(b)(1)(A) only covers "cases where the party is obliged by law to treat the members of the

11  class alike (a utility acting toward customers; a government imposing a tax)" or "where the party

12  must treat all alike as a matter of practical necessity (a riparian owner using water as against

13  downriver owners).'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).[7]

14      BCBSIL is not obligated to treat the members of the putative class alike, so there is no

15  risk of inconsistent adjudications.  In fact, it is the opposite – BCBSIL must administer each plan

16  as designed by each of the 398 employers with applicable exclusionary language.  Moreover, the

17  plans provide different choices presented to employees and different legal defenses.    A

18  determination that the language of one plan violated Section 1557 while the language of another

19  plan did not would not be "inconsistent"; indeed, it would be necessary in order to fairly and

20  accurately determine whether each employee's claim should have been covered under the unique

21  language of each individual ERISA self-funded plan.

22      ### 2.      Plaintiffs cannot meet their burden to certify the class under Rule
                     23(b)(1)(B).

23

24  _____

    [6] *See* Mot. at 12 ("Plaintiff C.P. seeks certification of a proposed class under Rules 23(b)(1)(B) and/or (b)(2).")

25  [7] In *O'Connor v. Boeing North Am., Inc.*, 180 F.R.D. 359 (C.D. Cal. 1997), the plaintiffs sought class certification
    under Rule 23(b)(1)(A) on behalf of a putative class of plaintiffs exposed to hazardous substances. *Id.* at 365. The

26  court found the plaintiffs "failed to establish how separate actions would create a risk of 'inconsistent adjudications'"
    because not all class members qualified for "medical monitoring"; instead, "[i]ndividual issues, such as exposure

27  level, family history, and other risk factors, will dictate whether class members will qualify for the medical
    monitoring program Plaintiffs propose." *Id.* at 365, 371, 377.  Because the court had to examine those individual

28  issues for each putative class plaintiff, it found there was no risk of separately adjudicating the putative class claims.
    *Id.* at 377.  Here, likewise, Plaintiffs cannot establish a risk of "incompatible standards of conduct," as BCBSIL's
    conduct depends on the employer-designed exclusions, each putative class member's medical circumstances, and the
    different legal defenses available.

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Plaintiffs failed to cite any authority in support of certification under Rule 23(b)(1)(B), and none exists.  Rule 23(b)(1)(B) typically applies to a non-opt out class where a limited fund or other constraint means one court's adjudication could prejudice other class members.  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 208 F.R.D. 625, 633-34 (W.D. Wash. 2002).  Plaintiffs do not allege any such "limited fund."  In addition, an adjudication of the CHI Plan's exclusionary language will not substantially impair other members of the class's ability to protect their interests due to their varying exclusion language, variety of legal defenses, differences between employers, unique employee medical backgrounds, and specific services requested.  *See Est. of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 525 (W.D. Wash. 2008) ("There is no reason to suspect that adjudication of individual claims against [the defendant] would prejudice other plaintiffs.").  Thus, certification under Rule 23(b)(1)(B) is improper.

### 3.    The cases Plaintiffs rely on for certification under Rule 23(b)(1) do not apply.

Plaintiffs rely on *Wit v. United Behavioral Health* but fail to inform this Court that *Wit* was reversed by the Ninth Circuit.  No. 20-17363, 2022 WL 850647, at *2 (9th Cir. Mar. 22, 2022).  *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 495 (N.D. Cal. 2017), involved allegations that a health insurer uniformly denied mental health and substance use claims based on a medical guideline that applied across all claims and all plans.  Here, Plaintiffs rely not on language from a single plan or guideline but rather from separate plans that have different exclusions, different plan designs, and different legal defenses.  Likewise, *Escalante v. Cal. Physicians' Serv.*, 309 F.R.D. 612, 619 (C.D. Cal. 2015), involved certification of a class based on language found in a single plan document; here, unlike in *Escalante*, the applicable exclusion language and legal defenses vary.  *Med. Soc'y of N.Y. v. UnitedHealth Grp.,* 332 F.R.D. 138, 145 (S.D.N.Y 2019), similarly involved a class based on a health insurer's "blanket policy" to deny claims for surgical facilities without a license.  Here, there is no "blanket" policy.  All of these cases are distinguishable because they each involved a health insurer relying on one single exclusion from a plan or medical policy, rather than an attempt to certify a class based on plans containing different language, different legal defenses, and different employee choices.

This is not a case where one standard of conduct by BCBSIL applies to the class as a whole, as in *Des Roches*, *Escalante*, and *Med. Soc'y of N.Y.*  A court will need to assess the

language of each exclusion to determine whether it violates Section 1557 and each exclusion and defense should be assessed individually outside of a class action. There is no risk of inconsistent adjudications because the exclusions in the ERISA plans BCBSIL administers are themselves not consistent. This is particularly true of the CHI Plan, which has a RFRA defense and excludes only surgery and related procedures.

