UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; and PATRICIA PRITCHARD,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>　　　　　　　　　　Defendant. | CASE NO. 3:20-cv-06145-RJB<br><br>ORDER ON MOTION FOR CLASS CERTIFICATION |

This matter comes before the Court on the Plaintiff C.P.'s Motion for Class Certification (Dkt. 78) and Motion to Strike the Expert Report of Scott Carr, Ph.D. (Dkt. 99). The Court has considered the pleadings filed in support of and in opposition to the motions and the file herein. The requested oral argument is not necessary to decide the motions.

In this case, Plaintiff C.P., a transgender male, and his mother, Plaintiff Patricia Pritchard, claim that Defendant Blue Cross Blue Shield of Illinois ("Blue Cross") violated the anti-discrimination provision, Section 1557, of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116, when it administered a discriminatory exclusion of gender-affirming care in a self-funded health

ORDER ON MOTION FOR CLASS CERTIFICATION - 1

care plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Dkt. 1. The Plaintiffs now move for certification of a class of similarly situated people. Dkt. 78. For the reasons provided below, the motion to certify a class (Dkt. 78) should be granted.

## I. FACTS

**A. FACTS**

Plaintiffs are C.P., a boy of about sixteen, and his mother, Patricia Pritchard. Dkt. 38. C.P. is a transgender male, which means that he has a male gender identity even though the sex assigned to him at birth was female. *Id.* C.P. has been living as a male since around 2015. Dkt. 94-1 at 135.

Patricia Pritchard receives health care coverage through her employer under the Catholic Health Initiatives Medical Plan ("the Plan") and C.P. is enrolled in that Plan as her dependent. Dkt. 81. The Plan is "self-funded" - Ms. Pritchard's employer directly assumes financial responsibility for employees and their dependents' health care costs. Dkt. 88-1 at 11.

Defendant, Blue Cross, acts as the third-party claims administrator for the Plan. Dkt. 85-10. As a third-party administrator, it "assemble[s] a network of providers, process[es] claims, and handle[s] provider billing." Dkt. 88-1 at 11.

C.P. has gender dysphoria. Dkt. 38. Gender dysphoria is a feeling of clinically significant stress and discomfort that can result from being transgender, or, more specifically, from having an incongruence between one's gender identity and the sex assigned to that person at birth. *Id.* The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-5") recognizes gender dysphoria as a medical condition that can be extremely serious, resulting in anxiety, depression, or even death. Dkt. 38 at 6.

C.P. sought coverage for his first Vantas Implant (hormone therapy) in 2016. Dkt. 94-1 at 139. Blue Cross initially approved the treatment and later informed his mother that it had made a mistake; that the treatment was not covered. Dkt. 94-1 at 137. Blue Cross paid for the treatment however, but indicated that later claims would be denied. *Id.* at 139. A few years later C.P. filed a claim for a second Vantas Implant and for chest reconstruction surgery; his claim was denied by Blue Cross because "[t]ransgender services [were] not covered under the terms of the plan." *Id*.; 94-3 at 2-10.

The relevant Plan language in 2018 provided: "Transgender Reassignment Surgery Not Covered: Benefits shall not be provided for treatment, drugs, therapy, counseling services and supplies for, or leading to, gender reassignment surgery" ("Exclusion"). Dkt. 88-1 at 120. Of the approximately 398 of the self-funded plans that Blue Cross administers as a third-party administrator, 378, that is, 95% contain the same Exclusion that is in the Plan in which C.P. is enrolled. Dkt. 85-8 at 7. The Plaintiffs contend that Blue Cross, as a third-party administrator, has denied or will deny other enrollees in other self-funded plans gender affirming care by relying on exclusions like the one applied to C.P. Dkt. 38. Blue Cross acknowledges that there are hundreds of members (in approximately half the self-funded plans it administers) who have received a denial based on such an exclusion. Dkt. 85-11 at 8. Blue Cross denies that its activities as a third-party administrator are subject to the anti-discrimination provisions in Section 1557 of the ACA. Dkt. 85-1 at 16-17.

