THE HONORABLE ROBERT J. BRYAN

1

2

3

4

5

6

7

8  **IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

9

10  C. P., by and through his parents,
Patricia Pritchard and Nolle Pritchard;
11  and PATRICIA PRITCHARD,

12                                    Plaintiffs,

13          vs.

14  BLUE CROSS BLUE SHIELD OF
ILLINOIS,
15

16                                    Defendant.

17

Case No. 3:20-cv-06145-RJB

**BLUE CROSS BLUE SHIELD OF
ILLINOIS'S RESPONSE TO PLAINTIFFS'
CROSS-MOTION FOR SUMMARY
JUDGMENT [DKT. 96] AND REPLY IN
SUPPORT OF MOTION FOR SUMMARY
JUDGMENT [DKT. 87]**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR:
November 21, 2022**

18

19

20

21

22

23

24

25

26

27

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF MATERIAL FACTS.............................................................2

      A.   CHI, not BCBSIL, Wrote the Exclusion in the CHI Plan.........................2

      B.   The CHI Exclusion is Based on Religious Views. ...................................2

      C.   BCBSIL Does Not Receive Federal Financial Assistance to Administer the
           CHI Plan....................................................................................................2

      D.   C.P. Never Received Any Mental Health Treatment from a Qualified Mental
           Health Professional. ................................................................................3

III.  ARGUMENT .......................................................................................................4

      A.   BCBSIL Cannot Be Liable for Alleged Violations of Section 1557 Because
           BCBSIL is Not the Source of the CHI Plan Design. ...............................4

      B.   The 2020 Rule Applies to This Case and Allows Transgender Exclusions for
           Any Reason. ..............................................................................................7

      C.   BCBSIL May Administer the Exclusion Because it is Protected by RFRA...........9

           1.   RFRA is incorporated into Section 1557 and provides an exemption
                from its requirements. ...................................................................10

           2.   BCBSIL has standing to argue that Section 1557 does not prohibit
                BCBSIL from enforcing the Exclusion.........................................13

           3.   RFRA protects the CHI exclusion. ...............................................15

           4.   There is no dispute that the CHI exclusion is religious-based.................16

      D.   Section 1557 Does Not Apply Here Because BCBSIL Does Not Receive Any
           Federal Financial Assistance for its TPA Activities. ...............................17

      E.   The Exclusion Does Not Discriminate on the Basis of Sex Because There Is No
           Medical Consensus Regarding Transgender-Related Services...........................19

IV.   CONCLUSION...................................................................................................21

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

**TABLE OF AUTHORITIES**

**Cases**

*Black v. Long Term Disability Ins.*,
  582 F.3d 738 (7th Cir. 2009) ......................................................................... 16

*Boyden v. Conlin*,
  341 F. Supp. 3d 979 (W.D. Wis. 2018) ............................................................. 7

*Bright v. Tustin Unified Sch. Dist.*,
  725 F.3d 1088 (9th Cir. 2013) ....................................................................... 11

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ........................................................................ 12, 13, 14, 15

*Carolina v. JPMorgan Chase Bank NA*,
  No. CV-19-05882-PHX-DWL, 2021 WL 5396066 (D. Ariz. Nov. 17, 2021) ....................... 16

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984) ........................................................................... 8, 9, 19

*City of Boerne v. Flores*,
  521 U.S. 507 (1997) ...................................................................................... 12

*Doe v. CVS Pharmacy, Inc.*,
  982 F.3d 1204 (9th Cir. 2020) ......................................................................... 6

*Doe v. Snyder*,
  28 F.4th 103 (9th Cir. 2022) ........................................................................... 3

*Edmo v. Corizon*, Inc.,
  935 F.3d 757 (9th Cir. 2019) ......................................................................... 21

*Encino Motorcars, LLC v. Navarro*
  579 U.S. 211  (2016) ..................................................................................... 10

*Erickson v. Bartell Drug Co.*,
  141 F. Supp. 2d 1266 (W.D. Wash. 2001) ........................................................ 15

*F.T.C. v. Figgie Intern, Inc.*,
  994 F.2d 595 (9th Cir. 1993) ......................................................................... 17

*Fain v. Crouch*,
  342 F.R.D. 109 (S.D. W. Va. 2022) .................................................................. 7

*Fed. Express Corp. v. Holowecki*,
  552 U.S. 389 (2008) ...................................................................................... 10

*Fernandez v. Wynn Oil Co.*,
  653 F.2d 1273 (9th Cir. 1981) ......................................................................... 6

*Flack v. Wisconsin Dep't of Health Servs.*,
  395 F. Supp. 3d 1001 (W.D. Wis. 2019) ............................................................. 7

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1

*Fletcher v. Alaska*,
   443 F. Supp. 3d 1024 (D. Alaska 2020) ................................................ 7

2

*Franciscan All. Inc. v. Becerra*,
   No. 21-11174, 2022 WL 3700044 (5th Cir. Aug. 26, 2022) ................... 8, 16
3

*Franciscan All., Inc. v. Azar*,
4   414 F. Supp. 3d 928 (N.D. Tex. 2019) ................................................ 8

5

*Franciscan All., Inc. v. Burwell*,
   227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................ 7
6

*Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*,
7   617 F.3d 402 (6th Cir. 2010) ............................................................ 13

8

*Hennessy-Waller v. Snyder*,
   No. CV-20-00335-TUC-SHR, 2021 WL 1192842 (D. Ariz. Mar. 30, 2021) ........... 9, 21
9

*Henry Ford Health Sys. v. Dep't of Health & Hum. Servs.*,
10   654 F.3d 660 (6th Cir. 2011) ............................................................ 8

11

*Kadel v. Folwell*,
   No. 1:19-CV-272, 2022 WL 2106270 (M.D.N.C. June 10, 2022) ................... 7
12

*Koloff v. Metropolitan Life Ins. Co.*,
13   No. 1:13-cv-02060, 2014 WL 3420990 (E.D. Cal. July 14, 2014) ................ 17

14

*Kreis v. Sec'y of the Air Force*,
   406 F.3d 684 (D.C. Cir. 2005) ............................................................ 9
15

*Listecki v. Off. Comm. of Unsecured Creditors*,
16   780 F.3d 731 (7th Cir. 2015) ............................................................ 13

17

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   140 S. Ct. 2367 (2020) .......................................................... passim
18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
19   463 U.S. 29 (1983) ............................................................ 9

20

*Religious Sisters of Mercy v. Azar*,
   513 F. Supp. 3d 1113 (D.N.D.  2021) .......................................... 9, 16, 19
21

*Rice v. ADP TotalSource, Inc.*,
22   936 F. Supp. 2d 951 (N.D. Ill. 2013) ................................................ 17

23

*Steinberg v. Obstetrics-Gynecological And Infertility Grp., P.C.*,
   260 F. Supp. 2d 492 (D. Conn. 2003) ................................................ 17
24

*Sutton v. Providence St. Joseph Med. Ctr.*,
25   192 F.3d 826 (9th Cir. 1999) ............................................................ 12

26

*Takeda v. Nw. Nat. Life Ins. Co.*,
   765 F.2d 815 (9th Cir. 1985) ............................................................ 14
27

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – iii

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

*Tomic v. Cath. Diocese of Peoria*,
  442 F.3d 1036 (7th Cir. 2006) ............................................................... 13

*Tovar v. Essentia Health*,
  857 F.3d 771 (8th Cir. 2017) ................................................................. 5

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  485 F. Supp. 3d 1 (D.D.C. 2020) ............................................ 8, 11, 20, 21

