UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard, individually and on behalf of others similarly situated; and PATRICIA PRITCHARD,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | CASE NO. 3:20-cv-06145-RJB<br><br>ORDER ON MOTIONS TO EXCLUDE |

This matter comes before the Court on Defendant Blue Cross Blue Shield of Illinois's ("Blue Cross") Motion to Exclude Plaintiffs' Experts under *Daubert* (Dkt. 103) and Plaintiffs' Consolidated Motion to Exclude Expert Testimony of Michael Laidlaw, M.D., Lawton R. Burns, Ph.D., and Scott Carr Ph.D. (Dkt. 107). The Court has considered the pleadings filed regarding the motions and the remaining record.

In this class action, Plaintiff C.P., a transgender male and class representative, and his mother, Plaintiff Patricia Pritchard, claim that Defendant Blue Cross violated the anti-

ORDER ON MOTIONS TO EXCLUDE - 1

discrimination provision, Section 1557, of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116, when it administered a discriminatory exclusion of gender-affirming care in self-funded health care plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Dkt. 1. Now pending are the parties' motions to exclude various experts pursuant to Fed. R. Civ. P. ("Rule") 702 and *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993). Dkts. 103 and 107. For the reasons provided below, the Blue Cross's motion (Dkt. 103) should be denied without prejudice and the Plaintiffs' motion (Dkt. 107) should be denied without prejudice as to Drs. Laidlaw and Burns and granted, in part, as to Dr. Carr.

To the extent the motions (Dkts. 103 and 107) are denied without prejudice, these rulings may be revisited at trial, if appropriate, particularly on relevance issues.

**Background**. The Plaintiffs offer the testimony of Dr. Randi C. Ettner, Dr. Dan Karasic and Dr. Loren S. Schechter as evidence that gender-affirming care is medically necessary. The Plaintiffs rely on the opinion of Dr. Frank G. Fox to estimate the number of people in the class.

Blue Cross offers the testimony of Dr. Michael Laidlaw as evidence that gender-affirming care is not medically necessary. It relies on Dr. Lawton R. Burns' testimony for the proposition that, if this Court determines that Blue Cross may not administer gender-affirming care exclusions, it will cost employers and consumers more. Blue Cross offers the testimony of Dr. Scott Carr to contest the testimony of Plaintiffs' expert, Dr. Fox, regarding the numbers of class members.

**Standard**. Rule 702 provides that,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

ORDER ON MOTIONS TO EXCLUDE - 2

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

"Before admitting expert testimony into evidence, the district court must perform a gatekeeping role of ensuring that the testimony is both "relevant" and "reliable" under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019)(*citing Daubert* at 597). To be relevant, the expert testimony must "logically advance a material aspect of the party's case." *Id.* (*internal quotation marks and citations omitted*). Expert's testimony must also have "a reliable basis in the knowledge and experience of the relevant discipline." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999). As to reliability, this court must examine "whether the reasoning or methodology underlying the testimony is scientifically valid and properly can be applied to the facts in issue, with the goal of ensuring that the expert employs . . . the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Ruvalcaba-Garcia* at 1189 (*internal quotation marks and citations omitted*). The party offering the expert's testimony has the burden of proving admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

**BLUE CROSS'S MOTION TO EXCLUDE**

  **A. Plaintiffs' Experts on Medical Necessity – Drs. Ettner, Karasic, and Schechter**

  The Plaintiffs have shown that these witnesses qualify as experts to testify about the medical necessity of gender-affirming care. Dr. Ettner, is a clinical psychologist with over 35 years of experience treating over 3,000 people, almost one third of whom were minors, with gender dysphoria and issues related to gender variance. Dkts. 98-1 at 2-5; 116-2 at 4-5. She has

ORDER ON MOTIONS TO EXCLUDE - 3

co-authored medical texts, including portions of the World Professional Association for Transgender Health ("WPATH") Standards of Care for the Health of Transsexual, Transgender and Gender-Nonconforming People[1] ("WPATH Standards") and published peer-reviewed scientific articles on the standards of care for the health of transgender people. Dkt. 98-1 at 3-5; 28-49.

Dr. Karasic is a board-certified psychiatrist with over 30 years-experience working with people with gender dysphoria; one-third of which were minors. Dkts. 98-2 at 3; 116-3 at 7. Like Dr. Ettner, Dr. Karasic has co-authored medical texts, including portions of the WPATH Standards and published peer-reviewed scientific articles on the standards of care for the health of transgender people. Dkt. 98-2 at 3-4 and 25-51.

