The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C.P., by and through his parents, Patricia Pritchard and Nolle Pritchard on his own behalf and on behalf of similarly situated others; and PATRICIA PRITCHARD,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | No. 3:20-cv-06145-RJB<br><br>PLAINTIFFS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE<br><br>**Reply Due, Per Dkt. No. 90:**<br>   **November 21, 2022** |

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## I. INTRODUCTION

"[A]ny health program or activity, *any part of which* is receiving federal financial assistance" may not discriminate in any part of their operations. *See* 42 U.S.C. §18116(a) (emphasis added). Every court to consider this issue has confirmed that once Section 1557 applies, it applies to all of the covered entity's operations. *See T.S. v. Heart of Cardon, LLC,* 43 F.4th 737, 743 (7th Cir. 2022); *Doe v. CVS Pharm., Inc.,* 2022 U.S. Dist. LEXIS 139684, at *27 (N.D. Cal. Aug. 5, 2022); *Fain v. Crouch*, 545 F.Supp.3d 338, 343 (S.D.W. Va. 2021).

Nonetheless, Defendant Blue Cross Blue Shield of Illinois ("BCBSIL") asserts that in its operations where it is a third-party administrator ("TPA"), it should be permitted to administer discriminatory exclusions of gender-affirming care (the "Exclusions"). It raises four defenses: **First,** BCBSIL argues that its administration of the Exclusions is not discrimination because (a) the 2020 Rules "allow transgender exclusions for any reason" (Dkt. 118 at 7), and (b) there is "controversy" related to gender-affirming care (*id.* at 19–21). **Second**, BCBSIL claims that it is not liable for any discrimination because the ultimate responsibility for the Exclusions rests with the contracting employer (*id*. at 4–7). **Third,** BCBSIL also asserts it is not a "health program or activity" subject in all activities to Section 1557 because it is a health insurer (*id*. at 17–19). And *fourth*, BCBSIL argues that since Plaintiff Pritchard's employer, Catholic Health Initiatives ("CHI"), may have a "sincerely-held religious belief" opposing gender-affirming care, its administration of the Exclusions must be permitted pursuant to the Religious Freedom and Restoration Act ("RFRA") (*id*. at 9–17). None of these defenses have merit.

This case poses a simple question:  Is BCBSIL liable for discrimination based on sex when it *administers* Exclusions of gender-affirming care in ERISA self-funded plans? The answer is an unqualified <u>*yes*</u>. Because BCBSIL receives federal financial assistance—a fact that is undisputed—BCBSIL cannot discriminate based on sex in any part of its operations, including in its administration of health plans as a TPA.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 1
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## II.  UNDISPUTED FACTS

BCBSIL does not dispute and therefore concedes that:

(1) C.P. received treatment for gender dysphoria that would have been covered as medically necessary under the relevant BCBSIL medical policy *but for* its administration of the Exclusions. *See* Dkt. 84-1 at 52:19–53:9, 60:5–62:3.

(2) BCBSIL is a health entity that receives federal financial assistance that subjects at least some of its operations to Section 1557, 42 U.S.C. §18116(a). *Id*. at 11:5–9; Dkt. 84-2 at 9:2–12; 16:20–18:9; 18:16–21:8.

(3) BCBSIL will administer the Exclusions upon the request of employers, without any proffered legal, religious, or other justification. BCBSIL will administer the Exclusion even if an employer states that it wants the Exclusion for overtly discriminatory reasons. Dkt. 84-2 at 28:19–29:17; Dkt. 84-6 at 72:21–73:7, 165:8–12; Dkt. 84-9 at 28:14–17.

(4) BCBSIL administers the Exclusions in the same standard manner, regardless of differences in the specific plan language. BCBSIL identifies claims submitted with a diagnostic code for "gender dysphoria" and excludes the identified services (whether in full or only "related" to surgery), when those same services would be covered when medically necessary for cisgender people. Dkt. 84-6 at 69:8–71:4; *see*, *e.g.,* Dkt. 84-9 at 22:2–24:11.

(5) BCBSIL is a secular entity and is not the agent of CHI or any other employer-client. Dkt. 41, ¶14; Dkt. 84-15, §14.1; Dkt. 97-1 at 38:4–21.

