UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard, individually and on behalf of others similarly situated; and PATRICIA PRITCHARD,<br><br>Plaintiff,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | CASE NO. 3:20-cv-06145-RJB<br><br>ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT |

This matter comes before the Court on the Defendant Blue Cross Blue Shield of Illinois' ("Blue Cross") Motion for Summary Judgment (Dkt. 87), and the Plaintiffs' Cross Motion for Summary Judgment (Dkt. 96), and Plaintiffs' motion to strike (Dkt. 126). The Court has considered the pleadings filed in support of and in opposition to the motions, oral argument heard on 12 December 2022, and the file herein.

In this case, Plaintiffs C.P., a transgender male, and his mother, Patricia Pritchard, claim that Blue Cross violated the anti-discrimination provision of the Affordable Care Act ("ACA"),

42 U.S.C. § 18116, when it administered discriminatory exclusions of gender-affirming care in a self-funded health care plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  Dkt. 1.  The Plaintiffs' motion to certify a class of similarly situated people was granted on November 9, 2022 (Dkt. 113) and amended on December 12, 2022 (Dkt. 143).

Blue Cross moves for summary judgment on Plaintiffs C.P. and Ms. Pritchard's claims. Dkt. 87.  Plaintiffs C.P. and Ms. Pritchard cross move for summary judgment on their claims as well as the class claims.  Dkt. 96.  For the reasons provided below, Blue Cross's Motion for Summary Judgment (Dkt. 87) should be denied and Plaintiffs' Motion for Summary Judgment (Dkt. 96) and motion to strike (Dkt. 126) should be granted.

## I.  RELEVANT FACTS, PROCEDURAL HISTORY, AND STATUTORY BACKGROUND

### A.  FACTS

Named Plaintiffs are C.P., a boy of seventeen, and his mother, Ms. Pritchard.  Dkt. 38. C.P. is a transgender male, which means that he has a male gender identity even though the sex assigned to him at birth was female.  *Id.*  C.P. has been living as a male since around 2015.  Dkt. 94-1 at 135.

Ms. Pritchard receives health care coverage through her employer under the Catholic Health Initiatives ("CHI") Medical Plan ("the Plan") and C.P. is enrolled in that Plan as her dependent. Dkts. 81; 97-12 at 8.  The Plan is "self-funded" - Ms. Pritchard's employer directly assumes financial responsibility for employees and their dependents' health care costs.  Dkt. 88-1 at 11.

Defendant, Blue Cross, acts as the third-party claims administrator for the Plan.  Dkt. 85-10.  As a third-party administrator, it "assemble[s] a network of providers, process[es] claims, and handle[s] provider billing."  Dkt. 88-1 at 11.  Blue Cross is a division of Health Care

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 2

1   Services Corporation and is one of the largest administrators of insured and self-funded health

2   plans in the nation.  *Id.* at 206.  It does not receive Federal financial assistance for its

3   administration of self-funded plans, but does receives Federal financial assistance for other of its

4   "products, such as Medicare supplemental coverage, Medicaid, Medicare Advantage and

5   Prescription Drug insurance coverage, and Medicare/Medicaid dual eligibility."  *Id.*

6        C.P. has gender dysphoria. Dkts. 38; 97-3 at 2. Gender dysphoria is a feeling of clinically

7   significant stress and discomfort that can result from being transgender, or, more specifically,

8   from having an incongruence between one's gender identity and the sex assigned to that person

9   at birth.  Dkt. 38.  The American Psychiatric Association's Diagnostic and Statistical Manual of

10  Mental Disorders, Fifth Edition recognizes gender dysphoria as a medical condition that can be

11  extremely serious, resulting in anxiety, depression, or even death.  Dkt. 38 at 6.

12       C.P. sought coverage for his first Vantas Implant (hormone therapy) in 2016.  Dkt. 94-1

13  at 139.  Blue Cross initially approved the treatment but later informed C.P.'s mother that it had

14  made a mistake; it stated that the treatment was not covered under the Plan.  Dkt.  94-1 at 137.

