THE HONORABLE ROBERT J. BRYAN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; and PATRICIA PRITCHARD,

Plaintiffs,

vs.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

Defendant.

Case No. 3:20-cv-06145-RJB

**BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO DECERTIFY THE CLASS**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR: MARCH 3, 2023**

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO DECERTIFY THE CLASS

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

KILPATRICK TOWNSEND 76939048 7

## I. INTRODUCTION

This Court certified a class under Rule 23(b)(1) and (b)(2). Under these Rules, Plaintiffs can only obtain injunctive and declaratory relief, not monetary damages.

During oral argument on the parties' summary judgment motions, the Court asked Plaintiffs what remedy they seek. Plaintiffs requested that this Court order BCBSIL to reprocess and pay previously-denied claims for transgender related services. Plaintiffs also requested that this Court order the employers who sponsor these plans and who are not parties to this action to pay future claims.

Plaintiffs' responses establish that this case should not be certified under Rule 23. And if this was not clear before, it has been confirmed by the Ninth Circuit's recent opinion in *Wit v. United Behavioral Health*, No. 20-17363, --- F.4th ---, 2023 WL 411441, at *9 (9th Cir. Jan. 26, 2023), decided after this Court's Amended Order Certifying Class. *Wit* demonstrates that (1) the class fails Rule 23(a)'s commonality and typicality requirements, and (2) the remedy Plaintiffs seek is inconsistent with the Rule 23(b)(1) and (b)(2) classes that this Court certified. Under *Wit*, the reprocessing remedy that the Plaintiffs demand really seeks monetary damages and is an improper remedy under Rule 23(b), and an injunction requiring a defendant to reprocess claims does not provide the final relief required by Rule 23(b)(2).

Plaintiffs' requested remedies are also impermissible because they would disproportionately burden BCBSIL. Plaintiffs themselves recognize that employers could easily sidestep the requested injunction by replacing BCBSIL with virtually any of its competitors, and courts hold that injunctions that disproportionately burden the defendant while providing the plaintiff with only illusory relief are inequitable.

This Court should decertify the class.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.   The Court certified the class pursuant to Rule 23(b)(1) and Rule 23(b)(2).**

Plaintiffs' motion for certification sought certification only under Rules 23(b)(1) and 23(b)(2). *See* Plaintiff C.P.'s Motion For Class Certification, Dkt. 78, at 20-23. The Court

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION
TO DECERTIFY THE CLASS - 1
Case No. 3:20-cv-06145-RJB

KILPATRICK TOWNSEND 76939048 7

certified the class pursuant to those rules. On December 12, 2022, the Court issued its Amended Order Certifying Class and certified a class comprised of all individuals who:

> (1)  have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by BCBSIL during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services; and
>
> (2)  were, are, or will be denied pre-authorization or coverage of treatment with excluded Gender Affirming Health Care services.

Dkt. 143 at 2.

The Amended Order described the relief that Plaintiffs seek as follows:

> The class seeks declaratory relief. They seek an order enjoining Blue Cross Blue Shield of Illinois from administering or enforcing health benefit plans that exclude coverage for gender-affirming health care, including applying or enforcing the plans' exclusions of services for, or leading to, gender reassignment surgery, and other similar exclusions during the class period, now and in the future. The class seeks an order requiring Blue Cross Blue Shield of Illinois **to reprocess** denied pre-authorizations and claims for gender affirming care under the relevant self-funded health care plans without applying the discriminatory exclusions, and when medically necessary and meeting the other terms and conditions of the relevant plans, **provide coverage (payment)** for those denied pre-authorizations and claims that were based solely on exclusions for gender affirming care.

Dkt. 143 at 3 (emphasis added).

**B.    At the December 12 Hearing, Plaintiffs' Counsel Clarified that the Class Seeks Monetary Damages.**

On December 12, 2022, the Court held a hearing and asked Plaintiffs about the relief they sought:

> You know, as we have worked on this, we have had sort of a double approach. One is the plaintiffs are asking for an injunction that directs Blue Cross not to decline coverage on the gender dysphoria issue. Then there is another angle about who pays if the Court goes along with the plaintiffs' theories. Are there two issues that are separate there? Can Blue Cross be directed to change its instructions without incurring financial liability? . . . Any comments on that?

