THE HONORABLE DAVID G. ESTUDILLO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT TACOMA

C. P., by and through his parents,
Patricia Pritchard and Nolle Pritchard;
S.L. by and through her parents, S.R.
and R.L.; EMMETT JONES; and
PATRICIA PRITCHARD,

                        Plaintiffs,

    vs.

BLUE CROSS BLUE SHIELD OF
ILLINOIS,

                        Defendant.

Case No. 3:20-cv-06145-DGE

**DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S RENEWED MOTION FOR SUMMARY JUDGMENT**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR: SEPTEMBER 11, 2026**

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

**INTRODUCTION**

The Supreme Court's decision in *United States v. Skrmetti*, 605 U.S. 495 (2025), dramatically narrowed this case, eliminating Plaintiffs' core claims and leaving only a few residual issues for this Court to address on remand. The Court should now grant summary judgment to BCBSIL and bring this case to a close.

Applying *Skrmetti*, the Ninth Circuit held that the categorical exclusion of certain treatments for gender dysphoria "is not discrimination based on transgender status or discrimination based on sex" under Section 1557 and vacated this Court's pre-*Skrmetti* summary-judgment ruling. *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 669 (9th Cir. 2025). The Ninth Circuit nonetheless concluded that remand was warranted to allow this Court to address two narrow "questions *Skrmetti* potentially left open." *Id.* at 672. Those questions are: (1) whether BCBSIL's diagnosis-dependent administration of the exclusions was a pretext or proxy for invidious discrimination; and (2) whether BCBSIL discriminated by denying claims despite the patient claiming a second qualifying diagnosis in addition to gender dysphoria. *Id.* at 656, 664, 671–72 & n.11. Neither potential question can resuscitate Plaintiffs' case.

Plaintiffs cannot prevail on the pretext/proxy issue for several independent reasons. In the first place, they forfeited any motive-based theory by pleading and litigating this case through to judgment as an across-the-board challenge to BCBSIL's standard administration of plan exclusions, not as an inquiry into BCBSIL's hidden reasons. On the merits, the record points in one direction: BCBSIL has a straightforward, non-discriminatory business rationale for administering the exclusions. Namely, it treats the exclusions like any other plan term and applies them as written. That's what a plan's sponsor hires a third-party administrator to do; there is nothing to suggest that routine administration was pretextual. Nor does the record support a theory of facial proxy discrimination—a theory *Skrmetti* already foreclosed in this context. *See Anderson v. Crouch*, 169 F.4th 474, 484, 486 (4th Cir. 2026).

The alternative-diagnosis issue fares no better. Named Plaintiffs C.P. and Jones never alleged that they submitted claims under any qualifying diagnosis other than gender dysphoria.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 1
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

The panel identified S.L. as potentially raising the issue, but acknowledged that it was not familiar with the full record and that this Court would need to consider the issue in the first instance. *Pritchard*, 159 F.4th at 671–72. This Court should now hold that the actual claim records defeat the theory on the facts: at no point did S.L. or any provider submit a second qualifying diagnosis (whether precocious puberty or otherwise) for S.L. to BCBSIL. BCBSIL accordingly never denied S.L. coverage for a precocious puberty diagnosis. The record instead shows that the only diagnosis for which BCBSIL actually adjudicated S.L.'s claim was gender dysphoria. Nor does the record show BCBSIL denying any claim for any absent class member despite the presence of an independent qualifying diagnosis. The alternative-diagnosis theory simply is not implicated in this case and this Court should not issue an advisory opinion about it.

For these reasons—and for the additional independent reason that if this Court permitted Plaintiffs to raise their unpled pretext/proxy and alternative-diagnosis claims now, those new claims would be defeated by BCBSIL's Spending Clause defense—summary judgment should be entered for BCBSIL.

## STATEMENT OF MATERIAL FACTS[1]

Employers sponsor group health plans in two basic ways. Some buy fully insured coverage from an insurer. Others are self-insured: they assume responsibility for their employees' healthcare costs and retain a third-party administrator, or TPA, to assemble provider networks, bill providers, and process claims. *Pritchard*, 159 F.4th at 654; Dkt. 88-1 at 10–11. In self-funded plans, the plan sponsor "decides which healthcare costs [it] will cover for employees." *Pritchard*, 159 F.4th at 654; Dkt. 88-1 at 11. BCBSIL sells fully insured coverage and also acts as a TPA for self-funded plans. *Pritchard*, 159 F.4th at 654–55.

Employer-clients may "add or remove any benefits that they wish," including exclusions of certain treatments of gender dysphoria. *Pritchard*, 159 F.4th at 654; Dkt. 85-5 at 5; Declaration of Gwendolyn C. Payton ("Payton Decl."), Ex. D at 57:10–11. In its capacity as a TPA, BCBSIL

---

[1] BCBSIL also incorporates by reference its statement of material facts in its prior summary judgment motion. *See* Dkt. 87 at 2–4.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 2
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

implements employers' gender-affirming-care exclusions through a "standard practice": it will compare the diagnosis and treatment codes submitted with the claim against the plan terms. Dkt. 85-5 at 12–13; *Pritchard*, 159 F.4th at 665; *see also id.* (BCBSIL "look[s] at the diagnosis and service code to determine if it's gender reassignment, and if it is then it is denied."). For instance, when a claim for a surgically implanted puberty blocker is submitted under a plan that excludes surgical services related to gender reassignment, BCBSIL will reject the claim if its "particular diagnostic code [is] associated with gender dysphoria" but will approve the claim "for conditions other than gender dysphoria when medically necessary." Dkt. 85-5 at 17–18; Dkt. 85-8 at 11–13.

For fully insured plans, BCBSIL applies its medical policy, pursuant to which it covers gender reassignment surgery, hormone therapy, and related services for both adults and children when medically necessary. Dkt. 85-3 at 2; Dkt. 85-5 at 24–25; *see also* Payton Decl., Ex. C at 46:22–47:19, 51:5–52:13, 53:23–54:10 (describing BCBSIL's development of its medical policy on gender dysphoria).

