THE HONORABLE DAVID G. ESTUDILLO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; S.L. by and through her parents, S.R. and R.L.; EMMETT JONES, each individually and on behalf of similarly situated others; and PATRICIA PRITCHARD, individually,

Plaintiffs,

vs.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

Defendant.

**No. 3:20-cv-06145-DGE**

**BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES**

**ORAL ARGUMENT REQUESTED**

**NOTE ON MOTION CALENDAR: SEPTEMBER 11, 2026**

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

## I.   INTRODUCTION

Applying *United States v. Skrmetti*, 605 U.S. 495 (2025), the Ninth Circuit held that BCBSIL's diagnosis-based administration of categorical plan exclusions for certain treatments of gender dysphoria does not, without more, discriminate on the basis of sex or transgender status under Section 1557, and it reversed this Court's pre-*Skrmetti* order granting classwide relief. *Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 669–70 (9th Cir. 2025). The panel remanded only so that this Court could address two "questions *Skrmetti* potentially left open": (1) whether BCBSIL's diagnosis-dependent administration of the exclusions was a pretext or proxy for invidious discrimination; and (2) whether BCBSIL discriminated by denying claims despite the patient claiming a second qualifying diagnosis in addition to gender dysphoria.  *Id.* at 656, 664, 671–72 & n.11.

BCBSIL's contemporaneously filed summary judgment motion explains why classwide judgment should be entered in BCBSIL's favor as to the facial-discrimination theory the Ninth Circuit decided and why Plaintiffs cannot prevail on either remand theory. This motion presents a separate threshold problem: those previously unasserted remand theories are the only merits issues remaining, and neither satisfies Rule 23. As a result, the Court should amend its class certification order to exclude the two remand issues from the scope of the class certification.

Neither remand issue can be resolved for the existing class. Plaintiffs never pleaded, developed through discovery, or presented either theory as a classwide basis for liability. The certification proceedings and class record contain no showing that either remand issue is common to the existing class. Plaintiffs instead obtained certification on a materially different theory: that the exclusions were facially discriminatory and that BCBSIL violated Section 1557 simply by administering them. That theory, however, required neither proof of a discriminatory motive nor a separate qualifying diagnosis. The Ninth Circuit's rejection of the class's certified theory of relief does not convert these two undeveloped theories into certified class claims.

Neither the pretext theory nor a facial "proxy discrimination" theory is suitable to class treatment. Both go to motive, and the record contains no evidence that discriminatory motive could

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 1

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

be proved on a class-wide basis. The burden to show that Rule 23's requirements are met belongs exclusively to the Plaintiffs and, on this record, they do not come close to proving each requirement is met by a preponderance of the evidence. Indeed, determining pretext or proxy discrimination would require plan-specific and claim-specific inquiries, not proof producing a common answer "in one stroke" and demonstrating a single discriminatory ground applicable generally to the class, as required by Rules 23(a)(2) and 23(b)(2). BCBSIL administers 398 plans applicable to class members, and those plans were designed by 398 different employers, contain materially different exclusions, and reflect different benefit-design choices, including religious and cost considerations. Plaintiffs took no class discovery from any of those employers and developed no common evidence that BCBSIL administered all 398 plans with an invidious purpose.

The alternative diagnosis theory is equally unsuited for class treatment. This theory requires a member-by-member examination of medical and coverage facts: whether another diagnosis was submitted to BCBSIL by each member as a basis for his or her claim, whether the requested treatment was medically necessary for his or her diagnosis, whether the member's particular plan covered the treatment for that diagnosis, and whether BCBSIL denied coverage despite that independent basis. None of the named Plaintiffs submitted such a diagnosis to BCBSIL in support of the challenged claim, and the record identifies no absent class member who did either. The named Plaintiffs therefore are not typical of anyone who might possess such a claim, no common injury has been shown, and numerosity is entirely speculative.

The Court should, therefore, amend its class certification order to confirm that the two remand issues are excluded from the scope of the class certification. As set forth in BCBSIL's proposed order, BCBSIL requests that the Court amend the class certification order by adding the following:

> For the avoidance of doubt, this order certifies only the common question of whether BCBSIL's "standard conduct" for administering exclusions—where "[i]t reviews claims to determine if the 'diagnosis code' is for 'gender dysphoria' or 'gender reassignment' and examines the 'procedural code' to see if the claim is for gender reassignment treatment—violates Section 1557. *See* Dkt. 113 at 8–9. The certification order does not authorize classwide adjudication of the pretext/proxy or

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 2

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

other-qualifying-diagnosis issues remanded by the Ninth Circuit to this Court. *See Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 671–72 (9th Cir. 2025).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

**A.  BCBSIL is a third-party administrator for health insurance plans sponsored by employers, some of whom decide to exclude coverage for treatments related to gender dysphoria.**

BCBSIL functions as the third-party administrator ("TPA") for many health insurance plans. Unlike traditional health insurance, where BCBSIL assumes financial responsibility for the health care costs, TPAs are hired by self-insuring employers (called "plan sponsors") to perform specified administrative tasks, including assembling a network of providers and processing claims. The terms of such plans, including the decisions of what medical treatments are covered by the plan, are made by the plan sponsor, not by BCBSIL. ERISA expressly requires BCBSIL as a TPA to follow the terms of the plan chosen by the employer.  *See* 29 U.S.C. § 1104(a)(1)(D).

