# EXHIBIT D

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF F WASHINGTON

AT TACOMA

---

C.P., by and through his parents, )
Patricia Pritchard and Nolle )
Pritchard and PATRICIA PRITCHARD, )
Plaintiffs, )
vs. ) No. 3:20-cv-06145-RJB
BLUE CROSS BLUE SHIELD OF )
ILLINOIS, )
Defendant. )

---

ZOOM VIDEO DEPOSITION UPON ORAL EXAMINATION

OF

TELISA DRAKE 30(B)(6)

---

9:30 a.m.

May 13, 2022

REPORTED BY: Pat Lessard, CCR #2104

Q. So there could be bells and whistles here and there that are different but for the most part they're the same?
MS. PAYTON: Object to the form.
A. Clients can add or remove any benefits that they wish, but usually standardly they offer the same types of coverage.
Q. (By Ms. Hamburger) Okay. Is there a starting place for the benefit package when a new client comes in?
MS. PAYTON: Object to the form of the question.
A. Yes. So we do have a standard listing of benefits and ask clients whether they would like to include or exclude those benefits.
Q. (By Ms. Hamburger) And where is the standard listing of benefits codified?
MS. PAYTON: Object to the form.
A. Can you clarify that question?
Q. (By Ms. Hamburger) So a new client comes in. Do they get handed a standard ASO plan that has the standard list of benefits from which they can customize?
MS. PAYTON: Object to the form.
A. Normally a client actually gives us what

they had covered with their prior carrier. And then we match it up with what we have within our system and then talk about the nuances.

Q. (By Ms. Hamburger) So you say you match it up with what you have in your system.

Can you explain what you're matching it to?

A. Right. So we'll go through our benefit document and make those choices that they told us that were covered under their prior carrier with what we actually have within, you know, what the deductible, the out-of-pocket, those type of nuances are.

And then if there's anything that is not clarified within the prior carrier's benefit document that we need clarification with our paperwork, we'll sit down with the client and talk about those nuances that we need additional clarification on.

Q. So is that document that you're referring to, the benefit document in your system, is that the benefit -- what's the name of that document?

A. The automated benefit -- I think it's called the automated benefits. It's just our automated benefit document.

Q. Is it a physical document or is it in a computerized system?

A. We actually can do both. So it's in a

Q. Can you tell me what it is?
A. Yes. It is the Catholic Health Initiatives Summary Plan Description.
Q. For 2019, correct?
A. Yes, this is 2019.
Q. Okay. And in 2019 did Blue Cross Blue Shield of Illinois draft this Summary Plan Description?
A. No, we did that.
Q. But Blue Cross Blue Shield of Illinois administered it, right?
A. Yes. We do administer the benefits that are located within this document.
Q. Okay. Did Blue Cross Blue Shield of Illinois review this document in order to understand how to administer it?
A. Yes, we did. We do match the benefits up to our system to make sure that we're administering as they have depicted to their employees.
Q. All right. Let's take a look at the quick reference on page 14.
It's page 14. I'm sorry, page twelve in the document itself. Oh, it starts on page twelve but the part I want is page 14. I apologize.
I want to draw your attention to where it

Q. Are you prepared to testify -- I mean do you know, sitting here today, how many ASO plans, approximately -- let me rephrase that.

My original question was since November 2016 did Blue Cross Blue Shield of Illinois include the same or similar exclusions to what you saw in the 2019 CHI plan in other ASO plans?

MS. PAYTON: Object to the form.

You can answer.

A. Yes. Other clients have chosen to exclude gender-affirming care or services that are ASO plans.

Q. (By Ms. Hamburger) And Blue Cross Blue Shield of Illinois administered those exclusions on behalf of those other clients, is that right?

