The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; S.L. by and through her parents, S.R. and R.L.; EMMETT JONES, each individually and on behalf of similarly situated others; and PATRICIA PRITCHARD, individually,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | No. 3:20-cv-06145-DGE<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON BCBSIL'S LIABILITY UNDER SECTION 1557 OF THE ACA**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Noted for Consideration: November 20, 2026** |



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## Table of Contents


Table of Contents ... ii
Table of Authorities ... iv
I. INTRODUCTION ... 1
II. UNDISPUTED MATERIAL FACTS ... 4
A. BCBSIL Removed the Exclusion from its Insured Plans for Which it is Directly Liable Under the ACA. ... 4
B. BCBSIL's Administration of the Exclusions: ... 5
C. As a Result of Its Administration of the Exclusions, BCBSIL Denies Coverage for Plaintiffs' Gender-Affirming Medical Care. ... 7
III. BACKGROUND ... 10
A. Gender-Affirming Medical Care Is Medically Necessary. ... 10
*1) Transgender People and Gender Dysphoria. ... 10*
*2) Generally Accepted Medical Standards Establish Gender-Affirming Medical Care as the Standard Treatment for Gender Dysphoria. ... 11*
B. BCBSIL Agrees that Gender-Affirming Medical Care Can Be Medically Necessary. ... 13
C. BCBSIL's Design, Administration, and Enforcement of the Exclusions as Third-Party Administrator. ... 15
D. BCBSIL Denied Coverage for Plaintiffs' Gender-Affirming Medical Care that Was Medically Necessary Under BCBSIL's Medical Policy. ... 17
IV. LAW AND ARGUMENT ... 18
A. Legal Standard for Section 1557 Claims of Sex Discrimination. ... 18
B. BCBSIL Is A "Health Program or Activity" That Is Subject to The ACA's Non-Discrimination Requirements. ... 20
C. Plaintiffs And Class Members Were Denied Benefits by BCBSIL Pursuant to the Exclusions. ... 20
D. The Exclusions and BCBSIL's Denials of Coverage Discriminated Against Plaintiffs on the Basis of Sex. ... 21
*1) Transgender status discrimination is sex discrimination. ... 22*
*2) BCBSIL's Exclusions Are Proxy or Pretext for Discrimination Against Transgender Persons. ... 24*
E. BCBSIL's ERISA, RFRA, and Spending-Clause Defenses Remain Foreclosed as Law of the Case. ... 33
F. At Minimum, BCBSIL Is Liable for Sex Discrimination as to S.L. ... 34




SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

V. CONCLUSION ........................................ 34



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## Table of Authorities

### CASES

*Arce v. Douglas*,
793 F.3d 968 (9th Cir. 2015)....................31

*Berton v. Aetna Inc.*,
No. 23-CV-01849-HSG, 2024 WL 869651 (N.D. Cal. Feb. 29, 2024)....................25

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020)....................28

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014)....................40

*C.P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*,
536 F. Supp. 3d 791 (W.D. Wash. 2021)....................8, 24

*Cummings v. Missouri*,
71 U.S. 277 (1867)....................30

*Davis v. Guam*,
932 F.3d 822 (9th Cir. 2019)....................32

*Dino V. v. Collins*,
EEOC Appeal No. 2023002331, 2025 WL 1565797 (Apr. 15, 2025)....................31

*Doe v. Snyder*,
28 F.4th 103 (9th Cir. 2022)....................25

*E.S. by & through R.S. v. Regence BlueShield*,
No. C17-1609-RAJ, 2024 WL 1173805 (W.D. Wash. Mar. 19, 2024)....................32

*Grabowski v. Arizona Bd. of Regents*,
69 F.4th 1110 (9th Cir. 2023)....................30

*Karnoski v. Trump*,
No. C17-1297-MJP, 2017 WL 6311305 (W.D. Wash Dec. 11, 2017)....................33

*Muñoz v. Giumarra Vineyards Corp.*,
No. 1:09–CV–0703 AWI JLT, 2015 WL 5350563 (E.D. Cal. Sep. 11, 2015)....................37



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) ........ 28

*Roe v. Critchfield*,
137 F.4th 912 (9th Cir. 2025) ........ 29, 30

*Romer v. Evans*,
517 U.S. 620 (1996) ........ 38

*Sargent v. Sch. Dist. of Philadelphia*,
165 F.4th 727 (3d Cir. 2026) ........ 39

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
965 F.3d 945 (9th Cir. 2020) ........ 24, 32

*Schwake v. Arizona Bd. of Regents*,
967 F.3d 940 (9th Cir. 2020) ........ 25

*United States v. Skrmetti*,
605 U.S. 495 (2025) ........ 7, 9

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) ........ 30

*W. Virginia v. B. P. J. by Jackson*,
146 S. Ct. 2356 (2026) ........ 29

*Washington v. Davis*,
426 U.S. 229 (1976) ........ 30

*Yeager v. Bowlin*,
693 F.3d 1076 (9th Cir. 2012) ........ 37

*Yick Wo v. Hopkins*,
118 U.S. 356 (1886) ........ 37

**STATUTES**

20 U.S.C. § 1681 et seq. ........ 21

42 U.S.C. § 18116(a) ........ 24



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## OTHER AUTHORITIES

Nat'l Acad. of Sci., Eng'g, and Med., *Understanding the Well-Being of LGBTQI+ Populations* (2020), https://www.ncbi.nlm.nih.gov/books/NBK563325/ ........ 21



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## I. INTRODUCTION

Plaintiffs are all transgender persons who seek coverage from Defendant Blue Cross and Blue Shield of Illinois ("BCBSIL") for medically necessary gender-affirming medical care. BCBSIL agrees that the treatment they seek is medically necessary and would be covered if they were enrolled in a BCBSIL-insured health plan. But Plaintiffs and all class members are enrolled in self-funded health plans administered by BCBSIL under standard contracts between their employers and BCBSIL. Within the contracts, BCBSIL agreed to administer categorical exclusions of gender-affirming medical care (hereafter the "Exclusions"), despite BCBSIL's own prior determination that such Exclusions run afoul of the Affordable Care Act's ("ACA") anti-discrimination law (known as "Section 1557") and are not justified based on medical and scientific evidence. BCBSIL made this agreement only after insisting on an indemnification provision that ensured it would not bear financial liability for administering the Exclusions.

Plaintiffs sued, a class was certified, and based upon the undisputed facts, Judge Robert Bryan concluded that BCBSIL engaged in illegal intentional discrimination under Section 1557 of the ACA by imposing facially discriminatory Exclusions. BCBSIL appealed and while on appeal the U.S. Supreme Court issued *United States v. Skrmetti*, 605 U.S. 495 (2025). As a result, though it affirmed the rejection of each of BCBSIL's other defenses, the Ninth Circuit vacated Judge Bryan's decision and remanded the case for consideration under *Skrmetti*.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Thus, several matters are now the "law of the case": First, "[b]ecause BCBSIL receives federal financial assistance, it is subject to Section 1557 for all of its operations." *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 660 (9th Cir. 2025). Second, BCBSIL, as a third-party administrator ("TPA"), "can be liable for violating Section 1557, even when implementing plan terms drafted by a plan sponsor." *Id.* at 661. Third, BCBSIL cannot invoke the Religious Freedom Restoration Act ("RFRA") as a defense. *Id.* 665-69.