### 4. The Court cannot issue injunctive relief under Rule 23(b)(2) against BCBSIL that materially affects non-parties' interests.

It is well-established that the Court cannot impose injunctive relief that materially affects non-parties. A court cannot "enter an injunction against a person who has not been made a party to the case before it." *California Expanded Metal Prod. Co. v. Klein*, No. C18-0659JLR, 2020 WL 9182723, at *6 (W.D. Wash. Oct. 19, 2020). Yet Plaintiffs seek injunctive relief prohibiting BCBSIL from administering exclusions that were required by the employers who sponsor the various plans, not by BCBSIL. *See* Dkt. 87 at 4-7.

Plaintiffs' class definition includes only plans that are self-funded. Thus, it is the employers sponsoring these plans, not BCBSIL, who would suffer a financial loss and, for some plans, the impairment of their religious liberty. *See Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 819-20 (9th Cir. 1985) (holding that the employer who sponsored the plan, in addition to the TPA, was a necessary party because, as here, the plan was self-funded and would bear the expense of a required benefit).

Plaintiffs should be prohibited from seeking injunctive relief that would materially affect employers who are non-parties.[8] This is particularly true where the Court does not have personal jurisdiction over many of the plans that would be affected by the injunction. Under its license agreement, BCBSIL only administers plans headquartered in Illinois. *See* Payton Decl. ¶ 3.

### 5. The relief Plaintiffs seek does not apply to the class as a whole under Rule 23(b)(2).

Plaintiffs' class claims also fail under Rule 23(b)(2) because they are divisible. The

---

[8] There are exceptions to this rule, but they do not apply here. First, "those who are legally identified with an enjoined party may be bound as if they themselves were named in the injunction." *Klein*, 2020 WL 918723, at *6. This applies only when (1) "the non-liable person is a successor of the liable person in a relevant respect" and when (2) "a party's litigation of a case is sufficiently controlled by another person that the latter may be said to have had its day in court." *Id.* Second, "those who act in concert with an enjoined party to assist in violating the injunction may also be held in contempt." *Id.* None of these situations apply here. BCBSIL is not a successor in interest of any plan, BCBSIL's litigation of this case is not under the control of any party, and there is no already-enjoined party.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

crucial element of a Rule 23(b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360. Plaintiffs allege that "BCBSIL has acted on grounds generally applicable to the relevant class, rendering declaratory relief appropriate respecting the entirety of the class for the particular claim." Am. Compl. ¶ 96.

Class claims under Rule 23(b)(2) must be "cohesive." *Fosmire*, 277 F.R.D. at 635; *see also Sweet v. Pfizer*, 232 F.R.D. 360, 374 (C.D. Cal. 2005) ("[C]ourts have held that even though Rule 23(b)(2), unlike Rule 23(b)(3), does not specifically contain predominance and superiority requirements, a class under Rule 23(b)(2) must not be overrun with individual issues."). In *Fosmire*, the proposed class included employees for at least 17 different Progressive policies with varying contractual language. *Id.* at 634. The court denied certification under Rule 23(b)(2) because the individual issues in the proposed class "over[ran]" the common issues and would require an individualized examination of the "specific contract language issued by Progressive" in each of those 17 policies. *Id.* at 634, 636.

Here, as in *Fosmire*, Plaintiffs' class claims are not cohesive and are overrun with individualized issues arising from different exclusions, different plan choices, and different defenses. These issues include determining which specific provision(s) in the exclusion apply; comparing that information to each class plaintiff's medical circumstances and each specific diagnosis, if any, of gender dysphoria; determining whether the employee received sufficient mental health counseling; and if the putative class plaintiff is a minor, determining how the child or adolescent's age affects coverage. Moreover, BCBSIL has legal defenses under RFRA for some, but not all, of the claims, depending on the employer who designed each plan. In short, it is simply not the case that "the conduct is such that it can be enjoyed or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360.

Declaratory relief will not and could not apply to "the class as a whole," given that the employers designed their own plans with different language. Some of the plans cover transgender-related services but provide a lifetime maximum for those services. Other plans cover transgender-related services but do not provide coverage for reversals of those services.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Neither of these types of plans constitute a "categorical exclusion[] denying or limiting coverage for gender-affirming health care," as Plaintiffs define their proposed class. As a result, the injunctive and declaratory relief sought would not be applicable to the whole class because this Court would have to individually examine the language in each plan to determine whether it fits within the proposed class definition.