**B. ORGANIZATION OF OPINION**

This opinion will first consider a class definition and then whether Fed. R. Civ. P. 23's class action requirements are met. Lastly, this opinion will address the Plaintiff's motion to strike.

## II.     DISCUSSION

**A.  CLASS DEFINITION**

Plaintiff C.P. moves for certification of the following class:

All individuals who:

(1) have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by Blue Cross Blue Shield of Illinois ("BCBSIL") during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services; and

(2) have required, require, or will require treatment with excluded Gender-Affirming Health Care services.

DEFINITIONS:

"Class Period" means November 23, 2016 through the termination of the litigation.

"Gender-Affirming Health Care" means any health care service—physical, mental, or otherwise—administered or prescribed for the treatment of gender dysphoria; related diagnoses such as gender identity disorder, gender incongruence, or transsexualism; or gender transition. This includes but is not limited to the administration of puberty delaying medication (such as gonadotropin-releasing hormone (GnRH) analogues); exogenous endocrine agents to induce feminizing or masculinizing changes ("hormone replacement therapy"); gender-affirming or "sex-reassignment" surgery or procedures; and other medical services or preventative medical care provided to treat gender dysphoria and/or related diagnoses, as outlined in World Professional Association for Transgender Health, Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, 7th Version (2012).

Blue Cross argues that this definition of the class is broader than that in the Amended Complaint and so should be stricken and that the class claims are limited by the applicable statute of limitations to events after November 2, 2018. Dkt. 93. Each argument will be considered in turn.

Section (1) of the class definition proposed here is substantially the same as in the Amended Complaint (Dkt. 38 at 16). Section (2) proposed here, (individuals who meet Section

ORDER ON MOTION FOR CLASS CERTIFICATION - 4

(1) and "(2) have required, require, or will require treatment with excluded Gender-Affirming Health Care services") is substantially broader than that proposed in the Amended Complaint. The Amended Complaint's class definition only including individuals who meet Section (1) and "who were, are or will be denied pre-authorization or coverage of otherwise covered services due to [Blue Cross's] administration of such an exclusion." Dkt. 38 at 16.  The proposed expansion of the definition of the case is significantly larger; based on the plain language of the proposed definition, it includes people that could have applied, but did not apply, for pre-authorization or coverage, for whatever reason.  Plaintiff's proposed definition of the class in the motion is overbroad.  Further, a plaintiff can modify the proposed class if the proposed modifications are (1) minor, (2) require no additional discovery, and (3) do not cause prejudice to the Defendants.  *See Jammeh v. HNN Associates, LLC*, 2020 WL 5407864, at *9 (W.D. Wash. Sept. 9, 2020). Plaintiff's expansion of the class definition is significant.  It is prejudicial to Blue Cross. Discovery has closed.  The dispositive motions deadline has passed and trial is set to begin in early February 2023.

      Section (2) of the class definition should be rewritten, as this Court has leave to do, *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC,* 31 F.4th 651, 669 n.14 (9th Cir. 2022), and it should read:  "(2) were, are, or will be denied pre-authorization or coverage of treatment with excluded Gender Affirming Health Care services."

      Blue Cross also complains the statute of limitations bars claims before November 2, 2018 rather than November 23, 2016, which is included in the proposed class definition.  Dkt. 93. Blue Cross reasons that because the ACA does not contain a statute of limitations and it incorporates the enforcement mechanisms provided for in Title VI, Title IX, Section 504 of the

ORDER ON MOTION FOR CLASS CERTIFICATION - 5

Rehabilitation Act and the Age Discrimination Act (none of which contain a statute of limitations), the state statute governing personal injury claims is applied.  Dkt. 93 at 29.