*Whitman-Walker Clinic, Inc. v. United States Dep't of Health & Hum. Servs.*,
  No. 20-5331, 2021 WL 5537747 (D.C. Cir. Nov. 19, 2021) .................... 8

**Statutes**

20 U.S.C. § 1681(a)(3) ..........................................................................11

42 U.S.C. § 18023(c)(2) ........................................................................ 12

42 U.S.C. § 300gg-13(a)(4) ................................................................... 15

**Rules**

85 Fed. Reg. at 37,160 .......................................................................... 18

87 Fed. Reg. 47824, 47876 ................................................................... 19

81 Fed. Reg. 31,432 (May 18, 2016) ...................................................... 4

85 Fed. Reg. at 37,173-74 ..................................................................... 20

87 Fed. Reg. 47,824, 47,876-47,877 ............................................ 5, 13, 15

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – iv

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

# I.    INTRODUCTION

The Court should deny Plaintiffs' Consolidated Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Cross-Motion") in its entirety and grant summary judgment in BCBSIL's favor.  Plaintiffs' Cross-Motion concedes a number of undisputed, material facts that defeat their claim for relief under Section 1557 of the Affordable Care Act ("ACA").  Plaintiffs concede that Plaintiff Patricia Pritchard's employer CHI,[1] not BCBSIL, wrote the exclusion in the CHI Plan.  They concede that the operative regulations allow the exclusion.  They concede that CHI informed them that CHI added the exclusion based on its religious beliefs.  They concede that BCBSIL did not receive federal financial assistance to administer the CHI Plan.

Plaintiffs' Section 1557 discrimination claim fails because BCBSIL was not the source of the exclusion and because CHI retains final decision-making authority over transgender claims. The Department of Health and Human Services ("HHS") regulations control this case and allow exclusions for transgender-related services.

Plaintiffs' Section 1557 claim also fails because the exclusion is protected by the Religious Freedom Restoration Act ("RFRA").  RFRA is incorporated into the ACA, and a court cannot adjudicate a Section 1557 claim against any party without also addressing the limitations imposed by RFRA.  The Supreme Court has held that a TPA cannot provide coverage that would violate the RFRA rights of a plan sponsor.

Plaintiffs' Section 1557 claim also fails because that statute only applies to healthcare operations that receive federal funding, and BCBSIL does not receive any federal financial assistance for its TPA activities.

Finally, Plaintiffs' Section 1557 claim fails because there is no medical consensus regarding transgender-related services, and thus the CHI Plan's exclusion does not discriminate on the basis of sex.

---

[1] "CHI" means CommonSpirit Health, f/k/a Catholic Health Initiatives, the employer for named plaintiff Patricia Pritchard.

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## II.     STATEMENT OF MATERIAL FACTS[2]

Plaintiffs' Cross-Motion concedes a number of undisputed facts that defeat that motion and their claims for relief, and compel summary judgment in BCBSIL's favor.[3]

**A.     CHI, not BCBSIL, Wrote the Exclusion in the CHI Plan.**

Plaintiffs do not dispute that CHI designed and wrote the CHI Plan, including the exclusion for transgender-related surgeries.   *See* Dkt. 88-1, Ex. A (Q: "And who drafted [the gender reassignment surgery exclusion in the CHI Plan]?" A: "Catholic Health Initiatives ").

Likewise, it is undisputed that the CHI Plan is self-insured, so the CHI Plan – not BCBSIL – is responsible for paying all health care benefits to its members and is ultimately responsible for any claim.  Am. Compl., App. A at 8.

**B.     The CHI Exclusion is Based on Religious Views.**

There is no disputed issue of fact that CHI added the exclusion to the CHI Plan based on religious views.  *See* Dkt. 1, App. H (the "CHI Letter"); Dkt. 38, App. H.  Plaintiffs attached as an exhibit to their original and amended Complaints a letter from CHI stating that the only transgender-related service "specifically excluded under the Plan is gender reassignment surgery, as this surgery has been determined not to align with the teachings and doctrine of the Catholic Church."  *Id.*

**C.     BCBSIL Does Not Receive Federal Financial Assistance to Administer the CHI Plan.**

It is undisputed that BCBSIL does not receive federal financial assistance for any self-funded ERISA plans that it administers on behalf of employers such as CHI.  Dkt. 88-1, Ex. I, ¶ 3.  BCBSIL's affiliate Health Care Service Corporation ("HCSC") does receive federal financial

---

[2] BCBSIL incorporates the facts set forth in its Motion for Summary Judgment [Dkt. 87].

[3] Plaintiffs devote a substantial portion of their Cross-Motion to whether certification of the putative class is appropriate, but this has no bearing on summary judgment as to the named plaintiff, C.P.  *See, e.g.*, Cross-Motion at 36 (speculating whether plans other than the named plaintiffs' plan were designed by BCBSIL); 37 (inaccurately claiming that BCBSIL administers all plans with exclusions in the same manner, even though there are more than sixteen different iterations of exclusion language).

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY JUDGMENT – 2

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

assistance for other products, such as Medicare and Medicaid. *Id.* ¶ 4. However, BCBSIL accounts for all federal payments for those products separately from BCBSIL's administration of self-funded ERISA plans. *Id.* ¶ 5. It is undisputed that the federal government requires HCSC to provide an Assurance of Compliance when receiving federal financial assistance for certain programs from HHS. Motion at 16; Cross-Motion at 4. That Assurance requires only that HCSC comply with Section 1557 for all "health program[s] or activit[ies] **for which [HCSC] receives Federal financial assistance**." Motion at 16 (citing Dkt. 88-1, Ex. I) (emphasis added).

**D.    C.P. Never Received Any Mental Health Treatment from a Qualified Mental Health Professional.**

It is undisputed that no psychiatrist or other "qualified mental health professional" ever examined C.P. to determine his ability to give informed consent prior to treatment or examined him for any underlying psychiatric conditions as part of determining the necessity and suitability of surgery. Motion at 22; Dkt. 88-1, Ex. K, ¶¶ 16-17, 187 *et seq.* Likewise, it is undisputed that Plaintiffs have offered no testimony from any treating psychiatrist concluding that C.P. was a suitable candidate for a double mastectomy at age 14. Motion at 21.

Prior to surgery, C.P. was only examined for two hours by Sharon Booker, a mental health counselor. Dkt. 94-3, Ex. M. Ms. Booker never spoke with C.P.'s doctors or reviewed any medical records. *Id.* Ms. Booker repeatedly admitted the only reason she met with C.P. was so Plaintiffs could get a letter required for C.P. to be allowed to get the double mastectomy. *Id.*, Exs. N-O. Ms. Booker has never declined to write such a letter. *Id.*, Ex. P. Ms. Booker has not met with or spoken to C.P. since she wrote the letter or since C.P. received the surgery. *Id.*, Ex. M.

As BCBSIL's expert Dr. Laidlaw has explained here and in testimony before the Ninth Circuit in *Doe v. Snyder*, there are concerns in the medical community about the insufficient quality of medical and mental health care minors receive before undergoing irreversible transgender-related services. Dkt. 88-1, Ex. K, ¶¶ 16, 247; *Doe v. Snyder*, 28 F.4th 103, 112-13 (9th Cir. 2022).

Plaintiffs' own experts agree with the Endocrine Society guideline that minors with gender

1  dysphoria should be diagnosed by a "qualified mental health professional" with training and

2  expertise in (1) child and adolescent gender development, and (2) child and adolescent

3  psychopathology.  Dkt. 104-1, Ex. C at 63:2-17; Ex. F at 51:23-53:2; Ex. K at 46:6-47:6.  Plaintiffs'

4  expert Dr. Ettner admits that C.P. did not see any qualified mental health professional prior to

5  starting puberty blockers or testosterone at age 11.  Dkt. 104-1, Ex. C at 64:13-66:1.