Dr. Schechter is a board-certified plastic surgeon with 27 years of experience who specializes in performing gender confirming surgeries; between 10-20% of his patients are minors. Dkts. 104-1 at 57-59; 116-4 at 4-5. Dr. Schechter has authored texts on the standard of care regarding surgical and postoperative care for people having gender-affirming surgery, including portions of the WPATH Standards and "The Surgeon's Relationship with the Physician Prescribing Hormones and the Mental Health Professional." Dkt. 104-1 at 57-135. He

---

[1] "Many of the major medical and mental health groups in the United States—including the American Medical Association, the American Medical Student Association, the American Psychiatric Association, the American Psychological Association, the American Family Practice Association, the Endocrine Society, the National Association of Social Workers, the American Academy of Plastic Surgeons, the American College of Surgeons, Health Professionals Advancing LGBTQ Equality, the HIV Medicine Association, the Lesbian, Bisexual, Gay and Transgender Physician Assistant Caucus, and Mental Health America—recognize the WPATH Standards of Care as representing the consensus of the medical and mental health communities regarding the appropriate treatment for transgender and gender dysphoric individuals." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019). While most courts agree, some do not. *Id.* (citing *Gibson v. Collier,* 920 F.3d 212, 221 (5th Cir. 2019)(finding that the WPATH Standards "reflect not consensus, but merely one side in a sharply contested medial debate")).

ORDER ON MOTIONS TO EXCLUDE - 4

has also authored several peer-reviewed publications on the provision of gender-affirming surgery as a treatment for gender dysphoria. *Id.*

Drs. Ettner, Karasic, and Schechter qualify as experts to testify about the necessity and efficacy of gender-affirming medical care for both adults and minors. To the extent that Blue Cross moves to exclude their opinions by asserting that they do not have experience with minor patients, its motion is without merit. The record indicates that all three have experience with minor patients.

Turning to the issue of relevancy, Blue Cross argues that Drs. Ettner, Karasic, and Schechter's testimony is irrelevant on whether Blue Cross violated Section 1557. Dkt. 103. The Plaintiffs properly point out that one of Blue Cross's defenses is that there is a lack of medical consensus regarding the value of various gender-affirming treatments and so the Plan (and Blue Cross's administration of the same) did not discriminate on the basis of sex. Drs. Ettner, Karasic, and Schechter's testimony is relevant on those issues.

Further, their testimony is reasonably reliable. Blue Cross maintains that Drs. Ettner and Karasic's methodology is unreliable because they selectively relied on the WPATH Standards and ignored the 2017 Endocrine Society Clinical Practice Guidelines on the Treatment of Gender-Dysphoric/Gender-Incongruent Persons ("Endocrine Society Guidelines"). Dkt. 103. Specifically, Blue Cross argues that these experts agreed that the Endocrine Society Guidelines recommends that a mental health professional with training/experience in child and adolescent gender development should make the diagnosis of gender dysphoria or gender incongruence. *Id.* It then argues that C.P. was not diagnosed by a mental health professional and asserts, then, that Drs. Ettner and Karasic's opinions, that his treatment was medically necessary, is unreliable. The Plaintiffs point out that Drs. Ettner and Karasic relied on their education, training,

ORDER ON MOTIONS TO EXCLUDE - 5

knowledge of the peer reviewed literature in forming their opinions. Dkts. 98-1 and 98-2. They also reviewed C.P.'s medical records and met with C.P. and his parents. Dkts. 98-1 at 6 and 98-2 at 6. Drs. Ettner and Karasic both testified that Dr. Hatfield, (C.P.'s family doctor who first made his gender dysphoria diagnosis and had around 20-years experience working with transgender adolescents (Dkt. 116-11)) and was qualified to make the diagnosis based on his provision of metal health care in his practice. Dkt. 116-2 at 13-16. Further, whether Plaintiffs' experts ignored contrary evidence or opinions do not necessarily make them unreliable – those issues are best left for the fact finder.