(6) BCBSIL does not dispute that C.P. and his parents incurred $12,122.50 in uncovered medical expenses for gender-affirming care that would have been covered but for the administration of the Exclusions. Dkt. 97-19 at 11.

## III.  ARGUMENT

**A.   The Exclusions Discriminate Based on Sex and Transgender Status.**

Categorical exclusions of gender-affirming care discriminate on the basis of sex and violate Section 1557. *See*, *e.g.*, *Kadel v. Folwell*, 2022 U.S. Dist. LEXIS 103780, at *64

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 2
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

(M.D.N.C. June 10, 2022) (as corrected Aug. 10, 2022); *Fain v. Crouch*, 2022 U.S. Dist. LEXIS 137084, at *37 (S.D. W. Va. Aug. 2, 2022); *Fletcher v. Alaska*, 443 F. Supp.3d 1024, 1027, 1030 (D. Alaska 2020); *Flack v. Wisconsin Dep't of Health Servs.*, 395 F. Supp.3d 1001, 1019–22 (W.D. Wis. 2019); *Boyden v. Conlin*, 341 F. Supp.3d 979, 1002–03 (W.D. Wis. 2018). *Cf. Brandt v. Rutledge*, 47 F.4th 661, *13–18 (8th Cir. 2022) (finding a state law banning gender-affirming care for minors discriminates based on sex). And the Ninth Circuit has already held that the Supreme Court's interpretation of what sex discrimination encompasses, as articulated in *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1741 (2020), applies in the context of gender-affirming care exclusions and Section 1557. *See Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (holding *Bostock*'s reasoning applies to Section 1557 claims related to gender-affirming care).

1. **The 2020 Rule does not authorize categorical exclusions.**[1]

Ignoring Supreme Court and Ninth Circuit precedent, BCBSIL argues that an unidentified "2020 Rule allows categorical exclusions of transgender related services for any reason." Dkt. 118 at 7. BCBSIL has yet to reveal the specific regulation upon which it relies upon for this proposition because ***it does not exist***. As argued previously (Dkt. 20 at 17), the most that anybody can glean from the operative text is that the 2020 HHS rules are ***silent*** on the legality of categorical exclusions related to gender dysphoria. *See* 81 Fed. Reg. 37,244 (referencing the 2020 version of 45 C.F.R. §92.2).

Because Section 1557's statutory text is clear and there is no operative regulatory language in the 2020 Rule on this issue, the Court should reject BCBSIL's attempt to operationalize preamble language that BCBSIL misconstrues. "[T]he preamble … itself lacks the force and effect of law." *Saint Francis Med. Ctr. v. Azar*, 894 F.3d 290, 297 (D.C. Cir. 2018). Moreover, the 2020 Rule did not authorize categorical exclusions. HHS stated in the preamble

---

[1] BCBSIL re-runs this failed argument. *See* Dkt. 17 at 8–11. The Court handily dispensed with it in the Order denying BCBSIL's Motion to Dismiss. Dkt. 23 at 8:12–20.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 3
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

that "[w]ith respect to coverage for gender transition services, the Department notes that this final rule makes no changes to what has been the status quo," 85 Fed. Reg. 37,199, which includes courts holding gender-affirming care categorical exclusions to violate Section 1557—before, during, and after the 2020 Rule. *See*, *e.g.*, *Fain*, 2022 U.S. Dist. LEXIS 137084, at *37; *Boyden v. Conlin*, 341 F. Supp.3d 979 (W.D. Wis. 2018); *Cruz v. Zucker*, 116 F. Supp.3d 334, 348 (S.D.N.Y. 2015). As HHS acknowledged, the 2020 Rule's elimination of a regulatory provision "would not preclude application of [a court's] construction." 85 Fed. Reg. 37,168.