15  Blue Cross paid for the treatment however, but indicated that later claims would be denied.  *Id.* at

16  139. A few years later, in 2019, C.P. filed a claim for a second Vantas Implant and for chest

17  reconstruction surgery; his claim was denied by Blue Cross because "[t]ransgender services

18  [were] not covered under the terms of the Plan."  *Id.*; 88-1 at 197; 94-3 at 2-10.

19       The relevant exclusionary language in the Plan in 2019 provided:  "Transgender

20  Reassignment Surgery Not Covered: Benefits shall not be provided for treatment, drugs, therapy,

21  counseling services and supplies for, or leading to, gender reassignment surgery" ("Exclusion").

22  Dkt. 88-1 at 120.  The Plan generally covers care for hormone treatments, mastectomies and

23  chest reconstruction if that care is considered medically necessary for diagnosis other than for

24

1  gender affirming care (like for breast cancer).  Dkt. 85-8 at 12-13.  The condition that triggers

2  Blue Cross to apply the Exclusion is the diagnosis of gender dysphoria.  *Id.* at 14.

3      After his claim was denied, C.P. received treatment – Ms. Pritchard paid $12,122.50 for

4  the uncovered chest surgery and Vantas Implant.  Dkt. 88-1 at 299.

5  **B.  PROCEDURAL HISTORY**

6      Plaintiffs, including the class, bring a claims for violation of the antidiscrimination

7  provision of the ACA.  Dkt. 38.  This provision is referred to in the case law and HHS

8  regulations as "Section 1557" (although codified as 42 U.S.C. § 18116(a)), and this order will

9  refer to it in the same manner.  All Plaintiffs seek a declaration that Blue Cross violated

10  Plaintiffs' rights under Section 1557 when it administered the Exclusion and other similar

11  exclusions in other plans.  Dkt. 38 at 21.  They seek an order enjoining Blue Cross from

12  "administering or enforcing health benefit plans that exclude coverage for gender-affirming

13  health care, including applying or enforcing the Plan's Exclusion of services 'for, or leading to,

14  gender reassignment surgery,' and other similar exclusions . . . during the class period, now and

15  in the future."  *Id.* at 21-22.  The Plaintiffs seek an order requiring Blue Cross to reprocess, "and

16  when medically necessary and meeting the other terms and conditions under the relevant plans,

17  provide coverage (payment) for all denied pre-authorizations and denied claims" that were based

18  solely upon exclusions for gender affirming care.  *Id.* at 22.

19      Ms. Pritchard brings a claim for financial harm.  *Id.*  C.P. and Ms. Pritchard bring claims

20  for emotional distress damages, attorneys' fees, costs and expenses.  *Id.*

21      In the December 12, 2022 Amended Order Certifying the Class, the class was certified

22  as:

23

24

All individuals who:

> (1) have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by [Blue Cross] during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services; and

> (2) were, are, or will be denied pre-authorization or coverage of treatment with excluded Gender Affirming Health Care services

DEFINITIONS:

> "Class Period" means November 23, 2016 through the termination of the litigation.

> "Gender-Affirming Health Care" means any health care service—physical, mental, or otherwise—administered or prescribed for the treatment of gender dysphoria; related diagnoses such as gender identity disorder, gender incongruence, or transsexualism; or gender transition. This includes but is not limited to the administration of puberty delaying medication (such as gonadotropin-releasing hormone (GnRH) analogues); exogenous endocrine agents to induce feminizing or masculinizing changes ("hormone replacement therapy"); gender-affirming or "sex-reassignment" surgery or procedures; and other medical services or preventative medical care provided to treat gender dysphoria and/or related diagnoses, as outlined in World Professional Association for Transgender Health, Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People, 7th Version (2012).

The class asserts claims that Blue Cross Blue Shield of Illinois violated the anti-discrimination provision of the Affordable Care Act, 42 U.S.C. § 18116, when it administered discriminatory exclusions of gender-affirming care in a self-funded health care plans governed by the Employee Retirement Income Security Act of 1974.

The class seeks declaratory relief. They seek an order enjoining Blue Cross Blue Shield of Illinois from administering or enforcing health benefit plans that exclude coverage for gender-affirming health care, including applying or enforcing the plans' exclusions of services for, or leading to, gender reassignment surgery,' and other similar exclusions during the class period, now and in the future. The class seeks an order requiring Blue Cross Blue Shield of Illinois to reprocess denied pre-authorizations and claims for gender affirming care under the relevant self-funded health care plans without applying the discriminatory

exclusions, and when medically necessary and meeting the other terms and conditions of the relevant plans, provide coverage (payment) for those denied pre-authorizations and claims that were based solely on exclusions for gender affirming care.