Ex. A, Hearing Transcript at 22-23.

Plaintiffs' counsel replied as follows:

> I would say we have kind of three potential remedies here. One is the injunctive relief going forward, which does not have an impact on who pays because Blue Cross would have to notify its employers that this was happening. **Those employers that didn't want to pay for it could go find other TPAs. The prospective relief does not hit the 'who pays' issue because the employers that stay will obviously be on the hook to pay.**
>
> Second, the retrospective reprocessing we have asked for, **we believe it is Blue Cross's liability.** It was Blue Cross's responsibility under the administrative services agreement to always comply with the law. It is Blue Cross's responsibility to fully comply with the statute. **So, we believe that any damage related to uncovered medical expenses is borne by Blue Cross Blue Shield of Illinois.** That said, as a contract matter, Blue Cross has indemnification agreements with every single employer that it administered this exclusion for. Even if Your Honor orders Blue Cross to pay, Blue Cross, outside of this courtroom, has a means of redress with those employers under their existing indemnity provisions.
>
> I would suggest, Your Honor, and we will do this in the briefing, that that's between them. They will work it out or they won't work it out. What is important is the reprocessing occur. **Blue Cross would pay for it**, and then sort it out with the employers how they are going to handle it.

*Id.* at 23-24 (emphasis added). Plaintiffs thus clarified that they seek this Court to order BCBSIL to not only reprocess previously-denied claims but also to pay the claims itself.

## C. ERISA Plans, not TPAs, have the ultimate authority to decide whether a claim is paid or not.

Most ERISA self-funded employers retain, pursuant to the plan documents, ultimate authority to decide whether any claim is covered or not. *See, e.g., King v. Blue Cross & Blue Shield of Ill.*, 871 F.3d 730, 736 (9th Cir. 2017) (the employer had the "exclusive right and discretion to interpret the terms and conditions of the Plan"). BCBSIL is not a party to the ERISA contract between employers and their employees. 29 U.S.C. § 1022. In this case, the contract between the sole named plaintiff's and employer, CommonSpirit Health, f/k/a Catholic Health Initiatives ("CHI"), states that CHI retains final decision-making authority over all claims. Dkt. 38-1 at 8, 117-19, 142 (identifying CHI as the Plan Sponsor, the Plan Administrator, and the party solely responsible to fund benefits; delegating only limited duties to BCBSIL; serving as the only agent for service of legal process; possessing the sole right to amend the plan; retaining final decision-making authority with respect to eligibility for and coverage of benefits; and serving as the sole signatory on the summary plan description).

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION
TO DECERTIFY THE CLASS - 3
Case No. 3:20-cv-06145-RJB

KILPATRICK TOWNSEND 76939048 7

1  BCBSIL is one of the many companies CHI has hired to perform functions related to the plan
2  and is one of multiple TPAs employed by the plan.  *See* Ex. B, Decl. of L. Malec, ¶ 3 Ex. A.  The
3  plan also explains that BCBSIL bears "no liability for the funding of the Benefit plan."  Dkt. 38-
4  1 at 117; Dkt. 38-1 at 8.  Moreover, with respect to transgender-related services specifically, CHI
5  requires BCBSIL to send all transgender claims directly to CHI for final approval.  Dkt. 94-1,
6  Ex. E.

## II.　　ARGUMENT

**A.　A party may move for decertification at any time before final judgment.**

A district court may decertify a class any time before final judgment.  Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (under Rule 23(c)(1)(C), "[a] district court may decertify a class at any time"); *see also* 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civ. § 1785.4 (3d ed.) ("Courts have modified or decertified classes at the outset of pretrial, the completion of discovery, after summary judgment in favor of plaintiff class's injunctive claims, but before awarding damages, at the close of plaintiff class's case-in-chief, and at the completion of the trial on the merits.").