C.P. is a transgender male diagnosed with gender dysphoria. *Pritchard*, 159 F.4th at 655; Dkt. 97-3 at 2; Dkt. 97-4 at 2. He was enrolled as a dependent in the self-funded Catholic Health Initiatives plan ("CHI Plan"), which BCBSIL administered. *Pritchard*, 159 F.4th at 655; Dkt. 81 ¶ 2; Dkt. 84-13 at 67. The CHI Plan excluded benefits "for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery." *Pritchard*, 159 F.4th at 655; Dkt. 84-13 at 67. C.P.'s physician prescribed puberty-delaying hormone therapy through a Vantas implant; BCBSIL initially covered the implant but later stated that the coverage had been erroneous because of the plan exclusion. *Pritchard*, 159 F.4th at 655; Dkt. 84-10 at 2–3; Dkt. 84-11. When C.P. sought a second Vantas implant and gender-affirming chest surgery, BCBSIL denied coverage based on the plan's exclusion. *Pritchard*, 159 F.4th at 655; Dkt. 84-14; Dkt. 97-19 at 5.

S.L. is a transgender female diagnosed with gender dysphoria and precocious puberty. *Pritchard*, 159 F.4th at 655; Dkt. 176 ¶ 2. She is enrolled in a self-funded health plan administered by BCBSIL, and her provider prescribed puberty-delaying hormones. *Pritchard*, 159 F.4th at 655;

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 3
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

Dkt. 176 ¶¶ 4, 7–8. The claims submitted by her provider indicated only the gender dysphoria diagnosis, not the precocious puberty one. *See* Payton Decl. Exs. A-B. BCBSIL denied coverage, citing her plan's exclusion for "gender reassignment surgery" and "related services and supplies," and S.L.'s mother appealed without success. *Pritchard*, 159 F.4th at 655; Dkt. 176 ¶¶ 9–11; Dkt. 176 at 22–23.

Emmett Jones is a transgender male diagnosed with gender dysphoria and enrolled in the same CHI Plan as C.P. *Pritchard*, 159 F.4th at 655; Dkt. 177 ¶¶ 2–5. His providers recommended gender-affirming chest surgery; he paid for the surgery out of pocket and sought reimbursement from BCBSIL. *Pritchard*, 159 F.4th at 655; Dkt. 177 ¶¶ 6–10. Jones is not sure whether "the reason for the non-payment was due to my deductible, a need for additional information or the application of the Exclusion in my health plan for gender affirming care." *Id.* ¶ 12.

## PROCEDURAL BACKGROUND

C.P. and his mother Patricia Pritchard filed this action on November 23, 2020, alleging that BCBSIL violated Section 1557 of the Affordable Care Act by administering the CHI Plan exclusion. Dkt. 1. The Court certified a class on November 9, 2022, and later amended the class definition. Dkt. 113; Dkt. 143; Dkt. 203. The class now includes individuals who "have been, are, or will be participants or beneficiaries in an ERISA self-funded 'group health plan' . . . administered by Blue Cross Blue Shield of Illinois during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services," and who were, are, or will be denied preauthorization or coverage "solely based on an exclusion of some or all Gender Affirming Health Care services." Dkt. 203 at 3–4. The class period runs from November 23, 2016, to the present. *Id.* at 4.

On December 19, 2022, this Court granted summary judgment to Plaintiffs, concluding, among other things, that BCBSIL discriminated on the basis of sex in violation of Section 1557 when it administered and enforced categorical exclusions of gender-affirming care because "the trigger for application of the Exclusion and a denial of coverage was a diagnosis of 'gender dysphoria' for C.P. and the other class members" and "[g]ender dysphoria cannot be understood

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 4
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

without referencing sex or a synonym." Dkt. 146 at 10–12. After summary judgment, and while Plaintiffs' remedies motion was pending, Plaintiffs added S.L. and Jones as named plaintiffs. Dkt. 188; Dkt. 189.

The Ninth Circuit vacated the summary-judgment ruling because it could not be squared with the Supreme Court's decision in *Skrmetti*. *Pritchard*, 159 F.4th at 672–73. *Skrmetti* upheld a Tennessee law that restricted certain treatments when used to treat gender dysphoria, gender identity disorder, or gender incongruence. 605 U.S. at 506-07. The Supreme Court held that the law did not classify by sex because it "does not exclude any individual from medical treatments on the basis of transgender status but rather removes one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." *Id.* at 518–19. Applying that reasoning here, the panel explained that exclusions of gender-dysphoria treatment are not categorically "discrimination based on transgender status or discrimination based on sex." *Pritchard*, 159 F.4th at 669. The exclusions do not penalize transgender status but instead target diagnoses for coverage, and "[w]ithout more, sex is not a but-for cause of the exclusions' operation." *Id.* at 670.

The panel remanded only for this Court to consider two "questions *Skrmetti* potentially left open." *Id.* at 672. First, the panel identified the possibility that "some of these Plaintiffs allegedly had diagnoses (other than gender dysphoria) that entitled them to hormones or other treatment—but BCBSIL still would not treat them." *Id.* at 671. Second, the panel noted that *Skrmetti* did not speak to a situation where the defendant's justifications "are a pretext for 'invidious discrimination,'" what the panel described as a "proxy-discrimination theory." *Id.* at 671; *see also id.* at 664 n.11 ("[O]n remand, the district court will consider two arguments: whether BCBSIL adopted a policy that looked to class members' transgender status rather than their gender-dysphoria diagnoses and whether BCBSIL discriminated based on gender-dysphoria treatment as a pretext/proxy for anti-transgender discrimination."). The panel "express[ed] no view about the appropriate outcome on remand." *Id.* at 672.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 5
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

## ARGUMENT

Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, no genuine issue of material fact exists that would preclude summary judgment as a matter of law. Fed. R. Civ. P. 56(a). If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Summary judgment should be granted "where the nonmoving party fails to offer evidence from which a reasonable [factfinder] could return a [decision] in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

**I.    The Ninth Circuit held that, as a matter of law, BCBSIL's diagnosis-based administration of categorical plan exclusions of gender-affirming care does not discriminate on the basis of sex or transgender status.**

The Ninth Circuit's decision forecloses Plaintiffs' core claim: that "categorical exclusions of gender affirming care administered by BCBSIL" violate Section 1557 "on their face and as applied," where BCBSIL's "application of the Exclusions is triggered by the diagnostic code for gender dysphoria." Dkt. 189 ¶ 130; Dkt. 96 at 18; *see also* Dkt. 189 ¶¶ 132–33. The Ninth Circuit held that, as a matter of law, the categorical exclusion of certain treatments for gender dysphoria "is not discrimination based on transgender status or discrimination based on sex" in violation of Section 1557. *Pritchard*, 159 F.4th at 669. "Without more, sex is not a but-for cause of the exclusions' operation." *Id.* at 670.