This case was originally brought by a single named plaintiff, C.P., a transgender male minor who was a member of an ERISA-governed health plan designed and sponsored by CommonSpirit Health, formerly Catholic Health Initiatives ("CHI"). CHI contracted with BCBSIL to perform certain TPA services for its plan (the "CHI Plan"). *See* Dkt. 85 at 463–511. The CHI Plan stated that "[b]enefits shall not be provided for treatment, drugs, medicines, therapy, counseling services and supplies for, or leading to, gender reassignment surgery." Dkt. 88-1 at 120. CHI has explained that it chose to exclude gender-affirming care from coverage because "this surgery has been determined not to align with the teachings and doctrine of the Catholic Church." Dkt. 189-8 at 4. CHI was able to direct this exclusion solely because it has a self-insured plan; fully insured health plans offered by BCBSIL do not contain categorical  exclusions of gender-affirming care.  Dkt. 96 at 25; Dkt. 85 at 50–71.

When C.P. was fourteen years old, he sought coverage for a puberty blocker and a total mastectomy to treat his diagnosed gender dysphoria. BCBSIL denied the request due to the CHI Plan's categorical exclusion of "treatment, drugs, therapy, counseling services and supplies for, or leading to, gender reassignment surgery." Dkt. 146 at 3; Dkt. 88-1 at 120, 197, 201.

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 3

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

During the relevant period, BCBSIL administered 398 ERISA self-insured plans with some form of an exclusion related to gender dysphoria, but the plans varied widely in the services excluded. *See* Dkt. 94-1 at 101, 109–18. For example, some plans excluded all such services. *See id.* at 110 (excluding "[t]ranssexual surgery or any treatment of gender identity disorders"); *id.* at 113 (excluding "[s]ervices related to gender reassignment"). Others excluded only certain services or limited certain services to specific diagnoses and clinical situations. *See id.* at 113 (excluding "[r]eversals of gender reassignment Surgery" and "[t]ransportation and lodging expenses relating to gender reassignment surgery").

Some plans excluded gender-affirming surgery but covered hormonal treatments for gender dysphoria. *Id.* ("Benefits will be provided for services and supplies related to gender reassignment but excluding surgery."). Other plans covered such surgery only for adults who meet particular treatment criteria. *See id.* at 109 ("Benefits will be provided for Covered Services for gender reassignment the same as any other for persons 18 and older," provided the member "is at least 18 years of age," "has undergone a minimum of 12 months of continuous hormonal therapy when recommended by a mental health professional," and "has completed a minimum of 12 months of successful continuous full time real-life experience in their new gender, with no returning to their original gender[.]"). And some plans treated gender-affirming care as a covered service but imposed a coverage percentage or a lifetime maximum cap on coverage. *Id.* at 112–14.

**B.    District court proceedings before the appeal.**

C.P. sued BCBSIL on behalf of a class, alleging that BCBSIL violated Section 1557, the anti-discrimination provision of the Affordable Care Act ("ACA"), 42 U.S.C. § 18116. C.P. alleged that BCBSIL's denial of his claim for coverage of the puberty blocker and mastectomy— a denial pursuant to the CHI Plan's exclusion—constituted discrimination by BCBSIL "on the basis of sex" prohibited by Section 1557.

In August 2022, Plaintiffs moved for class certification, arguing that BCBSIL has a "standard practice" of administering gender-affirming care exclusions for ERISA plans. Dkt. 78 at 2–3, 8. Plaintiffs asserted that "[w]hen administering the Exclusions in ERISA self-funded

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 4

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

plans, BCBSIL performs its review in a standard manner" by "review[ing] claims to determine if the service is related to 'gender dysphoria' based on the diagnostic and procedural codes used; if so, the claim is denied under the Exclusions." *Id.* at 9. Stated differently, Plaintiffs claimed that "BCBSIL's standard practice is to consider whether the service is used to treat gender dysphoria. If it is, and the service is one identified by the employer to exclude, then consistent with the Exclusion, the service is denied." *Id.* at 10.

Plaintiffs moved for certification of the following class:

All individuals who:

(1) have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by Blue Cross Blue Shield of Illinois ("BCBSIL") during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services; and

(2) have required, require, or will require treatment with excluded Gender-Affirming Health Care services.

*Id.* at 4.

In November 2022, the Court granted Plaintiffs' motion to certify a class and amended the order in December 2022. Dkts. 113, 143. In December 2022, the Court granted Plaintiffs' motion for summary judgment. Dkt. 146. The Court also granted BCBSIL's motion for summary judgment as to Plaintiffs' emotional distress damages claim but denied the motion in all other respects. *Id.* The Court held that BCBSIL's administration of the plan exclusion was "discrimination 'on the basis [of] sex' contrary to Section 1557." *Id.* at 12.