A. That is correct, yes.

Q. And Exhibit 21 states that there are at least 200 of those plans, correct?

A. That is accurate, yes.

Q. And how many people in total were covered by the 200 plans that have been identified that contain such an exclusion.

MS. PAYTON: Object to the form,

A. That information I do not have as far as the number of employees.

Q. (By Ms. Hamburger) Were you asked to

statutory protections for Employer's religious freedom."
Do you see that?
A. I do.
Q. Has CHI provided any other basis for its belief that it is not subject to 1557 other than its religious freedom, apart from what's been provided in exchange between the lawyers of CHI and Blue Cross Blue Shield of Illinois?
MS. PAYTON: Object to the form.
A. No.
Q. (By Ms. Hamburger) Okay. The next paragraph, "CHI has directed Blue Cross Blue Shield of Illinois to process claims with dates of services on or after January 1, 2017 to exclude the coverage of the above items and services."
Do you see that?
A. I do.
Q. And what above items and services is it referencing?
A. That would be on the bottom of page eight. That would be services for transgender coverage.
Q. And so it's not just an exclusion of surgery at this point, right?
MS. PAYTON: Object to the form.

gender-affirming health care, including the CHI plan exclusion, violated the federal antidiscrimination requirements under the Affordable Care Act?

MS. PAYTON: I'm going to object to the form of the question. The same objection as before.

You can answer "Yes" or "No."

A. Yes, legal involvement was made for this particular exclusion for CHI.

Q. (By Ms. Hamburger) Okay. Does Blue Cross Blue Shield of Illinois's insured plans contain an exclusion of coverage for some or all gender-affirming health care?

A. Can you clarify that again? You said fully insured?

Q. Does Blue Cross Blue Shield of Illinois's insured plans contain an exclusion of coverage for some or all gender-affirming healthcare?

A. Fully insured plans do follow our medical policy and would provide coverage for gender reassignment or gender assignment if it sets that medical policy criteria.

Q. Okay. So there is no blanket exclusion of gender-affirming care in Blue Cross Blue Shield's fully insured plans?

A. For self-funded plans, that's correct.

Sorry.
MS. PAYTON: I think we're getting tired.
MS. HAMBURGER: We are.
A. For fully insured plans, yes, there's no blanket exclusion. I apologize.
Q. (By Ms. Hamburger) Okay. The fully insured plans -- I just want to make sure we have it clear.
The fully insured plans administered by Blue Cross Blue Shield of Illinois do not contain an exclusion of gender-affirming care, correct?
A. Yes, that is correct.
Q. Has Blue Cross Blue Shield of Illinois ever sought judicial guidance under ERISA 502a regarding the implementation of an exclusion for gender affirming care?
MS. PAYTON: Object to the form.
You can answer.
A. Not to my knowledge.
Q. (By Ms. Hamburger) But you're answering here not on your own knowledge but on behalf of Blue Cross Blue Shield of Illinois.
So I've got to ask you again. Has Blue Cross Blue Shield of Illinois ever sought judicial guidance under ERISA 502a regarding whether the implementation of an exclusion of coverage for

C E R T I F I C A T E

STATE OF WASHINGTON )
) ss.
COUNTY OF KING )

I, the undersigned Washington Certified Court Reporter, hereby certify that the foregoing deposition upon oral examination of TELISA DRAKE 30(b)(6) was taken stenographically by me on May 13, 2022, and transcribed under my direction;

That the witness was duly sworn by me pursuant to RCW 5.28.010 to testify truthfully; that the transcript of the deposition is a full, true, and correct transcript to the best of my ability; that I am neither attorney for nor relative or employee of any of the parties to the action or any attorney or counsel employed by the parties hereto, nor am I financially interested in its outcome.

I further certify that in accordance with CR 30(e) the witness was given the opportunity to examine, read and sign the deposition within 30 days upon its completion and submission, unless waiver of signature was indicated in the record.

IN WITNESS WHEREOF, I have hereunto set my hand this 18th day of May, 2022.

Pat Lessard

-----------------------
Pat Lessard,
pat@court-reporter.com