The only remaining question before the Court on liability is narrow and straightforward: whether the Exclusions that BCBSIL designed, administered, and applied are "a pretext or proxy for invidious discrimination" against transgender beneficiaries. *Id.* at 671-72. The answer is an unequivocal "yes."

The undisputed facts show that BCBSIL applied the Exclusions when claims with a diagnosis of "gender dysphoria" were received. If a claim came to BCBSIL with the diagnosis of "gender dysphoria" anywhere on the claim, BCBSIL would deny coverage automatically for the services sought by class members. Put simply, BCBSIL used the diagnosis of "gender dysphoria" as a proxy for transgender status. As the Ninth Circuit held, "[t]he fit between transgender people and people suffering from gender dysphoria is strong," as "[o]nly transgender people can suffer from gender dysphoria." *Id.* at 672. There is no doubt about the strength of the "fit" of the proxy.

This strong correlation carries added weight in light of BCBSIL's admission that it imposed the Exclusions without any medical justification. "BCBSIL's policy admits



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

that the treatments Plaintiffs seek can be medically necessary for treating [patients] with gender dysphoria." *Id.* And BCBSIL concedes that it would impose the Exclusions even if its customer-employers disclosed a facially discriminatory reason for imposing them. Dkt. 84-2, at 28:19-29:17; Dkt. 84-6, at 165:8-12; Dkt. 84-9, at 29:4-16. Nor has BCBSIL provided any financial justification for the Exclusions. BCBSIL excluded medically necessary treatment here without any legitimate justification to hide a discriminatory purpose. In sum, absent a compelling reason, BCBSIL's decision to apply the Exclusions can only be attributed to discrimination. *Cf. Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886) ("The fact of this discrimination is admitted. No reason for it is shown, and the conclusion cannot be resisted that no reason for it exists except hostility to the race and nationality to which the petitioners belong.").

This case is different from *United States v. Skrmetti*, 605 U.S. 495 (2025), as the Ninth Circuit noted. *Pritchard*, 159 F.4th at 671-72 (remarking that the case is "potentially different" and that "remand would not be futile"). In *Skrmetti*, "no party had 'argued that the statute's prohibitions are mere pretexts designed to effect an invidious discrimination against transgender individuals.'" *Pritchard*, 159 F.4th at 671 (quoting *Skrmetti*, 605 U.S. at 519, alterations omitted). Here, the undisputed evidence shows that the Exclusions and BCBSIL's administration thereof are pretext or proxy for invidious discrimination against transgender persons. In addition, while sex or transgender status did not alter the application of the statute at issue in *Skrmetti*, here, BCBSIL explicitly excludes coverage for certain kinds of healthcare if a person has a gender dysphoria



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

diagnosis, ***even when they have an independently qualifying diagnosis*** that would otherwise result in coverage, as was the case for Plaintiff S.L.

This Court should grant Plaintiffs' Motion for Summary Judgment.

## II. UNDISPUTED MATERIAL FACTS

### A. BCBSIL Removed the Exclusion from its Insured Plans for Which it is Directly Liable Under the ACA.

- BCBSIL is part of Health Care Service Corporation ("HCSC"), which receives federal financial assistance for its health programs and activities. Dkt. 84-1, at 11:5-9; Dkt. 84-2, at 9:2-12, 17:14-18:9, 18:16-21:8.
- All of BCBSIL's activities are health related. *Id.*, at 16:20-17:10.
- BCBSIL, through HCSC, signed an assurance with the federal government, promising to comply with Section 1557. Dkt. 84-3, ¶5.
- Consistent with Section 1557, and its own medical necessity determination, BCBSIL removed its categorical exclusion of coverage for gender-affirming medical care from its insured policies in 2015. Dkt. 84-1, at 33:7-18, 35:15-36:8, 46:11-21; Dkt. 84-4, at 20; Dkt. 84-6, at 163:15-164:11.
- BCBSIL based this review on scientific evidence and a review of medical literature. Dkt. No. 84-1, at 37:24-38:9. It also based the review on the *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People* by the World Professional Association of Transgender Health ("WPATH"), the seventh version of which was published in 2012. *Id.* at 38:10-39:8.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

- The cost of providing gender-affirming care is generally very low, particularly in the context of coverage through group health plans. Dkt. 97-7, ¶55.

**B. BCBSIL's Administration of the Exclusions:**

- When acting as a TPA, BCBSIL agreed to administer exclusions of gender-affirming care when requested by employers. Dkt. 84-2, at 28:19-29:17; Dkt. 84-6, at 165:8-12.
- BCBSIL has consistently administered the Exclusions in the Catholic Health Initiatives plan and similar Exclusions for nearly 400 other employers, denying hundreds of claims for medically necessary gender-affirming care solely because the care was sought for gender dysphoria, a condition with which only transgender people are diagnosed. Dkt. 87-17, at 7.
- When an employer asks to include a gender-affirming care exclusion in its plan, the overwhelming majority of the employers use the categorical exclusion drafted and proffered by BCBSIL. Dkt. 86-17, Addendum A, at 13; Dkt. 84-6, at 34:16-22, 41:12-24; Dkt. 84-9, at 25:4-27:15 (378 plans use the BCBSIL standard language for the Exclusion, while the handful of variations from BCBSIL's standard Exclusions in Addendum A are "represented uniquely in one plan" each).
- BCBSIL never asks employers for a justification or reason when the employers seek to add the Exclusions to their plan. Dkt. 84-6, at 72:21-73:7; Dkt. 84-9, at 28:14-17 (BCBSIL will administer the Exclusions based upon nothing more than the "personal preference of that particular client").



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

- BCBSIL would administer the Exclusions even if the employer expressed overtly discriminatory reasons for it. *Id.*, at 29:4-16. BCBSIL does not require employers to have a genuine medical, scientific, or religious basis for asking it to administer the Exclusion and does not investigate their reasons for wanting it. *See id.*, at 28:20-23, 29:17-25. Put simply, BCBSIL "closes its eyes" to the reasons its employers ask for the Exclusions, despite its own analysis shows that the reasons are not based on genuine medical necessity or cost.
- BCBSIL insists that every employer who requests the Exclusion promises to indemnify BCBSIL for any expenses incurred related to the Exclusion, including litigation costs. Dkt. 160-2, at 9, Dkt. 160-3, at 131:15-133:3. BCBSIL added this special indemnification provision when it puts the Exclusion in place. *See id.* This is evidence that BCBSIL knew that the Exclusions were discriminatory but proceeded to implement them anyway.
- When administering a gender-affirming care medical exclusion, BCBSIL's actions are the same: It reviews claims to determine if the service is related to "gender dysphoria" based on the diagnostic and procedural codes used. Dkt. 84-6, at 69:8-71:4; *see, e.g.*, Dkt. 84-9, at 22:2-24:11 (when BCBSIL's legal team identified plans that contained the Exclusions, it looked for denials of claims with a gender dysphoria diagnosis); *id.*, at 40:17-22 (gender dysphoria is the condition that triggers the application of the Exclusions). If so, BCBSIL denies the service under the Exclusions.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

- At the same time, BCBSIL covers most services for gender-affirming medical care when provided for other conditions. Dkt. 84-6, at 124:10-125:14, 127:5-22; Dkt. 84-14; Dkt. 84-1, at 64:17-65:1.