In *Renton*, 2001 WL 1218773, at *1, the court denied class certification under Rule 23(b)(2) for these same reasons. The named plaintiff alleged Kaiser breached its disclosure obligations for medical necessity determinations and sought to certify a class of persons who participated in eight different ERISA self-funded plans administered by Kaiser. *Id.* at *3. The court held that class certification was inappropriate because of "the differences among the various Kaiser entities and their duties of disclosure, the representations and disclosures actually made by the defendants, the class members' individual injuries, and class members' legal standing to bring claims." *Id.* at *8. The court also found that Kaiser had responded to its duty of disclosure "in different, not generally applicable ways." *Id.* Here, Plaintiffs' alleged class members present the same individualized issues, and BCBSIL administers plans on behalf of employers who have designed varying exclusions related to transgender services. Therefore, the Court should deny Plaintiffs' motion for certification under Rule 23(b)(2).

**F.     Plaintiffs' Class Claims are Limited by the Applicable Statute of Limitations.**

Plaintiffs' class claims were added via amended complaint and do not relate back to the filing of the initial complaint. As a result, these claims are barred in part by the applicable statute of limitations for Section 1557 claims in the Ninth Circuit.

Section 1557 of the ACA incorporates the enforcement mechanisms provided for in Title VI, Title IX, Section 504, and the Age Discrimination Act to address ACA discrimination violations. *See* 42 U.S.C. § 18116. The ACA itself does not set out a statute of limitations, so courts incorporate the statute of limitations for Title IX or Section 504 Rehabilitation Act claims. *See Smith v. Highland Hosp. of Rochester*, No. 17-CV-6781-CJS, 2018 WL 4748187, at *3 (W.D.N.Y. Oct. 2, 2018) (applying Title IX statute of limitations to ACA claim for transgender benefits); *Solis v. Our Lady of the Lake Ascension Cmty. Hosp.,* No. 18-56-SDD-RLB, 2020 WL 2754917, at *4 (M.D. La. May 27, 2020) (applying Rehabilitation Act limitations period to

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Section 1557 claim); *Ward v. Our Lady of the Lake Hosp.,* No. 18-00454-BAJ-RLB, 2020 WL 414457, at *2 (M.D. La. Jan. 24, 2020) (same).

To determine the applicable statute of limitations for Title IX claims, courts in the Ninth Circuit look to the statute of limitations governing state law personal injury claims. *See Johnson v. Dep'ts of Army & Air Force*, 465 F. App'x 644, 645 (9th Cir. 2012); *Alexopulos By & Through Alexopulos v. S.F. Unified Sch. Dist.*, 817 F.2d 551, 554 (9th Cir. 1987). The limitations period for personal injury claims in Washington is three years. *See* RCW 4.16.080(2). Thus, any class claims dated more than three years prior to the filing of the class action complaint are barred by the statute of limitations for Section 1557 claims.[9]

Plaintiffs filed their individual, initial complaint on November 23, 2020. Thus, under the three-year limitations period applied in the Ninth Circuit, any claims brought by the named Plaintiffs individually are barred if dated prior to November 23, 2017.

However, the class claims were not added until Plaintiffs filed their amended class action complaint almost a year later, on November 2, 2021. When an individual complaint is later amended to add class claims, those claims do not relate back to the filing of the initial complaint because the defendant did not have sufficient notice at the time the initial complaint was filed that the plaintiff sought relief on a class-wide basis. *See McClelland v. Deluxe Fin. Servs.*, 431 F. App'x 718, 731 (10th Cir. 2011) (amended complaint adding class allegations of discrimination did not relate back to an individual claim based on similar allegations); *Corns v. Laborers Int'l Union of N. Am.*, No. 09-CV-4403 YGR, 2014 WL 1319363, at *5 (N.D. Cal. Mar. 31, 2014) (finding insufficient notice where the original complaint did not give "clear notice" of the plaintiff's intent to allege and certify a class); *Perry v. Beneficial Finance Co. of N.Y.,* 81 F.R.D. 490, 495 (W.D.N.Y. 1979) (same). For later-added class action claims to relate back, the initial complaint must have contained "*specific* allegations of class-wide discrimination." *McClelland,*

---

[9] Out-of-circuit courts applying a four-year catchall statutory limitations period to Title IX cases are contrary to Ninth Circuit authority. In *Palacios v. MedStar Health*, Inc., 298 F. Supp. 3d 87, 91 & n.2 (D.D.C. 2018), neither party briefed the statute of limitations for Section 1557 claims, so the court applied the four-year catchall but noted that, even under the three-year Title IX limitations period, the claims there were timely. In *Vega-Ruiz v. Northwell Health*, 992 F.3d 61 (2d Cir. 2021), which involved a request for a sign language interpreter, the Second Circuit applied the four-year catchall period because it concluded that the enforcement mechanisms in the ACA against public accommodations differed from those in the Rehabilitation Act for that specific claim. *Id.* at 66. The opposite is true here, where Plaintiffs allege their Section 1557 claim expressly incorporates the enforcement mechanisms of Title IX. Am. Compl. ¶ 101. Thus, the more specific, three-year Title IX limitations period applies.