While "[t]raditionally, when a federal statute creating a right of action did not include a limitations period, courts would apply the limitations period of the closest state analogue," in 1990, "Congress established—in 28 U.S.C. § 1658(a)—a uniform, catchall limitations period for actions arising under federal statutes enacted after December 1, 1990." *McGreevey v. PHH Mortgage Corp.*, 897 F.3d 1037, 1041–42 (9th Cir. 2018).  This statute provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a).  "If § 1658(a) applies, there is no need for a court to seek a state law analogue when analyzing a statute-of-limitations argument." *McGreevey* at 1042.  The ACA was enacted in 2010.  Accordingly, the four-year statute of limitation applies to claims under the ACA.

Blue Cross also asserts that the class claims (filed in the Amended Complaint on November 2, 2021) should not be permitted to relate back to the filing of the initial complaint (which was filed on November 23, 2020) and so the statute of limitation period should be based on the filing of the Amended Complaint.  Dkt. 93.

Under Rule 15(c)(1)(B), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction or occurrence set out - or attempted to be set out - in the original pleading."  "To relate back, the original and amended pleadings must share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question." *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

ORDER ON MOTION FOR CLASS CERTIFICATION - 6

The Amended Complaint here relates back to the date of the original Complaint. The Complaint provided "fair notice of the . . . conduct called into question," *ASARCO* at 1004, and sought injunctive relief enjoining Blue Cross's administration of the exclusions of gender-affirming care "in the health benefit plans [Blue Cross] administers and enforces, in violation of the [ACA] now and in the future." Dkt. 1. The Plaintiffs' claim in the original complaint and the class claims added in the Amended Complaint "will likely be proved by the same kind of evidence. *ASARCO* at 1004.

Accordingly, November 23, 2020, the date the Complaint was filed, began the time to calculate the four-year statute of limitations period. The "Class Period" being defined as "November 23, 2016 through the termination of the litigation" was not in error.

This opinion will now turn to whether the class, as newly defined, should be certified.

**B.  MOTION TO CERTIFY THE CLASS**

"A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality, and adequacy of representation." *Johnson v. City of Grants Pass*, 50 F.4th 787, 802 (9th Cir. 2022). If Rule 23(a) requirements are met, a putative class representative must then show that "the class falls into one of three categories under Rule 23(b)." *Id.*

      1.  <u>Rule 23(a)(1) - Numerosity</u>

To satisfy the numerosity requirement in Rule 23(a)(1), "a proposed class must be so numerous that joinder of all members is impracticable." *Johnson* at 803. "[P]roposed classes of less than fifteen are too small while classes of more than sixty are sufficiently large." *Id.*

1   The Plaintiffs seek to certify a class of over 60 individuals (maybe as many as 1740).

2   Blue Cross does not contest that the Plaintiffs have met this requirement. Dkt. 93 at 30. The

3   Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1).

4          2.  Rule 23(a)(2) - Commonality

5   Rule 23(a)(2) mandates that there be "questions of law or fact common to the class."

6   "[T]he word "question" in Rule 23(a)(2) is a misnomer." *Johnson* at 804. "What matters to

7   class certification is not the raising of common questions—even in droves—but, rather the

8   capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

9   litigation." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Class claims must

10  depend on a "common contention." *Id.* Further, that "common contention . . . must of such a

11  nature that it is capable of classwide resolution which means that determination of its truth or

12  falsity will resolve an issue that is central to the validity of [class claims] in one stroke." *Id*.

13  The Plaintiffs have met the commonality requirement of Rule 23(a)(2). The class claim

14  depends on a "common contention." *Wal-Mart* at 350. As Plaintiff C.P. points out, that

15  "common contention" is that a third-party administrator, like Blue Cross here, that is subject to

16  the ADA's Section 1557 anti-discrimination provisions cannot permissibly "administer

17  discriminatory exclusions of gender-affirming care contained in ERISA self-funded plans." This

18  "common contention" is "of such a nature that it is capable of classwide resolution . . .

19  determination of its truth or falsity will resolve an issue that is central to the validity of [the

20  class's claims] in one stroke." *Wal-Mart* at 350.