**III.  ARGUMENT**

6

7  **A.    BCBSIL Cannot Be Liable for Alleged Violations of Section 1557 Because BCBSIL is Not the Source of the CHI Plan Design.**

8    There is no cause of action against a TPA under Section 1557 where the TPA did not design

9  the plan.  Plaintiffs concede, as they must, that HHS and the Office of Civil Rights ("OCR") will

10  not enforce Section 1557 against a TPA when the plan sponsor, rather than the TPA, designed the

11  benefit at issue.  *See* Cross-Motion at 36 (conceding that HHS and OCR "will not enforce Section

12  1557 against a TPA with regards to benefit design when it concludes that the TPA has 'no control'

13  over the discriminatory benefit design of the self-funded plan").  This is the death knell for

14  Plaintiffs' claim against BCBSIL under the CHI Plan because there is no dispute that CHI, not

15  BCBSIL, designed the CHI Plan.

16    This has been true since the 2016 HHS Rule[4] implementing Section 1557 and remains true

17  today.  HHS/OCR's 2022 Proposed Rulemaking implementing Section 1557 states as follows:

18    We also newly address that a third party administrator may be liable under this part
19    when it is responsible for the underlying discriminatory plan design feature that is
      adopted by a group health plan. This modification is consistent with subsequent
20    case law holding the same. Accordingly, OCR will determine whether
      responsibility for the decision or alleged discriminatory action lies with the plan
21    sponsor or with the third party administrator. Where the alleged discrimination
      relates to the administration of the plan by a covered third party administrator, OCR
22    will process the complaint against the third party administrator because it is the
      entity responsible for the decision or other action being challenged in the complaint.
23    For example, if a third party administrator denies a claim because the individual's
      name suggests that they are of a certain race or national origin, or threatens to
24    expose an employee's transgender or disability status to the employee's employer,
      OCR will proceed against the third party administrator as the entity responsible for
25    the decision. In addition, OCR will pursue claims against the third party
      administrator in circumstances where the third party administrator is the entity
26    responsible for developing the discriminatory benefit design feature that was
      adopted by the employer. On the other hand, where the alleged discrimination

27  _____
[4] *See* 81 Fed. Reg. 31,432 (May 18, 2016) (the "2016 Rule").

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 4

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

relates to the benefit design of a self-insured group health plan that did not originate with the third party administrator, but rather with the plan sponsor, OCR will refer the complaint to the EEOC or the DOJ for potential investigation.

Nondiscrimination in Health and Health Education Programs or Activities, 87 Fed. Reg. 47,824, 47,876-47,877 (August 4, 2022) (the "2022 Proposed Rulemaking")).   The 2022 Proposed Rulemaking emphasizes that BCBSIL may only be liable (1) when it is "responsible for the underlying discriminatory plan design feature"; or (2) when "responsibility for the decision or other action being challenged in the complaint" lies with BCBSIL, rather than with the plan sponsor.  Neither is true here.

First, it is undisputed that CHI – not BCBSIL – drafted the exclusions for transgender-related surgeries in the CHI Plan.  Dkt. 88-1, Ex. A.  The CHI Plan is the only plan BCBSIL administers with that custom language.    Dkt. 94-1, Ex. D; Dkt. 94-1, Ex. C, Addendum A. Because CHI was the one who designed its own unique exclusion, BCBSIL cannot be held "responsible for the underlying discriminatory plan design feature." 87 Fed. Reg. 47,824, 47,876-47,877.

Second, BCBSIL cannot be liable under Section 1557 because it did not have final authority to administer claims that fell under the CHI Plan's exclusion for transgender-related surgeries.  Rather, CHI had a custom review process in which CHI itself reviewed all claims under the exclusion for transgender-related services.  Dkt. 94-1, Ex. E.   The claims administration process for the CHI Plan's exclusion was a unique, manual process whereby CHI had the final decision-making authority.  *Id.*  BCBSIL neither drafted nor had the final say in administering any exclusions for transgender-related services on behalf of CHI, so it was not responsible for "the decision or other action being challenged in the complaint."  87 Fed. Reg. 47,824, 47,876-47,877.

Plaintiffs repeatedly cite *Tovar v. Essentia Health*, 857 F.3d 771 (8th Cir. 2017), but that case supports BCBSIL, not Plaintiffs.  *Tovar* demonstrates that, from the 2016 HHS Rule implementing Section 1557 through the present, a TPA cannot be held liable for any Section 1557 violation where the TPA was not responsible for plan design: "'third party administrators are generally not responsible for the benefit design of the self-insured plans they administer and …

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1    ERISA (and likely the contracts into which third party administrators enter with the plan sponsors)

2    requires plans to be administered consistent with their terms.'"  *Id.* at 780 (Benton, J., concurring)

3    (quoting the 2016 Rule).

4         In *Tovar*, the court reversed the district court's dismissal of the claims against the TPA in

5    part because the plaintiff had sufficiently alleged that the TPA designed the plan language at issue.

6    *See id.* at 778 (reasoning that, at the pleading stage, the plaintiff had sufficiently alleged that the

7    "plan and its allegedly discriminatory terms originated with [the TPA] – not with [the plan

8    sponsor]").   Here, by comparison, there is no dispute that the employer, CHI, designed the

9    exclusion – not BCBSIL.

10        Plaintiffs also rely on *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020), *cert.*

11   *granted in part*, 141 S. Ct. 2882 (2021), *and cert. dismissed sub nom. CVS Pharmacy, Inc. v. Doe,*

12   *One*, 142 S. Ct. 480 (2021), which also supports BCBSIL.  *Doe v. CVS* involved claims brought

13   by individuals living with HIV/AIDS against CVS for allegedly administering pharmacy benefits

14   in a discriminatory manner.  The district court dismissed the claims against CVS on the pleadings,

15   and the Ninth Circuit reversed.  *Id.* at 1208.  The alleged discrimination involved a plan design

16   that originated with CVS.  *See id.* at 1207 ("CVS Caremark, requires all health plan enrollees to

17   obtain specialty medications, including HIV/AIDS drugs, through its designated specialty

18   pharmacy for those benefits to be considered 'in-network.'").  Thus, *CVS* does not in any way

19   support Plaintiffs' proposition that TPAs "may be liable for administrating a discriminatory

20   exclusion – even if they did not design it," Cross-Motion at 35, because it was undisputed that

21   CVS designed and implemented the allegedly discriminatory part of the plan.

22        The other cases Plaintiffs cite do not support the conclusion that a TPA can be liable under

23   Section 1557.  Plaintiffs cite *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273 (9th Cir. 1981), to support

24   their claim that a TPA "must always obey federal law, even when doing so would be inconsistent

25   with a specific plan term or benefit design."  Cross-Motion at 2.  But *Fernandez* was an

26   employment case, not a claim for health care benefits.  The court rejected a claim that an employer

27   violated Title VII by requiring that employees fulfill stereotypical gender roles as to keep their

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 6

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1  jobs.  *Id.* at 1276.  That case did not involve any dispute over plan design and does not apply.