Blue Cross maintains that the Drs. Ettner, Karasic and Schechter ignore various medical literature that does not support their conclusions and so their opinions are unreliable. Dkt. 93. The Plaintiffs properly point out that the literature that Blue Cross points to is not peer-reviewed or published by medical organizations; it is not original research, but are reviews of existing literature. Drs. Ettner, Karasic and Schechter's failure to discuss them here does not make their opinions unreliable.

Blue Cross also argues that Drs. Ettner, Karasic and Schechter's opinions are unreliable because they failed to account for the impact of side effects of gender affirming care. Both Drs. Ettner and Karasic discuss potential side effects of hormone therapy. Dkts. 98-1 at 14 and 98-2 at 12. While Blue Cross points to other side effects that the doctors did not discuss, this issue goes to the weight that should be afforded their testimony, not whether the testimony is reliable. "The reliability test is not the correctness of the expert's conclusions but the soundness of [their] methodology, and when an expert meets the threshold established by Rule 702, the expert may testify and the fact finder decides how much weight to give that testimony." *United States v.*

1  *Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019)(*internal quotation marks and citation omitted*).

Blue Cross contends that Dr. Schechter's opinion is unreliable because he is not qualified to opine on mental health conditions like gender dysphoria because he is a surgeon. Dkt. 103. The Plaintiffs contend that gender dysphoria is not a mental health condition that can be treated with psychotherapy alone. Dkt. 114. They assert that treatment of gender dysphoria "is multifaceted and includes the provision of medical interventions such as hormone treatment and surgical procedures." *Id.* Dr. Schechter's opinion is sufficiently reliable based on his experience.

Blue Cross's motion to exclude the Plaintiffs' medical experts, Drs. Ettner, Karasic and Schechter, (Dkt. 103) should be denied without prejudice.

**B.  Plaintiffs' Expert on Number of Class Members – Dr. Fox**

Parties do not contest that based on his knowledge, skill, experience, training, and education Dr. Fox qualifies as an expert.

Blue Cross does not dispute that the class is sufficiently numerous to be certified so it argues that Dr. Fox's opinion regarding the number of class members is irrelevant. Dkt. 103. The Plaintiffs assert that Dr. Fox's testimony is relevant to their claim for the equitable relief. Dkt. 114. They maintain that "[a]ny injunctive relief should be targeted at ensuring that all class members receive notice and an opportunity to benefit from any determination . . . on the merits." *Id.* Dr. Fox's testimony is sufficiently relevant at this stage.

Blue Cross's assertions regarding the reliability of Dr. Fox's opinions (that his assumptions were incorrect or that his data is flawed) goes to the weight of his testimony, not its admissibility. These issues are the proper subjects for the fact finder.

Blue Cross's motion to exclude Dr. Fox's opinions (Dkt. 103) should be denied without prejudice.

### PLAINTIFFS' MOTION TO EXCLUDE

**C. Blue Cross's Expert on Medical Necessity – Dr. Laidlaw**

Dr. Laidlaw is a board-certified endocrinologist who completed his fellowship in 2006. Dkt. 104-1 at 2. Less than five percent of his patients are under the age of 18 and he has treated two patients with gender dysphoria. Dkt. 108-2 at 19-20. He has done no original research on gender identity and bases his opinions on his general experience as an endocrinologist and a review of literature. Dkt. 108-5 at 6-11. While it is a close question, he is sufficiently qualified to testify as an expert.

The Plaintiffs assert that Dr. Laidlaw's testimony is not relevant under Rule 702. Dkt. 107. They maintain that its probative value is substantially outweighed by the danger it will cause undue prejudice or confusion and so should be excluded under Rule 403. *Id.* According to Blue Cross, it offers his testimony to rebut the Plaintiffs' medical experts' opinions "that there is a uniform consensus in the medical community about the appropriate treatment for people with gender dysphoria and the only explanation for transgender exclusions in employer-sponsored plans is animus." Dkt. 115. His opinion is arguably relevant to this issue. Further, this is a bench trial; the Court will afford Dr. Laidlaw's testimony the weight it is due.

The Plaintiffs also maintain that Dr. Laidlaw's opinions regarding treatment for minors is unreliable. Dkt. 107. According to Dr. Laidlaw, his opinion regarding treatment for transgender minors (that they should not "be prescribed puberty blockers, hormones or surgery") is based on his "clinical experience and research on the topic." Dkt. 108-2 at 47-48. While the Plaintiffs properly point out that his clinical experience is limited to two patients and that his research

constitutes literature review, as an endocrinologist, his opinion regarding puberty blockers and hormones is sufficiently reliable. His opinions regarding surgery for minors or adults and his opinions regarding the appropriateness of mental health care for transgender people are of greater concern in terms of their reliability. He is not a surgeon or a mental health care provider, but claims to have conducted research on the issues. The issues raised by the Plaintiffs go to the weight that should be afforded his testimony.