2. **No *Chevron* deference is required since Section 1557's text is clear.**

This Court got it right when concluding that the plain language of Section 1557 governs this dispute without resort to HHS rules. Dkt. 23 at 8 ("A claim of discrimination in violation of Section 1557 does not depend on an HHS rule."). *T.S.,* 43 F.4th at 743. This is consistent with *Chevron*, which requires a court to consider the "plain meaning" of a statute as its first step. *King v. Burwell*, 759 F.3d 358, 367 (4th Cir. 2014) (quoting *Chevron*, 467 U.S. at 842–43), *aff'd,* 576 U.S. 473. To discern the plain meaning, courts consider "the plain language and context of the most relevant statutory sections, the context and structure of related provisions, and the legislative history of the Act." *Id.* at 372. Each of these three factors points to the conclusion that categorical exclusions of gender-affirming care violate Section 1557. *See*, *e.g.*, Dkt. 20 at 11–17; Dkt. 96 at 17–21.

3. **The Parties agree gender-affirming care can be medically necessary.**

BCBSIL claims the efficacy of gender-affirming care is in "dispute" and that there is no medical consensus regarding such care. Dkt. 118 at 19. This "dispute" is neither genuine or material.

***First,*** BCBSIL and Plaintiffs both agree that gender-affirming care can be medically necessary and effective, as reflected in BCBSIL's Medical Policy. *See* Dkt. 84-4; Dkt. 84-1 at

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 4
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

52:6–13; Dkt. 84-5 at 5; Dkt. 84-7 at 5. BCBSIL cannot ignore the undisputed the evidence from its own Rule 30(b)(6) witness, medical directors, and medical policy.

**Second,** Plaintiffs need not separately establish whether gender-affirming care can be medically necessary, since BCBSIL's own Medical Policy has already done so. *See* Dkt. 118 at 19–21. If an injunction is entered prohibiting the administration of the Exclusions, BCBSIL must evaluate the medical necessity of claims for gender-affirming care under its ***existing*** policy. Enjoining the administration of the categorical Exclusions "opens the door" to a genuine medical necessity determination by BCBSIL according to its already established standards.

**Third,** and most importantly, BCBSIL cannot use its hired gun expert to fabricate a dispute about the medical consensus where there is none. As BCBSIL's Dr. Reed testified, "the clinical evidence is what it is." Dkt. 84-1 at 39:15–19. Every major medical association (including the American Academy of Pediatrics, American Medical Association, American Psychiatric Association, American Psychological Association, and Endocrine Society) agrees that gender-affirming care can be medically necessary and effective. *See* Ettner ¶¶30, 34, 43; Karasic ¶43; Schechter ¶27; Dkts. 97-6, 97-7, 97-8. So have many courts, including the Ninth Circuit. *See, e.g.*, *Edmo v. Corizon, Inc.*, 935 F.3d 757, 769 (9th Cir. 2019).

That BCBSIL proffered a single "expert" who holds contrary and aberrant views does not negate the well-established medical consensus regarding gender-affirming care that even BCBSIL accepts (outside of this litigation). *See* Dkt. 84-4. Importantly, neither BCBSIL nor its "expert" offer any "competing evidence-based standards that are accepted by any nationally or internationally recognized medical processional groups." *Edmo*, 935 F.3d at 769. The subjective opinion of BCBSIL's expert cannot create a genuine dispute of material fact by disagreeing with (a) BCBSIL's own Medical Policy, Rule 30(b)(6) witness, and medical directors; (b) the Ninth Circuit and numerous other courts; and (c) the overwhelming consensus among all major medical organizations.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 5
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Fourth,* BCBSIL continues to argue there was something deficient in the gender-affirming care that C.P. received. *See* Dkt. 118 at 20–21. ***This is demonstrably false***. *See* Dkt. 96 at 24–25; Dkt. 114 at 13–15. ***It is also irrelevant***. As confirmed by BCBSIL's Rule 30(b)(6) witness, Dr. Reed, C.P.'s treatment met the medical necessity standards for coverage under BCBSIL's medical policy. Dkt. 84-1 at 52:19–53:9, 60:5–62:3. But for BCBSIL's administration of the Exclusion, C.P.'s gender-affirming care would have been covered. Indeed, BCBSIL covered C.P.'s first Vantas Implant as medically necessary.

Extensive evidence from C.P.'s treating medical providers demonstrates the medical necessity of C.P.'s gender-affirming care. *See* Dkt. 97-3; Dkt. 97-4; Dkt. 97-5. Additionally, two experts further reviewed C.P.'s records and evaluated him to confirm that the treatment was medically necessary and appropriate. Dkt. 97-6, ¶¶81–83; Dkt. 97-7, ¶¶76–77. And, while there is no meaningful dispute that C.P.'s parents and C.P. provided informed consent and assent for his care (Dkt. 118 at 21),[2] issues of "informed consent" are irrelevant here. This case is not about whether C.P. should have received the gender-affirming care. Rather it is about whether BCBSIL, as an entity subject to Section 1557, may administer a categorical exclusion of such care.

**B.     BCBSIL is Liable for Sex Discrimination When Acting as a TPA.**

BCBSIL argues that since it was not the "source" of the benefit design for the Exclusion in C.P.'s plan, it is not liable for its discriminatory ***administration*** of the Exclusions.[3] Dkt. 118 at 4; Dkt. 114 at 14. The sole basis for BCBSIL's argument is the discussion of the role of TPAs

---

[2] None of BCBSIL Medical Policy, the Endocrine Society Guidelines or the WPATH standards of care require an evaluation by a psychiatrist before proceeding with gender-affirming care. *See* Dkt. 84-4; *see e.g.,* Dkt. 97-9, p. 37 of 261, Statement 5.1.c. BCBSIL cites to no authority or peer-reviewed literature for the claim that gender dysphoria diagnosis can only be made by a psychiatrist because there is none. *See* Dkt. 114 at 14–15.

[3] Whether the Exclusion was authored solely by CHI or it is simply a "one-off" from BCBSIL's standard Exclusion is disputed, but ultimately, immaterial for summary judgment. Dkt. 86-17, Addendum A at 13; Dkt. 84-6 at 32:5–15; 34:16–22, 41:12–24; 44:18–45:24; Dkt. 84-9 at 25:4–27:15.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 6
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

in the preamble to HHS rulemaking on Section 1557. *See* Dkt. 118 at 4, *citing to* 81 Fed. Reg. 31,432. BCBSIL's argument fails for at least the following six reasons:

**First**, there is no "TPA" exception to Section 1557. By its plain terms, a covered entity cannot discriminate in any of its operations—even when acting as a TPA. *See* 42 U.S.C. §18116(a); *T.S.,* 43 F.4th at 743 (a covered entity cannot discriminate in any of its operations).

**Second**, not only is preamble language generally unenforceable (*see St. Francis Med. Ctr.*, 894 F.3d at 297; *Wildearth Guardians v. Provencio*, 923 F.3d 655, 667 (9th Cir. 2019); *Walker v. Azar*, 480 F.Supp.3d 417, 429 (E.D.N.Y. 2020)), but **the preamble supports Plaintiffs' argument**. It states that, "[w]here the alleged discrimination relates to the administration of the plan by a covered third party administrator, OCR will process the complaint against the third party administrator because it is the entity responsible for the decision or other action being challenged in the complaint." 87 Fed. Reg. 47,877.

**Third**, BCBSIL's contention that it is not responsible for the **administration** of the Exclusion in the CHI plan is indisputably false. As this Court already found, "Blue Cross's Fed. R. Civ. P. 30(b)(6) witness testified that it administers exclusions consistently. It reviews claims to determine if the 'diagnosis code' is for 'gender dysphoria' or 'gender reassignment' and examines the 'procedural code' to see if the claim is for gender reassignment treatment." Dkt. 113 at 9. BCBSIL's standard administration red-flags gender-affirming care for denial based on the diagnostic and procedural code. Moreover, while CHI asked to review the BCBSIL denied claims related to gender-affirming surgery (likely so it could prepare for any resulting employee complaints), CHI never changed the denials of the claims that occurred due to BCBSIL's standard administration. Dkt. 100-4 at 74:17–75:5. And, if CHI reversed any of BCBSIL's determinations, it would jeopardize CHI's claim to have "delegated discretionary authority" to BCBSIL in the plan. *See Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003); *see also* Dkt. 84-13 at 117. BCBSIL does not dispute it.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 7
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Fourth*, BCBSIL's contention is nonsensical. BCBSIL cannot be absolved of statutory liability imposed by Congress through a ***preamble in a proposed rule***. *See Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 376 (1986) ("[O]nly Congress can rewrite [a] statute").

*Fifth*, a TPA must always obey federal law, even if doing so conflicts with an ERISA plan's terms. *See* 29 U.S.C. §1144(d); *Doe v. United Behavioral Health*, 523 F.Supp.3d 1119, 1127 (N.D. Cal. 2021) (TPA "cannot hide behind the plan terms" when federal law imposes "specific and independent duties" on the TPA). BCBSIL has no response to this argument and ignores *Doe* entirely. BCBSIL's failure to respond to Plaintiffs' argument amounts to "an admission that [Plaintiffs'] argument has merit." *Lexington Ins. Co. v. Swanson*, 2007 U.S. Dist. LEXIS 37620, n.9 (W.D. Wash. May 23, 2007).

*Sixth*, courts have uniformly concluded that health entities that are subject to Section 1557 may be liable for discriminatory administration of benefits when acting as TPAs. "Nothing in Section 1557, explicitly or implicitly, suggests that TPAs are exempt from the statute's nondiscrimination requirements." *Tovar v. Essentia Health*, 342 F.Supp.3d 947, 956 (D. Minn. 2018); *see also Boyden*, 341 F.Supp.3d at 997.[4]

**C.    BCBSIL is a "Covered Entity" Even in its TPA Activities.**

BCBSIL argues its TPA activities are not subject to Section 1557 because the 2020 Rule (1) excludes health insurance from the term "health program or activity" and (2) limits Section 1557's application to only the lines of business that receive federal financial assistance. Dkt. 118 at 17–18. This argument was fully addressed in Plaintiffs' Cross-Motion. *See* Dkt. 96 at 27–32.

BCBSIL argues the Court should adhere to 45 C.F.R. §92.3(b) (2020) because it was purportedly relied upon in *Religious Sisters of Mercy v. Azar*, 513 F.Supp.3d 1113, 1122 (D.N.D.

---

[4] BCBSIL misrepresents the Eighth Circuit decision affirming *Tovar*. *See* Dkt. 118 at 5–6 (*citing Tovar v. Essentia Health*, 857 F.3d 771, 780 (8th Cir. 2017)). The cited discussion occurs in Judge Benton's ***partial dissent*** from the majority's decision to hold the TPA liable for discriminatory administration. *See Tovar,* 857 F.3d at 780 (Benton, J., concurring in part and dissenting in part).

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 8
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

2021), and is presently effective. *See* Dkt. 118 at 18, n.6. Not true. In *Religious Sisters*, the court did not adjudicate nor apply 45 C.F.R. §92.3; it simply found that under the regulation, the plaintiffs did not have standing. *See Religious Sisters*, 513 F.Supp.3d at 1136–37.[5]

While BCBSIL does not make a direct appeal to *Chevron* deference regarding this argument, no deference is due. *See* Dkt. 118 at 17–19. For one, the 2020 Rule cannot override the plain language and Congressional intent that Section 1557 apply to health insurers. *See* Dkt. 96 at 30 (*citing to Chevron*, 467 U.S. at 843, n.9). BCBSIL has no response to Plaintiffs' arguments regarding the plain language, Congressional intent, and statutory construction of the ACA. *See id.* at 27–32. "Given this context, … 'health program or activity' under Section 1557 necessarily includes health insurance issuers." *Fain*, 545 F.Supp.3d at 342; *Schmitt*, 965 F.3d at 948; *see, e.g.*, *Briscoe v. Health Care Serv. Corp.*, 281 F.Supp.3d 725, 729–30 (N.D. Ill. 2017) (BCBSIL and other HCSC divisions are "within the ACA's purview"). For another, the 2020 Rule is arbitrary and capricious. *See Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011). BCBSIL overlooks that the 2020 Rule's interpretation would lead to arbitrary and absurd results. Based on BCBSIL's argument for deference to the 2020 Rule, BCBSIL was liable for its sex discrimination under Section 1557 between 2016 and 2020 (when this case was filed and the 2016 Rule was in effect), was not liable under Section 1557 between 2020 and now (during some of the pendency of this case), and will be liable once again when the 2022 Proposed Rule is finalized. Of course, that is not and cannot be the case. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 222 (2016) (An "unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice") (internal citations omitted). Indeed, existing litigation continues to challenge the 2020 Rule, including 45

---

[5] The court in *Religious Sisters* concluded that the plaintiffs had standing based upon other aspects of the 2020 rulemaking. *Id.,* 513 F.Supp.3d at 1140–41.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 9
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

C.F.R. §92.3(b) (2020), as arbitrary and capricious, and inconsistent with the plain language of the ACA. *See Kadel,* 2022 U.S. Dist. LEXIS 103780, at *95 (citing cases).

### D. BCBSIL is Not Protected by the Religious Freedom and Restoration Act.

#### 1. No governmental party is present.

As this Court concluded, "RFRA provides relief against the government, but the government is not a party to this action." Dkt. 23 at 9. On summary judgment, BCBSIL offers no evidence that any party is a governmental entity. This dooms BCBSIL's RFRA defense. *See Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 841 (9th Cir. 1999).

BCBSIL argues "that courts must read RFRA and Section 1557 in conjunction," citing to *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2383 (2020). BCBSIL misconstrues *Little Sisters.* That case was a direct challenge to HHS rulemaking by a religious organization. *Id*. at 2370. It did not involve a dispute between two wholly private entities. *See id.* And *Little Sisters* was solely focused on the authority of an agency to issue rulemaking, not whether the activities of private entities constitute discrimination. The specific directive from the Supreme Court was for **HHS** to consider RFRA when interpreting Section 1557 for rulemaking purposes. *See id*. at 2383 ("our decisions all but instructed **the Departments** to consider RFRA going forward") (emphasis added). It did not hold that RFRA applied to all disputes over Section 1557—even ones without any governmental party. The Supreme Court did not (and could not) unilaterally expand the scope of RFRA to apply to disputes solely between private entities.

BCBSIL's hyperbolic claim that to limit RFRA to only litigation involving governmental parties would "eviscerate Congress' intent" is plainly false. *See* Dkt. 118 at 11. **First**, the plain language of RFRA limits its applicability to only against the federal government. *See* 42 U.S.C. §2000bb-1(c). **Second**, case law around the country has limited RFRA disputes in a similar manner. *See, e.g.*, *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 737 (7th Cir.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 10
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

2015); *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 411–12 (6th Cir. 2010).[6] And ***third***, BCBSIL identifies no evidence of any "Congressional intent" to apply RFRA more broadly. As the RFRA legislative history recounted in *Little Sisters* shows, Congress was focused on limiting ***government activity***, not disputes between private parties. *See Little Sisters,* 140 S. Ct. at 2383.

### 2. BCBSIL cannot raise an employer's religious claim.

BCBSIL does not dispute that it is neither an entity with a "sincerely-held religious belief" nor an agent for such a religious entity. *See generally* Dkt. 118; Dkt. 41, ¶14; Dkt. 84-15, §14.1. As a result, there is no party in this litigation that has a religious belief that is subject to RFRA. *See* 42 U.S.C. §2000bb-1(c).

Nonetheless, BCBSIL argues that it can avoid liability for Section 1557 simply because one or more of its employers could find providing coverage for gender-affirming care "immoral," citing to the Supreme Court's decision in *Little Sisters.*[7] Dkt. 118 at 14. BCBSIL is wrong again. That case addressed ***HHS rulemaking***, not private discriminatory activity by TPAs. Covered entities that are subject to Section 1557 have an independent statutory duty to comply with anti-discrimination requirements in all of their activities—including when acting as a TPA. 42 U.S.C. §18116(a); *T.S. v. Heart of CarDon,* 2021 U.S. Dist. LEXIS 49119, at *27 (S.D. Ind. Mar. 16, 2021) ("'All operations' means 'all operations,' after all").

---

[6] BCBSIL attempts to distinguish these Court of Appeals decisions on the grounds that "none … involves a statute that the courts and regulators have explicitly held must be read in conjunction with RFRA." Dkt. 118 at 12. But RFRA applies to ***all*** federal laws unless Congress explicitly excludes the law from RFRA's reach. 42 U.S.C. §2000bb-3(a), (b). The scope of RFRA is tempered by its application to only two types of parties: governmental entities and entities with sincerely held religious beliefs. 42 U.S.C. §2000bb-1(c). Neither are present here.

[7] The only source for the "sincerely held religious belief" of any employer served by BCBSIL is a ***hearsay*** statement in a letter from CHI's counsel to Plaintiffs' counsel. BCBSIL seeks to rely on the truth of what it asserts, which is classic hearsay. *See* Dkt. 118 at 16; Dkt. 87 at 8, *citing to* Dkt. 38-8; FRE 802. Even after Plaintiffs raised this issue (Dkt. 96 at 6, n.6), BCBSIL did not obtain a declaration from CHI or any other employer professing a "sincerely-held religious belief." BCBSIL's failure to do so is an indication that Ms. Pritchard's workplace is likely part of the "for-profit" arm of CHI that is not eligible for a religious exemption. *See id*.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 11
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Ultimately, this case does not challenge whether CHI or any other employer can include the Exclusion in its health plans. Plaintiffs leave that issue for other litigants. Rather, this case is about whether BCBSIL, a health program or activity subject to Section 1557 with no "sincerely held religious beliefs" may administer discriminatory Exclusions. The Court should conclude that BCBSIL has no RFRA defense in this case.[8]

## IV. MOTION TO STRIKE

BCBSIL attached a news article by the New York Times as an appendix which Plaintiffs move to strike.[9] *See* Dkt. 118-1; LCR7(g). BCBSIL inappropriately relies on a news article as if it were competent expert testimony. Dkt. 118 at 20. "It is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted." *Johnson v. Cate*, 2015 U.S. Dist. LEXIS 120839, at *24 (E.D. Cal. Sept. 10, 2015). Because the news article constitutes incurable hearsay, it should be stricken. *McGary v. Inslee*, 2018 U.S. Dist. LEXIS 132912 at *6-7 (W.D. Wash. July 13, 2018).[10]

## V. CONCLUSION

The Court should conclude that BCBSIL is a covered health program or activity that is subject to Section 1557 and that therefore BCBSIL cannot administer discriminatory categorical exclusions of coverage for gender-affirming care, even as a TPA. The Court should grant Plaintiffs' Cross-Motion for Summary Judgment and Motion to Strike.

---

[8] Religious employers' rights or defenses are not implicated by this case. If Plaintiffs are successful and the Court orders BCBSIL to halt its administration of the discriminatory Exclusions, those who object to the injunction can take their business elsewhere. No remedy in this case would force an employer to do anything.

[9] For the same reasons, the same article attached as an appendix to BCBSIL's reply in support of its motion to exclude testimony by Plaintiffs' experts (Dkt. No. 122-1, Dkt. No. 122 at 4 n. 2) should be stricken.

[10] Moreover, the news article is wholly unreliable. For one, the New York Times has been criticized for its recent history of bias relating to its coverage of transgender issues. *See, e.g.*, Lexi McMenamin, *The New York Times, The Atlantic, More Keep Publishing Transphobia. Why?*, TEENVOGUE (July 22, 2022), https://www.teenvogue.com/story/nyt-transphobia-july-oped. For another, the attached article has been criticized by medical experts as factually inaccurate and misleading. *See, e.g.*, Jack Turban MD (@jack_turban), Twitter (Nov. 14, 2022 04:52 PM), https://bit.ly/3ENdoC8; *id.* (Nov. 14, 2022 04:24 PM), https://bit.ly/3U1eLlm.

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 12
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

DATED: November 21, 2022.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

 /s/ Eleanor Hamburger
Eleanor Hamburger (WSBA #26478)
Daniel S. Gross (WSBA #23992)
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: ehamburger@sylaw.com
          dgross@sylaw.com

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

 /s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan, *pro hac vice*
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585; Fax (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

Jennifer C. Pizer, *pro hac vice*
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Tel. (213) 382-7600; Fax (213) 351-6050
Email: jpizer@lambdalegal.org

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT
AND MOTION TO STRIKE – 13
[Case No. 3:20-cv-06145-RJB]

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246