Blue Cross Blue Shield of Illinois raises several defenses, including that the anti-discrimination provision of the Affordable Care Act, 42 U.S.C. § 18116 does not apply to it, and even if it did, its third-party administration of the exclusions was not discriminatory. Blue Cross Blue Shield also contends that it is protected by the Religious Freedom Restoration Act.

Dkt. 143.

## C. SECTION 1557, REGULATIONS AND LITIGATION BACKGROUND

This case takes place in the midst of sharply divided regulatory and litigation background. A quick review of the statute, the U.S. Department of Health and Human Services ("HHS") regulations, and related litigation is helpful in understanding the parties' positions.

The starting point is the text of the antidiscrimination provision of the ACA. Again, this provision is referred to in the case law and HHS regulations as "Section 1557" (although codified as 42 U.S.C. § 18116(a)). Section 1557 provides:

"[A]n individual shall not, on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance . . . . The enforcement mechanisms provided for and available under such . . . title IX . . . shall apply for purposes of violations of this subsection."

42 U.S.C. § 18116(a). Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

### 1. 2016 Regulations

After passage of the ACA in 2010, HHS proposed, and then finalized, Section 1557 regulations on May 18, 2016 ("2016 Rule"). Non-Discrimination in Health Programs and

1  Activities, 81 FR 31,375.  While this order substantially complies with the 2016 Rule, a

2  nationwide injunction banning HHS from enforcing it is in place.  *Franciscan All., Inc. v.*

3  *Burwell*, 227 F.Supp.3d 660 (N.D. Tex. 2016) *as affirmed Franciscan All., Inc. v. Burwell*, 47

4  F.4th 368 (2022).  Accordingly, the 2016 Rule does not impact this case.

5         2.  2020 Regulations

6         Meanwhile, on June 12, 2020, under the Trump administration, HHS finalized

7  regulations (2020 Rule), effective on August 18, 2020, that rescinded significant portions of the

8  2016 Rule.  Non-Discrimination in Health Programs and Activities, 85 FR 37,178.  Various

9  cases have been filed to prohibit enforcement of the 2020 Rule and to reinstate portions of the

10  2016 Rule, in particular, challenging the definition of discrimination "on the basis of sex."

11  *See e.g. Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, Case No. 1:20-cv-

12  01630, 2020 WL 3444030 (D.D.C. June 22, 2020); *Walker v. Aza*r, Case No. 1:20-cv-02834

13  (E.D.N.Y. June 26, 2020); *Boston All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S.*

14  *Dep't of Health & Human Servs.*, Case No. 1:20-cv-11297, 2020 WL 3891426 (D. Mass. July 9,

15  2020).  Injunctions prohibiting HHS from enforcing certain portions of the 2020 Rule's repeal of

16  the 2016 Rule's definition of  "on the basis of sex" are now in effect.  *See Id.* This order does not

17  comply with the 2020 Rule as provided in Section II. D. below.

18         3.  2021 HHS Notification and Proposed 2022 Regulations

19        On May 10, 2021, under the Biden administration, HHS issued a notice stating that it

20  would interpret Section 1557's prohibition on sex discrimination to include discrimination on the

21  basis of gender identity consistent with the U.S. Supreme Court's holding in *Bostock v. Clayton*

22  *County*, 140 S. Ct. 1731 (2020).  86 FR 27,984. On August 4, 2022, HHS published a Proposed

23  Rule that proposes repealing large portions of the 2020 Rule ("Proposed 2022 Rule").  Non-

24

Discrimination in Health Programs and Activities, 87 FR 47,824.  While the Proposed 2022 Rule is not yet adopted, this order is substantially consistent with it - but the Proposed 2022 Rule does not impact this case.

## II.   DISCUSSION

### A.  MOTION TO STRIKE

The Plaintiffs move to strike a newspaper article from the New York Times that was submitted by Blue Cross.  Dkt. 126.  "Generally, newspaper articles and television programs are considered hearsay under Rule 801(c) when offered for the truth of the matter asserted."  *See Green v. Baca*, 226 F.R.D. 624, 637 (C.D. Cal. 2005).  No exception to the hearsay rule was offered.  The Plaintiffs' motion (Dkt. 126) should be granted.

### B.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt.").  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986);

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial,

which is a preponderance of the evidence in most civil cases.  *Anderson,* 477 U.S. at 254; *T.W.*

*Elect.,* 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor of the

nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party.  The nonmoving party may not merely state that it will

discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

to support the claim.  *T.W. Elect.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at

255).  Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts"

will not be "presumed."  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888–89 (1990).

## C.  PLAINTIFFS' SECTION 1557 CLAIM

The Plaintiffs' motion and Blue Cross's response raise issues of law.  There are no

serious fact issues before the Court.

Again, Section 1557 of the ACA provides:

> "[A]n individual shall not, on the ground prohibited under . . . title IX of the
> Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination under,
> any health program or activity, any part of which is receiving Federal financial
> assistance, including credits, subsidies, or contracts of insurance . . . . The
> enforcement mechanisms provided for and available under such . . . title IX . . .
> shall apply for purposes of violations of this subsection."

42 U.S.C. § 18116(a).  Title IX prohibits discrimination "on the basis of sex" in education.  20

U.S.C. § 1681.

To make a claim for sex discrimination under Title IX and by extension, under 1557 of the ACA, the Plaintiffs must show that: (1) Blue Cross operates "a health program or activity, any part of which is receiving Federal financial assistance;" (2) the Plaintiffs were excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of that "health program or activity;" and (3) the latter occurred on the basis of sex. *See Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020).

    1.  <u>Provision of Any Health Program or Activity, Any Part of Which Receives Federal Financial Assistance</u>

Under the plain language of Section 1557, Blue Cross's third party administrator activities constitute the operation of a "health program or activity." The phrase "any health program or activity," is not defined in the ACA but it is clearly broader in scope than only the provision of healthcare. The phrase is further defined in a clause in Section 1557's text: "including . . . contracts of insurance." The plain language of Section 1557 indicates that a health insurance contract and the administration of a health insurance contract is a "health program or activity." *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 951 (9th Cir. 2020)(holding that Section 1557 prohibits discrimination in the health care system which includes discrimination in health insurance contracts); *Kadel v. Folwell,* 2022 U.S. Dist. LEXIS 218104 *9 (M.D. N.C. Dec. 5, 2022).[1]

Further, while Blue Cross does not receive Federal financial assistance for its administration of self-funded plans, it receives Federal financial assistance for some of its other products including "Medicare supplemental coverage, Medicaid, Medicare Advantage and Prescription Drug insurance coverage, and Medicare/Medicaid dual eligibility." Dkt. 88-1 at

---

[1] *Kadel* mirrors many of the thoughts in this order.

206.  Section 1557's phrase "any health program or activity any part of which is receiving

Federal financial assistance" plainly includes "all the operations of a business" principally

engaged in providing health programs and activities.  *T.S. by & through T.M.S. v. Heart of*

*CarDon, LLC,* 43 F.4th 737, 743 (7th Cir. 2022); *Kadel* at *9-10.

Accordingly, Blue Cross's third party administration activities are "health program[s] or

activit[ies], . . . part of which receives Federal financial assistance."  The Plaintiffs are entitled to

summary judgment on this element of their claim and Blue Cross's motion for summary

judgment on this element should be denied.

2.  Plaintiffs were Excluded from, Denied the Benefits of, or Subjected to
Discrimination in the Provision of a "Health Program or Activity"

Parties do not dispute that Blue Cross denied C.P.'s claim for gender affirming surgery or

that C.P.'s mother was "denied the benefits" her employer's sponsored health plan.  Parties do

not dispute that Blue Cross denied other class members gender affirming care under exclusions

in other self-funded plans.  This element is met.  The Plaintiffs are entitled to summary judgment

on this element and Blue Cross's motion on this element should be denied.

3.  Discrimination Occurred on Basis of Sex

Section 1557 forbids sex discrimination based on transgender status.  *Doe v. Snyder,* 28

F.4th 103, 114 (9th Cir. 2022).  This holding from the Ninth Circuit is consistent with the

Supreme Court's determination in *Bostock v. Clayton County, Georgia,* 140 S.Ct. 1731, (2020)

which held that firing a person based on their transgender status is sex discrimination.

In its administration of the Plan, the trigger for application of the Exclusion and a denial

of coverage was a diagnosis of "gender dysphoria" for C.P. and the other class members.  Dkt.

85-8.  "Gender dysphoria cannot be understood without referencing sex or a synonym."  *See*

*Kadel v. Fol*well, 2022 WL 11166311, at *4 (M.D.N.C. Oct. 19, 2022)(*internal quotation marks*

*and citations omitted*).  "[A] person cannot suffer from gender dysphoria without identifying as transgender."  *Fain v. Crouch*, 2022 WL 3051015, at 6 (S.D. West Virginia August 2, 2022).  Accordingly, the administration of the Exclusion based on transgender status was discrimination "on the basis sex" contrary to Section 1557.  The Plaintiffs' motion for summary judgment on this element should be granted and Blue Cross's cross motion for summary judgment on this element denied.

4.   Conclusion on Plaintiffs' Section 1557 Claim

Blue Cross, as a third party administrator is engaged in a "health care program or activity" and receives Federal financial assistance.  It is subject to Section 1557.  Its denial of benefits under the Plaintiffs' plans based on their transgender status was discrimination on the basis of sex.  Each of the elements of the claim are met and the Plaintiffs are entitled to summary judgment unless one or more of Blue Cross's defenses apply.

**D.  BLUE CROSS'S DEFENSES**

Blue Cross contends that it is entitled to summary judgment based on various defenses.  Each will be addressed.

1.   Covered Entity Defense – "Health Program or Activity"

Blue Cross points to the 2020 Rule and argues that the Court should give HHS deference to its interpretation of Section 1557 in the 2020 Rule based on the deference doctrine announced in *Chevron, USA Inc. v. NRDC, Inc.,* 467 U.S. 837 (2014).  Dkt. 87.  It contends that Section 1557 does not apply to its third party administrator activities because those actions are not "healthcare activities" and because it does not receive any federal financial assistance for its third party administrator activities.  Dkt. 87 at 18.

1    As it relates to Blue Cross's argument here, the 2020 Rule provides that "an entity

2  principally or otherwise engaged in the business of providing health insurance shall not, by

3  virtue of such provision, be considered to be principally engaged in the business of providing

4  healthcare." 85 FR 37178, 37244-45; codified at 45 C.F.R. § 92.3.  The 2020 Rule further

5  provided that:

6         As used in this part, "health program or activity" encompasses all of the
        operations of entities principally engaged in the business of providing healthcare
7        that receive Federal financial assistance as described in paragraph (a)(1) of this
        section. For any entity not principally engaged in the business of providing
8        healthcare, the requirements applicable to a "health program or activity" under
        this part shall apply to such entity's operations only to the extent any such
9        operation receives Federal financial assistance as described in paragraph (a)(1) of
        this section.
10
   *Id.*
11
        The HHS 2020 Rule, arguably in effect, is not entitled to deference in this case.  In
12
   considering whether to accord an agency's interpretation of a statute deference under *Chevron,* a
13
   two-part analysis is required.  *Chevron* at 842.  First, "is the question whether Congress has
14
   directly spoken to the precise question at issue."  *Id.*  If the intent of Congress is clear, the
15
   "unambiguously expressed intent of Congress" must be given effect by both the agency and the
16
   courts.  *Id.* at 843.  "If a statute is ambiguous, and if the implementing agency's construction is
17
   reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute,
18
   even if the agency's reading differs from what the court believes is the best statutory
19
   interpretation."  *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016).
20
        In making the threshold determination under *Chevron* step one, whether statutory
21
   language is ambiguous or not "is determined by reference to the language itself, the specific
22
   context in which the language is used, and the broader context of the statute as a whole."
23
   *Corrigan v. Haaland*, 12 F.4th 901, 907 (9th Cir. 2021)(*cert. denied*, 211 L. Ed. 2d 607, 142 S.
24

Ct. 901 (2022)).  "[T]he starting point is the statutory text."  *Tohono* at 556.  As stated above, the plain language of the text includes insurance contracts and their administration as "health program[s] or activit[ies]."

Moreover, "[i]n making the threshold determination under *Chevron* step one, a reviewing court should not confine itself to examining a particular statutory provision in isolation. Rather, the meaning – or ambiguity – of certain words or phrases may only become evident when placed in context."  *Corrigan* at 910.  Further, "[i]n interpreting a statute, a court must also account for that statute's history and purpose."  *Corrigan* at 912.  "Congress enacted the ACA to increase the number of Americans covered by health insurance and decrease the costs of health care."  *Schmitt* at 949.  It enacted Section 1557 to prohibit discrimination in the health care system to increase access to services and insurance coverage.  *Id.* at 951.  "By extending nondiscrimination protections to individuals under 'any health program or activity,' Congress clearly intended to prohibit discrimination by any entity acting within the health system."  *See Fain v. Crouch,* 545 F.Supp.3d 338, 342 (S.D.W. Va. 2021).  Logically, this includes third party administrators of health insurance plans.  To hold otherwise would thwart Congress's intent to prohibit discrimination in the provision of "health programs and activities."  Clearly, application of the 2020 Rule is contrary to the statutory law, and the rule appears to be arbitrary, capricious and contrary to law.  The statue, not the 2020 Rule, must be followed here.

### 2. <u>Covered Entity Defense – Federal Financial Assistance</u>

Blue Cross argues that even if its third party administration of the Plan is providing a "health program or activity," it does not receive Federal financial assistance for that activity, so it is not covered under Section 1557.  Blue Cross's argument is unpersuasive.  "When the ACA was enacted in 2010, 'program or activity' was already a term of art with a clear meaning and a

broad scope established by the provisions cited in Section 1557 that ban discrimination in connection with Federal financial assistance." *Heart of CarDon* at 742.  The words "program or activity" must be read "in accordance with the prevailing understanding the term had under the law that Congress relied on when codifying section 1557." *Id.* Section 504 of the Rehabilitation Act, which is also incorporated into Section 1557, "defines 'program or activity' as 'all of the operations of'- among other entities - 'an entire corporation, partnership, or other private organization, ... which is principally engaged in the business of providing ... health care... <u>any part of which</u> is extended Federal financial assistance.'" *Id.* (*citing*  29 U.S.C. § 794(b)(*emphasis added*). "The meaning of 'program or activity' in Section 1557's other antidiscrimination provisions is materially identical." *Id.* (*citing* 20 U.S.C. § 1687; 42 U.S.C. § 6107(4); 42 U.S.C. § 2000d-4a).  Section 1557's phrase "health programs or activities" plainly includes "all the operations" of Blue Cross including its involvement in "contracts of insurance." *Id.* at 743; *Kadel* at 10.

Blue Cross's motion for summary judgment based on the defense that it is not a covered entity should be denied.  It operates "health program[s] or activit[ies]" and receives Federal financial assistance and so Section 1557 applies.

### 3.  <u>Plan Design Defense</u>

Blue Cross maintains that it is entitled to summary judgment because it did not design the allegedly discriminatory Exclusion applicable to C.P.  Dkt. 87.  It points to comments to the 2016 Rules, 2020 Rules and 2022 Proposed Rules and maintains that under each iteration of these rules, it is "only where the discriminatory terms of the group health plan originated with the third party administrator rather than with the plan sponsor [that] the third party administrator could be liable for the discriminatory design feature under Section 1557." Dkt. 87 at 10.  There

is no *Chevron* deference owed here to the various iterations of the rules or proposed rules because the statutory text is clear as is Congressional intent – there is no exclusion for third party administrators who did not draft the exclusion at issue.

Blue Cross contends that it is entitled to summary judgment because it is obligated under ERISA's command at 29 U.S.C. § 1104(a)(1)(D) to administer the Exclusion as written.  Dkt. 87.  Under ERISA, benefit plan decisions are required to be made in "accordance with the documents and instruments governing the plan."  29 U.S.C. § 1104(a)(1)(D).  This provision of ERISA does not end the inquiry.

The Plaintiffs properly contend that whether Blue Cross provided the Exclusionary language or not is immaterial because Blue Cross has an independent duty to comply with Section 1557.  Dkt. 96.  The Plaintiffs point to ERISA's 29 U.S.C. § 1144(d) and argue that ERISA does not supplant Section 1557's antidiscrimination provisions.  *Id*.

ERISA's Section 1144(d) provides that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."  Accordingly, ERISA expressly provides that it is not to be construed to impair laws like Section 1557.  Harmonizing these provisions of ERISA, a third party administrator must make decisions in "accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D), but that this requirement must not be construed to "invalidate or impair" Section 1557, 29 U.S.C. § 1144(d).

Blue Cross's third-party administration of the Plan and other self-funded plans are "health programs or activities" and it receives "Federal financial assistance" and so is covered by Section 1557.  ERISA specifically provides that its requirements are not to be construed to

1    invalidate or impair laws like Section 1557 and so ERISA's requirement that Blue Cross follow

2    the Exclusion's language is no defense.  Section 1557 supplements the ERISA requirements.

3          Even if Blue Cross did not have an independent duty to comply with Section 1557, which

4    it does, third party administrators can be liable under Section 1557 based on discriminatory terms

5    in a self-funded plan even if the third party administrator provided the plan document

6    "notwithstanding the fact that the [plan sponsor] subsequently adopted the plan and maintained

7    control over its terms."  *See, e.g., Tovar* v. *Essentia Health,* 857 F.3d 771, 778 (8th Cir. 2017).

8          There are issues of fact as to whether the Plan design originated with Blue Cross.  Blue

9    Cross points to testimony that CHI drafted the gender reassignment surgery exclusion in the

10   Plan.  Dkt. 88-1 at 3.  Plaintiffs points to the testimony of Laura Malec, another Blue Cross

11   30(b)(6) witness, who testified that of the 398 plans at issue, 378 (including the CHI Plan)

12   contain the same or similar exclusionary language that is the "standard language" that Blue Cross

13   "offers to employers when they want a gender affirming care exclusion."  Dkt. 85-8 at 7.  There

14   are issues of fact as to whether the Exclusion's language originated from Blue Cross, but those

15   issues need not be decided to justify denial of Blue Cross's motion for summary judgment on

16   this issue.

17                    4.   Medical Consensus Defense

18         Blue Cross argues that the Exclusion does not discriminate "on the basis of sex" because

19   "there is no medical consensus regarding gender-affirming treatment."  Dkt. 87.  Blue Cross's

20   argument is unavailing.  It did not base the decision to deny care on medical necessity but on

21   C.P.'s and the other class members' transgender status.  Further, it concedes that under its own

22   medical necessity policy, C.P.'s request for hormone therapy and chest reconstruction would be

23   considered "medically necessary."  Dkt. 85 at 23, 25-26.  Whether there is medical consensus

24

1  about transgender care in general is immaterial as to whether Blue Cross discriminated against

2  the Plaintiffs based on sex.

3       5.  <u>Religious Freedom Restoration Act</u>

4       Blue Cross argues that it is entitled to summary judgment because it is protected by the

5  Religious Freedom Restoration Act ("RFRA").  Dkt. 87.  It maintains that RFRA exempts CHI's

6  Plan based on CHI's sincerely-held religious beliefs.  *Id*.  Blue Cross argues that it does not

7  violate Section 1557 if it administers an exempt plan.  *Id.*

8       Under RFRA, "[g]overnment shall not substantially burden a person's exercise of

9  religion even if the burden results from a rule of general applicability" unless the Government

10  "demonstrates that application of the burden to the person – (1) is in furtherance of a compelling

11  government interest; and (2) is the least restrictive means of furthering that compelling

12  interest."  42 U.S.C. § 2000bb-1(a), (b).  RFRA continues, "[a] person whose religious exercise

13  has been burdened in violation of this section may assert that violation as a claim or defense in a

14  judicial proceeding and obtain appropriate relief against a government."  42 U.S.C. § 2000bb-

15  1(c)(*emphasis added*).

16       Blue Cross's motion for summary judgment based on RFRA should be denied.  RFRA

17  provides relief against the government and does not apply to disputes between private

18  parties.  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 839 (9th Cir. 1999);

19  *See Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 736 (7th Cir. 2015)("Based

20  on RFRA's plain language [and] its legislative history . . . RFRA is not applicable in cases where

21  the government is not a party").  The government is not a party here.

22       Blue Cross's citation to *Burwell v. Hobby Lobby*, 573 U.S. 682 (2014) and other similar

23  cases are unavailing.  *Hobby Lobby* involved a challenge by employers to HHS rules requiring

24

insurance coverage for birth control despite religious objection by employer.  The government was a party in all of these cases – for example, Burwell was the Secretary of HHS.  Blue Cross also acknowledges that it is not an entity with a "sincerely-held religious belief" (Dkt. 118).

Blue Cross argued at oral argument that while it is not asserting a claim or defense based on RFRA, Section 1557 and RFRA must be read together.  While it is not wholly clear how that is to occur generally, in this case RFRA does not apply, Section 1557 does.  The Court need not reach Blue Cross's arguments regarding its standing to assert CHI's religiously held beliefs.

There are many approaches and cases covering religious – and, perhaps, other, – reasons to avoid statutory or other legal obligations under the First Amendment to the U.S. Constitution (particularly when the government is involved).  It is appropriate to consider such matters in protecting the U.S. Constitution's First Amendment establishment and free enterprise clauses.  It cannot be, however, that Blue Cross can trump statutory anti-discrimination law with a potential religious protection claim from a co-contractor, without more, which allegedly frees that co-contractor and Blue Cross from obedience to the law.  The law presented here does not clothe Blue Cross with the factual or legal basis to referee such claims of exemption from Section 1557.  Perhaps, somehow, such an exemption may be legally reached, consistent with the First Amendment or other law, but the facts here do not support such a conclusion.  Blue Cross is left with the obligation to obey Section 1557 as it stands.

### 6.  Conclusion on Defenses

Blue Cross is not entitled to summary judgment on any of its defenses.  None of its defenses apply.

### E.  BLUE CROSS'S MOTION FOR SUMMARY JUDGMENT ON NAMED PLAINTIFFS' CLAIM FOR EMOTIONAL DISTRESS DAMAGES

1    Blue Cross moves for summary judgment on Plaintiffs C.P. and Patricia Prichard's

2    emotional distress damages claim.  Dkt. 87.  That portion of the motion should be granted.

3    Emotional distress damages are not recoverable in private actions to enforce the

4    antidiscrimination provisions of the ACA.  *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.

5    Ct. 1562 (2022).

6    **F.  CONCLUSION**

7    The conclusions herein are based on the preponderance of the evidence with no material

8    facts in issue.  This order addresses Blue Cross' duties under Section 1557 only, and the Court is

9    mindful that in reaching its conclusion here, Blue Cross was in the legal position of determining

10   how to deal with the conflict between Section 1557, outlawing discrimination, and ERISA's

11   command at 29 U.S.C. § 1104 (a)(1)(D) to administer plans, including discrimination, as written.

12   The Court is satisfied that ERISA's command at 29 U.S.C. § 1104 (a)(1)(D) to administer the

13   exclusions as written is subservient to Section 1557, outlawing discrimination, which is

14   dominate.  That finding leads to the ultimate conclusion of these summary judgment motions:

15   Blue Cross, as a third party administrator, is a covered entity under Section 1557 and has

16   discriminated against the Plaintiffs and the class Plaintiffs by denying them services for gender

17   affirming care under individual and class Plaintiffs' insurance policies.

18   The appropriate relief due, if any, will be addressed by motion practice, or at trial.

19   **III.    ORDER**

20   Therefore, it is hereby **ORDERED** that:

21   • The Plaintiffs' motion to strike (Dkt. 126) **IS GRANTED**;

22

23

24

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

- Defendant Blue Cross's Motion for Summary Judgment (Dkt. 87) **IS GRANTED** as to the Plaintiffs' emotional distress claims and **DENIED** in all other respects; and

- The Plaintiffs' Cross Motion for Summary Judgment (Dkt. 96) **IS GRANTED** to the extent listed herein.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 19th day of December, 2022.

ROBERT J. BRYAN
United States District Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 21