Thus, "district court[s] retain[] the flexibility to address problems with a certified class as they arise, including the ability to decertify." *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010).  In deciding whether to decertify, a court may consider "subsequent developments in the litigation," *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982), including "previous substantive rulings in the context of the history of the case" and "the nature and range of proof necessary to establish the [class-wide] allegations." *Marlo v. UPS*, 251 F.R.D. 476, 479-80 (N.D. Cal. 2008) (alteration in original, citation omitted).  Here, Plaintiffs' admission that the class seeks to order BCBSIL to reprocess claims and pay damages necessitates decertification.

**B.      Plaintiffs bear the burden of proof when opposing a motion to decertify.**

In opposing a motion to decertify, Plaintiffs bear the burden of proof just as when moving to certify. *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 502 (E.D. Cal. 2014) ("The standard is the same for class decertification as it is with class certification: . . . . Plaintiff, as '[t]he party seeking class certification[,] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'") (quoting *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011)).

**C.      *Wit* confirms that no class may be certified.**

In *Wit*, the Ninth Circuit recently reemphasized that a class-wide reprocessing request really seeks damages: "Simply put, reprocessing is not truly the *remedy* that Plaintiffs seek, it is the *means to the remedy* that they seek." 2023 WL 411441, at *9 (emphasis in original). In *Wit*, the Ninth Circuit reversed the district court's "reprocessing" injunction requiring United to re-adjudicate claims pursuant to new guidelines and concluded that the "district court abused its discretion in certifying Plaintiffs' denial of benefits claims as class actions." *Id.* at *8-*9. Relying on *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), the Ninth Circuit emphasized that re-processing claims lack finality because "a remand to the administrator for reevaluation is a means to the ultimate remedy." *Id.* at *8. *Wit* emphasized the "numerous individualized questions involved in determining Plaintiffs' entitlement to benefits given the varying Guidelines that apply to their claims and their individual medical circumstances." *Id.*[1]

*Wit*'s holding is similar to *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 886 (7th Cir. 2011). In that case, the Seventh Circuit held that an injunction requiring the reprocessing of insurance claims for hail damage under Rule 23(b)(2) was improper because it

---

[1] *Wit* also emphasized that reprocessing is not a remedy allowed under ERISA, and ERISA plan members cannot receive reprocessing as a remedy in a class action alleging an infirmity in their ERISA plan. *Id.* at *9. As in *Wit*, the plans at issue here are all governed by ERISA. Plaintiffs allege that BCBSIL has violated Title IX of the Civil Rights Act because it is incorporated into the Affordable Care Act, which ERISA incorporates. Therefore, as in *Wit*, this Court can only order a remedy allowed under ERISA, and reprocessing is not one of them. *Id.*

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION
TO DECERTIFY THE CLASS - 5
Case No. 3:20-cv-06145-RJB

KILPATRICK TOWNSEND 76939048 7

was actually an action for damages, not injunctive relief. *Id.* at 888-89 ("The relief is not appropriate [for Rule 23(b) certification] for several reasons, not least of which is that the normal remedy for wrongful denial of insurance benefits is damages, not equitable relief.").

These cases confirm that class certification is impermissible in this case.

### 1. Plaintiffs failed to satisfy Rule 23(a)'s commonality and typicality requirements.

As in *Wit*, the named plaintiffs in this case "expressly disclaimed the actual remedy available to them . . . in an attempt to satisfy Rule 23's commonality requirement." 2023 WL 411441, at *9. The remedy provided to the named plaintiffs under ERISA is "to recover benefits or to enforce or clarify rights under the plan." *Id.* at *8. Yet those remedies are fatal for the commonality and typicality requirements. For any member of the class, recovery of benefits or a declaration of rights under the plan would depend upon "numerous individualized questions involved in determining Plaintiffs' entitlement to benefits given the varying Guidelines that apply to their claims and their individual medical circumstances." *Id*. Plaintiffs are not permitted to invent remedies to avoid the strictures of Rule 23's commonality and typicality requirements.

Moreover, as *Wit* establishes, reprocessing is not proper relief. *See id*. at *9 ("Simply put, reprocessing is not truly the *remedy* that Plaintiffs seek, it is the *means to the remedy* that they seek."). As they conceded, the relief Plaintiffs seek is that BCBSIL retroactively approve and pay the denied claims for gender-affirming care. But such relief would not be typical for the class. As the Ninth Circuit has explained, "even where named and unnamed plaintiffs state the same general . . . injury, if the remedy sought by the named plaintiffs would not redress the injury of the unnamed plaintiffs, the claims raise a 'significantly different set of concerns' that consequently makes the named plaintiffs inadequate representatives of the unnamed plaintiffs' claims." *Melendres v. Arpaio*, 784 F.3d 1254, 1264 (9th Cir. 2015).

Moreover, while BCBSIL previously administered 398 plans that contained some form of transgender exclusion during the class period, BCBSIL still administers only 292 of those plans.

*See* Ex. B, Decl. of L. Malec, ¶ 3. BCBSIL therefore has *no current relationship* with members of more than one-quarter (106) of the plans at issue—and, as a result, it has no ability to reprocess or pay any claims submitted by these members. The named plaintiffs cannot establish commonality or typicality with respect to absent class members affiliated with those plans.[2]

Finally, even apart from *Wit*, the named plaintiffs seek a form of relief that is not typical among the class as a whole. Specifically, the named plaintiffs seek reimbursement for the costs of gender-affirming care paid for out of pocket. There is no evidence that *any* other class members were denied hormone therapy or surgery at the preauthorization stage but then decided to pay for these treatments out of pocket. Thus, the named plaintiffs have failed to show such relief is typical for the class. Indeed, their request for reprocessing masks the atypical nature of the relief the named plaintiffs actually seek.

### 2. Plaintiffs failed to satisfy Rule 23(b)(1).

A "class action predominantly for money damages" is not allowed under Rule 23(b)(1) and (b)(2) because those are mandatory classes, and the lack of an opt out would violate due process. *Dukes*, 564 U.S. at 363.[3] In *Dukes*, the Supreme Court "made clear that 'individualized monetary claims belong in Rule 23(b)(3)' rather than Rule 23(b)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 362); *see also Lozano*

---

[2] At the very least, therefore, the class must be redefined to exclude members of the 106 plans for which BCBSIL is no longer the TPA.

[3] "Rule 23(b)(1) allows a class to be maintained where 'prosecuting separate actions by or against individual class members would create a risk of either '(A) inconsistent or varying adjudications,' or '(B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.'" *Dukes*, 564 U.S. at 346 n.2. "Rule 23(b)(2) . . . applies when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Id.* at 345-46. In contrast, Rule 23(b)(3) states a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 346 n.2.

*v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 729 (9th Cir. 2007) (affirming the district court's denial of certification under 23(b)(2) because the plaintiff sought money).[4]

*Wit* makes clear that Plaintiffs' class claims fail, and the Court must decertify, because they seek monetary relief for individual class members for a class certified under Rule 23(b)(1) and (b)(2). As the Ninth Circuit explained, "reprocessing is not truly the *remedy* that Plaintiffs seek, it is the *means to the remedy* that they seek." 2023 WL 411441, at *9. And that remedy is *money*. *Id*. *Wit*'s point that reprocessing is merely monetary relief in disguise fatally undermines the Court's earlier conclusion that class certification was warranted under (b)(1)(A), (b)(1)(B), and (b)(2).

The Court concluded that certification under Rule 23(b)(1)(A) was warranted because "[m]ultiple suits would create a risk of 'inconsistent or varying adjudications' resulting in 'incompatible standards of conduct.'" Dkt. No. 113 at 14. But because *Wit* establishes that the requested reprocessing remedy is really just monetary relief, that risk vanishes. "Rule 23(b)(1)(A) certification requires more . . . 'than a risk that separate judgments would oblige the

---

[4] *Dukes* involved a 23(b)(2) class, but its prohibition of monetary relief applies to 23(b)(1) classes as well. This is because "[c]lasses certified under (b)(1) and (b)(2) . . . are also mandatory classes: The Rule provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action. Rule 23(b)(3), by contrast . . . allows class certification in a much wider set of circumstances but with greater procedural protections." *Dukes*, 564 U.S. at 361-62. "And unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory . . . Given that structure, we think it clear that individualized monetary claims belong in Rule 23(b)(3)." *Id.* at 362; *see also Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 364 (D.D.C. 2011) ("[T]here is every reason to believe that the Supreme Court's holding that 'individualized monetary claims belong in Rule 23(b)(3) . . . applies with equal force to subdivision (b)(1)'"); *Altier v. Worley Catastrophe Response, LLC*, 2011 WL 3205229, at *14-15 (E.D. La. July 26, 2011) ("Because monetary relief predominates in plaintiffs' complaint, certification under Rule 23(b)(1) must be denied … . as the Supreme Court discussed in *Dukes*, due process concerns inform whether a Rule 23(b)(1) class can be certified when claims for individual monetary damages predominate."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001) ("Certification under Rule 23(b)(1)(A) is therefore not appropriate in an action for damages."); *McCluskey v. Trustees of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 677 (W.D. Wash. 2010) (same).

opposing party to pay damages to some class members but not to others or to pay them different amounts.'" *Zinser*, 253 F.3d at 1193 (citation omitted).

Nor is certification under Rule 23(b)(1)(B) proper. That rule applies only if this Court's ruling in the named Plaintiffs' case would have a broad dispositive effect on all absent class members. But that is not true here. *See La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 467 (9th Cir. 1973) ("Neither the *stare decisis* consequences of an individual action nor the possibility of false reliance upon the improper initiation of a class action can supply either the practical disposition of the rights of the class, or the substantial impairment of those rights, at least one of which is required by Rule 23(b)(1)(B)."). Moreover, the named plaintiffs argued that the resolution of C.P.'s claim would be dispositive of other claims because BCBSIL is, in their mind, required to consistently administer the Exclusions. But that may be true only with respect to all claims submitted to the *same* plan. This case involves a class of beneficiaries of *398 plans*. There is no statutory or regulatory requirement to administer exclusions consistently across *different* plans. The named plaintiffs have thus not justified the creation of a mandatory class consisting of members of *different plans* under Rule 23(b)(1)(B).

### 3. Plaintiffs failed to satisfy Rule 23(b)(2).

"Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011). Since "reprocessing" is just a cover for individualized monetary relief, this class violates that prohibition.

Moreover, reprocessing injunctions are impermissible because they fail to provide "final relief" as required under Fed. R. Civ. P. 23(b)(2) and require too many individualized determinations of eligibility and medical necessity. An injunction that merely "initiate[s] a process through which highly individualized determinations of liability and remedy are made" does not provide "final relief" and therefore does not satisfy Rule 23(b). *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012). The reprocessing injunction Plaintiffs seek cannot satisfy Rule 23(b) because it "would only lay an evidentiary foundation for subsequent

individual determinations" of medical necessity and damages. *Kartman*, 634 F.3d at 886. This is so for two independent reasons.

***First***, final relief would occur only after (1) BCBSIL reprocesses each individual class member's claim via highly individualized inquiries to determine medical necessity and amounts due, *and* (2) those class members receive any payment to which they are entitled. These individual inquiries preclude class certification. *See Day v. Humana Ins. Co.*, 335 F.R.D. 181, 199-200 (N.D. Ill. 2020).

In *Kartman*, for example, the district court issued an injunction requiring State Farm to reinspect all class members' roofs pursuant to a new standard, but the court found that class certification was improper because the relief only provided an "evidentiary foundation for subsequent determinations of liability." 634 F.3d at 893. The court emphasized that the injunction would result in a multitude of subsequent, individual proceedings to determine breach, causation, and damages. *Id.* As the court explained, "certification of a class under Rule 23(b)(2) is permissible only when class plaintiffs seek 'final injunctive relief' that is 'appropriate respecting the class as a whole.'" *Id* at 886. In other words, "the injunction envisioned by the plaintiffs would in no sense be a final remedy. A class-wide roof reinspection would only lay an evidentiary foundation for subsequent individual determinations of liability and damages." *Id*.

In *Jamie S.*, the plaintiffs sought certification under Rule 23(b)(2) of all children with disabilities eligible for special education services under the Individuals with Disabilities Education Act. 668 F.3d at 485, 487. As the court explained, "[t]hat the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a *substantive* matter the relief sought would *merely initiate a process through which highly individualized determinations of liability and remedy are made*; this kind of relief would be class-wide in name only, and it would certainly not be final." *Id.* at 499 (emphases added). The court denied certification because "there can be no single injunction that provides final relief to the class as a whole." *Id.*

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION
TO DECERTIFY THE CLASS - 10
Case No. 3:20-cv-06145-RJB

KILPATRICK TOWNSEND 76939048 7

The class that the Court has certified in this case suffers from the same fatal flaw. Plaintiffs seek an injunction directing BCBSIL to re-adjudicate all claims for transgender-related services previously denied under an exclusion—a process that involves "highly individualized determinations" of medical necessity and payments owed for each class member. *Id.* This is impermissible because no class member would receive final relief from *this Court*, as required by Rule 23(b). The Ninth Circuit has recognized the individualized inquiry required for each member claiming a benefit for transgender-related services. In *Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022), the Ninth Circuit affirmed the district court's finding that the plaintiffs "had not shown that male chest reconstruction surgeries were medically necessary for them or safe and effective for correcting or ameliorating their gender dysphoria." *Id.* at 106. The Court emphasized the individualized inquiry required as to each plaintiff, holding that based on individual "facts specific to Doe and the irreversible nature of the surgery," the plaintiffs had failed to show that they were likely to succeed on the merits of their permanent injunction. *Id.* at 106, 111.

Here, an injunction requiring BCBSIL to re-adjudicate claims for transgender-related services would only initiate a process involving a re-evaluation of each absent class member's individual claims. Each class member would then have to prove that the requested treatment was medically necessary, that he or she was otherwise entitled to coverage under the relevant plan, and that as a result he or she is entitled to benefits. This fails under Rule 23(b) because it does not provide final injunctive relief.

***Second***, the injunction the named Plaintiffs seek would not provide "final injunctive relief" for an additional reason: they sued BCBSIL, the plans' third-party administrator, and not the employers who sponsor the self-funded plans and are contractually responsible to pay the class members' claims.

Even if BCBSIL reprocessed the claims, the injunctive relief would not require any non-party plan to pay a claim. The employers, not BCBSIL, contracted with members to pay benefits to the members. *See Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 819-20 (9th Cir. 1985) (the

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION
TO DECERTIFY THE CLASS - 11
Case No. 3:20-cv-06145-RJB

KILPATRICK TOWNSEND 76939048 7

employer who sponsored the plan was a necessary party because, as here, the plan was self-funded and would bear the expense of any benefit awarded); *see also* Dkt. 38-1 at 8, 117-19, 142. The non-party employers would not be bound by any reprocessing injunction issued by this Court, could freely ignore any injunction issued by the Court, and would not be required to pay any claim.[5]

As a result, the non-party employers could simply refuse to pay any benefits. Employers could either replace BCBSIL or countermand an order to pay any claim, as they retain authority to decide any claim. For example, the CHI summary plan description provides that CHI is the "Plan Administrator" and retains all of the powers it has delegated to BCBSIL, including ultimate authority over BCBSIL. *See* Dkt. 38-1 at 117.

Moreover, as noted above, BCBSIL has no current relationship with members employed by more than one-quarter of the plans at issue. As a result, it has no ability to reprocess or pay any claims submitted by these members.

Finally, under ERISA's enforcement scheme, were any class member to disagree with the plan's decision, they would have to bring suit in a district court that has personal jurisdiction over the plan and where venue is proper. *See* 29 U.S.C. § 1132(a). This Court lacks personal jurisdiction over many of the plans. *See* Dkt. 94 ¶ 3 ("Under its license agreement, BCBSIL only administers self-funded health plans for businesses whose corporate headquarters are in the State of Illinois."). Thus, the requested injunctive relief could not possibly provide "final injunctive relief" required to certify a class under Rule 23(b) because the employers who are obligated to pay claims pursuant to contracts with class members are not parties.

---

[5] An injunction only binds a nonparty that has actual notice and either (1) is the alter ego of, or has identity of interest with, a party, or (2) aids and abets a party's violation of the injunction order. *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1323-24 (9th Cir. 1998). None of these circumstances apply here.

**D.     The Court should decertify the class because any injunction would be inequitable by disproportionately burdening BCBSIL and benefiting its competitors.**

Finally, the class as currently certified would unduly and disproportionately burden BCBSIL. Employers could easily avoid any injunction by this Court by replacing BCBSIL with any of BCBSIL's many competitors, including all the major national, for-profit insurers such as Aetna, Cigna, United, other Blue Cross Blue Shield Association licensees, and others. While BCBSIL itself would bear the full burden of any injunction, the injunction would actually benefit BCBSIL's competitors by allowing them to use their ability to enforce the exclusion to take away BCBSIL's customers, at the same time the injunction provided the class with no final relief. The Court must undertake a "balancing of [the] equities" before issuing an injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) ("[T]he court 'balances the conveniences of the parties and possible injuries to them'" according to how "they may be affected by the granting or withholding of the injunction."); *see also Kartman*, 634 F.3d at 892 (rejecting a reprocessing injunction, and noting that "[i]njunctive relief is also not 'appropriate' because the hardships of the contemplated injunction would fall disproportionately on State Farm"). Any injunction here would be inequitable and should be rejected for this reason.

Any injunction would disproportionately burden BCBSIL, advantage BCBSIL's competitors, leave many class members with no remedy, and therefore would violate the requirements of equity. The Court should decertify the class for this reason as well.

**CONCLUSION**

The Court should vacate the certification order and deny Plaintiffs' motion to certify the class.

Dated this 9th day of February, 2023.

KILPATRICK TOWNSEND & STOCKTON LLP

By       */s/ Gwendolyn C. Payton*
          Gwendolyn C. Payton, WSBA No. 26752
          gpayton@kilpatricktownsend.com
          John R. Neeleman, WSBA No. 19752
          jneeleman@kilpatricktownsend.com
          1420 Fifth Ave., Suite 3700

Seattle, WA 98101
Telephone: (206) 626-7714
Facsimile: (206) 623-6793

*Counsel for Blue Cross Blue Shield of Illinois*

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION
TO DECERTIFY THE CLASS - 14
Case No. 3:20-cv-06145-RJB

KILPATRICK TOWNSEND 76939048 7

# CERTIFICATE OF SERVICE

I certify that on the date indicated below I caused a copy of the foregoing document, BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO DECERTIFY THE CLASS , to be filed with the Clerk of the Court via the CM/ECF system.  In accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court will send e-mail notification of such filing to the following attorneys of record:

| | |
|---|---|
| **Eleanor Hamburger**<br>SIRIANNI YOUTZ SPOONEMORE HAMBURGER<br>3101 WESTERN AVENUE STE 350<br>SEATTLE, WA 98121<br>206-223-0303<br>Fax: 206-223-0246<br>Email: ehamburger@sylaw.com | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Jennifer C Pizer**<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC<br>4221 WILSHIRE BLVD., STE 280<br>LOS ANGELES, CA 90010<br>213-382-7600<br>Email: jpizer@lambdalegal.org | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Omar Gonzalez-Pagan**<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. (NY)<br>120 WALL STREET<br>19TH FLOOR<br>NEW YORK, NY 10005<br>212-809-8585<br>Email: ogonzalez-pagan@lambdalegal.org | ☒ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |

DATED this 9th day of February 2023.

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Gwendolyn C. Payton*
   Gwendolyn C. Payton, WSBA #26752

*Counsel for Blue Cross Blue Shield of Illinois*