The panel drew an analogy to the statute at issue in *Skrmetti*. There, the Supreme Court upheld a Tennessee law, SB1, which prohibits certain medical treatments, but only when provided "for the purpose of (1) '[e]nabling a minor to identify with, or live as, a purported identity inconsistent with the minor's sex,' or (2) '[t]reating purported discomfort or distress from a discordance between the minor's sex and asserted identity.'" 605 U.S. at 506. The Court looked to

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 6
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

how SB1 operated and whether its "application … turns on sex." *Id.* at 512. The Court concluded it did not. *See id.* at 514; *see also id.* at 522 ("[S]ex is simply not a but-for cause of SB1's operation."). Crucial to the Court's reasoning was a distinction between classifications based on medical diagnosis and classifications based on sex: "SB1 does not exclude any individual from medical treatments on the basis of transgender status but rather removes one set of diagnoses— gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." *Id.* at 518–19.

The exclusions Plaintiffs challenge operate in the same way. It is an undisputed fact that, despite variations in the exclusions' precise language, BCBSIL administered them through a "standard practice" in which BCBSIL "looks at the diagnostic code and the service code" to determine whether the claim is excluded. *Pritchard*, 159 F.4th at 665. A service like hormone therapy would be covered if paired with the diagnostic code for precocious puberty but not if paired solely with the code for gender dysphoria. *Id.* at 671; *see* Dkt. 146 at 11 ("In its administration of the Plan, the trigger for application of the Exclusion and a denial of coverage was a diagnosis of 'gender dysphoria' for C.P. and the other class members.").[2] Thus, the exclusions did nothing more than "remov[e] that [gender dysphoria] diagnosis from the range of conditions" covered by the plan. *Pritchard*, 159 F.4th at 669–70. Understood in this way—as diagnosis-based exclusions— the panel found *Skrmetti* was controlling: "sex is not a but-for cause of the exclusions' operation," and so the exclusions do not violate Section 1557. *Id.* at 670.

---

[2] Plaintiffs not only did not dispute the fact that BCBSIL administers the exclusions with reference to diagnosis; they made it a central premise of their argument:

> When administering the Exclusions in ERISA self-funded plans, BCBSIL performs its review in a standard manner. It reviews claims to determine if the service is related to "gender dysphoria" based on the diagnostic and procedural codes used; if so, the claim is denied under the Exclusions …. This is BCBSIL's standard practice for administering all gender-affirming care exclusions. Although there are a few deviations from the standard Exclusion that BCBSIL administers, all use the diagnosis of "gender dysphoria" as the basis for determining whether the services are excluded.

Dkt. 78 at 9–10 (citations omitted); *see also* Dkt. 96 at 6, 18-19; Dkt. 189 ¶ 133.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 7
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

## II.    There is no genuine issue of material fact as to either of the two narrow "questions *Skrmetti* potentially left open."

Having held that categorical exclusions of gender-dysphoria treatment do not, as a matter of law, discriminate on the basis of sex or transgender status, the Ninth Circuit identified only "two respects" in which there was "some possibility" *Skrmetti* might not control the outcome of this case. *Pritchard*, 159 F.4th at 656, 671. The first is whether BCBSIL's actions were a pretext or proxy for unlawful discrimination. The second is whether S.L. had a separate qualifying diagnosis that, but for the gender dysphoria diagnosis, would have qualified for coverage. *Id.* at 671-72.

Those two theories also fail as a matter of law. Plaintiffs forfeited both theories by not pleading them or otherwise pursuing them previously in this Court. Further, BCBSIL is entitled to summary judgment because no evidence in the summary judgment record supports either theory.

### A.    BCBSIL's diagnosis-based administration of the exclusions was neither a pretext nor a proxy for invidious discrimination.

One of the two respects in which the Ninth Circuit suggested that *Skrmetti* might be distinguishable is that *Skrmetti* did not consider whether SB1 "was motivated by an invidious discriminatory purpose." 605 U.S. at 516. No party there "had 'argued the statute's prohibitions are mere pretexts designed to effect an invidious discrimination against transgender individuals'" and so the Court "'declined to find' that the statute discriminated against transgender individuals for that reason." *Pritchard*, 159 F.4th at 671 (quoting *Skrmetti*, 605 U.S. at 518–19) (alterations omitted). According to the Ninth Circuit, this case is potentially distinguishable insofar as "BCBSIL's justifications for its actions are a pretext for invidious discrimination"—what the Ninth Circuit alternatingly called "a proxy-discrimination theory" and "the pretext/proxy issue." *Id.* at 671, 672 (quotation marks omitted).

For the sake of analytical clarity and because (as the Ninth Circuit acknowledged, *id.* at 672) the issues were not fully briefed, it is important to distinguish between the concepts of pretextual discrimination and proxy discrimination.

"Pretext" is relevant only in cases concerning "whether or not the [defendant] possessed the [unlawful] discriminatory *motive*." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 8
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

2002) (emphasis added), *aff'd*, 539 U.S. 90 (2003). It is typically part of the *McDonnell Douglas* fact-intensive inquiry into whether the "true reasons" for the challenged action were in fact discriminatory.[3] *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Because of its fact-intensive nature, the *McDonnell Douglas* framework is inapplicable when plaintiffs allege only facial discrimination. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048-49 (9th Cir. 2007); *see also Richardson v. Nw. Christian Univ.*, 242 F. Supp. 3d 1132, 1147 (D. Or. 2017) (explaining that cases "about competing inferences regarding defendant's motivation" are "poor fit[s] for the facial discrimination framework").

Although "[d]iscriminatory purpose or intent is usually proved through a fact-intensive inquiry," plaintiffs are on rare occasion able to bypass that fact-intensive inquiry by proving proxy discrimination. *Anderson*, 169 F.4th at 484. "Proxy discrimination is a form of facial discrimination." *Davis v. Guam*, 932 F.3d 822, 837-38 (9th Cir. 2019) (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013)). "It arises when the defendant . . . treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Pac. Shores Props.*, 730 F.3d at 1160 n.23. Not all "closely associated" groups support a conclusion of proxy discrimination. *See, e.g.*, *Ky. Ret. Sys. v. E.E.O.C.*, 554 U.S. 135, 143-44 (2008) (rejecting argument that pension status was "a 'proxy for age'" because "there is a clear non-age-related rationale for the disparity here at issue"). Rather, the alleged proxy must be "such an irrational object of disfavor that … an intent to disfavor [the protected group] can readily be presumed." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993); *see also Anderson*, 169 F.4th at 484 ("We can only presume discriminatory intent when a law both overwhelmingly affects a suspect class and there's no logical reason for the distinction the law makes other than targeting that suspect class.").

---

[3] The *McDonnell Douglas* analysis is "sometimes referred to as 'pretext' analysis" and "cases in which the *McDonnell Douglas* framework is applied are sometimes referred to as 'pretext cases.'" *Costa*, 299 F.3d at 854, 857.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 9
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

### 1.    Any pretext-based argument must fail.

#### a.    Plaintiffs have forfeited any pretext theory.

Perhaps recognizing BCBSIL's actual motives are benign, Plaintiffs did not plead that BCBSIL had any "discriminatory motive" and did not make any allegations as to the "true reasons" BCBSIL administered the categorical exclusions. *Costa*, 299 F.3d at 857; *Burdine*, 450 U.S. at 253. They have therefore forfeited any such claim.

Despite amending their complaint twice (including after discovery), Plaintiffs never pleaded a pretext theory or any motive-based theory of liability. They did not allege facts suggesting an anti-transgender motive. Nor did they allege that BCBSIL's stated reasons for administering self-funded plans' exclusions were false. The words "motive," "rationale," and "pretext" are nowhere to be found. Instead, the Complaint alleged that "[t]he categorical exclusions of gender affirming care administered by BCBSIL, on their face and as applied … violate Section 1557's prohibition against discrimination on the basis of sex," Dkt. 189 ¶ 130, and, further, that the way BCBSIL "administer[s] the Exclusion … draw[s] a classification that discriminates on the basis of 'sex,'" *id.* ¶ 132. Plaintiffs' pleaded theory was about the operation and administration of allegedly inherently discriminatory exclusions, not about ferreting out BCBSIL's undisclosed motives. That alone forfeits any pretext claim. *See Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1071 (9th Cir. 2023) ("Rule 8[] … requires that the defendant receives notice as to what is at issue in the case.").

As the case progressed through summary judgment and class certification, Plaintiffs continued to insist that BCBSIL's actual motives were immaterial. At summary judgment, they framed their burden under Section 1557 through objective statutory elements without any motive requirement, Dkt. 96 at 16, only arguing that the causation element was met—i.e., that the benefits determinations were made "on the basis of sex"—because "the Exclusions are facially discriminatory," *id.* at 17; *see also id.* at 18–19 (relying on the but-for causation standard applied in *Bostock v. Clayton County*, 590 U.S. 644 (2020)); Dkt. 20 at 1-2 (using same test in opposition to BCBSIL's motion to dismiss). Plaintiffs' choice to frame the elements of their claim in this way

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 10
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

meant they did not need to prove BCBSIL had a discriminatory motive. "If Plaintiffs succeed in proving facial discrimination, 'no greater proof of mental state [is] necessary.'" *Pritchard*, 159 F.4th at 664 (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002)) (alteration in original)). Plaintiffs' failure to argue pretext, animus, or invidious intent therefore was not an oversight; those issues were unnecessary under the theory on which they sought and obtained class certification and summary judgment.

Plaintiffs accordingly *disclaimed* the relevance of motive. At summary judgment, they argued "BCBSIL violates Section 1557 when it administers discriminatory exclusions … even when it does so at the direction of the various employers with whom it contracts as a TPA." Dkt. 96 at 1–2. And they produced no direct or indirect evidence of illicit motive and invoked no evidentiary framework for proving an invidious discriminatory purpose—neither *McDonnell Douglas* nor anything else. Moreover, at class certification, Plaintiffs told this Court that, if that "standard conduct" violates Section 1557, BCBSIL is liable for all plans containing the exclusions "regardless of … dissimilarities in the … motivations of the employers" because "[t]*he focus of this legal challenge is on BCBSIL's standard conduct*." Dkt. 99 at 2 (emphasis added). Plaintiffs likewise resisted any individualized motive inquiry by dismissing the religious motivations of BCBSIL's customers as a "red herring." *Id.* at 5.

Having told this Court that motivations did not matter, Plaintiffs cannot now conjure up a pretext theory. "At this late stage, Plaintiffs cannot now attempt to bring into play Defendant's alleged discriminatory motive and thus maintain a new theory of liability to avoid summary judgment that was not adequately presented in the operative complaint." *Lavelle-Hayden v. Legacy Health*, 744 F. Supp. 3d 1135, 1149–50 (D. Or. 2024); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292–93 (9th Cir. 2000). "[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (internal quotation marks omitted).

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 11
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

###### b. Plaintiffs have not met their burden to show BCBSIL's reliance on diagnosis was pretextual.

Nor do Plaintiffs raise a genuine issue that "BCBSIL's justifications for its actions are a pretext for invidious discrimination." *Pritchard*, 159 F.4th at 671. The *McDonnell Douglas* framework has three steps: first, the plaintiff has the initial burden to make out a prima facie claim of discrimination on the basis of sex; second, the burden then switches to the defendant, who must articulate a legitimate, non-discriminatory reason for the action; and third, the plaintiff must then show that the reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the [defendant] or indirectly by showing that the [defendant's] proffered explanation is unworthy of credence." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *see Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012) (applying *McDonnell Douglas* in Title IX case). Plaintiffs' evidence of pretext must be both "specific and substantial." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002).

That showing cannot be made here. Assuming *arguendo* that the burden ever even shifts to BCBSIL,[4] BCBSIL has consistently articulated a straightforward, non-discriminatory business rationale: it administers the benefit packages that self-funded employers select because that is what those customers hire a TPA to do, what the Administrative Services Only (ASO) market expects, and what lets BCBSIL remain a competitive administrator for employers with varying plan designs. *See* Dkt. 88-1 at 11 (explaining that, generally, "the employer cho[o]ses what it will cover for employees and then hires an administ[rator] to provide employees with a network of providers and process the claims"); Dkt. 85-5 at 5 ("Clients can add or remove any benefits that they wish."); *see also Nondiscrimination in Health Programs and Activities*, 89 Fed. Reg. 37522, 37625–26 &

---

[4] It should not. Plaintiffs have stipulated that a *prima facie* claim of discrimination in violation of Section 1557 has three elements: "(1) the defendant is a health program or activity, any part of which receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any a [sic] health program or activity; and (3) the latter occurred on the basis of sex." Dkt. 20 at 9. But, as the Ninth Circuit held, Plaintiffs cannot show that third element. The benefits Plaintiffs claimed were denied because of medical diagnosis, not sex or transgender status. *See Pritchard*, 159 F.4th at 669–70 ("[B]y excluding treatment for gender dysphoria, BCBSIL removed that diagnosis from the range of conditions its insurance plans cover. Without more, sex is not a but-for cause of the exclusions' operation.").

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 12
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

US1 156856029 2

n.277 (May 6, 2024) (acknowledging norm of "custom designed benefit plans" for large employer groups and that insurers that refuse to implement an employer's exclusion face "a competitive disadvantage"). In administering these plans as written, BCBSIL is merely "exercising what the employer wants to do." Payton Decl., Ex. E, at 34:9–10; *see also id.*, Ex. D, at 32:20-33:3, 51:17–19. Plaintiffs' own prior briefing confirms that ordinary business motivations, like retaining customers, drive BCBSIL's administration of the exclusions as written. *See* Dkt. 96 at 3 (explaining that, if BCBSIL did not administer the exclusions as written, "employers would then have to … find other TPAs that are not subject to Section 1557").

The record confirms that BCBSIL consistently follows this business rationale without regard to customer motive. BCBSIL does not ask self-funded plan sponsors to justify their decision to include a gender-affirming-care exclusion; does not investigate whether a sponsor has legal, religious, medical, scientific, or other reasons for the exclusion; and administers the plan terms without regard to the sponsor's reason. Dkt. 85-8 at 9–10; *see also* Payton Decl., Ex. D at 33:7–16 (explaining BCBSIL will implement all "choices" a new client "told us that were covered under their prior carrier" without asking for justifications or rationales). A decisionmaker that applies plan terms without considering why a customer selected them is not secretly using diagnosis as a cover for animus. It is doing what TPAs do: administering the plan the employer adopted.

Other undisputed facts make any inference of pretext still less plausible. When BCBSIL controls plan design and bears the financial risk, its fully insured plans do not contain blanket exclusions of gender-affirming care; they follow BCBSIL's medical policy and cover gender-reassignment or gender-assignment services when the policy criteria are met. *Id.*, Ex. D, at 163:9–164:11. That is the same policy Plaintiffs have insisted BCBSIL should apply when administering self-funded plans with express exclusions. *See* Dkt. 96 at 2. And under that policy, C.P.'s hormone treatments and chest reconstruction surgery would have been covered. Dkt. 85 at 22–27. It would

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 13
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

make no sense for an anti-transgender motive to show up only when BCBSIL is *most detached* from the decision whether to cover a gender dysphoria treatment.

Nor can Plaintiffs fill the gap by imputing employers' alleged motives to BCBSIL. *See Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) ("reject[ing] the use of agency principles to impute liability" under Title IX); *Bose v. Bea*, 947 F.3d 983, 991 (6th Cir. 2020). Indeed, the fact that 398 employer-sponsors independently chose to exclude gender-affirming care—each for its own reasons—negates any inference that BCBSIL harbored a unitary discriminatory motive. And the only evidence of employer motive in the record—the exclusions requested by CHI, the plan sponsor for C.P. and Emmett Jones—demonstrate a sincerely held religious motivation. *See* Dkt. 189-8 at 4 ("[T]his surgery has been determined not to align with the teachings and doctrine of the Catholic Church."); Dkt. 160-2 at 10; Payton Decl., Ex D, at 103:5-11; *Id.*, Ex. E, 55:22-24; *cf. Villiarimo*, 281 F.3d at 1063 (holding that to defeat accusations of pretext, "courts only require that an employer honestly believed its reason for its actions") (internal quotation marks omitted).

At bottom, Plaintiffs have no evidence—let alone the requisite "specific and substantial" evidence—that BCBSIL's stated rationale was "unworthy of credence" or that anti-transgender animus was the "more likely" motivation. *Villiarimo*, 281 F.3d at 1062; *Davis*, 520 F.3d at 1089. To the contrary, any such claim of animus would be contradicted by the record.

### 2. Any proxy discrimination argument must fail.

Plaintiffs have also failed to raise a triable issue of proxy discrimination. In the first place, "*Skrmetti* forecloses any argument" that gender dysphoria is, facially, an unlawful proxy for transgender status. *Anderson*, 169 F.4th at 492. *Skrmetti* explained that SB1's classification based on diagnosis "does not mask sex-based classifications." 605 U.S. at 514. The Court reasoned that the analysis of whether a diagnosis-based classification "mask[s] discrimination" must be attentive to the "medical context." *Id.* at 512; *see also id.* at 516 ("[P]rohibiting the administration of specific drugs for particular medical uses does not" invite heightened scrutiny.). While *Skrmetti* held open the possibility that a later plaintiff could show "that SB1's prohibitions are mere *pretexts* designed to

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 14
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

effect an invidious discrimination," it did not say the same for a proxy theory. *Id.* at 519 (emphasis added). To be sure, the Ninth Circuit identified one of the "questions *Skrmetti* potentially left open" as "the pretext/proxy issue"—echoing Plaintiffs' post-*Skrmetti* Supplemental Brief, which conflated proxy and pretext theories. Pls.' Suppl. Br. at 5 (9th Cir. Dkt. 91.1).[5] But the Ninth Circuit never suggested that *Skrmetti* was consistent with the view that a classification based on gender dysphoria diagnosis is a proxy that facially "masks" unlawful sex discrimination.

In any event, the record contains no evidence to reasonably support a conclusion of proxy discrimination. For a court to find a defendant engaged in facial discrimination by proxy, the alleged proxy must not only closely "fit" the protected class so as "to make a discriminatory inference plausible," *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 959 (9th Cir. 2020). Proving proxy discrimination *also* requires showing that proxy is "such an irrational object of disfavor that … an intent to disfavor [the protected] class can readily be presumed," *Bray*, 506 U.S. at 270.

Consistent with this requirement, in proxy cases the Ninth Circuit consistently looks beyond the simple question of "fit" between the proxy and the protected class and instead asks whether there is a reasonable, nondiscriminatory basis for using the alleged proxy or whether other circumstances suggest a discriminatory motivation. In *Davis v. Guam*, for instance, the close "fit" between a law's "Native Inhabitants of Guam" classification and the forbidden racial classification was by itself not sufficient for the court to find facial discrimination; the court ultimately inferred discriminatory intent by also looking at legislative history. *See* 932 F.3d at 839–41. So too in *Orhorhaghe v. I.N.S.*, 38 F.3d 488 (9th Cir. 1994). There, the court stipulated that certain surnames closely track race or national origin, but went on to explain that investigatory seizures solely based on "foreign-sounding names" are unlawful not solely because of the fit between the two but because reliance on surnames lacks a "reasonable basis" in that context. *Id.* at 498; *see also id.*

---

[5] The Ninth Circuit also quoted two out-of-circuit cases that use the word "proxy" not to describe a form of facial discrimination but rather as part of a factual inquiry into "invidious discriminatory intent." *See Pritchard*, 159 F.4th at 671–72 (quoting *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 886 (4th Cir. 2023), and *Hearne v. Bd. of Educ.*, 185 F.3d 770, 776 (7th Cir. 1999)).

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 15
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

("The government itself sometimes relies on [surname] proxies for salutary purposes."). Most recently, in *Yu v. Idaho State University*, 15 F.4th 1236 (9th Cir. 2021), the court did not deny that there is a close fit between "English fluency" and "national origin," but nonetheless held that the plaintiff's lack of English fluency did not support a finding that the university discriminated when it dismissed him. *Id.* at 1244. His "ability to communicate effectively" was a consideration relevant to his ability to succeed in the graduate program. *Id.*

The same considerations are dispositive here. As the Fourth Circuit put it in a challenge parallel to this one:

> to establish a presumption that the Exclusion discriminates by proxy, Plaintiffs must show that the choice to exclude gender dysphoria from coverage is so irrational that nothing could explain it other than an intent to discriminate against transgender persons. … Since legitimate, nondiscriminatory explanations for the [administration] exist … it cannot be said that the [administrator] obviously uses gender dysphoria to discriminate by proxy against transgender persons.

*Anderson*, 169 F.4th at 490–91. Here, BCBSIL's administration of the exclusions is in line with how an ordinary TPA administers an ordinary plan exclusion: by faithfully implementing its customers' choices, as the market demands. It therefore "cannot be said" that BCBSIL "obviously uses gender dysphoria to discriminate by proxy against transgender persons." *Anderson*, 169 F.4th at 490–91.

**B.    Discrimination cannot be inferred from BCBSIL's treatment of those who allegedly had diagnoses other than gender dysphoria.**

The panel also suggested that "*Skrmetti* is arguably distinguishable" if a beneficiary "had diagnoses (other than gender dysphoria) that entitled them to hormones or other treatment—but BCBSIL still would not treat them." *Pritchard*, 159 F.4th at 671. Whether or not such a hypothetical circumstance is controlled by *Skrmetti*—and the panel merely called it a question "*Skrmetti* potentially left open," *id.* at 672 (emphasis added)—it is irrelevant to this record, which nowhere indicates that BCBSIL ever denied coverage to a beneficiary with a second diagnosis that independently merited the treatment. The panel focused on plaintiff S.L., who claimed to suffer from precocious puberty in

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 16
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

addition to gender dysphoria. But the record evidence does not support the premise that S.L. ever actually presented a second qualifying diagnosis in any claim for insurance coverage.

### 1. None of the named plaintiffs presented a qualifying diagnosis other than gender dysphoria to BCBSIL.

The Ninth Circuit's hypothetical about the discriminatory processing of multiple qualifying diagnoses does not apply to any of the named plaintiffs here. That potential basis for distinguishing *Skrmetti* therefore presents no genuine issue of material fact. *Easter v. Am. W. Fin.*, 381 F.3d 948, 961–62 (9th Cir. 2004); *cf. Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011) ("at least one named plaintiff" must suffer an injury "fairly traceable to the challenged conduct").

Of the three named plaintiffs, neither C.P. nor Jones ever alleged that they had any qualifying alternative diagnosis other than gender dysphoria and were nevertheless denied coverage for that treatment.

S.L. is the only named Plaintiff the panel identified as potentially raising the issue, but the record does not support the premise that her claims were presented to BCBSIL under a separate, qualifying diagnosis. The operative complaint alleges that S.L. was diagnosed with both gender dysphoria and early-onset puberty and that she required puberty blockers to treat both conditions. Dkt. 189 ¶¶ 92, 94. But it does not allege that her providers submitted a claim or authorization request to BCBSIL under a diagnosis of precocious puberty.

And indeed they did not. For S.L.'s Lupron puberty-blocker request, BCBSIL's records list the "Primary Diagnosis" as "F64.2 - Gender identity disorder of childhood," and the diagnosis table lists only that diagnosis. Payton Decl., Ex. A. For the Supprelin request, the claims records again list the "Primary Diagnosis" as "F64.2 - Gender identity disorder of childhood," and the diagnosis table again lists only that diagnosis. *Id.*, Ex. B. The appeal letter likewise does not identify precocious puberty as a submitted diagnosis or as a basis for payment. Dkt. 176 at 22–23.

Nor does the later declaration from S.L.'s mother fill that gap. The declaration states that S.L. had two diagnoses and recounts a conversation with BCBSIL's membership services in which S.L.'s mother was allegedly "told . . . that, had S.L. been diagnosed only with early-onset puberty (i.e., not

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 17
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

gender dysphoria AND early-onset puberty), BCBSIL would have likely covered the puberty blocker." Dkt. 176 ¶¶ 2, 13. But that hearsay statement does not say that S.L.'s providers submitted a claim under a precocious-puberty diagnosis nor that BCBSIL denied a claim despite receiving such a diagnosis.

That ends the issue. The ruling Plaintiffs hope to extract from *Skrmetti* would require a named plaintiff who submitted a claim that actually put a qualifying non-gender-dysphoria diagnosis before BCBSIL. *See Ellis*, 657 F.3d at 978. These named Plaintiffs cannot distinguish *Skrmetti* by invoking a hypothetical failure to cover a diagnosis that the claim record does not present.

### 2.    There is no genuine issue as to the absent class members.

The same evidentiary failure defeats any claim on behalf of absent class members. Plaintiffs bear the burden of proving discrimination, and so, as this Court has already explained, they must come forward with "specific, significant probative evidence," not "some metaphysical doubt," and may not rely on "the hope[] that evidence can [later] be developed at trial." Dkt. 146 at 8–9 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)). Plaintiffs have no such evidence here. The record nowhere identifies any absent class member (1) whose claim presented both a gender dysphoria diagnosis and a separate, independently-qualifying diagnosis, and (2) whose claim BCBSIL denied notwithstanding that independent diagnosis. Their only record-specific example is S.L., who, as explained above, never presented a second qualifying diagnosis to BCBSIL. *See supra* p. 17. Nor does the record support the conclusion that BCBSIL's protocol, when confronted with this hypothetical dual-diagnosis claim, is to ignore the alternative qualifying diagnosis and deny the claim based solely on the gender dysphoria diagnosis.

Plaintiffs therefore lack evidence of the factual predicate necessary to advance this theory to defeat summary judgment: evidence of a dual-diagnosis claim that BCBSIL actually denied despite being presented with an independently qualifying non-gender-dysphoria diagnosis. Without that predicate, BCBSIL did exactly what *Skrmetti* permits: it administered an exclusion that removed gender dysphoria from the range of covered conditions. *Pritchard*, 159 F.4th at 669–70.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 18
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

### III. Section 1557 and its implementing regulations failed to provide the clear notice of liability under these circumstances required by the Spending Clause.

Plaintiffs' failure to plead the pretext and other theories left unaddressed by the Ninth Circuit should be the end of the matter; alternatively, the absence of any supporting record evidence should be dispositive. But those theories—and indeed Plaintiffs' entire claim—*also* fail as a matter of law because BCBSIL did not have "adequate notice, when [it] accepted federal funding," that its TPA activities were within the scope of Section 1557 and so did not consent to liability for such activities. *Roe v. Critchfield*, 137 F.4th 912, 929 (9th Cir. 2025). Because Section 1557 is Spending Clause legislation, that lack of consent means Section 1557 cannot be a vehicle for holding BCBSIL liable. *See id.* ("A funding recipient must have clear notice of what rules it must follow.") (internal quotation marks omitted).

This limit imposed by the Spending Clause is now properly before this Court. In BCBSIL's appeal of this Court's now-vacated summary judgment order, the Ninth Circuit did not consider BCBSIL's argument as to the Spending Clause because BCBSIL neither raised it in the motion before this Court nor in its opening brief on appeal. *See Pritchard*, 159 F.4th at 660. Because the Ninth Circuit never addressed the Spending Clause on the merits and instead only held the argument forfeited as to the motion and order then on appeal, the Spending Clause can be raised on remand as to issues the Court now has "the first opportunity to assess." *Id.* at 672; *see United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000) ("[M]andates require respect for what the higher court decided, not for what it did not decide.") (internal quotation marks and citation omitted). It would be especially imperative to consider the import of the Spending Clause here if Plaintiffs are permitted to assert theories on remand that they did not plead and did not litigate on the first pass through this Court. Allowing Plaintiffs to now advance previously forfeited claims but not allow BCBSIL to avail itself of every available defense to those claims would be a "manifest injustice." *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992); *see also Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932) ("Due process requires that there be an opportunity to present every available defense.").

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 19
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

Section 1557 was enacted pursuant to Congress's Spending Clause powers. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 217-18 (2022). "Because the Spending Clause confers no authority to 'regulate directly,' … Congress must rely on consent." *Landor v. La. Dep't of Corr. & Pub. Safety*, 146 S. Ct. 1931, 1940–41 (2026) (quoting *South Dakota v. Dole*, 483 U.S. 203, 209 (1987)). Section 1557 "operate[s] by conditioning an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds." *Cummings*, 596 U.S. at 219 (cleaned up). For that reason, "[s]anctions are permissible *only* with the 'voluntar[y] and knowin[g]' consent of those who must bear them." *Landor*, 146 S. Ct. at 1940 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)) (emphasis added). Courts thus apply a clear-statement rule to determine the scope of liability under Section 1557: "liability does not arise under [Section 1557] unless the … conditions [of liability] were set out unambiguously." *Critchfield*, 137 F.4th at 929 (internal quotation marks omitted); *see also Lieberman v. Univ. of Chi.*, 660 F.2d 1185, 1187 (7th Cir. 1981) ("In order to ensure a 'meeting of the minds,' the conditions to be imposed by Congress must be stated in unambiguous terms.").

At least until the day the Ninth Circuit issued its decision in this case, BCBSIL could not have known it was agreeing to be held liable under Section 1557 for its ordinary TPA activities and, indeed, reasonably understood it was *not* making any such agreement. Each year, BCBSIL consents that it will comply with "Section 1557 of the Affordable Care Act (Pub. L. 111-148), as amended, and all requirements imposed by or pursuant to the Regulation of the Department of Health and Human Services (45 CFR Part 92)." Dkt. 88-1 at 209. Thus, BCBSIL voluntarily and knowingly agrees to what is encoded in the relevant "implementing regulations." *Critchfield*, 137 F.4th at 930. For much of the class period, BCBSIL was affirmatively *told* by the federal government, through those same "implementing regulations," that Section 1557 did not restrict its TPA activities, and for the rest of the class period the "implementing regulations" at worst left unclear whether ordinary TPA activities—i.e., administering a plan as written—could violate Section 1557.

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 20
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

From August 18, 2020 to July 4, 2024, HHS's implementing regulations expressly told "entit[ies] principally or otherwise engaged in the business of providing health insurance" that their TPA operations were not subject to Section 1557. *Nondiscrimination in Health and Health Education Programs or Activities*, 85 Fed. Reg. 37160, 37244-45 (June 19, 2020) (codified at 45 C.F.R. § 92.3(b)–(c)); *see also id.* at 37173 (explaining the Department's view that "third-party administrator services" were among those "many insurance products that were not intended to be covered by [Section 1557]"). When, as here, recipients accept funding at a time when "the governing agencies had publicly adopted interpretations exempting" a set of activities from the scope of liability, to later hold the recipient liable would "constitute[] the type of post-acceptance change that *Pennhurst* forbids." *New York v. U.S. Dep't of Just.*, 804 F. Supp. 3d 294, 328 (D.R.I. 2025); *cf. Critchfield*, 137 F.4th at 930–31 (finding State lacked "clear notice at the time it accepted federal funding that Title IX prohibits segregated access" to restrooms and locker rooms where "implementing regulations" expressly permitted such natal-sex-segregated facilities). The fact that the Ninth Circuit later held HHS's reasoning "invalid" does not change the terms BCBSIL agreed to. *Pritchard*, 159 F.4th at 659-60. Whether the funding recipient had the requisite "clear notice" of the liability being conditioned is evaluated "at the time it accepted federal funding." *Critchfield*, 137 F.4th at 931. Thus, at a minimum, there can be no liability for TPA activities undertaken or connected to funds BCBSIL received while the 2020 rule was in effect.

BCBSIL also did not give "knowing acceptance" during the rest of the class period. *Pennhurst*, 451 U.S. at 17. For the first several years of the class period, HHS regulations told BCBSIL that its TPA activities were presumptively exempt from enforcement of Section 1557 because "third party administrators are generally not responsible for the benefit design of the self-insured plans they administer." *Nondiscrimination in Health Programs and Activities*, 81 Fed. Reg. 31375, 31432 (May 18, 2016). HHS did so in part to avoid a perceived conflict between Section 1557 and ERISA. *See id.* HHS thus left the outer boundary of Section 1557 and its application to TPA activities undefined—again failing to provide "clear notice" to BCBSIL of what TPA activities it was making subject to potential Section 1557 liability by accepting federal

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 21
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

funding for non-TPA activities. On July 5, 2024, HHS reinstated a similar approach, forswearing enforcement "where the third party administrator played no role in the development of the plan's benefit design." 89 Fed. Reg. at 37627.[6] Despite their differences, these regulatory interpretations share one common core relevant to the Spending Clause analysis: None stated with unambiguous clarity that BCBSIL could be held liable under Section 1557 simply for administering an employer benefit plan as written. For that reason, BCBSIL cannot be said to have "voluntarily and knowingly" agreed to accept potential Section 1557 liability for its TPA activities because it elsewhere accepted Medicare and Medicaid funds. *Pennhurst*, 451 U.S. at 17.

Implementing regulations that disclaim or cast doubt on liability under the circumstances are enough to shield BCBSIL from liability here. But even if those zig-zagging regulations did not preclude liability, their different views indicate that the *statute's* scope is sufficiently uncertain that "clear notice" is lacking here. *Critchfield*, 137 F.4th at 929; *cf. Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 361 (5th Cir. 2021) ("Relying on regulations to present the clear condition … is an acknowledgment that Congress's condition was not unambiguous."). Section 1557 applies to "any part" of a "health program or activity" receiving funds. 42 U.S.C. § 18116(a). If BCBSIL's TPA operations are not part of the same "health program or activity" as the Medicare or Medicaid programs that receive federal funds, then those TPA operations would fall outside the scope of Section 1557. The regulatory flux occurred because of the ambiguity inherent in the phrase "health program or activity." *See* 85 Fed. Reg. at 37170 (noting "the sentence's ambiguity"). While the 2016 and 2024 rules took the position that an insurer with TPA operations was a singular, unified "health program or activity," the 2020 rule explained that 20 U.S.C. § 1687 supplied a definition for "program or activity" that, in the health context, limited the phrase to those programs or activities "principally engaged in the business of providing health care"—a phrase that excludes insurance. *Id.* at 37171–73. The Ninth Circuit rejected this interpretation in the final analysis, but

---

[6] Further indicating that BCBSIL's receipt of federal funds did not require consent to be held liable for the conduct alleged here, the rule never went into effect and was vacated to the extent it applied to gender-identity discrimination. *See Tennessee v. Kennedy*, 807 F. Supp. 3d 613, 618, 630 (S.D. Miss. 2025).

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 22
CASE NO. 3:20-CV-06145-DGE

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

it did not find Section 1557 to be *unambiguous*. *See Pritchard*, 159 F.4th at 659–60. That is critical to the Spending Clause analysis because, again, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. Because the phrase "health program or activity" is reasonably susceptible to interpretations that exclude BCBSIL's TPA activities from Section 1557's scope, the Spending Clause prohibits the application of Section 1557 to those TPA activities.

## CONCLUSION

This Court should grant BCBSIL's motion for summary judgment in its entirety.

Respectfully submitted this 14th day of August, 2026.

KILPATRICK TOWNSEND & STOCKTON LLP

By *s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
John R. Neeleman, WSBA No. 19752
jneeleman@kilpatricktownsend.com
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
Telephone: (206) 626-7714
Facsimile: (206) 623-6793

KILPATRICK TOWNSEND & STOCKTON LLP

Stephanie N. Bedard (Pro Hac Vice)
sbedard@ktslaw.com
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500

*Counsel for Blue Cross Blue Shield of Illinois*

*I certify that this memorandum contains 8,383 words, in compliance with the Local Civil Rules*

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 23
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2

## CERTIFICATE OF SERVICE

I certify that on the date indicated below I electronically filed the foregoing, DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S RENEWED MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Eleanor Hamburger
SIRIANNI YOUTZ SPOONEMORE HAMBURGER
3101 WESTERN AVENUE STE 350
SEATTLE, WA 98121
206-223-0303
Fax: 206-223-0246
Email: ehamburger@sylaw.com

Jennifer C Pizer
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
4221 WILSHIRE BLVD., STE 280
LOS ANGELES, CA 90010
213-382-7600
Email: jpizer@lambdalegal.org

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. (NY)
120 WALL STREET
19TH FLOOR
NEW YORK, NY 10005
212-809-8585
Email: ogonzalez-pagan@lambdalegal.org

DATED August 14, 2026.

**Kilpatrick, Townsend & Stockton LLP**

By: */s/ Gwendolyn C. Payton*
    Gwendolyn C. Payton, WSBA #26752
    gpayton@ktslaw.com

*Counsel for Blue Cross and Blue Shield of Illinois*

DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S
RENEWED MOTION FOR SUMMARY JUDGMENT - 24
CASE NO. 3:20-CV-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

US1 156856029 2