In September 2023, after proceedings in the district court had nearly concluded, Plaintiffs disclosed that named Plaintiff C.P. was no longer a member of a plan administered by BCBSIL. Dkt. 175. In an attempt to preserve standing to seek prospective relief, Plaintiffs' counsel moved for leave to add two new named plaintiffs, Emmett Jones and S.L. *Id.* Jones is a transgender male and a member of the CHI Plan. Dkt. 177 at 1–2. He paid for chest surgery out-of-pocket and then submitted a claim for reimbursement to the CHI Plan, which BCBSIL denied. Dkt. 206 at 8; Dkt. 177 at 2. At the time of the requested coverage, S.L. was a twelve-year-old transgender female who belonged to a different self-insured health plan that excluded some gender-affirming care

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 5

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

services. Dkt. 176 at 1–3; Dkt. 187-1 at 4. Her provider requested pre-authorization for puberty-blocking hormones, which BCBSIL denied pursuant to the exclusion in her plan. Dkt. 206 at 6; Dkt. 176 at 2. This Court granted the motion to amend to add S.L. and Jones as named plaintiffs, and in October 2023, Plaintiffs filed their Second Amended Complaint adding S.L. and Jones as plaintiffs. Dkt. 189.

On December 4, 2023, this Court issued its Second Amended Order Certifying Class ("Certification Order"). Dkt. 203. The Certification Order incorporates and applies the reasoning from the Court's prior certification orders, *id.* at 3 (citing Dkts. 113 and 143). Those prior orders adopted Plaintiffs' theory of the case, finding that the class challenged BCBSIL's "standard conduct" of "review[ing] claims to determine if the 'diagnosis code' is for 'gender dysphoria' or 'gender reassignment'" and "examin[ing] the 'procedural code' to see if the claim is for gender reassignment treatment." Dkt. 113 at 9.

The Court adopted Plaintiffs' proposed class definition in substantial part and certified a class comprised of all individuals who:

(1)    have been, are, or will be participants or beneficiaries in an ERISA self-funded "group health plan" (as defined in 29 U.S.C. § 1167(1)) administered by BCBSIL during the Class Period and that contains a categorical exclusion of some or all Gender-Affirming Health Care services; and

(2)    were denied pre-authorization or coverage of treatment solely based on an exclusion of some or all Gender-Affirming Health Care services; and/or

(3)    are or will be denied pre-authorization or coverage of treatment solely based on an exclusion of some or all Gender-Affirming Health Care services.

Participants or beneficiaries may be members of either one [of] (2) and (3) or both (2) and (3).

Dkt. 203 at 4.  On December 19, 2023, this Court permanently enjoined BCBSIL, along with "its agents, employees, [and] successors," from "administering or enforcing exclusions … of 'gender-affirming health care'" in any self-insured health plans. Dkt. 207 at 21. BCBSIL filed a timely appeal the following day, and this Court stayed its injunction pending appeal. Dkts. 209, 222.

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 6

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

**C.    The Ninth Circuit vacated the district court's summary judgment opinion.**

On appeal, the Ninth Circuit vacated the summary judgment order against BCBSIL, holding that this Court's reasoning "fails in light of *Skrmetti*." *Pritchard*, 159 F.4th at 669. The Ninth Circuit held that *Skrmetti* had "rejected" the "reasoning" underlying this Court's summary judgment order because, to administer the coverage exclusions, BCBSIL merely "removed [the gender dysphoria] diagnosis from the range of conditions its insurance plans cover." *Id.* at 669–70. The exclusions do not penalize transgender status but instead target diagnoses for coverage, and "[w]ithout more, sex is not a but-for cause of the exclusions' operation." *Id.* at 670.

The Ninth Circuit noted, however, that "[t]his case is potentially different from *Skrmetti* in two respects." *Id.* at 671. First, the court noted that "S.L. was diagnosed with both gender dysphoria and precocious puberty," and her mother contended that she had been told by BCBSIL that it would have covered her puberty blockers if her only diagnosis were precocious puberty. *Id.* The Ninth Circuit suggested that *Skrmetti* would not resolve whether such a denial constituted sex discrimination. *Id.* Second, the Ninth Circuit noted that "Plaintiffs argue that BCBSIL's justifications for its actions 'are a pretext for invidious discrimination.'" *Id. Skrmetti* did not involve any such claims. *Id.*

The Ninth Circuit thus remanded the case back to this Court to address those two narrow issues: whether Plaintiffs (1) "had diagnoses (other than gender dysphoria) that entitled them to hormones or other treatment—but BCBSIL still would not" cover the treatments; and whether (2) BCBSIL's justifications for its actions were somehow a pretext for "invidious discrimination." *Id.* at 671–72. The Ninth Circuit emphasized that it "express[ed] no view about the appropriate outcome on remand" but merely identified "which questions *Skrmetti* potentially left open." *Id.* at 672.

## III. ARGUMENT

Rule 23 does not permit the Court to resolve the two remand issues on a class-wide basis. Accordingly, the Court should amend its class certification order to exclude the two remand issues from the scope of the class certification.

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 7

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

As this Court previously acknowledged, a district court may amend the class certification order any time before final judgment. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 964 n.7 (9th Cir. 2020) ("[P]arties may move a district court to alter or amend an order granting or denying class certification at any time 'before final judgment,' Fed. R. Civ. P. 23(c)(1)(C)"); *C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*, 705 F. Supp. 3d 1273, 1280 (W.D. Wash. 2023); 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1785.4 (3d ed. Apr. 2026) ("Courts have modified or decertified classes at the outset of pretrial, the completion of discovery, after summary judgment in favor of plaintiff class's injunctive claims, but before awarding damages, at the close of plaintiff class's case-in-chief, and at the completion of the trial on the merits.").

"In considering the appropriateness of [modification or] decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Ms. L. v. U.S. Immigr. & Customs Enf't*, 330 F.R.D. 284, 287 (S.D. Cal. 2019). A court may consider "subsequent developments in the litigation," *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), including "previous substantive rulings in the context of the history of the case" and "the nature and range of proof necessary to establish the [class-wide] allegations." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479–80 (C.D. Cal. 2008) (alteration in original, citation omitted), *aff'd,* 639 F.3d 942 (9th Cir. 2011); *see also O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000) ("[A]s the evidentiary record develops and dispositive motions are filed, the Court may sua sponte alter, amend, or vacate this certification Order at any time before a decision on the merits is made.").

In opposing a motion to amend, "[t]he party seeking class certification … bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947 (9th Cir. 2011); *C.P.*, 705 F. Supp. 3d at 1280; *see also Munoz v. PHH Mortgage Corp.*, 478 F. Supp. 3d 945, 984–85 (E.D. Cal. 2020) ("Although plaintiffs are the non-moving party, as the party seeking to maintain class certification, they nonetheless 'bear[] the

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 8

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'") (alteration in original); *Arredondo v. Delano Farms Co.*, 301 F.R.D. 493, 502 (E.D. Cal. 2014) ("The standard is the same for class decertification as it is with class certification: . . . . Plaintiff, as '[t]he party seeking class certification[,] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met.'"). To satisfy that burden, "plaintiffs must prove the facts necessary to ... establish[] that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022) (en banc); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (Plaintiffs "must affirmatively demonstrate [their] compliance with the Rule," and this Court must agree "after a rigorous analysis.").

## A.    Class certification hinged on a theory of discrimination the Ninth Circuit rejected.

Plaintiffs' Complaint only alleges one "common question of law or fact": whether "BCBSIL's administration of the Transgender Reassignment Surgery Exclusion and other similar exclusions denying coverage for gender affirming health care in the ERISA self-funded plans that it administers, violates Section 1557." Dkt. 189 at 19. As explained above, when Plaintiffs moved for class certification, their motion turned on Plaintiffs' theory that there were a set of *categorical* exclusions and that BCBSIL has a "standard practice" of administering gender-affirming care exclusions for ERISA plans whereby it "reviews claims to determine if the service is related to 'gender dysphoria' based on the diagnostic and procedural codes used; if so, the claim is denied under the Exclusions." Dkt. 78 at 2–3, 8–9. When the Court certified the class, it adopted Plaintiffs' theory of the case, finding that the class challenged BCBSIL's "standard conduct" of "review[ing] claims to determine if the 'diagnosis code' is for 'gender dysphoria' or 'gender reassignment'" and "examin[ing] the 'procedural code' to see if the claim is for gender reassignment treatment." Dkt. 113 at 9. The Ninth Circuit rejected that theory of the case on the merits—and as to the entire class—as a definitive "no." *See Pritchard*, 159 F.4th at 69–70 ("[B]y excluding treatment for gender dysphoria, BCBSIL removed that diagnosis from the range of conditions its insurance plans cover. Without more, sex is not a but-for cause of the exclusions' operation….").

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 9

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

Under Plaintiffs' now-rejected "standard practice" theory, the plan language itself would create the alleged intentional violation: when a plan discriminates on the basis of sex, administering that plan "is per se intentional discrimination" and the plaintiff need not prove actual knowledge of a particular discriminatory act or deliberate indifference to that act. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 854 (9th Cir. 2000) (citation omitted). As the panel put it, "[i]f Plaintiffs succeed in proving facial discrimination, 'no greater proof of mental state [is] necessary.'" *Pritchard*, 159 F.4th at 664 (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002)) (second alteration in original). Consistent with that theory, Plaintiffs did not argue at certification or pursue class discovery to show that BCBSIL acted with pretext, animus, or invidious intent as to all class members. Nor did they contend that absent class members had submitted an alternative diagnosis independently qualifying them for coverage. Dkt. 78. This Court's certification orders accordingly did not identify proxy, pretext, or any alternative qualifying diagnosis as a question common to the class. Dkts. 113, 206.

Because the class was certified on the basis of a common question concerning its "standard practice" for administering categorical exclusions that has now been answered in BCBSIL's favor, BCBSIL is entitled to classwide summary judgment on that question. *See* BCBSIL's Renewed Motion for Summary Judgment at 6–7, filed contemporaneously herewith [hereinafter "Renewed MSJ"]. The class was not certified on the basis of other theories of discrimination—including the two theories remanded by the Ninth Circuit—and this Court has yet to determine whether Plaintiffs have shown those theories are amenable to classwide treatment. As the next section explains, they have not.

**B.    The Court should amend the class certification order to exclude both remand issues identified by the Ninth Circuit.**

The Ninth Circuit panel remanded to this Court for the narrow purpose of addressing two specific questions *Skrmetti* "potentially left open": whether BCBSIL denied treatment despite a separate, independently qualifying diagnosis, and whether the gender-dysphoria exclusions operated as a pretext or proxy for invidious discrimination against transgender people. *Pritchard*, 159 F.4th at 671–72. Neither theory, however, was pleaded or developed as a classwide claim, pursued in class

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 10

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

discovery, or presented at certification. That was not an oversight. Under either theory, Plaintiffs are not and would never be able to satisfy Rule 23.

### 1. Under Rule 23, the Court cannot address claims based on pretext and proxy on a class-wide basis.

Even if Plaintiffs had asserted or preserved an argument that BCBSIL acted with animus as to each class member and that BCBSIL's reasons for administering the exclusions as written were a pretext for sex discrimination, the evidentiary record on which the existing certification rests does not support a finding that Rule 23 is satisfied for the pretext/proxy issue. For this remand issue, Plaintiffs bear the burden to show that BCBSIL's *motive* could be proved through common evidence and resolved for the class in one stroke. They cannot do so. The certification record shows, at most, that BCBSIL used a common claims-processing method when administering exclusions for treatment of gender dysphoria. It does not show a common motive for administering hundreds of different exclusions in hundreds of different employer-sponsored plans. Because the remand issue turns on BCBSIL's reasons, knowledge, and intent, that evidentiary gap defeats both Rule 23(a) commonality and Rule 23(b)(2) cohesion.

Pretext and proxy discrimination theories turn on the defendant's motive. *See* Renewed MSJ at 8–10, 15–16. To demonstrate pretext, Plaintiffs must demonstrate that BCBSIL's actions were "designed to effect an invidious discrimination" against a class member. *Pritchard*, 159 F.4th at 671 (quoting *Skrmetti*, 605 U.S. at 519). Plaintiffs must show that BCBSIL's reasons are pretextual "either directly by persuading the court that a discriminatory reason more likely motivated [BCBSIL] or indirectly by showing that [BCBSIL's] proffered explanation is unworthy of credence." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002). In all cases, the question of pretext is ultimately about the defendant's "true reasons" for its decision and "whether or not the [defendant] possessed the [unlawful] discriminatory motive." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003). In judging whether BCBSIL's proffered justifications for administering the exclusions were inaccurate or false, "it is not important whether they were

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 11

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

objectively false . . . . Rather, courts only require that [BCBSIL] honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villiarimo*, 281 F.3d at 1063.

And to make a sufficient showing of proxy discrimination, Plaintiffs must prove that BCBSIL's administration of the exclusions "treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Davis v. Guam*, 932 F.3d 822, 837 (9th Cir. 2019). To do so, Plaintiffs must show that the distinctions based on the claim's diagnostic code "both overwhelmingly affect[] a [protected] class and there's no logical reason for the distinction[s] … other than targeting that [protected] class." *Anderson v. Crouch*, 169 F.4th 474, 484 (4th Cir. 2026); *see also id.* at 490 ("Plaintiffs must show that the choice to exclude gender dysphoria from coverage is so irrational that nothing could explain it other than an intent to discriminate against transgender persons."). In that way, proxy discrimination theories are also about the defendant's motive. *See* Renewed MSJ at 15–16, filed contemporaneously herewith.

The evidentiary record on which certification rests cannot answer the motive questions the panel identified. When this Court found commonality, it did so because BCBSIL "administers exclusions consistently," reviewing the diagnosis and procedure codes and denying the claim if the service is for treating gender dysphoria. Dkt. 113 at 9. That finding was about *what* BCBSIL did, uniformly, across plans. It says nothing about *why* any employer adopted an exclusion, what BCBSIL intended, or whether BCBSIL's proffered reasons for administering a particular exclusion are honestly held. Proof of a uniform claims-processing mechanic is not proof of a uniform state of mind, especially when the plans themselves differ greatly. Accordingly, the Court identified only a single "common contention" that could be resolved classwide: the legal question of whether a third-party administrator may lawfully administer exclusions of gender-affirming care. *Id.* at 8. The remand questions have no comparable single answer.

Plaintiffs themselves disclaimed any inquiry into motive at certification. They told this Court that the differing "motivations of the employers" were irrelevant, and that the "focus of this legal

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 12

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

challenge is on BCBSIL's *standard conduct* across all plans." Dkt. 99 at 8 (emphasis added). They argued that the alleged harm was "one of process, not outcome," so that "[n]o individualized determinations are needed to address the Class claims." *Id.* at 34. Accordingly, Plaintiffs never sought discovery as to motive. But having built the class on a theory that made motive irrelevant, Plaintiffs cannot now claim a class on the very issue they told the Court to ignore. Rule 23 does not permit a certified class to be repurposed after the fact for a theory no one tested against Rule 23(a) or (b).

The Ninth Circuit itself recognized these difficulties. The panel expressly flagged as an open question "whether the pretext/proxy issue can be addressed class-wide," and that open question is now before this Court. *Id.* at 672. And, here, the existing record does not satisfy Plaintiffs' burden under Rule 23. Because class certification orders are "inherently tentative," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982), and because Plaintiffs as the party seeking to maintain certification "bea[r] the burden of demonstrating that the requirements of Rules 23(a) and (b) are met," *Marlo*, 639 F.3d at 947 (9th Cir. 2011), they must "affirmatively demonstrate [their] compliance with the Rule" and show "by a preponderance of the evidence" that the requirements are "actually" satisfied "after a rigorous analysis." *Wal-Mart*, 564 U.S. at 350–51; *Olean*, 31 F.4th at 664–65.

To demonstrate commonality, Plaintiffs must show, by a preponderance of the evidence, that the remand theory depends on a common contention capable of producing a common answer for the class "in one stroke." *Id.* at 668. Moreover, allegations that a company "operated under a general policy of discrimination" require "significant proof." *Wal-Mart*, 563 U.S. at 353; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) ("If there is no evidence that the entire class was subject to the same allegedly discriminatory practice, there is no question common to the class."). For Rule 23(b)(2), Plaintiffs must also prove by a preponderance of the evidence that BCBSIL "acted or refused to act on grounds that apply generally to the class," such that a single indivisible injunction or declaration would provide relief to "the class as a whole." Fed. R. Civ. P. 23(b)(2). The record does not come close to meeting those requirements. It contains evidence about how BCBSIL processed claims, but no common proof that BCBSIL had the same allegedly invidious

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 13

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

reason for administering every exclusion in every plan. In fact, the record does not contain any evidence that BCBSIL had an invidious reason for administering any exclusion in *any* plan. That is not enough to carry Plaintiffs' burden under either Rule 23(a) or Rule 23(b)(2).

Indeed, the limited evidence in the record suggests that, were a factfinder to reject BCBSIL's legitimate, nondiscriminatory justification for administering the exclusions as written, the proof required to show discriminatory motive would be irreducibly plan-specific and therefore individualized. BCBSIL covers gender-affirming care, including surgery and hormones, in its fully insured plans. Dkt. 85 at 13–14, 50–71. It also covers such gender-affirming care in self-insured plans that do not request an exclusion. *Id.* at 13–14. As required by ERISA, however, BCBSIL administers each employer-sponsor's self-insured plan (including the plan's exclusions) pursuant to its contractual relationship with a particular employer-sponsor. Each employer-sponsor had specific needs, demands, and priorities that would shape BCBSIL's administration of claims on its behalf. Thus, for each of the 398 plans for which BCBSIL administered an exclusion of treatments for gender dysphoria, it did so pursuant to a particular request from a particular employer-sponsor with its own particular motivation for the exclusion.

Because Plaintiffs never sought discovery from *any* of the 398 employers—including the employers sponsoring the plans used by the named Plaintiffs—it is impossible to determine, for each class member, the motivation of his or her employer and how it affected BCBSIL. But the record does indicate vast differences in the employer-sponsors' motivations. Some demanded exclusions based on the sincere beliefs that permitting gender-affirming care would violate the tenets of their faith. *See* Dkt. 189-8 at 4; Dkt. 160-2 at 10. Other employers included exclusions in order to lower the cost of health insurance for all employees and offered their employees the option of choosing a more expensive plan without any exclusion for gender-affirming care. *See* Dkt. 93 at 16. At the same time, the plans' terms and operation also differed markedly. As noted above, some plans excluded all gender-affirming care, while others excluded only certain services (like surgery) or in certain clinical situations (such as for minors). Some covered all gender-affirming care but imposed a

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 14

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

financial cap. And some of the 398 plans permitted gender reassignment surgery but would not cover *reversals* of gender reassignment surgery.

These vast differences among the plans further defeat both commonality and Rule 23(b)(2)'s common-grounds requirement because proof of motive as to one plan will not resolve that question for a different plan. For instance, the evidence of the sponsor-administrator relationship necessary to prove discriminatory motive in BCBSIL's administration of a secular employer's exclusions would not prove the same for a faith-based sponsor. And even where sponsors are superficially similar, their individualized communications with BCBSIL may reveal profound differences. By the same token, the evidence needed to prove discriminatory intent behind the operation of a blanket prohibition on all gender-affirming care would have little-to-no application for those plans that merely imposed financial caps or that cover gender-reassignment surgery but not its reversal. Thus, not only have "[t]he plaintiffs here … not shown the existence of common evidence that can resolve in 'one stroke' the class members' claims that hinge on a wide array of facts and circumstances," the evidence that *is* in the record suggests such a one-stroke resolution is impossible. *Black Lives Matter Los Angeles v. City of Los Angeles*, 113 F.4th 1249, 1260 (9th Cir. 2024).

**2.      Under Rule 23, the Court cannot address claims based on an alternative "qualifying diagnosis" on a class-wide basis.**

The alternative-qualifying-diagnosis issue cannot be included in a certified class because it would fail Rule 23 for five independent reasons.

*First,* even if Plaintiffs had adequately pled, preserved, and argued that BCBSIL discriminated by denying claims despite an alternative qualifying diagnosis, *but see* Renewed MSJ at 17–18, that theory of discrimination is incapable of resolution on a classwide basis. A plaintiff could prevail on this theory only by proving that BCBSIL denied a requested service despite an independently qualifying diagnosis that was actually submitted as a basis for coverage, medically supported the requested treatment, fell within the member's own plan terms, and was disregarded in the claim determination. Those questions require different evidence for each member, not a common answer

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 15

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

capable of resolving a central issue "in one stroke." *Olean*, 31 F.4th at 663; *Wal-Mart*, 564 U.S. at 350.

In particular, whether the alternative diagnosis actually supported a different resolution of the claim depends on individualized medical proof. *See Dennis F. v. Aetna Life Ins.*, No. 12-CV-02819-SC, 2013 WL 5377144, at *4 (N.D. Cal. Sept. 25, 2013) ("Plaintiffs have failed to establish commonality per Rule 23(a)(2) because Plaintiffs' claims are predicated on medical necessity determinations that are unique to each individual class member."); *cf. Doe v. Snyder*, 28 F.4th 103, 106, 112 (9th Cir. 2022) (denying preliminary injunction mandating coverage of gender-affirming care because the "facts specific to Doe" did not "attes[t] to the necessity and suitability of the surgery in his particular case"). For example, even if S.L.'s precocious-puberty diagnosis had been submitted, the Court would still need evidence that the diagnosis supported a puberty blocker at the time of the request. That evidence would tell us nothing about how BCBSIL should have resolved the claim of another hypothetical plan member whose putative alternative diagnosis was hirsutism. Even all plan members whose alternative diagnosis were precocious puberty could not have their claims resolved "in one stroke"; rather, "[d]issimilarities" among class members will "impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350. Put another way, "[e]ven if [S.L.] proves every element of her claim, it will do nothing for the other class members" for whom the alternative diagnosis and the medical-necessity judgments inevitably differ. *Black Lives Matter Los Angeles*, 113 F.4th at 1259.

Courts routinely deny class certification when each class member's claim turns on individualized facts like these. *See, e.g.*, *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1139 (9th Cir. 2022); *Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 433 (6th Cir. 2009) (class certification not possible because of the need for an "individualized review of every claim that was denied"). Because the class "will need to present evidence that varies from member to member," *Olean*, 31 F.4th at 663, the remand issue cannot be decided on a class basis. "Without some glue holding the alleged reasons for all those decisions together, it will be impossible to say that

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES CASE NO. 3:20-cv-06145-DGE – 16

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

examination of all the class members' claims for relief will produce a common answer" to the remand question. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016).

*Second*, a class including the second-qualifying-diagnosis claim would inevitably be "fatally overbroad." *Olean*, 31 F.4th at 669 n.14. As the Ninth Circuit has explained, a "class is defined too broadly to permit certification" if it "is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *Id.*; *see also Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (rejecting a class definition as imprecise and overbroad where it included individuals who were not harmed).

Here, "a great number of members" could *not* have been harmed by BCBSIL's approach to alternative qualifying diagnoses. The record contains no evidence suggesting that any class members (let alone a "great number") submitted a claim with an alternative qualifying diagnosis. Start with the named plaintiffs. Neither C.P. nor Emmett Jones ever alleged that they had any alternative diagnosis other than gender dysphoria and were nevertheless denied coverage for that treatment. The "alternative qualifying diagnosis" remand issue does not apply to them.

And as described in greater detail in BCBSIL's Renewed Motion for Summary Judgment, the record also does not support the application of the alternative qualifying diagnosis remand issue to plaintiff S.L. *See* Renewed MSJ at 17–18. The record contains no evidence that S.L. ever submitted any alternative diagnosis to BCBSIL in support of her request for coverage for her puberty blockers. BCBSIL's records show that S.L. only submitted a claim for coverage for puberty blockers under a gender dysphoria diagnosis code. *See* Decl. of Gwendolyn C. Payton ("Payton Decl."), Exs. A–B. In fact, there is no evidence in the record of S.L.'s stage of pubertal development before S.L. began puberty blockers at age 10. Dkt. 194 at 5. This is consistent with Plaintiffs' own briefing, which references a second diagnosis but never asserts that S.L. ever submitted that diagnosis to BCBSIL for these claims. S.L.'s mother claims that a BCBSIL representative told her that, had S.L. been diagnosed only with early-onset puberty and not also gender dysphoria, "BCBSIL would have likely covered the puberty blocker." Dkt. 176 at 3. But

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 17

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

whatever the accuracy of that hearsay contention, it does not contradict the fact that S.L. never submitted an alternative diagnosis to BCBSIL.

And this absence of evidence is not limited to the Plaintiffs. The record contains no such evidence about any absent class member. *See* Renewed MSJ at 18. Nowhere does it suggest that *any* class member submitted an alternative qualifying diagnosis, that the diagnosis medically supported the requested service, that the service was covered for that diagnosis under the member's own plan, and that BCBSIL denied the claim while disregarding that independent basis for coverage.

Given the absence of any evidence that *any* class member is implicated by this theory, the class is necessarily overbroad. Indeed, if *this class* is not fatally overbroad as to the alternative-qualifying-diagnosis theory, no class could ever be fatally overbroad. *Compare Olean*, 31 F.4th 680 (rejecting argument that class with up to 28% of members uninjured is overbroad), *with Hall v. Marriott Int'l, Inc.*, No. 19cv1715-JO-AHG, 2023 WL 9692466, at *2 (S.D. Cal. June 6, 2023) (finding class overbroad where "approximately 50% of the class was uninjured").

*Third*, there is no evidence that this issue satisfies numerosity. Under Rule 23(a)(1), Plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable." *See also* 3 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 7:38 (6th ed. 2026) ("A class fails to meet the numerosity requirement of Rule 23(a)(1) if, in the course of litigation, the size of the class is reduced such that joinder of class members becomes practicable."). Here, there is no evidence that even one class member submitted a qualifying diagnosis but the claim was nonetheless rejected. While the exact number of plan members with an alternative qualifying diagnosis cannot be determined from the record, there is no evidence that the count exceeds the threshold past which joinder is impracticable. Indeed, there is no evidence that even one plan member presented an alternative qualifying diagnosis and was denied on that basis. Inclusion of this issue within the class, therefore, is improper.

*Fourth*, for the same reason, the Plaintiffs are not typical of the class members who actually submitted a second diagnosis—again, if there even *are* any class members of this type. The Ninth

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 18

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

Circuit requires that "the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001), *overruled on other grounds as recognized in Payan v. Los Angeles Cmty. Coll. Dist.*, No. 24-1809, 2026 WL 686840, at *2 (9th Cir. Mar. 11, 2026). That is manifestly untrue with respect to the alternative-qualifying-diagnosis theory. The named Plaintiffs have no injury arising from such a theory, so, even if there were absent class members who did, they could not represent those absent class members.

*Finally,* none of the named Plaintiffs has an injury traceable to any alternative qualifying diagnosis. As noted above and explained in BCBSIL's summary judgment motion (at 17–18), no provider for any named Plaintiff submitted to BCBSIL a second diagnosis that would have qualified the requested treatment for coverage under the relevant plan. This is a fundamental flaw, as the Ninth Circuit requires that "[a]t least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." *Williams v. Boeing Co.*, 517 F.3d 1120, 1127 (9th Cir. 2008); *see also Davidson*, 968 F.3d at 967 (rejecting certification because the plaintiff failed to show that *any* class members, including the named plaintiff herself, "suffered the common injury of being deprived of rest-period premiums to which they were legally entitled"). Because no named Plaintiff has standing to pursue a second-diagnosis theory of relief, the theory is ineligible for classwide adjudication.

## IV. CONCLUSION

The Court should amend its class certification order to exclude the two remand issues from the scope of the class certification.

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 19

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

Dated this 14th day of August, 2026.

KILPATRICK TOWNSEND & STOCKTON LLP

By_____/s/ Gwendolyn C. Payton_____
       Gwendolyn C. Payton, WSBA No. 26752
       gpayton@ktslaw.com
       John R. Neeleman, WSBA No. 19752
       jneeleman@ktslaw.com
       1420 Fifth Ave., Suite 3700
       Seattle, WA 98101
       Telephone: (206) 626-7714
       Facsimile: (206) 623-6793

KILPATRICK TOWNSEND & STOCKTON LLP

       Stephanie N. Bedard (Pro Hac Vice)
       sbedard@ktslaw.com
       1100 Peachtree Street NE, Suite 2800
       Atlanta, GA 30309
       Telephone: (404) 815-6500

*Counsel for Blue Cross Blue Shield of Illinois*

*I certify that this motion contains 7,011 words, in compliance with the Local Civil Rules.*

BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS
CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES
CASE NO. 3:20-cv-06145-DGE – 20

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date indicated below I electronically filed the foregoing, BLUE CROSS BLUE SHIELD OF ILLINOIS'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Eleanor Hamburger
SIRIANNI YOUTZ SPOONEMORE HAMBURGER
3101 WESTERN AVENUE STE 350
SEATTLE, WA 98121
206-223-0303
Fax: 206-223-0246
Email: ehamburger@sylaw.com

Jennifer C Pizer
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
4221 WILSHIRE BLVD., STE 280
LOS ANGELES, CA 90010
213-382-7600
Email: jpizer@lambdalegal.org

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. (NY)
120 WALL STREET
19TH FLOOR
NEW YORK, NY 10005
212-809-8585
Email: ogonzalez-pagan@lambdalegal.org

DATED this 14th day of August, 2026.

KILPATRICK TOWNSEND & STOCKTON LLP

By:/s/ Gwendolyn C. Payton
    Gwendolyn C. Payton, WSBA #26752

*Counsel for Blue Cross Blue Shield of Illinois*

CERTIFICATE OF SERVICE
CASE NO. 3:20-cv-06145-DGE – 21

KILPATRICK TOWNSEND & STOCKTON LLP
1420 5TH AVENUE, SUITE 3700
SEATTLE, WASHINGTON 98101
(206) 467-9600 FAX: (206) 623.6793