**C. As a Result of Its Administration of the Exclusions, BCBSIL Denies Coverage for Plaintiffs' Gender-Affirming Medical Care.**

***C.P.***

- Plaintiff C.P. is a young man who is transgender. Dkt. 97-12, at 27:1-5. He has been diagnosed with gender dysphoria by treating and evaluating providers. Dkts. 97-3, 97-4, 97-5; Dkt. 97-13, at 43:21-44:24; 65:4-20; 105:10-106:4; Dkt. 97-14, at 53:24-54:16, 55:3-21. He is enrolled in a BCBSIL-administered self-funded plan that contains an Exclusion. Dkt. 97-12, at 15:2-12; Dkt. 81, ¶2; Dkt. 84-13, at p. 67 of 142.
- BCBSIL covered and paid for C.P.'s first Vantas implant as medically necessary, consistent with its own medical policy. Dkt. 84-1, at 52:19-53:9, 59:20-60:18; Dkt. 84-10, at 2-3 of 3; Dkt. 97-16, at 20:11-21, 23:12-17. BCBSIL later claimed that the coverage was in error, not because the treatment was not medically necessary, but rather because BCBSIL claimed that the CHI plan did not include such coverage. Dkt. 84-11. BCBSIL denied a second Vantas implant based upon the Exclusion. Dkt. 97-1, at 125:18-127:22; Dkt. 97-20.
- After undergoing medically necessary treatment for gender dysphoria (prescribed by his doctor in accordance with the standards of care and including more than a year of prescribed hormone therapy covered by his health plan), C.P.'s treatment team recommended he undergo gender-affirming surgery in the



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

form of a mastectomy and male chest reconstruction. Dkts. 97-3, 97-4, 97-5. Prior to the surgery, C.P. was assessed not only by his treating primary care physician, who has over 15 years of experience with treating gender dysphoria, but also by a licensed mental health provider who confirmed his gender dysphoria diagnosis and also deemed the surgery to be medically necessary. Dkts. 97-3, 97-4; Dkt. 97-16, at 22:7-23:11, 33:1-20, 39:18-40:9; Dkt. 97-11, 9:1-11:7, 12:1-13:10.

- When C.P. sought pre-authorization for his chest surgery, BCBSIL denied it based solely upon the Exclusion. Dkt. 84-14; Dkt. 97-1, at 124:13-125:14. BCBSIL's Rule 30(b)(6) witness and Medical Director agreed that the surgery was medically necessary under BCBSIL's own medical policy. Dkt. 84-1, at 60:19-62:3.

***S.L.***

- Plaintiff S.L. is a 12-year-old transgender girl, who has been diagnosed with gender dysphoria and precocious puberty. Dkt. 176, ¶2. She is enrolled in a self-funded health benefit plan administered by BCBSIL offered through a non-religious employer. *Id.* at ¶4.
- When she enrolled, S.L.'s healthcare provider obtained pre-approval for her treatment with puberty-delaying medications, which are medically necessary to treat both precocious puberty and gender dysphoria. *Id.* at ¶¶5-7. S.L. received this care for about two years before joining the BCBSIL plan. *Id.* at ¶5.
- Despite approving pre-authorization, BCBSIL denied coverage for the puberty-delaying medication pursuant to an Exclusion. *Id.* at ¶¶8-9; Dkt. 97-2, at 9-20. On



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

March 17, 2023, S.L.'s mother appealed the denial, and again BCBSIL denied all coverage for the treatment because "transsexual surgery and related psychiatric care are not covered." Dkt. 176, ¶¶9-11; Dkt. 97-3, at 22.

- BCBSIL Membership Services told S.L.'s mother in March 2023 that if S.L. had been diagnosed only with early-onset puberty, instead of early-onset puberty and gender dysphoria, BCBSIL would have likely covered the puberty blocker. Dkt. 176, ¶13.
- As a result of BCBSIL's administration and enforcement of the Exclusion, S.L.'s parents face nearly $200,000 of medical bills related to BCBSIL's denial of coverage for S.L.'s gender-affirming medical care. *Id.* at ¶15. S.L. will likely need gender-affirming hormone therapy in the future. *Id.* at ¶¶14, 17.

***Emmett Jones***

- Plaintiff Emmett Jones is a transgender man who is enrolled in health coverage in the self-funded plan through his wife's employer. Dkt. 177, ¶2. His coverage is administered by BCBSIL and is subject to the Exclusion. *Id.* at ¶¶3-4. Jones has been diagnosed with gender dysphoria. *Id.* at ¶5 As part of the treatment for his gender dysphoria, Jones's medical providers determined that it was medically necessary for Jones to receive gender-affirming chest surgery. *Id.* at ¶6.
- Prior to surgery, Jones contacted BCBSIL where a representative told him that his plan did not cover "transgender surgery." *Id.* at ¶7.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

- Jones obtained chest surgery on May 25, 2023, which he paid for out-of-pocket because BCBSIL would not cover gender-affirming surgery. *Id.* at ¶8.
- On June 5, 2023, Jones submitted to BCBSIL a claim for reimbursement for the surgical procedure and associated services, which BCBSIL denied on June 27, 2023. *Id.* at ¶¶8-9. Jones "may require additional gender-affirming care and surgery in the future" and "want[s] to have coverage for such treatment in the future if it is recommended as medically necessary by [his] treating providers." *Id.* at ¶13.

## III. BACKGROUND

### A. Gender-Affirming Medical Care Is Medically Necessary.

#### 1) Transgender People and Gender Dysphoria

Gender identity is a person's internal sense of their sex. Dkt. 97-6 (Ettner Report), ¶22; Dkt. 97-7 (Karasic Report), ¶21; Dkt. 97-8 (Schechter Report), ¶20. People who have a gender identity that aligns with their sex assigned at birth are cisgender, while people who have a gender identity that does not align with their sex assigned at birth are transgender. Ettner ¶20; Karasic ¶20. Gender identity is innate, has biological underpinnings, and is not a matter of choice. Ettner ¶¶22, 25-26; Karasic ¶21. Being transgender is a well-recognized variation of human development. Ettner ¶¶23-25; Karasic ¶31.

The incongruence between a transgender person's gender identity and their sex assigned at birth can result in clinically significant distress or significant impairment in



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

functioning. Ettner ¶27; Karasic ¶¶22, 24; Schechter ¶21. The medical diagnosis for that incongruence and the attendant distress or impairment is gender dysphoria. Ettner ¶27; Karasic ¶23; Schechter ¶21. Gender dysphoria is a serious medical condition, as codified in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, 5th Edition. Ettner ¶27; Karasic ¶23; Schechter ¶21.

Gender dysphoria, if left untreated, may result in debilitating anxiety, severe depression, self-harm, and increased risk of suicide. Ettner ¶¶32, 52; Karasic ¶24; Schechter ¶21. When an individual goes without appropriate treatment for gender dysphoria, they are put at risk of significant harm to their health and wellbeing. Ettner ¶27; Karasic ¶23; Schechter ¶21.

**2) Generally Accepted Medical Standards Establish Gender-Affirming Medical Care as the Standard Treatment for Gender Dysphoria.**

Gender dysphoria is treatable. Since 1979, WPATH has published clinical practice guidelines for the treatment of gender dysphoria ("WPATH Standards of Care"). Ettner ¶33; Karasic ¶25; Schechter ¶24; *see also* Dkt. 97-9; Dkt. 116-5. The Endocrine Society also publishes comprehensive practice guidelines, which are consistent with the WPATH Standards of Care. Karasic ¶27; Schechter ¶26. The goal of these guidelines is to eliminate the distress of gender dysphoria by bringing a patient's body into better alignment with their gender identity. Ettner ¶65; Karasic ¶¶32, 56; Schechter ¶25.

Gender-affirming healthcare may include counseling, hormone therapy, surgery, and other medically necessary treatments. Ettner ¶¶38-48; Karasic ¶¶36-42; Schechter ¶¶25, 28-30. *See also generally* Dkt. 84-4 (BCBSIL Medical Policy). The precise treatments



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

are determined by an individual person's healthcare team in collaboration with the patient, and, if the patient is an adolescent, with the patient's parents or guardians. Ettner ¶37; Karasic ¶50. These treatment protocols are widely accepted by the nation's major medical and mental health organizations as reflecting the consensus on the appropriate treatment for gender dysphoria. Dkt. 134, ¶34; Dkts. 134-1, ¶30, ¶43.BCBSIL does too. Dkt. 85-3.

For adolescents with gender dysphoria who experience severe distress with the onset of puberty, puberty-delaying medication may be indicated. Ettner ¶¶39-42; Karasic, ¶38. Puberty-delaying medications pause endogenous puberty, limiting the influence of endogenous hormones on the body. Ettner ¶39; Karasic, ¶38. The medical and scientific literature, as well as clinical experience, have established that puberty-delaying medications are safe and effective to treat gender dysphoria. Dkt. 134, ¶¶50-52.

For some adolescents and adults, hormone therapy may be medically necessary to treat their gender dysphoria. Karasic ¶39. The purpose of this treatment is to attain the appropriate masculinization or feminization of the transgender person to achieve a gender phenotype that matches as closely as possible to their gender identity. Ettner ¶¶43-44; Karasic ¶39. The medical and scientific literature, as well as clinical experience, have similarly established that gender-affirming hormone therapy is safe and effective to treat gender dysphoria. Dkt. 134, ¶¶50-52; Dkt. 134-1, ¶¶47-48.

Some transgender individuals need surgical interventions to help bring their body into alignment with their gender. Ettner ¶¶45-46; Karasic ¶40; Schechter ¶¶26-27.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Though not all transgender people require gender-affirming surgery, such care is necessary when medically indicated. Ettner ¶46; Karasic ¶40; Schechter ¶32. The treatment protocols recognize that male chest reconstruction surgery may be indicated for transgender youth under eighteen. Karasic ¶41; Schechter ¶30.

Like all medical care, gender-affirming medical care is provided only after discussing the risks and benefits of the treatment and obtaining informed consent. Karasic ¶50. And, the treatment protocols recommend that clinicians take a case-by-case approach to evaluate whether and when the procedure is medically necessary for a particular patient. Ettner ¶37.

The consequences of untreated gender dysphoria are serious, including irreversible and harmful physical changes and irreparable mental harm. Ettner ¶¶32, 81; Karasic ¶¶57, 81. Denial of medically-indicated gender-affirming care frustrates treatment goals, exacerbates gender dysphoria and its associated depression and suicidality, imposes stigma, and has negative impacts on patients' mental health and well-being. Ettner ¶¶65-71.

### B. BCBSIL Agrees that Gender-Affirming Medical Care Can Be Medically Necessary.

BCBSIL's medical policy reflects the current consensus on the standards of care for treatment of gender dysphoria. Dkt. 84-4. Dr. Kim Reed testified on behalf of BCBSIL as one of its Rule 30(b)(6) witnesses. He also oversees the development of medical policies at BCBSIL. Dkt. 84-1, at 11:16-22. Dr. Reed testified that "the foundation for our medical policies is based on the evidence-based clinical literature that's out in the



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

scientific community" including a wide variety of scientific publications. *Id.*, at 12:17-23. "All of our [medical] policies, whether it's this policy or any other medical policy, are based on a review of the scientific literature." *Id.*, at 38:3-5. When asked if HCSC (the parent for BCBSIL) uses different medical policies for different divisions, Dr. Reed emphatically demurred: "[W]e don't have different medical policies [for different states] … because the clinical evidence is what it is." *Id.*, at 39:15-19. According to BCBSIL, its medical policies, including its policy on coverage for gender-affirming care, are grounded firmly in the objective scientific and medical knowledge.

BCBSIL's decision to cover gender-affirming care was based upon scientific and medical evidence and a review of the medical literature. *Id.*, at 37:24-38:9. The review was based in part on consideration of the WPATH Standards of Care. *Id.*, at 38:10-39:8. The review also considered the requirements of the ACA. *Id.*, at 46:11-21. Based on the scientific and medical evidence and the requirements of the ACA, BCBSIL removed all gender-affirming care exclusions from its insured health plans, as well as from self-funded plans for which the employer had not requested an express exclusion. *Id.*, at 46:3-21; Dkt. 84-5; Dkt. 84-6, at 163:15-164:11. Since 2015, BCBSIL has covered medically necessary gender-affirming care in its insured plans and in its self-funded plans where an employer does not request an Exclusion. Dkt. 84-6, at 27:4-15.

BCBSIL's medical policy requiring coverage of medically necessary gender-affirming care is consistent with the WPATH Standards of Care. Dkt. 84-1, at 52:6-13; Dkt. 84-5, at 5 (BCBSIL determined that it should "strictly follow" the WPATH Standards



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

of Care); Dkt. 84-7, at 5 ("We have decided as a company to follow WPATH"). BCBSIL's medical policy permits coverage of certain gender-affirming care consistent with WPATH Standards of Care, including medically necessary chest surgery for transgender male youth. Dkt. 84-4, p. 7 of 22 (hormone therapy, psychological services and chest surgery for transgender male individuals may be medically necessary for children and adolescents); Dkt. 97-10, at 40:12-41:20.

BCBSIL's decision to follow the medical consensus for the standard of care for treatment of gender dysphoria for adults and minors is consistent with the positions taken by the major medical organizations in the United States and the National Academies of Sciences, Engineering, and Medicine. *See, e.g.*, Dkts. 97-6, 97-7, 97-8; Nat'l Acad. of Sci., Eng'g, and Med., *Understanding the Well-Being of LGBTQI+ Populations* 366 (2020), https://www.ncbi.nlm.nih.gov/books/NBK563325 ("[A]vailable evidence generally indicates that gender-affirming medical interventions, including surgeries, are associated with improvements in gender dysphoria, mental health, and quality of life for transgender people.").

### C. BCBSIL's Design, Administration, and Enforcement of the Exclusions as Third-Party Administrator.

BCBSIL is part of the HCSC, which receives federal financial assistance for its health programs and activities. Dkt. 85, at 3:5-9; Dkt. 85-1, at 3:2-12, 6:14-7:9. All of BCBSIL's activities are health related. Dkt. 85-1, at 5:20-6:10. And because BCBSIL is a covered entity under Section 1557, BCBSIL, through HCSC, signed an assurance with the federal government, promising to comply with Section 1557. Dkt. 85-2. Indeed, BCBSIL



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

conceded that it is a "covered entity" under Section 1557. Dkt. 85-1, at 82:24-83:11. Consistent with Section 1557, and its own medical necessity determination, BCBSIL removed its categorical exclusion of coverage for gender-affirming medical care from its insured plans and has covered medically necessary gender-affirming care in its insured plans and self-funded plans without an express exclusion since 2015. Dkts. 85, at 11:7-18, 13:15-14:8, 20:3-21; Dkt. 85-3; Dkt. 85-5, at 3:4-15, 24:15-25:11.

Nonetheless, when acting as a TPA, BCBSIL has agreed to administer exclusions of gender-affirming care when requested by its employer-customers. Dkt. 85-5, at 26:8-18; Dkt. 85-11, at 5-6. BCBSIL has consistently administered the Exclusions for nearly 400 other employers, denying hundreds of claims for medically necessary gender-affirming care solely because the care was sought for gender dysphoria, a condition with which only transgender people are diagnosed. Dkt. 85-11, at 7-8. When an employer asks to include an Exclusion in its plan, the overwhelming majority of the employers use the version of Exclusion drafted and proffered by BCBSIL. Dkt. 85-5, at 6, 8; Dkt. 85-8, at 6:4-8:15; Dkt. 85-11, at 14-23. BCBSIL never asks employers for a justification or reason when agreeing to administer the Exclusion. Dkt. 85-5, at 14:21-15:7; Dkt. 85-8, at 9:3-23. BCBSIL would administer the Exclusion even if the employer expressed overtly discriminatory reasons for it. Dkt. 85-8, at 10:4-25. BCBSIL does not require employers to have a genuine medical, scientific, or even a religious basis before it administers the Exclusions. Dkt. 85-8, at 9:3-13. When administering the Exclusions, BCBSIL's actions are the same: It reviews claims to determine if the service is related to "gender dysphoria," based on the



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

diagnostic and procedural codes used. Dkt. 85-5, at 11:8-13:4; Dkt. 85-8, at 14:17-22; *see also* Dkt. 85-8, at 4:15-5:6. If so, the service is denied under the Exclusions. *Ibid.* At the same time, BCBSIL covers most services prescribed as gender-affirming medical care when sought for other conditions. Dkt. 85-5, at 21:10-15, 23:5-22; Dkt. 85, at 25:17-26:1.

BCBSIL is not a religious entity. Dkt. 41, at 2-3. It is also not an agent of any religious entity. Dkt. 85-10, at 16. Nor, again, does it ask employers if they have a religious reason for applying the Exclusions, let alone require attestation of relevant, sincerely held religious beliefs. Dkt. 85-8, at 9:3-10:25. BCBSIL does not ask employers to attest to any sincerely held religious belief before administering the Exclusions. *Id.* BCBSIL has never identified a single employer with a genuinely held religious belief in this case. Even Catholic Health Initiatives (through which Plaintiffs C.P. and Jones received coverage) has never taken that position and now covers gender affirming care. Dkt. 195, ¶2.

### D. BCBSIL Denied Coverage for Plaintiffs' Gender-Affirming Medical Care that Was Medically Necessary Under BCBSIL's Medical Policy.

BCBSIL's medical director, Dr. Reed, stated that gender-affirming care services, such as hormone therapy, including puberty blockers, psychological services, and chest surgery for transgender men, are medically necessary. Dkt. 25, at 40-41. Nonetheless, BCBSIL denied coverage of these services to Plaintiffs based only on BCBSIL's decision to administer the Exclusion. Dkt. 84-14.

The denial was not based on any objective medical or scientific evidence concerning the safety or efficacy of the treatment. Plaintiffs' treatments, such as C.P.'s



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

chest surgery, are covered when medically necessary under BCBSIL medical policy. *See, e.g.*, Dkt. 84-1, at 60:19-62:3. Rather, the denial was based only on BCBSIL's administration of the arbitrary "individual preference" of employers to exclude all coverage for health services "for, or leading to, gender reassignment surgery" as treatment for gender dysphoria. BCBSIL continues to administer the Exclusions to date and has no plans to stop. Dkt. 84-6, at 165:13-18

## IV. LAW AND ARGUMENT

### A. Legal Standard for Section 1557 Claims of Sex Discrimination.

Section 1557 requires, in relevant part, that "[a]n individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). It is "an affirmative obligation not to discriminate in the provision of health care." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 955 (9th Cir. 2020).

This Court already held that to succeed on their Section 1557 claim, Plaintiffs must demonstrate that (1) the defendant is a health program or activity, any part of which receives federal funding; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under a health program or activity; and (3) the latter occurred on the basis of sex. *See C.P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, 536 F. Supp. 3d 791, 796 (W.D. Wash. 2021) (articulating the standard for a sex



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

discrimination claim under Section 1557); *Berton v. Aetna Inc.*, No. 23-CV-01849-HSG, 2024 WL 869651, at *3 (N.D. Cal. Feb. 29, 2024) (same); *cf. Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) (applying the legal grounds from Title VII and Title IX to a Section 1557 claim for sex discrimination); *Schwake v. Arizona Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020) (articulating the grounds for a claim under Title IX).

Plaintiffs demonstrate below that: (a) BCBSIL is a covered entity because it is a "health program or activity, any part of which is receiving Federal financial assistance," and must therefore independently comply with Section 1557 in all of its activities, including the administration of employer-sponsored self-funded health plans; (b) when BCBSIL administered the Exclusions, it intentionally and independently engaged in discrimination excluding Plaintiffs and Class Members from participation in, denying Plaintiffs and Class Members the benefits of, or subjecting Plaintiffs and Class Members to discrimination in the coverage of healthcare services; and (c) BCBSIL did so on the basis of sex.

The Ninth Circuit cautioned that it "may not be possible to decide" the proxy/pretext question "at summary judgment," in which case "the district court will need to hold a trial." *Pritchard*, 159 F.4th at 672. That caution addresses a case in which a party's intent must be inferred from circumstantial evidence that a reasonable jury could read more than one way. It does not describe this record.

Rather, Plaintiffs rely on undisputed admissions from BCBSIL's own sworn Rule 30(b)(6) testimony, its medical policy, and other BCBSIL witness testimony and records.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Because BCBSIL's admissions foreclose any competing, non-discriminatory account of its own conduct, the Ninth Circuit's caution about the limits of summary judgment does not apply here. This is precisely the kind of record the panel contemplated could be resolved without a trial.

**B. BCBSIL Is A "Health Program or Activity" That Is Subject to The ACA's Non-Discrimination Requirements.**

BCBSIL is subject to Section 1557's requirement that it not engage in sex discrimination. "Because BCBSIL receives federal financial assistance, it is subject to Section 1557 for all of its operations." *Pritchard*, 159 F.4th at 660. And here, there is no dispute that BCBSIL receives federal financial assistance. Dkt. 84-2, at 27:24-29:17; Dkt. 41, ¶51; Dkt. 88-1. And, as BCBSIL's Rule 30(b)(6) witness admitted, all of BCBSIL's activities are health related. Dkt. 97-17, at 12:17-23; Dkt. 84-2, at 16:20-17:10 ("we sell insured health products and uninsured health products"). BCBSIL is a "covered entity" under Section 1557. It must comply with anti-discrimination requirements in all of its operations.

**C. Plaintiffs And Class Members Were Denied Benefits by BCBSIL Pursuant to the Exclusions.**

Plaintiffs and Class Members are transgender persons who have been diagnosed with gender dysphoria, for which their medical providers have recommended some form of gender-affirming medical care. Dkt. 155, ¶ 3; Dkt. 176, ¶¶ 2-3, 7, 14; Dkt. 177, ¶¶ 5-6; Dkt. 97-13, at 7:21-8:24; Dkt. 97-14, at 7:24-8:7; Dkt. 96-17, at 5:11-21.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Each plaintiff is or has been enrolled in a self-funded health benefit plan administered by BCBSIL. Dkt. 155, ¶ 2; Dkt. 176, ¶ 4; Dkt. 177, ¶¶ 2-3; Dkt. 198, ¶ 2; Dkt. 97-12, at 8:2-12. Each of the plans in which Plaintiffs and Class Members are or have been enrolled have contained coverage exclusions for gender-affirming medical care. Dkt. 1-3; Dkt. 176, ¶ 8; Dkt. 177, ¶ 4; Dkt. 85-5; at 16:10-21. Plaintiffs and all class members, by definition, have been denied benefits (healthcare claims) pursuant to the Exclusions. Dkt. 143, at 2 (current class definition).

C.P. was denied pre-service authorization by BCBSIL for his chest surgery and Vantas implant as a result of BCBSIL's administration of the Exclusion. Dkt. 155, ¶ 4. As a result, Ms. Pritchard paid $12,122.50 out-of-pocket. *Id.* Emmett Jones was denied coverage for his gender-affirming surgery, which he had to pay out-of-pocket. Dkt. 177, ¶¶ 7-10. Lastly, S.L. was denied coverage for puberty-delaying medications as a result of BCBSIL's administration of the Exclusion. Dkt. 176, ¶¶ 9, 11.

### D. The Exclusions and BCBSIL's Denials of Coverage Discriminated Against Plaintiffs on the Basis of Sex.

The only remaining dispute in this case is whether BCBSIL's design and administration of the Exclusions discriminate against Plaintiffs and Class Members based on sex.

As articulated by the Ninth Circuit in *Pritchard*: Under *Skrmetti*, the Exclusions target coverage for medical conditions (*i.e.*, gender dysphoria) or procedures (*i.e.*, gender-affirming medical care) "in the medical context," *Skrmetti*, 605 U.S. at 512, and thus, even if such conditions are experienced or needed only by transgender people, they



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

do not automatically discriminate on the basis of sex. *See Pritchard*, 159 F.4th at 669-70. ***But that is not the end of the matter.***

As both *Skrmetti* and *Pritchard* held, discrimination based on a medical condition or procedure may be a proxy for sex discrimination if Plaintiffs can demonstrate that the Exclusions (and thus BCBSIL's administration thereof) were adopted as "mere pretexts designed to effect an invidious discrimination against transgender individuals." *Skrmetti*, 605 U.S. at 519; *see also Pritchard*, 159 F.4th 646, 671-72; *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013) (proxy discrimination occurs when a defendant "enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group"). That is the case here.

**1) Transgender status discrimination is sex discrimination.**

Discrimination based on transgender status remains discrimination based on sex. *Skrmetti* did not change this. Thus, if Plaintiffs can show that the Exclusions were adopted as a proxy or pretext for discrimination against transgender individuals, then the Exclusions unlawfully discriminate based on sex in violation of Section 1557 of the ACA.

As the Ninth Circuit confirmed: "Certainly, 'discrimination based on … transgender status necessarily entails discrimination based on sex.'" *Pritchard*, 159 F.4th at 669 (quoting *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 669 (2020)). "[I]t is



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

impossible to discriminate against a person for being … transgender without discriminating against that individual based on sex." *Bostock*, 590 U.S. at 660.

This remains the law after *Skrmetti*. 605 U.S. at 590 ("As *Bostock* explained in the context of Title VII's prohibition on employment discrimination, 'it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex.'"). The Supreme Court's recent decision in *W. Virginia v. B.P.J. by Jackson*, 146 S. Ct. 2356 (2026), which pertained to constitutional equal protection in "the distinctive sports context," *id.* at 2377, has not departed from this rule. There, the Court explained that "[s]ports are different from, say, a typical employment or educational opportunity where equal protection often may require that the government generally treat an individual ***without regard to the individual's sex***." *Id.* at 2376 (emphasis in original). Thus, while in *B.P.J.* the Supreme the Court stated that "Title VII and *Bostock* are not relevant in th[e] very different statutory and factual context" of sports presented in those cases, the Supreme Court did not walk away from its earlier holding *Bostock*. To the contrary, in his concurrence in *B.P.J.*, Justice Gorsuch, who authored *Bostock*, was careful to reiterate that *B.P.J.* did not depart from the Court's pronouncement in *Bostock* that "discriminating against a person for being … transgender necessarily entails discriminating against that person at least in part because of his biological sex." *B.P.J.*, 146 S. Ct. at 2383 (Gorsuch, J., concurring).

Nor does *B.P.J.* alter this Court's precedents that "[w]e construe Title IX's protections consistently with those of Title VII." *Snyder*, 28 F.4th at 114; *see also Roe v.*



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Critchfield*, 137 F.4th 912, 928 (9th Cir. 2025) (interpreting Title IX consistent with *Bostock*); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023) (same).

Thus, because "Circuit precedent establishes that discrimination on the basis of transgender status is a form of sex-based discrimination," *Roe*, 137 F.4th at 928, if "BCBSIL's exclusions are a pretext or proxy for invidious discrimination" based on transgender status, *Pritchard*, 159 F.4th at 672, then the Exclusions and BCBSIL's administration thereof violate Section 1557 of the ACA.

**2) BCBSIL's Exclusions Are Proxy or Pretext for Discrimination Against Transgender Persons.**

It is well-established that "[w]hat cannot be done directly cannot be done indirectly," *Cummings v. Missouri*, 71 U.S. 277, 325 (1867). And here, the record establishes that the Exclusions were adopted and implemented for the purpose of discriminating against transgender persons. They are therefore a proxy or mere pretexts for invidious discrimination against Plaintiffs and Class Members based on their transgender status and therefore sex.

Intentional discrimination, including proxy discrimination, may be adduced from the "totality of the relevant facts." *Washington v. Davis*, 426 U.S. 229, 242 (1976). Indeed, "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). As a result, courts and other authorities have delineated several factors or indicators to adduce whether a purported facially neutral policy was adopted



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

for a discriminatory purpose. *See, e.g.*, *Arlington Heights*, 429 U.S. 252. Among these factors are the impact of the challenged policy, including its foreseeability; its historical background; the sequence of events leading up to its adoption; any procedural or substantive departures; contemporary statements and actions of key stakeholders; and the availability of less discriminatory alternatives. *See Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015); *cf. Dino V. v. Collins*, EEOC Appeal No. 2023002331, 2025 WL 1565797, at *5 (Apr. 15, 2025) ("Indicators of pretext include, but are not limited to, discriminatory statements or past personal treatment attributable to those responsible for the personnel action that led to the filing of the complaint, comparative or statistical data revealing differences in treatment across various protected-group lines, unequal application of Agency policy, deviations from standard procedures without explanation or justification, or inadequately explained inconsistencies in the evidentiary record."). "These factors are non-exhaustive." *Pac. Shores Props.*, 730 F.3d at 1159.

BCBSIL adopted and implemented the Exclusions here: (a) without a known legitimate reason; (b) after BCBSIL determined for its own insured plans that the Exclusions were improper under Section 1557 and unsupported by medical evidence; (c) only after BCBSIL ensured that it would bear no financial or litigation risk associated with the Exclusions by insisting on the indemnification provisions; and (d) throughout the litigation, BCBSIL offered no justification for the Exclusions and no employer with a legitimate non-discriminatory reason for the Exclusions. This record establishes that the



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Exclusions were adopted and implemented for no other purpose than to discriminate against transgender persons.

Several factors wight in favor of this conclusion. ***First***, BCBSIL knew that Exclusions, as designed and implemented, would impact only transgender persons. Indeed, "[o]nly transgender people can suffer from gender dysphoria." *Pritchard*, 159 F.4th at 672; *see also Skrmetti*, 605 U.S. at 497. In that sense, "[t]he fit between transgender people and people suffering from gender dysphoria is strong." *Pritchard*, 159 F.4th at 672. When considering the fit, "the crucial question is whether the proxy's fit is sufficiently close to make a discriminatory inference plausible." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 959 (9th Cir. 2020) (citation modified). In other words, when an alleged proxy is so closely intertwined with the protected characteristic it can be readily understood to be "discriminatory in purpose and operation." *Davis v. Guam*, 932 F.3d 822, 838 (9th Cir. 2019) (citation modified); *see also E.S. by & through R.S. v. Regence BlueShield*, No. C17-1609-RAJ, 2024 WL 1173805, at *3 (W.D. Wash. Mar. 19, 2024) (holding that the predominate determination of proxy discrimination is if the healthcare denied "primarily affects" the disfavored group (quoting *Schmitt*, 965 F.3d at 959)). Such is the case here.

To be sure, pursuant to *Skrmetti* and *Pritchard*, a close fit between gender dysphoria and transgender people does not prove, by itself, discrimination. But the fit is a significant piece of evidence that, when coupled with other undisputed evidence, *see infra*, demonstrates that the Exclusions are pretext or proxy for discrimination.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

***Second***, as the Ninth Circuit observed, though "BCBSIL's policy admits that the treatments Plaintiffs seek can be medically necessary for treating [transgender persons] with gender dysphoria[,] … in many of the health plans at issue, BCBSIL categorically excludes those treatments." *Pritchard*, 159 F.4th at 672. BCBSIL repeatedly admits gender-affirming medical care can be medically necessary. Dkt. 84-4, at 7; Dkt. 97-10, at 40:12-41:20; Dkt. 84-1, at 60:19-62:3 ("Based on the records that I reviewed and the medical policy, yes, I believe it [C.P.'s chest surgery] would have been covered [because it is medically necessary]."). BCBSIL conceded C.P.'s gender-affirming medical care met the medical necessity criteria under their medical policy yet continued to deny coverage. Dkt. 84-1, at 52:19-53:9, 60:5-62:3. Consistent with its own medical necessity determination, BCBSIL removed its categorical exclusion of coverage for gender-affirming healthcare from its insured plans and has covered medically necessary gender-affirming care in its insured plans and self-funded plans without an express exclusion. Dkt. 85, at 11:7-18, 13:15-14:8, 20:3-21; Dkt. 85-3; Dkt. 85-5, at 3:4-15; Dkt. 85-5, at 24:15-25:11. BCBSIL cannot dispute that gender-affirming treatment can be medically necessary.

***Third***, the Exclusions are not justified by cost considerations. The record establishes that the "the cost of providing gender-affirming care is generally very low, particularly in the context coverage through group health plans." Dkt. 134-1, at 16-17; *see also Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *8 (W.D. Wash Dec. 11,



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

2017) (noting "these costs are exceedingly minimal"). BCBSIL never offered any evidence that cost was a justification.

***Fourth***, the history of and process leading up to the adoption of the Exclusions reveals that they were adopted for a discriminatory purpose.

For one, BCBSIL designed, implemented, and enforced the Exclusions notwithstanding its determination that doing so as part of its insured plans would have constituted unlawful discrimination under Section 1557. Dkt. 189-7, at 2. By doing so, BCBSIL designed, implemented, and enforced the Exclusions even though it understood that they were discriminatory. *Id.* And BCBSIL, when acting as a TPA, has continued to agree to administer the Exclusions of gender-affirming medical care when requested by its employer-customers. Dkt. 85-1, at 16:19-17:17; Dkt. 85-5, at 26:13-18; Dkt. 85-11, at 5-6. In fact, it has consistently administered the Exclusions for nearly 400 other employers, denying hundreds of claims for medically necessary gender-affirming care solely because the care was sought for gender dysphoria, a condition with which only transgender people are diagnosed. Dkt. 85-11, at 7-8. When an employer asks to include an Exclusion in its plan, the overwhelming majority of the employers use the version of Exclusion drafted and proffered by BCBSIL. Dkt. 85-5, at 6:16-22, 8:12-24; Dkt. 85-8, at 6:4-8:15; Dkt. 85-11, at 14-23.

For another, BCBSIL never asks employers for a justification or reason when agreeing to administer an Exclusion. Dkt. 85-5, at 14:21-15:7; Dkt. 85-8, at 9:10-23. And the record makes clear that BCBSIL would administer the Exclusions even if the



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

employer expressed overtly discriminatory reasons for it. Dkt. 85-8, at 10:11-16. Indeed, BCBSIL does not require employers to have a genuine medical, scientific, or even a religious basis before it will administer the Exclusions. Dkt. 85-8, at 9:3-10:25. Even then, BCBSIL will only administer the Exclusions once it has a special indemnification in place to protect itself from the legal and financial consequences of discrimination. Dkt. 160-3, at 8:22-12:3.

When administering the Exclusions, BCBSIL's actions are the same: It reviews claims to determine if the service is related to "gender dysphoria," based on the diagnostic and procedural codes used. Dkt. 85-5, at 11:8-13:4; Dkt. 85-8, at 14:17-22; *see also* Dkt. 85-8, at 4:9-5:6. If so, BCBSIL denies the service under the Exclusions. *Ibid.* And, BCBSIL denies the service based solely on the presence of a gender dysphoria diagnosis even when there is another diagnosis present that would ordinarily require coverage. Dkt. 176, ¶13.

***Fifth***, Plaintiffs' experiences illustrate that the Exclusions are pretext or proxy for discrimination based on transgender status. Take Plaintiff S.L., for example. Her healthcare provider obtained pre-approval from BCBSIL for her treatment with puberty-delaying medications, which are medically necessary to treat *both* her diagnosed gender dysphoria and her diagnosed precocious puberty. Dkt. 176, ¶8, 6-7. Despite the pre-authorization, BCBSIL denied coverage for the puberty-delaying medication pursuant to an Exclusion. Dkt. 176, ¶9, 10, 16. It did so because her "transsexual surgery and related psychiatric care are not covered." Dkt. 176, ¶11. And BCBSIL told S.L.'s mother



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

that that, had S.L. been diagnosed *only* with early-onset puberty (i.e., not gender dysphoria AND early-onset puberty), BCBSIL would have likely covered the puberty blocker. *Id.*, at ¶13. The decision to deny coverage thus turned not whether it was medically indicated to treat medical condition, gender dysphoria or another condition, but rather on the fact that it would have provided care to transgender person that would have had the *incidental* effect of facilitating their gender transition. In other words, BCBSIL applied the Exclusion to S.L. because of her transgender status, which did "alter the application of" the Exclusion, and illustrated that "sex is a but-for cause of the exclusion's operation." *Pritchard*, 159 F.4th at 671.

Similarly, C.P.'s case likewise illustrates that the Exclusion operates to effectuate discrimination against transgender people. Though the Exclusion in C.P.'s case pertained to surgery, BCBSIL has enforced the Exclusion as it pertains to puberty-delaying medication even after initially approving coverage for the same medications as medically necessary. Dkt. 98, at 6:18-8:22; Dkt. 97-16, at 5:11-21, 8:12-17; Dkt. 84-10; Dkt. 97-20.

***Sixth, and finally***, throughout the history of this case BCBSIL has not offered a single non-discriminatory reason for the Exclusions, and it is too late for BCBSIL to attempt to add one into the record now.[1] The only justifications that BCBSIL has offered are its attempts to walk away from its own policy that gender-affirming medical care can

[1] BCBSIL cannot now introduce new *post-hoc* justifications that it has not previously presented to this court, such as its desire to maintain a competitive advantage.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

be medically necessary for the treatment of gender dysphoria or that its employer-customers have prefer it. Neither justification holds water.

For one, BCBSIL cannot argue that the Exclusions can be justified based on lack of medical necessity because, through Dr. Reed, ***its Rule 30(b)(6) witness***, BCBSIL agreed that gender-affirming medical care can be medically necessary. *See*, *e.g.*, Dkt. 85, at 37:24-39:8, 39:15-19 ("the clinical evidence is what it is"). And BCBSIL conceded that C.P.'s Vantas implants and chest surgery met the medical necessity criteria under the BCBSIL medical policy. Dkt. 84-1, at 52:19-53:9, 60:5-62:3. BCBSIL cannot recant this position by hiring an outside medical "expert" to disagree with its own medical policy, medical directors, and Rule 30(b)(6) testimony. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) ("[A] party cannot create an issue of fact by an affidavit contradicting [its] prior deposition testimony"); *Muñoz v. Giumarra Vineyards Corp.*, No. 1:09–CV–0703 AWI JLT, 2015 WL 5350563, at *4 (E.D. Cal. Sep. 11, 2015) ("Rule 30(b)(6) testimony can only be rebutted when there is an explanation for why the earlier testimony is mistaken."). And again, as the Ninth Circuit has already noted, "[b]ecause BCBSIL admits [gender-affirming medical] treatments are sometimes necessary, it cannot justify its categorical exclusion by citing medical necessity." *Pritchard*, 159 F.4th at 672.

For another, that BCBSIL's employer-customers asked it to administer Exclusions (which BCBSIL designed) is no legitimate justification for the Exclusions. BCBSIL never asks employers for a legitimate reason why they should administer the Exclusion when agreeing to do so. Dkt. 85-5, at 14:21-15:7; Dkt. 85-8 at 9:3-10:25. BCBSIL cannot be



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

willfully blind to its employers' desire to discriminate and use that claimed ignorance to avoid liability when following such directives. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-68 (2011). Ultimately, Plaintiffs seek to hold BCBSIL accountable for its "own undisputed conduct— agreeing to apply the exclusions at issue and applying them to deny coverage to Plaintiffs," which, as the Ninth Circuit already held, "is the kind of conduct that could violate Section 1557." *Pritchard*, 159 F.4th at 664. After all, "BCBSIL could have refused to administer plans for employers requesting potentially illegal plan exclusions, or it could have paid for the excluded care out of its own pocket, which would satisfy its potential duty to the participant without risking an ERISA violation by using the plan's money." *Id.* at 663. And BCBSIL has offered no justification for its decision to ***administer and enforce*** the Exclusions, which is "no mechanical task," as "BCBSIL had to review the claims, including the diagnosis and procedure codes, and assess whether the claim fell within the exclusion." *Id.* at 664. In the absence of any reasonable justification, all that remains is the inevitable conclusion that the Exclusions that BCBSIL designed, implemented, and administered were indeed designed, implemented, and administered to effectuate invidious discrimination based on transgender status. As the Supreme Court has explained, the absence of a legitimate justification for a policy can lead to "the inevitable inference that the disadvantage imposed is born of animosity toward the class of persons affected." *Romer v. Evans*, 517 U.S. 620, 634 (1996).

*          *          *          *          *



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Viewing the "totality of the relevant facts," *Davis*, 426 U.S. at 242, the Exclusions were designed, implemented, and administered as proxy discrimination targeting transgender enrollees. *Skrmetti*, 605 U.S. at 519.[2]

**E. BCBSIL's ERISA, RFRA, and Spending-Clause Defenses Remain Foreclosed as Law of the Case.**

As noted above, the Ninth Circuit rejected multiple of BCBSIL's defenses. These arguments are now foreclosed:

***First***, the Ninth Circuit rejected BCBSIL's claim that it was not liable under Section 1557 as a TPA. "BCBSIL can be liable for violating Section 1557 even when implementing plan terms drafted by a plan sponsor." *Pritchard*, 159 F.4th at 656. Nor does ERISA shield BCBSIL from liability as a TPA: BCBSIL "could have refused to administer plans for employers requesting potentially illegal plan exclusions, or ... could have paid for the excluded care out of its own pocket," satisfying any duty to participants "without risking an ERISA violation." *Id.* at 662-63.

---

[2] Plaintiffs need only demonstrate that a discriminatory purpose was a motivating factor in the adoption of the Exclusions. "[W]hen a discriminatory purpose has been a motivating factor in a[n] … actor's decision to enact a facially neutral policy that produces a discriminatory impact," such policy cannot be justified. *Sargent v. Sch. Dist. of Philadelphia*, 165 F.4th 727, 741 (3d Cir. 2026). This applies in the statutory context, just as much as it does in the equal protection context. As Justice Gorsuch explained recently, "[t]he statutory phrase 'because of' does not require biological sex to be the only cause animating discrimination. Instead, that phrase merely requires biological sex to be one such cause." *B.P.J.*, 146 S. Ct. at 2383 (Gorsuch, J., concurring).



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

***Second,*** BCBSIL is not protected by RFRA. "[O]nly people whose religious exercise has been burdened can raise a defense under RFRA," and BCBSIL, a secular TPA, does not meet that threshold — nor does RFRA provide a defense against claims brought by a private party in the first place. *Pritchard*, 159 F.4th at 665-66 (citing *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 707, 719 (2014)).

***Third,*** BCBSIL's belated Spending-Clause notice argument was both waived, by failing to raise it in its opening brief, and forfeited, by failing to raise it below. *Id.* at 660-61.

### F. At Minimum, BCBSIL Is Liable for Sex Discrimination as to S.L.

BCBSIL discriminated against S.L. based on sex when it denied coverage for her puberty-delaying medication meant to treat S.L.'s gender dysphoria *and* early-onset puberty, and which BCBSIL previously pre-authorized. Dkt. 176, ¶¶2, 8-9. BCBSIL has indicated that if S.L. had been diagnosed *only* with early-onset puberty, BCBSIL would have covered the medication. *Id.*, at ¶13. As such, "sex is a but-for cause of the exclusion's operation" as to S.L. *Pritchard*, 159 F.4th at 671.

## V. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Summary Judgment.

### Local Civil Rule 7(e)(6) Certification

The undersigned counsel that this memorandum contains 8,395 words, in compliance with the Local Civil Rules.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

DATED: August 14 , 2026.

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan, *Pro Hac Vice*
Charlie Ferguson*
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585
ogonzalez-pagan@lambdalegal.org
cferguson@lambdalegal.org

Jennifer C. Pizer, *Pro Hac Vice*
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Tel. (213) 382-7600
jpizer@lambdalegal.org

* Application for admission *pro hac vice* forthcoming.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

*/s/ Eleanor Hamburger*
Eleanor Hamburger, WSBA #26478
Jeremiah Miller, WSBA #40949
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com
jeremiah@sylaw.com

**Attorneys for Plaintiffs and the Class**