1   431 F. App'x at 731.  Without the requisite specificity, vague claims of a "pattern and practice"

2   of discrimination "are not enough to alert a defendant that class claims are on the horizon." *Id.*

3   Plaintiffs' initial complaint contains no allegations of discrimination on a class-wide

4   basis.  Dkt. 1.  Then, a year later, Plaintiffs amended their initial complaint to seek relief on

5   behalf of a proposed class of individuals who were denied coverage between November 23, 2014

6   to the present.  Am. Compl. ¶ 91.  Because Plaintiffs' later-added class claims do not relate back

7   to the filing of the initial, individual complaint, those class claims are tied to the date of the filing

8   of the amended class action complaint on November 2, 2021.  Applying the three-year statute of

9   limitations for Section 1557 claims to that date, all claims brought by the proposed class prior to

10  November 2, 2018 are time-barred and should be dismissed.

11  **G.    Plaintiffs' Numerosity Expert Proffered an Unreliable Opinion that Cannot be Extrapolated on a Class-wide Basis.**

12  There are at least 40 people who may fit the class definition found at paragraph 91 of the

13  Amended Complaint, so BCBSIL does not contest numerosity.  Payton Decl., Ex. C.  Plaintiffs

14  have known this for months.   Nonetheless, Plaintiffs proffered an expert, Frank Fox, who

15  purports to opine regarding the number of transgender individuals enrolled in the relevant

16  BCBSIL group plans.  Payton Decl., Exs. S-T.  Dr. Fox's opinions are deeply misleading and

17  unreliable and the Court should disregard them.  As demonstrated in the rebuttal report of Dr.

18  Scott Carr, Ph.D., Dr. Fox relies on flawed data, misinterprets that data, incorrectly assumes the

19  prevalence of transgender employees, fails to exclude duplicate data, and falsely assumes all

20  employees reside in Illinois.  Payton Decl., Ex. U.  Thus, Dr. Fox's estimate of the number of

21  transgender enrollees who sought transgender-related services is misleading and unreliable.

22  BCBSIL addresses the inadmissibility of Dr. Fox's testimony in a concurrently-filed *Daubert*

23  motion.

24  ## CONCLUSION

25  BCBSIL respectfully requests this Court to deny Plaintiffs' Motion for Class Certification

26  in its entirety.

27

28

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1      Respectfully submitted, this 24th day of October, 2022.

2                                      KILPATRICK TOWNSEND & STOCKTON LLP

3                                      By_____/s/ Gwendolyn C. Payton_____
                                           Gwendolyn C. Payton, WSBA No. 26752
4                                          gpayton@kilpatricktownsend.com
                                           John R. Neeleman, WSBA No. 19752
5                                          jneeleman@kilpatricktownsend.com
                                           1420 Fifth Ave., Suite 3700
6                                          Seattle, WA 98101
                                           Telephone: (206) 626-7714
7                                          Facsimile: (206) 623-6793

8
                                           *Counsel for Blue Cross Blue Shield of Illinois*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2

I certify that on the date indicated below I caused a copy of the foregoing document,

3

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S OPPOSITION TO

4

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, to be filed with the Clerk of the Court

5

via the CM/ECF system.  In accordance with their ECF registration agreement and the Court's

6

rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys

7

of record:

8

9

10

11

12

| **Eleanor Hamburger**<br>SIRIANNI YOUTZ SPOONEMORE<br>HAMBURGER<br>3101 WESTERN AVENUE STE 350<br>SEATTLE, WA 98121<br>206-223-0303<br>Fax: 206-223-0246<br>Email: ehamburger@sylaw.com | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
|---|---|
| **Jennifer C Pizer**<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC<br>4221 WILSHIRE BLVD., STE 280<br>LOS ANGELES, CA 90010<br>213-382-7600<br>Email: jpizer@lambdalegal.org | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Omar Gonzalez-Pagan**<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC. (NY)<br>120 WALL STREET<br>19TH FLOOR<br>NEW YORK, NY 10005<br>212-809-8585<br>Email: ogonzalez-pagan@lambdalegal.org | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |

13

14

15

16

17

18

19

20

21

22

23

DATED this 24th day of October, 2022.

24

KILPATRICK TOWNSEND & STOCKTON LLP

25

By:*/s/ Gwendolyn C. Payton*
     Gwendolyn C. Payton, WSBA #26752

26

*Counsel for Blue Cross Blue Shield of Illinois*

27

28

KILPATRICK TOWNSEND 76387348 13

BCBSIL'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION  - 26