21  Blue Cross contends that the putative class lacks commonality because the plans'

22  exclusion language, coverage choices available to employees, and religious beliefs of the

23

24

employers vary widely among the 398 self-funded plans it administers that contain transgender-related exclusions. Dkt. 93.

Contrary to Blue Cross's assertions, the variations in the plans' exclusionary language do not defeat commonality. Blue Cross's Fed. R. Civ. P. 30(b)(6) witness testified that it administers exclusions consistently. Dkt. 85-5 at 11-13. It reviews claims to determine if the "diagnosis code" is for "gender dysphoria" or "gender reassignment" and examines the "procedural code" to see if the claim is for gender reassignment treatment. *Id.* If based on that criteria Blue Cross determines that the services are for gender reassignment, the claim is denied. *Id.* at 12-13. The class seeks to challenge this standard conduct. The fact that some plans may cover portions of care for gender dysphoria (like hormone treatments or mental health counseling) do not change the challenges to Blue Cross's conduct.

Blue Cross asserts that some of the employers of these self-funded plans offered employees other plans that do not have transgender-related exclusions. Dkt. 93. It concludes that it cannot be said to have engaged in discriminatory conduct as to those employees. Blue Cross's argument is unpersuasive. As Plaintiffs properly point out, "[a]nti-discrimination law does not permit defendants to get a 'free pass' on discrimination if the plaintiff could have obtained coverage elsewhere." Dkt. 99.

Blue Cross argues that some plans have not denied a transgender claim. Dkt. 93. It claims that only over 200 plans have actually denied a claim based on an applicable exclusion. *Id.* This concern, raised in the context of whether the Plaintiffs have met the commonality requirements, are resolved with the Court's alteration in the class definition to only include those who have been denied preauthorization or coverage of treatment with excluded Gender Affirming Health Care services.

ORDER ON MOTION FOR CLASS CERTIFICATION - 9

1     Blue Cross contends that the Court will be required to engage in an assessment of each class member's individual circumstances to grant them relief. Dkt. 93. It maintains that commonality is not met because of these necessary inquiries. *Id.*

    Relief sought for the class is a declaration that Blue Cross violated their rights under the ACA when it administered and enforced exclusions of treatment for gender affirming care, and to enjoin Blue Cross from doing so in the future. Dkt. 38 at 21-22. Class members' individual medical services are not relevant to this portion of their requested relief. The harm alleged – Blue Cross's alleged discriminatory conduct in the processing of their claims - is common to all the class members. The class also seeks an order requiring Blue Cross to "reprocess and when, medically necessary and meeting other terms and conditions under the relevant plans, provide coverage (payment) for all denied pre-authorizations and denied claims for coverage . . . that were based solely upon exclusions for gender-affirming care." *Id.* at 22. Individualized assessments are not required for the Court to grant this relief. Whether the class is entitled to this requested remedy can be addressed on a common basis. Accordingly, this Court would not need to engage in an individualized inquiry to address the Plaintiffs' claims regarding liability or related to their relief.

    Blue Cross contends that the proposed class lacks commonality because the plans have different possible defenses. Dkt. 93 at 20. It points to a possible defense under the Religious Freedom Restoration Act ("RFRA") as to some of the plans it administers. *Id.*

    Blue Cross's assertion of a RFRA defense or other defenses would not destroy commonality. As stated in the Order Denying Defendant's Motion to Dismiss, applicability of RFRA here is in doubt. That Order provided:

> RFRA states, "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability"

unless the Government "demonstrates that application of the burden to the person – (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling interest." 42 U.S.C. § 2000bb-1(a), (b).  It continues, "[a] person whose religious exercise has been burdened in violation of this section may assert that violation <u>as a claim or defense</u> in a judicial proceeding and obtain appropriate relief <u>against a government</u>." 42 U.S.C. § 2000bb-1(c)(*emphasis added*).

RFRA provides relief against the government, but the government is not a party to this action.  *See Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 736 ("Based on RFRA's plain language [and] its legislative history . . . RFRA is not applicable in cases where the government is not a party."); *compare Burwell v. Hobby Lobby*, 573 U.S. 682 (2014) (challenge by employers to HHS rules requiring insurance coverage for birth control despite religious objection by employer).

Dkt. 23.

There may be common questions as to the applicability of a defense like RFRA, or other defenses available to an employer paying for the self-funded plan.  Those defenses may be raised when and if they are ripe for decision.  Those possible defenses do not impact commonality for class purposes.

Plaintiff C.P. has shown that there are "questions of law or fact common to the class." Rule 23(a)(2).  The Rule 23(a)(2) requirements are met.

### 3. Rule 23(a)(3) - Typicality

Typicality requires that "the claims or defenses of the representative parties are typical" of the class. Fed. R. Civ. P. 23(a)(3). Typicality "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Johnson* at 805 (*internal quotation marks and citation omitted*).  It is a "permissive standard." *Id*.  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022).

ORDER ON MOTION FOR CLASS CERTIFICATION - 11

Plaintiff C.P. has met his burden under Rule 23(b)(3). His injury is the same or is similar to other class members. He asserts that Blue Cross denied him access to coverage for needed gender-affirming care as do all other members of the putative class. Blue Cross's conduct is not unique to Plaintiff C.P. This action is based on Blue Cross's conduct in handling claims for gender dysphoria in plans with exclusions for all plan members. Further, other class members have suffered the same injury – they have been denied treatment for gender-affirming care. His claim is identical to the claims of the class. Like the class, he contends that Blue Cross impermissibly discriminated against him, contrary to the ACA, when it administered and/or enforced exclusions for gender affirming care in self-funded ERISA healthcare plans.

Blue Cross asserts that C.P.'s claim is not typical of the class because of variation in the language of his plan and because of a variety of defenses that may apply. These arguments do not defeat typicality.

The variation in plan language and the possibility of the application of various defenses does not exclude C.P.'s claim as typical of the class. Blue Cross administered the exclusions for gender affirming care (regardless of the particular plan's coverage) consistently. At least one of the defenses that Blue Cross contends apply to C.P. applies to all class members. (The statutory definition of covered entities).

Blue Cross argues that C.P.'s claim is not typical of the class because some of his care was covered. "This does not defeat typicality." *Johnson* at 805. While some of his care was covered due to a mistake that Blue Cross made, Blue Cross does not deny that it denied his later request for gender affirming care by relying on the exclusion in C.P.'s plan.

The requirements of typicality under Rule 23(a)(3) are met.

    4.   <u>Rule 23(a)(4) - Adequacy of Representation</u>

Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." In order to decide whether named plaintiffs will adequately represent a class, two questions are considered: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Plaintiff C.P. and his counsel will "fairly and adequately protect the interests of the class." There are no conflicts of interest with other class members. Dkts. 82-84. C.P., through his parents, and his counsel intend to prosecute the case vigorously on behalf of the class. Dkts. 80-84. Blue Cross does not contest the adequacy of class counsel. Dkt. 93 at 22. Counsel has experience in class actions. Dkts. 82-84.

Adequacy of representation is met. Rule 23(a)(4).

### 5. Rule 23(b) Requirements

In addition to meeting the requirements of Rule 23(a), C.P. must also show that "the class falls into one of three categories under Rule 23(b)." *Johnson* at 802. The Plaintiffs state that they seek certification of a proposed class under Rule 23(b)(1) and/or (b)(2). Dkt. 78 at 27. Those provisions of the rule provide:

(b) A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would

> substantially impair or impede their ability to protect their interests;
>
> [or]
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . .

C.P. has shown that certification under Rule 23(b)(1)(A) and (B) is warranted. Blue Cross, as an ERISA fiduciary, is obligated to apply plan provisions consistently with respect to similarly situated enrollees. Plaintiffs allege that there are at least hundreds of people who were, are, or will be discriminated against contrary to ACA's Section 1557 provisions by Blue Cross's conduct, all of whom could file suit. Multiple suits would create a risk of "inconsistent or varying adjudications" resulting in "incompatible standards of conduct" for Blue Cross. Rule 23(b)(1)(A). Further, independent adjudications on whether Blue Cross is subject to Section 1557 when it acts as a third-party administrator, as a practical matter, "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B).

Certification under Rule 23(b)(2) is also appropriate here. C.P. and the class seek declaratory and injunctive relief from Blue Cross's practice of administering exclusions for gender affirming care in self-funded plans. Individualized inquiries are unnecessary. Plaintiffs are seeking a determination of whether Blue Cross's practice violates Section 1557 of the ACA. "Rule 23(b)(2) requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1067 (9th Cir. 2021)(*internal quotation marks and citations omitted*).

The class falls into the requirements of Rule 23(b). *Johnson* at 802.

ORDER ON MOTION FOR CLASS CERTIFICATION - 14

<283>

6. <u>Conclusion on Certification</u>

The class, as defined above, should be certified. Plaintiff C.P. has demonstrated that the requirements of Rule 23 are met.

**C. MOTION TO STRIKE**

In their reply, the Plaintiffs move to strike a report from Scott Carr, Ph.D., (Dkt. 94-3 at 77-116) as untimely. Dkt. 99. The Plaintiffs concede that Blue Cross did not rely on the Carr report in addressing the motion to certify the class. *Id.* After conceding that Plaintiffs met the numerosity requirement under Rule 23(a)(1), Blue Cross mentioned the Carr report, and contended that Frank Fox, Ph.D.'s opinion, the Plaintiffs' expert on the number of transgendered individuals effected by this litigation, was "misleading and unreliable." Dkt. 93.

The Plaintiffs' motion to strike the Carr report (Dkt. 94-3 at 77-116) should be denied without prejudice. Neither the parties nor the Court relied on the Carr report for any reason. The grounds raised to strike the report, that it was not timely disclosed, is not relevant to this motion and need not be raised in a reply.

### III.   ORDER

Therefore, it is hereby **ORDERED** that:

- Plaintiff C.P.'s Motion for Class Certification (Dkt. 78) **IS GRANTED**;
  - The Class is certified as:

  All individuals who:

  (1) have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by Blue Cross Blue Shield of Illinois ("BCBSIL") during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services; and

  (2) were, are, or will be denied pre-authorization or coverage of treatment with excluded Gender Affirming Health Care services

ORDER ON MOTION FOR CLASS CERTIFICATION - 15

DEFINITIONS:

"Class Period" means November 23, 2016 through the termination of the litigation.

"Gender-Affirming Health Care" means any health care service—physical, mental, or otherwise—administered or prescribed for the treatment of gender dysphoria; related diagnoses such as gender identity disorder, gender incongruence, or transsexualism; or gender transition. This includes but is not limited to the administration of puberty delaying medication (such as gonadotropin-releasing hormone (GnRH) analogues); exogenous endocrine agents to induce feminizing or masculinizing changes ("hormone replacement therapy"); gender-affirming or "sex-reassignment" surgery or procedures; and other medical services or preventative medical care provided to treat gender dysphoria and/or related diagnoses, as outlined in World Professional Association for Transgender Health, Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, 7th Version (2012).

- o Plaintiff C.P., by and through his parents, is appointed as class representative, and
- o Eleanor Hamburger and Daniel Gross of Sirianni Youtz Spoonemore Hamburger, as well as Jennifer Pizer and Omar Gonzalez-Pagan of the Lambda Legal Defense and Education Fund are appointed as class counsel; and

- Plaintiffs' Motion to Strike the Expert Report of Scott Carr (Dkt. 99) **IS DENIED WITHOUT PREJUDICE**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 9th day of November, 2022.

ROBERT J. BRYAN
United States District Judge

ORDER ON MOTION FOR CLASS CERTIFICATION - 16