2        Plaintiffs' other cases do not help them because they did not involve claims against TPAs,

3  but rather against employers or governments.  *See Kadel v. Folwell*, No. 1:19-CV-272, 2022 WL

4  2106270, at *3 (M.D.N.C. June 10, 2022), *order corrected and superseded*, No. 1:19-CV-272,

5  2022 WL 3226731 (M.D.N.C. Aug. 10, 2022) (alleging claims against a state health department

6  and state health plan, not a TPA); *Fain v. Crouch*, 342 F.R.D. 109 (S.D. W. Va. 2022) (suing state

7  health department and its commissioner, not a TPA); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024,

8  1026 (D. Alaska 2020) (suing the state, not a TPA); *Flack v. Wisconsin Dep't of Health Servs.*,

9  395 F. Supp. 3d 1001, 1006 (W.D. Wis. 2019) (suing the state health department, not a TPA);

10  *Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018) (suing state agencies and officials, not a

11  TPA).  None of these cases support holding a TPA liable under Section 1557 for an exclusion

12  designed by a plan sponsor.

13        Plaintiffs fail to cite any authority demonstrating that BCBSIL may be held liable for

14  administering the CHI Plan even though CHI designed the exclusion and acted as the final arbiter

15  for claims subject to the exclusion.  For these reasons, BCBSIL cannot be held liable under Section

16  1557 for claims administered under the CHI Plan.

17  **B.  The 2020 Rule Applies to This Case and Allows Transgender Exclusions for Any Reason.**

18

19        The 2020 Rule allows categorical exclusions of transgender related services for any reason,

20  and it is the governing law.  Plaintiffs argue that "the discrimination alleged in this case occurred

21  while the original 2016 rulemaking was in effect (which required compliance by BCBSIL in all of

22  its activities)."   Cross-Motion at 30.  However, federal courts have invalidated and permanently

23  enjoined the 2016 Rule, and thus it has no force or effect.  *Franciscan All., Inc. v. Burwell*, 227 F.

24  Supp. 3d 660, 695-96 (N.D. Tex. 2016) (declaring the 2016 Rule invalid in relevant part and

25  entering a nationwide preliminary injunction to prohibit the enforcement of the 2016 Rule's

26  "prohibitions on discrimination on the basis of gender identity"); *Franciscan All., Inc. v. Azar*, 414

27  F. Supp. 3d 928, 941, 944, 946 (N.D. Tex. 2019) (vacating the entire 2016 Rule); *Franciscan All.,*

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 7

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1  *Inc. v. Becerra*, 47 F.4th 368, 368 (5th Cir. 2022) (permanently enjoining HHS's enforcement of

2  the 2016 Rule); *see also Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485

3  F. Supp. 3d 1, 48-49 (D.D.C. 2020), *appeal dismissed*, *Whitman-Walker Clinic, Inc. v. United*

4  *States Dep't of Health & Hum. Servs.*, No. 20-5331, 2021 WL 5537747 (D.C. Cir. Nov. 19, 2021)

5  (confirming that the 2020 Rule eliminated the 2016 Rule's ban on categorical exclusions).

6          The 2022 Proposed Rulemaking could not return to the 2016 Rule's requirements because

7  it would run afoul of the holdings in the *Franciscan* cases.  Moreover, to the extent that the 2022

8  Proposed Rulemaking will change the 2020 Rule on this issue, the 2022 Proposed Rulemaking

9  cannot be imposed retroactively to impair BCBSIL's rights.  *See Henry Ford Health Sys. v. Dep't*

10  *of Health & Hum. Servs.*, 654 F.3d 660, 667 (6th Cir. 2011) ("Only express congressional

11  authorization for the agency to regulate retroactively will defeat this presumption.").  Congress

12  has not authorized HHS to regulate under the ACA retroactively.

13          As a last resort, Plaintiffs request the Court to simply ignore "the various iterations of the

14  federal regulations" and just apply "the plain language of Section 1557 and the ACA as a whole."

15  Cross-Motion at 30.  But under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984),

16  the Court must give deference to HHS's regulations implementing Section 1557.  *Chevron*

17  requires the Court to first analyze whether the particular statute speaks directly and unambiguously

18  to the issue.  467 U.S. at 842-43.  Here, the answer is no.  *Franciscan*, 227 F. Supp. 3d at 686

19  ("'Section 1557's definition of sex discrimination is ambiguous because it fails to explicitly

20  address transgender individuals and the Rule simply fills the statutory gap, implementing Section

21  1557.'").  Where, as here, either the language of the statute is ambiguous or Congress's intent is

22  not explicitly clear, "there is an express delegation of authority to the agency to elucidate a specific

23  provision of the statute."  *Chevron*, 467 U.S. at 843-44.

24          If Congress "has not directly addressed the precise question at issue," the Court cannot

25  "simply impose its own construction on the statute" but rather must look to whether "the agency's

26  answer is based on a permissible construction of the statute."  *Chevron*, 467 U.S. at 843.  This

27  means the Court "may not substitute its own construction" for HHS's interpretation of Section

1557 in the 2020 Rule.  *Id*. at 844.  Courts "should not disturb" an agency interpretation unless it clearly contradicts Congress' intent.  *Id.* at 845.  Thus, this Court can only overturn the 2020 Rule if HHS never "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  There is no dispute that HHS examined the relevant data or articulate a satisfactory explanation for the 2020 Rule.   To the contrary: every court that has addressed HHS's implementation of Section 1557 has deferred to the 2020 Rule.  *See Whitman-Walker,* 485 F. Supp. 3d 1 at 46 ("Even assuming that the 2016 Rule's prohibition on categorical coverage exclusions of gender-affirming care was lawful, the Court cannot presently conclude that the agency's decision to remove that prohibition was arbitrary and capricious."); *Religious Sisters of Mercy v. Azar*, 513 F. Supp. 3d 1113, 1131 (D.N.D.  2021) (noting that after *Whitman-Walker* and other cases enjoined parts of the 2020 Rule, the 2020 Rule's "repeal of the insurance coverage mandate for gender-transition services" remains effective); *Hennessy-Waller v. Snyder*, No. CV-20-00335-TUC-SHR, 2021 WL 1192842, at *7 (D. Ariz. Mar. 30, 2021) (denying injunctive relief under the 2020 Rule because plaintiffs were "unlikely to succeed on the merits of their claim" that Arizona's Medicaid program's policy of excluding gender reassignment surgery from coverage violates Section 1557).

The 2020 Rule is not arbitrary and capricious because HHS examined the relevant data and articulated a satisfactory explanation for the 2020 Rule.  Plaintiffs do not argue that the 2020 Rule is arbitrary and capricious.  HHS's interpretation of Section 1557 should receive deference and precludes Plaintiffs' Section 1557 claim. !!

## C.   BCBSIL May Administer the Exclusion Because it is Protected by RFRA.

Plaintiffs' claims fail because of the limitations imposed on Section 1557 by RFRA. Plaintiffs make four arguments to try to avoid RFRA: (1) that RFRA does not apply because the government is not a party; (2) that "BCBSIL is a secular entity and cannot 'borrow' CHI's alleged RFRA protection"; (3) that the Court should decline to adjudicate CHI's rights under RFRA

because CHI is not a party; and (4) that RFRA does not protect the exclusion in the CHI Plan.

Each of these arguments fails. The fact that the government is not a party does not invalidate RFRA. The Supreme Court has repeatedly stated that courts must read RFRA and Section 1557 in conjunction and must consider any limitation imposed by RFRA when adjudicating whether there has been a Section 1557 violation. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020) (RFRA and ACA are read in conjunction and courts must consider RFRA when analyzing the parameters of Section 1557). The question is not whether BCBSIL can assert a claim under RFRA (which it is not doing here), but rather whether the Court must consider the limitations imposed by RFRA on Section 1557 when adjudicating a Section 1557 claim.

### 1.   RFRA is incorporated into Section 1557 and provides an exemption from its requirements.

Plaintiffs argue that BCBSIL cannot raise RFRA because this is a lawsuit between private parties. But asking the Court to adjudicate a Section 1557 claim with a blind eye to RFRA is the equivalent of asking the Court to ignore portions of the statute. The Supreme Court has been clear that any analysis of Section 1557 must take RFRA's limitations into account. *Little Sisters,* 140 S. Ct. at 2383-84. In the 2016 Rule, the 2020 Rule, and the 2022 Proposed Rulemaking, HHS consistently interprets Section 1557 in conjunction with RFRA and directs the courts to adjudicate all Section 1557 claims consistent with RFRA. *See* 2022 Proposed Rulemaking, 87 Fed. Reg. 47,824, 47,841.

The Court must consider and defer to HHS regulations when adjudicating Section 1557, regardless of whether the dispute involves the government or solely private parties. *See, e.g., Encino Motorcars, LLC v. Navarro,* 579 U.S. 211, 213 (2016); *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008) (deferring to EEOC regulations in an Age Discrimination in Employment Act action between private parties). The Court may not, as Plaintiffs repeatedly request, ignore the HHS regulations. "Courts also look to the regulations promulgated pursuant to the statute at issue to inform" interpretation of the ACA. *Doe v. CVS*, 982 F.3d at 1211 (citing *Alexander v. Choate*,

1    469 U.S. 287, 306 (1985)); *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1102

2    (9th Cir. 2013)).

3        The Supreme Court and HHS agree the ACA cannot be read absent RFRA, and RFRA's

4    requirements constitute an exception to the ACA.  "No provision of the ACA abrogates RFRA,"

5    and the Supreme Court's "decision in *Hobby Lobby* . . .  established that application of the [ACA]

6    must conform to RFRA's demands."  *Little Sisters*, 140 S. Ct. at 2389 (Alito, J., concurring)

7    (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 736 (2014)).  As the court emphasized

8    in *Religious Sisters*,

9          The 2016 Rule excepted applications that "would violate applicable Federal
   statutory protections for religious freedom and conscience." 81 Fed. Reg. at 31,466
10      (formerly codified at 45 C.F.R. § 92.2(c)).  More specifically, HHS explained that
   the RFRA "is the proper means to evaluate any religious concerns about the
11      application of Section 1557 requirements." *Id.* at 31,380.  HHS went on to note
   that it would evaluate "individualized and fact specific" RFRA claims "on a case-
12      by-case basis."

13    *Religious Sisters,* 513 F. Supp. 3d at 1125; *Nondiscrimination in Health Programs and Activities*,

14    87 Fed. Reg. 47,824, 47,841.  This Court therefore must yield to any limitations that HHS puts on

15    its interpretation of the ACA as required by the Supreme Court. *See Little Sisters*, 140 S. Ct. at

16    2391 (a third-party providing coverage under a plan which violates the plan sponsor's religious

17    belief violates RFRA).

18        A ruling that courts may only enforce RFRA when the government is a party would

19    eviscerate Congress' intent.  Title IX contains an exemption for religious organizations when

20    compliance would conflict with religious beliefs.  Title IX, at 20 U.S.C. section 1681(a)(3) (Title

21    IX "shall not apply" to educational institutions that are "controlled by a religious organization," to

22    the extent that application of Title IX "would not be consistent with the religious tenets of each

23    organization.").  However, Section 1557 does not incorporate Title IX's religious exemption.  *See*

24    *Whitman-Walker*, 485 F. Supp. 3d at 43.  The 2016 Rule "decline[d] to ... import Title IX's blanket

25    religious exemption into Section 1557." *Id.*  The 2020 Rule reversed the 2016 Rule and explicitly

26    incorporated Title IX's religious exemption into Section 1557.  *See id.*  But *Whitman-Walker*

27    invalidated this this part of the 2020 Rule.  *See id.* at 44.

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 11

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1    However, when doing so, *Whitman-Walker* concluded that the Title IX exemption was

2  unnecessary because it would be redundant with RFRA, and RFRA was part of Section 1557:

3        In closing this particular area of discussion, the Court notes that nothing in this
         decision renders religiously affiliated providers devoid of protection.  Far from it.
4        To name a few safeguards: the ACA instructs that no provision "shall be construed
         to have any effect on Federal laws regarding (i) conscience protection; (ii)
5        willingness or refusal to provide abortion; and (iii) discrimination on the basis of
         the willingness or refusal to provide, pay for, cover, or refer for abortion or to
6        provide or participate in training to provide abortion."  42 U.S.C. § 18023(c)(2).
         The 2020 Rule, moreover, explicitly acknowledges that Section 1557 is subject to
7        RFRA's protections of religious conscience from government-imposed burdens,
         *see* 45 C.F.R. § 92.6(b) — protections the Supreme Court has confirmed are "very
8        broad."  *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 134 S. Ct. 2751,
         189 L. Ed. 2d 675 (2014).  Nothing in the Court's decision today implicates in any
9        fashion the applicability of these independent statutory safeguards.

10 *Id.*  If RFRA only applies when the government is a party, such "independent statutory safeguards"

11  are rendered meaningless.  Because RFRA must be read alongside Section 1557, the government

12  need not be a party for RFRA to apply.

13    The cases cited by Plaintiffs do not apply.  In *City of Boerne v. Flores*, 521 U.S. 507 (1997),

14  the Supreme Court held that RFRA does not apply to state and local law.  *See Sutton v. Providence*

15  *St. Joseph Med. Ctr.*, 192 F.3d 826, 832 (9th Cir. 1999) (characterizing *City of Boerne* as "holding

16  that RFRA is unconstitutional as applied to state governments").  Here, Plaintiffs do not assert claims

17  under any state or local law.

18    The other cases cited by Plaintiffs do not apply because none of them involves a statute that

19  the courts and regulators have explicitly held must be read in conjunction with RFRA.  In *Sutton*, 192

20  F.3d at 829, the plaintiff alleged that a hospital violated RFRA by refusing to hire him because he

21  would not provide his social security number on religious grounds.  But neither the Supreme Court

22  nor any federal agency has found that the social security laws must be read in conjunction with RFRA

23  (unlike the ACA).  Similarly, in *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731 (7th

24  Cir. 2015), the archbishop of a bankrupt archdiocese asserted RFRA as a defense to a claim by the

25  unsecured creditors' committee to recover funds in a cemetery trust.  Again, neither the Supreme

26  Court nor any federal agency has found that the federal bankruptcy laws must be read in conjunction

27  with RFRA (unlike the ACA).  Likewise, in *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*,

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 12

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

617 F.3d 402 (6th Cir. 2010), the plaintiff alleged that RFRA protected his infringement of the Seventh Day Adventist church's trademarks.  He alleged he had a sincere belief "that God requires him to continue his infringing use of the plaintiffs' marks.  Being compelled to stop could substantially burden his religious practice." *Id.* at 410.  Again, neither the Supreme Court nor any federal agency has found that federal trademark laws must be read in conjunction with RFRA, unlike the ACA.  Finally, *Tomic v. Cath. Diocese of Peoria*, 442 F.3d 1036 (7th Cir. 2006), involved a suit by an organist of a Catholic diocese claiming a violation of the Age Discrimination in Employment Act (ADEA).  Neither the Supreme Court nor any federal agency has found that the ADEA must be read in conjunction with RFRA (unlike the ACA).

None of the regulations implementing any of the statutes implicated in Plaintiffs' case explicitly state that RFRA is an exception to and must be analyzed in conjunction with the statute at issue.  No court has applied RFRA to allow an exception to the trademark, social security, or bankruptcy laws or to the ADEA.  In contrast, here, the Supreme Court has held that the ACA cannot be read without RFRA. *Little Sisters*, 140 S. Ct. at 2389 (citing *Burwell*, 573 U.S. at 736).  RFRA limits the scope of Section 1557.

## 2.  BCBSIL has standing to argue that Section 1557 does not prohibit BCBSIL from enforcing the Exclusion.

Plaintiffs argue that "BCBSIL is a secular entity and cannot 'borrow' CHI's alleged RFRA protection." Cross-Motion at 39.  This is incorrect.  Plaintiffs deliberately pled their complaint to sue the TPA and not the actual party responsible for the exclusion, but that does not allow them to avoid RFRA.[5]  Both the Supreme Court and HHS prohibit requiring a TPA to take action that would violate an employer's sincere religious belief as reflected in the employer's self-funded ERISA plan.

[5] As stated in BCBSIL's Motion, Plaintiffs have sued the wrong party.  Plaintiffs have put CHI's RFRA rights at issue by suing BCBSIL, yet strategically avoided suing CHI to tray to side-step RFRA. But the Court cannot compel BCBSIL to take any action related to gender reassignment surgery without impairing CHI's rights.  *See Takeda v. Nw. Nat. Life Ins. Co.*, 765 F.2d 815, 819-20 (9th Cir. 1985) (noting that the absent defendant, Microdata, the employer who sponsored the plan, was a necessary party because, as here, the plan was self-funded "and in the event of an adverse result, Microdata would satisfy the judgment or would indemnify Northwestern").

1    The Supreme Court has rejected efforts to do an end-run around RFRA by claiming that

2    the action is against the TPA, not the entity holding the religious belief.  In *Little Sisters* and *Hobby*

3    *Lobby*, the Supreme Court held that the contraception mandate violated RFRA even if the

4    government provided coverage at no cost to plan members through the plan's TPA for claims that

5    violated the plan sponsor's religious beliefs.  *Little Sisters*, 140 S. Ct. at 2391 (a third-party

6    providing coverage under a plan which violates the plan-sponsor's religious belief violates RFRA);

7    *Hobby Lobby,* 573 U.S. at 731 (same).  The Court held that the government could not force the

8    plans' TPAs to administer coverage that violated the plan's religious views.  *See Little Sisters,* 140

9    S. Ct. at 2391 ("[T]he contraceptive mandate imposes a substantial burden on any employer who,

10   like the Little Sisters, has a sincere religious objection to the use of a listed contraceptive and a

11   sincere religious belief that compliance with the mandate (through the accommodation [which

12   required the TPA to administer contraception coverage] or otherwise) makes it complicit in the

13   provision to the employer's workers of a contraceptive to which the employer has a religious

14   objection.").  HHS had developed an "accommodation" requiring TPAs to cover contraception

15   and receive reimbursement from the government.  *Id*.  But the Supreme Court concluded that

16   making the TPAs provide coverage under the plans still violated RFRA by making the TPAs

17   "complicit in conduct [the religious employers] find immoral."  *Id*.  The Supreme Court concluded

18   that it violated RFRA to force the employer's TPAs to administer the plan in a way that violated

19   the employers' religious views.  *Id.* at 2386.

20       Thus, *Hobby Lobb*y and *Little Sisters* make clear that the courts cannot avoid RFRA just

21   because the claim is against the TPA, not the employer.

22       Plaintiffs attempt to distinguish *Little Sisters* and *Hobby Lobby* by arguing that "TPAs have

23   no independent legal obligation to comply with the contraception mandate when administering

24   health plans, as that requirement applies only to group health plans and issuers, not TPAs."  Cross-

25   Motion at 41 (citing 42 U.S.C. § 300gg-13(a)(4)).  But the Supreme Court has made clear that no

26   reading of the ACA can override "RFRA's demands."  *Little Sisters*, 140 S. Ct. at 2389.  Moreover,

27   TPAs have no independent legal obligation to comply with Section 1557 when the employer

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 14

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   designs the plan.  *See* 2022 Proposed Rulemaking, 87 Fed. Reg. 47,824, 47,876-47,877.  Unlike

2   transgender exclusions, this Court has held that failure to provide benefits for contraception is

3   discrimination on the basis of sex.  *See Erickson v. Bartell Drug Co.*, 141 F. Supp. 2d 1266 (W.D.

4   Wash. 2001).  With respect to RFRA, there is no distinction between the contraception mandate

5   and the transgender-related services sought by Plaintiffs.  RFRA applies as an exception to both.

6         **3.**      **RFRA protects the CHI exclusion.**

7         The Court must deny Plaintiffs' effort to require BCBSIL to administer the CHI plan in a

8   manner contrary to CHI's religious belief.  Plaintiffs argue that the Court should invalidate the

9   exclusion because "[u]nder RFRA, the government may impose even a substantial burden on a

10  person's exercise of religion" if the "application of the burden to the person: (1) is in furtherance

11  of a compelling governmental interest; and (2) is the least restrictive means of furthering that

12  compelling governmental interest."  Cross-Motion at 43.  Plaintiffs argue that invalidation of the

13  exclusion "'constitutes the least restrictive means of furthering the government's compelling

14  interest in eradicating discrimination [] on the basis of sex.'"  *Id.* at 44.

15        But the Supreme Court has already decided this issue.  The Supreme Court has held that if

16  a health care service violates an employer's religious belief, the consequent civil liability on the

17  employer imposes a substantial burden.  The Supreme Court held that "the [contraception]

18  mandate substantially burdened respondents' free exercise, explaining that '[if] the owners comply

19  with the HHS mandate, they believe they will be facilitating abortions, and if they do not comply,

20  they will pay a very heavy price.'"  *Little Sisters*, 140 S. Ct. at 2377 (quoting *Hobby Lobby*, 573

21  U.S. at 736).  "'If these consequences do not amount to a substantial burden,' we stated, 'it is hard

22  to see what would.'"  *Id.* (quoting *Hobby Lobby*, 573 U.S. at 736).  Indeed, the Supreme Court

23  held that this burden could not be mitigated even if the TPA provided the coverage to the religious

24  employer's plan members and was reimbursed by the government.  *Id.* at 2391, 2386.  In *Little*

25  *Sisters*, the Supreme Court upheld HHS's "religious" and "moral" exemptions from the

26  contraception mandate.  *Id.* at 2386.  This situation is no different.  The only way to protect CHI's

27  free exercise of religion is to uphold the exclusion.

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 15

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

1          **4.        There is no dispute that the CHI exclusion is religious-based.**

2          The uncontradicted evidence establishes that the CHI exclusion is religious-based, and

3  Plaintiffs have not presented any evidence to the contrary.  Every court that has addressed

4  transgender exclusions in Catholic health plans holds that the exclusions are religious based.  *E.g.*,

5  *Franciscan,* 47 F. 4th at 368; *Little Sisters*, 140 S. Ct. 2367; *Religious Sisters,* 513 F. Supp. 3d

6  1113.   Plaintiffs now, for the first time, claim that a letter from CHI, as the plan sponsor,

7  responding to their claim is "inadmissible unauthenticated hearsay."   Cross-Motion at 6 n.6.

8  Ironically, Plaintiffs attached and quoted from this letter in both their initial and amended

9  complaints. Dkt. 1, App. H; Dkt. 38, App. H.  The letter states that the transgender-related service

10 "specifically excluded under the Plan is gender reassignment surgery, as this surgery has been

11 determined not to align with the teachings and doctrine of the Catholic Church." Dkt. 1, App. H;

12 Dkt. 38, App. H.  *Id.*

13         Plaintiffs admitted the authenticity of the CHI letter when they attached and quoted it in

14 their pleadings.  *See, e.g.*, *Carolina v. JPMorgan Chase Bank NA*, No. CV-19-05882-PHX-DWL,

15 2021 WL 5396066, at *6 (D. Ariz. Nov. 17, 2021) ("Plaintiff does not develop any argument as to

16 why the specific documents proffered by Defendants are inauthentic.  Indeed, Plaintiff attaches

17 many of the same exhibits to her summary judgment response.").

18         Moreover, the CHI Letter is not inadmissible hearsay, for numerous reasons.  The CHI

19 Letter is part of the ERISA administrative record because CHI, the plan sponsor, wrote to Plaintiffs

20 as part of the ERISA-mandated claims process.  *See Black v. Long Term Disability Ins*., 582 F.3d

21 738, 746 n.3 (7th Cir. 2009) (considering consulting physicians' reports despite their lack of

22 firsthand clinical knowledge because courts review the entire ERISA administrative record,

23 including evidence otherwise considered hearsay); *Rice v. ADP TotalSource, Inc*., 936 F. Supp. 2d

24 951, 961 (N.D. Ill. 2013) ("The Court is not bound by the Federal Rules of Evidence when

25 reviewing an ERISA administrator's benefits determination."); *Koloff v. Metropolitan Life Ins.

26 Co*., No. 1:13-cv-02060, 2014 WL 3420990, at *3 (E.D. Cal. July 14, 2014) ("[H]earsay objections

27 are not well-founded in an ERISA action where the Court 'review[s] the entire administrative

1  record, including hearsay evidence relied upon by the administrator.'").

2      The CHI letter is also admissible under the residual exception to the hearsay rule.  *See* Fed.

3  R. Evid. 807; *F.T.C. v. Figgie Intern, Inc.*, 994 F.2d 595, 608-09 (9th Cir. 1993) (finding consumer

4  letters to the FTC regarding goods purchased were admissible under the residual exception because

5  they were material and probative; independently sent and thus trustworthy; and the defendant had

6  adequate notice of them).  In *Steinberg v. Obstetrics-Gynecological And Infertility Grp., P.C.*, 260

7  F. Supp. 2d 492, 496-97 (D. Conn. 2003) (letter from the claimant's former attorney describing

8  the claims administration process to the current attorney who took over the representation was

9  admissible under the residual exception because it satisfied the requirements of trustworthiness,

10  materiality, probative importance, and the interests of justice).

11      The CHI Letter, like the letters in *Figgie Intern* and *Steinberg*, is material to and probative

12  of this dispute because it explains the basis for CHI's exclusion and its denial of services to

13  C.P.  As to trustworthiness, the CHI Letter is a pre-litigation transmission explaining C.P.'s denial

14  of benefits and therefore is a trustworthy "explanatory" letter, and not an "advocacy

15  piece."  *Steinberg*, 260 F. Supp. 2d at 496 (describing the attorney letter as an "explanatory piece"

16  and satisfying the trustworthiness requirement).  Plaintiffs also had adequate notice of the CHI

17  Letter being admitted into evidence, as Plaintiffs themselves attached the CHI Letter to their

18  pleadings.  The CHI letter is material, probative, trustworthy, and admissible and establishes that

19  CHI added the exclusion in its plan because of sincere religious belief.

20  **D.   Section 1557 Does Not Apply Here Because BCBSIL Does Not Receive Any Federal Financial Assistance for its TPA Activities.**

21      Section 1557 does not apply here because BCBSIL's operations as a TPA for self-funded

22  ERISA plans do not receive federal financial assistance.  The 2020 Rule specifies that healthcare

23  entities are subject to Section 1557 only for the specific parts of their operations that receive and

24  are earmarked for federal financial assistance.  *See id.* § 92.3(b) ("For any entity not principally

25  engaged in the business of providing healthcare, the requirements applicable to a 'health program

26  or activity' under this part shall apply to such entity's operations **only to the extent any such**

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 17

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   **operation receives Federal financial assistance**.") (emphasis added).

2         Plaintiffs argue that BCBSIL is "an arm of" HCSC, which receives federal financial

3   assistance for other activities.  *See* Cross-Motion at 1.  But Plaintiffs do not dispute that BCBSIL

4   does not receive federal financial assistance for its administration of any self-funded ERISA plans,

5   including the CHI Plan.  Dkt. 88-1, Ex. I, ¶ 3.  It is also undisputed that BCBSIL accounts for all

6   federal payments separately from BCBSIL's administration of self-funded ERISA plans.  *Id.* ¶ 5.

7   Plaintiffs have offered no evidence to the contrary.

8         BCBSIL provides an Assurance of Compliance to the federal government in consideration

9   for receiving federal financial assistance for certain parts of its operation.  Motion at 16.  That

10  Assurance states only that it is in compliance with Section 1557 for all "health program[s] or

11  activit[ies] **for which [HCSC] receives Federal financial assistance."**  Motion at 16 (citing Dkt.

12  88-1, Ex. I, Exhibit A).

13        Moreover, HHS does not consider BCBSIL, as a TPA or insurer, to be principally engaged

14  in providing health care.  Under the 2020 Rule, "an entity principally or otherwise engaged in the

15  business of providing health *insurance* shall not, by virtue of such provision, be considered to be

16  principally engaged in the business of providing *healthcare*."  *Id.* (emphases added); *see also*

17  *Religious Sisters*, 513 F. Supp. 3d at 1128 (citing 2020 Rule, 85 Fed. Reg. at 37,160) (The "entirety

18  of federally funded insurers' operations no longer automatically qualifies for regulation merely by

19  virtue of selling *or administering* health insurance plans.") (emphasis added).[6]

20        Thus, a TPA such as BCBSIL that is not principally involved in providing health care (as

21  compared to health insurance) and does not receive federal financial assistance as a TPA cannot

22  be liable under Section 1557.  Neither BCBSIL (as TPA) nor the plan sponsors can be held liable

23  if they do not receive federal financial assistance. 85 Fed. Reg. at 37,173-74 ("[T]o the extent that

24

25  [6] Plaintiffs attempt to distinguish the opinion in *Religious Sisters* as "merely recount[ing] the

26  changing regulatory landscape surrounding Section 1557."  Motion at 29 n.13.  Plaintiffs do not dispute, however, that the court in *Religious Sisters* properly relied on the 2020 Rule, which was

27  in effect when that court rendered its opinion and is still in effect today.  For the reasons described herein and in BCBSIL's Motion, Dkt. 87, the 2020 Rule is entitled to deference under *Chevron*.

1  employer-sponsored group health plans do not receive Federal financial assistance and are not

2  principally engaged in the business of providing healthcare (as set forth in the rule), they would

3  not be covered entities.").[7]

4         BCBSIL does not principally provide healthcare or receive federal financial assistance as

5  a TPA, and therefore it cannot be held liable under Section 1557 for its TPA activities.

6  **E.     The Exclusion Does Not Discriminate on the Basis of Sex Because There is No Medical
         Consensus Regarding Transgender-Related Services.**

7         The Court should grant summary judgment in favor of BCBSIL and deny Plaintiffs' Cross-

8  Motion because the exclusion in the CHI Plan does not discriminate on the basis of sex.  To prevail

9  on summary judgment, Plaintiffs must show that the WPATH standards upon which they

10 exclusively rely establish the medical consensus, and they have failed to make that showing.  The

11 lack of medical consensus regarding gender reassignment surgery defeats Plaintiffs'

12 discrimination claim. In *Whitman-Walker*, the court upheld the 2020 Rule's determination that

13 categorical exclusions for transgender-related services did not discriminate on the basis of sex

14 because "HHS thoroughly considered the evidence Plaintiffs raise, but nevertheless concluded that

15 'there is no medical consensus to support one or another form of treatment for gender dysphoria.'"

16 *Whitman-Walker*, 485 F. Supp. 3d at 48–49.  Likewise, here the Court cannot find that the

17 exclusion discriminates on the basis of sex because there is no medical consensus regarding

18 transgender-related services.  As in *Whitman-Walker*, Plaintiffs cannot show that categorical

19 exclusions for transgender-related services discriminate on the basis of sex "simply by pointing to

20 evidence that the agency plainly took into account."  *Id.*

21

22

23 [7]Plaintiffs take a sentence from the 2022 Proposed Rulemaking out of context when they state that
   a TPA is subject to Section 1557 when it "receives Federal financial assistance and is deemed to
24 be principally engaged in the provision or administration of health programs or activities." Motion
   at 35-36.  That same paragraph of the 2020 Rule, however, then clarifies that TPAs cannot be
25 liable under the statute if the allegedly discriminatory term did not "originate" with the TPA.  2020
   Rule, 87 Fed. Reg. 47824, 47876.  That is because, as the 2020 Rule recognizes, ERISA "requires
26 group health plans to be administered consistent with their terms . . [TPAs] are unable to change
   any discriminatory design features in the self-insured plans they administer to comply with Section
27 1557's requirements." *Id*.

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 19

Plaintiffs recognize that, in order to establish that the exclusion in the CHI Plan discriminates on the basis of sex, they must prove that the surgery for which they seek coverage is "well-established, widely accepted, and evidence-based."  Cross-Motion at 22.  But they cannot establish this because "[t]here is ongoing debate and study in the medical community regarding gender affirmative treatment."  Dkt. 88-1, Ex. K, ¶ 14 (analysis on the lack of consensus in the medical community).  "The medical community is divided on many issues related to the appropriate medical care for gender identity, and the necessity or value of gender affirmative care. This is especially true for minors."  *Id.; see also* Appendix 1 (Megan Twohey and Christina Jewett, *They Paused Puberty, but Is There a Cost?*, N.Y. TIMES (Nov. 14, 2022), https://www.nytimes.com/2022/11/14/health/puberty-blockers-transgender.html (noting growing concern in the medical community about use of puberty blockers)).

The fact that there is more gender reassignment surgery being done in the United States than in the past does not necessarily support that the medical community supports it with clear consensus.  BCBSIL's expert, Dr. Laidlaw, explains that there is concern in the medical community regarding perfunctory treatment of minors, as it shows the insufficient quality of medical and mental health care minors receive before undergoing irreversible transgender-related services. Dkt. 88-1, Ex. K, ¶¶ 16, 247.  Despite agreeing with the Endocrine Society's Guidelines mandating that a minor be diagnosed by a qualified mental health professional, Plaintiffs' expert reports ignore the Endocrine Society Guidelines recommending that minors with gender dysphoria be diagnosed by a qualified mental health professional with training and expertise in (1) child and adolescent gender development, and (2) child and adolescent psychopathology.  Dkt. 104-1, Ex. C at 63:2-17; Ex. F at 51:23-53:2; Ex. K at 46:6-47:6.

In fact, the Ninth Circuit in *Snyder* concluded, based in part on Dr. Laidlaw's testimony, that the plaintiffs in that case had failed to prove medical necessity in part because "Doe failed to provide a declaration from any psychiatrist or medical doctor who is treating him that attested to the necessity and suitability of the surgery in his particular case" and because "Doe's expert psychiatrist had not opined as to whether himself is a suitable candidate for surgery and had not

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 20

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1    met or examined Doe." *Snyder*, 28 F.4th at 112–13.

2         In *Snyder*, the Ninth Circuit distinguished *Edmo v. Corizon*, Inc., 935 F.3d 757, 784-85

3    (9th Cir. 2019).  The Ninth Circuit found that in *Edmo*, following a bench trial, "the district court

4    in a 'carefully considered, 45-page opinion,' supported by 'detailed factual findings [that] were

5    amply supported by its careful review of extensive evidence and testimony,' determined that

6    gender confirmation surgery was 'medically necessary to treat Edmo's gender dysphoria.'"

7    *Snyder*, 28 F.4th at 113 (quoting *Edmo*, 935 F.3d at 780).  Based on the cursory treatment of the

8    minor in that case, *Snyder* concluded that "*Edmo* is factually and procedurally distinguishable."

9    *Id.* at 113.  Here, unlike *Edmo* and like *Snyder*, no treating psychiatrist or other qualified mental

10   health professional examined C.P. to determine his ability to give informed consent nor examined

11   him for underlying psychiatric conditions as part of determining the necessity and suitability of

12   surgery.  Motion at 22; Dkt. 88-1, Ex. K, ¶¶ 16-17, 187 *et seq*.  Likewise, it is undisputed that no

13   treating psychiatrist concluded that C.P. was a suitable candidate for a double mastectomy at age

14   14.  Motion at 21.

15        Because there is no medical consensus regarding the propriety of gender-reassignment

16   surgery and other transgender-related services, both for C.P. in particular and in the community as

17   a whole, Plaintiffs' Section 1557 claim fails.  As in *Whitman-Walker* and *Snyder*, Plaintiffs have

18   not shown that the exclusion in the CHI Plan constitutes discrimination on the basis of sex.

19                              **IV.    CONCLUSION**

20        BCBSIL respectfully requests this Court grant BCBSIL's motion for summary judgment

21   [Dkt 87] and deny Plaintiffs' cross-motion for summary judgment [Dkt. 96].

22

23

24

25

26

27

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 21

Dated this 14th day of November, 2022.

KILPATRICK TOWNSEND & STOCKTON LLP

By_____/s/ Gwendolyn C. Payton_____
      Gwendolyn C. Payton, WSBA No. 26752
      gpayton@kilpatricktownsend.com
      John R. Neeleman, WSBA No. 19752
      jneeleman@kilpatricktownsend.com
      1420 Fifth Ave., Suite 3700
      Seattle, WA 98101
      Telephone: (206) 626-7714
      Facsimile: (206) 623-6793

*Counsel for Blue Cross Blue Shield of Illinois*

BCBSIL'S RESPONSE TO PLAINTIFFS' CROSS-SUMMARY
JUDGMENT MOTION AND REPLY IN SUPPORT OF SUMMARY
JUDGMENT – 22

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## CERTIFICATE OF SERVICE

I certify that on the date indicated below I caused a copy of the foregoing document, BLUE CROSS BLUE SHIELD OF ILLINOIS'S RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT [DKT. 96] AND REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT [DKT. 87] to be filed with the Clerk of the Court via the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| **Eleanor Hamburger**<br>SIRIANNI YOUTZ SPOONEMORE<br>HAMBURGER<br>3101 WESTERN AVENUE STE 350<br>SEATTLE, WA 98121<br>206-223-0303<br>Fax: 206-223-0246<br>Email: ehamburger@sylaw.com | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Jennifer C Pizer**<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC<br>4221 WILSHIRE BLVD., STE 280<br>LOS ANGELES, CA 90010<br>213-382-7600<br>Email: jpizer@lambdalegal.org | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Omar Gonzalez-Pagan**<br>LAMBDA LEGAL DEFENSE AND<br>EDUCATION FUND, INC. (NY)<br>120 WALL STREET<br>19TH FLOOR<br>NEW YORK, NY 10005<br>212-809-8585<br>Email: ogonzalez-pagan@lambdalegal.org | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |

DATED this 14th day of November, 2022.

KILPATRICK TOWNSEND & STOCKTON LLP

By:/s/ Gwendolyn C. Payton
Gwendolyn C. Payton, WSBA #26752
*Counsel for Blue Cross Blue Shield of Illinois*

CERTIFICATE OF SERVICE – 23