The Plaintiffs argue that Dr. Laidlaw's opinions about desistance are unreliable and irrelevant. Dkt. 107. The Plaintiffs contend that Dr. Laidlaw's opinions about WPATH and the medical consensus surrounding gender-affirming care are unreliable. Dkt. 107. The issues raised here, again, go to the weight that should be afforded his testimony, not its reliability.

The Plaintiffs' motion to exclude Dr. Laidlaw's opinions (Dkt. 107) should be denied without prejudice.

**D.  Blue Cross's Expert on Number of Class Members – Dr. Carr**

The parties do not contest that Dr. Carr qualifies as an expert. The Plaintiffs move to exclude Dr. Carr arguing that his opinion is not relevant and was untimely disclosed.

The Plaintiffs also argue that Dr. Carr's report is not relevant because Blue Cross is not contesting that there are sufficient people in the class for certification. Dkt. 107. As is the case with Dr. Fox, Dr. Carr's opinion is of limited use, but may be relevant to the number of parties entitled to notice. The Plaintiffs' argument, that Dr. Carr's testimony's probative value is substantially outweighed by the danger it will cause undue prejudice or confusion, is not persuasive.

As to the timeliness of Dr. Carr's disclosure, the deadline for expert witness disclosure was June 17, 2022. Dkt. 48. After timely identifying Dr. Fox as one of their experts, Plaintiff's

ORDER ON MOTIONS TO EXCLUDE - 9

served his opinion on August 19, 2022 and then served an amended report on September 29, 2022. Dkt. 104-1 at 199-238. On October 21, 2022, Blue Cross disclosed Dr. Carr as an expert witness. Dkt. 100-8. Blue Cross offers the testimony of Dr. Carr to rebut the testimony of Plaintiffs' expert, Dr. Fox, regarding the numbers of class members. Dkt. 115.

Under Fed. R. Civ. P. 26(a)(2)(D)(ii), disclosures of rebuttal expert witnesses must be made within 30 days after the other party's disclosure "if the evidence is intended solely to contradict or rebut evidence on the same subject matter." Under Rule 37(c)(1), if a party fails to timely identify an expert witness, "the party is not allowed to use that information or witness. . ."

To the extent that Dr. Carr's report responds to Dr. Fox's August 19, 2022 report, it should be excluded as untimely. It was served over 30 days after the Dr. Fox's report. To the extent that Dr. Carr's report responds only to new information in Dr. Fox's September 29, 2022 report it should not be excluded as untimely.

### E. Blue Cross's Expert on Economic Impact – Dr. Burns

Dr. Burns is a socialist and a professor at the Wharton School of the University of Pennsylvania, where he teaches health care management. Dkt. 104-1, at 270. Based on his knowledge, skill, experience, training, and education, Dr. Burns qualifies as an expert.

While his testimony is of limited use, Blue Cross has shown that it is sufficiently relevant and reliable. The Plaintiffs attacks on the inferences and methodology used by Dr. Burns and his failure to address literature opposing his views go to the weight of his testimony.

The Plaintiffs' additional argument, that Dr. Burns' testimony should be excluded under Rule 403, is unavailing. The Plaintiff's motion to exclude Dr. Burns' testimony (Dkt. 107) should be denied without prejudice.

# ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Blue Cross Blue Shield of Illinois's Motion to Exclude Plaintiffs' Experts under *Daubert* (Dkt. 103) **IS DENIED WITHOUT PREJUDICE;** and

- Plaintiffs' Consolidated Motion to Exclude Expert Testimony of Michael Laidlaw, M.D., Lawton R. Burns, Ph.D., and Scott Carr Ph.D. (Dkt. 107) **IS DENIED WITHOUT PREJUDICE EXCEPT IT IS GRANTED AS FOLLOWS:**
  - To the extent that Dr. Carr's report responds to Dr. Fox's August 19, 2022 report, **IT IS EXCLUDED** as untimely.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 21st day of November, 2022.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge