THE HONORABLE DAVID G. ESTUDILLO

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; S.L. by and through her parents, S.R. and R.L.; EMMETT JONES; and PATRICIA PRITCHARD,<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | Case No. 3:20-cv-06145-DGE<br><br>**DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**NOTE ON MOTION CALENDAR: NOVEMBER 20, 2026** |



**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

## INTRODUCTION

Plaintiffs' summary judgment motion represents a remarkable—and impermissible—effort to change the theory on which they defined the certified class, litigated the case to judgment, and continued litigating on appeal.

In their original Ninth Circuit brief, Plaintiffs admitted that BCBSIL's decision to administer the challenged coverage exclusions reflected BCBSIL's ordinary "commercial interests" and "a general business interest in pleasing" the employers who hire BCBSIL as a third-party administrator ("TPA") of employer-sponsored health plans. Plaintiffs-Appellees' Answering Br. at 1, 57, *Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Ill.*, No. 23-4331 (9th Cir. June 12, 2024) ("Pls.' CA9 Br."); Dkt. 96 at 5. That theory squared both with business reality and with the discovery record, which shows that administering health plans in accordance with the terms selected by the plan sponsor—including any coverage exclusions—is precisely what TPAs are hired to do and what BCBSIL did. Acknowledging that record-grounded reality was consistent with Plaintiffs' original theory that administering exclusions of gender-affirming care was *per se* sex discrimination—a theory that would have allowed them to recover *regardless* of BCBSIL's motivations.

But later, *United States v. Skrmetti*, 605 U.S. 495 (2025), and then the Ninth Circuit, foreclosed Plaintiffs' original theory by holding that administering such exclusions, "[w]ithout more," is "*not* discrimination based on transgender status or discrimination based on sex" in violation of Section 1557. *Pritchard ex rel. C.P. v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646, 669–70 (9th Cir. 2025). Seeing the writing on the wall, Plaintiffs filed a supplemental brief that, in its concluding paragraph, asserted—for the first time—that BCBSIL's commercial explanations "are a pretext for invidious discrimination." Plaintiffs-Appellees' Suppl. Br. at 5, *Pritchard*, No. 23-4331 (9th Cir. July 9, 2025) (quotation marks omitted). Acknowledging that this Court's judgment did not rest on this theory of "invidious discriminatory intent," the Ninth Circuit remanded, but made clear that, in this Court, "[i]t may be necessary to decide whether Plaintiffs … forfeited any of their arguments[.]" 159 F.4th at 671–72.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Plaintiffs now seek summary judgment on their new theory that a "discriminatory purpose" supposedly motivated BCBSIL to implement the exclusions and deny coverage for gender-affirming care when (and only to the extent) directed by the terms of relevant employer-sponsored plans. Dkt. 239 ("Mot.") at 2.

That motion should be denied for at least four reasons.

*First*, Plaintiffs forfeited this theory through five years of litigation conduct and are independently estopped from bringing it. They did not plead it, take discovery on it, or seek summary judgment on it, and class certification was premised on an opposite theory. Even on appeal, they argued that BCBSIL was motivated by business objectives, not anti-transgender animus. It is far too late for Plaintiffs to change theories now.

*Second*, Plaintiffs have no evidence to support their brand-new animus theory. Their motion identifies no witness statement or document that directly suggests animus, so Plaintiffs try to cobble together a circumstantial case. But under *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), the discrimination standard Plaintiffs invoke, a circumstantial case survives summary judgment only if the evidence could convince a jury that "a discriminatory reason more likely than not motivated" the defendant. *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 972 (9th Cir. 2021) (quoting *Ave. 6E Invs., LLC v. City of Yuma*, 818 F.3d 493, 504 (9th Cir. 2016)). So, to avoid summary judgment *for BCBSIL*, Plaintiffs would have to show that BCBSIL's conduct was not explained by the factor they themselves identified as central—BCBSIL's business imperatives. Instead, their circumstantial evidence shows, simply, that BCBSIL administered the exclusions like any other plan term—which the Ninth Circuit has already held is not a basis for liability under Section 1557.

*Third*, Plaintiffs' motion must be denied because the record contains significant evidence—ignored by Plaintiffs' motion—that nondiscriminatory business considerations, not animus,



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

motivated BCBSIL's decision to administer the challenged exclusions.[1] That is the same evidence that led Plaintiffs themselves to argue to the Ninth Circuit that "corporate, financial interests" explain why "BCBSIL chose to administer the discriminatory Exclusions for nearly 400 employers." Pls.' CA9 Br. 48. Given that concession, there is no way for Plaintiffs to meet their summary judgment burden. They would have to show that their circumstantial-evidence case is so one-sided that no reasonable factfinder could reach any conclusion other than that animus motivated BCBSIL. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). And yet *Plaintiffs themselves* advocated a different conclusion on the same record now before the Court. That proves a reasonable jury could too.

*Fourth*, BCBSIL's Spending Clause defense precludes summary judgment for Plaintiffs.

For these reasons, and as set out more fully below and in BCBSIL's submissions at Dkt. 235 and Dkt. 236, the Court should grant summary judgment to BCBSIL, deny summary judgment to Plaintiffs, and modify the class definition in the manner proposed by BCBSIL.

## LEGAL STANDARD

Because Plaintiffs bear the burden of persuasion at trial, they may obtain summary judgment only by establishing each element of their claim "beyond controversy," *S. Cal. Gas Co.*, 336 F.3d at 888—that is, by coming "forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).

The converse is equally settled. "If the plaintiff is unable to sufficiently adduce evidence that could lead a reasonable jury to conclude that the plaintiff has satisfied his burden of proof, his claim is subject to an unfavorable summary disposition." *Sw. Fair Hous. Council*, 17 F.4th at 959 (quoting *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir. 1987)). BCBSIL, which does not bear the burden of persuasion, is entitled to summary judgment if it "either produce[s] evidence negating an essential element of the [Plaintiffs'] claim … or show[s] that the

[1] BCBSIL incorporates by reference its statement of material facts in its summary judgment motion and renewed summary judgment motion. Dkt. 87 at 2–4; Dkt. 235 at 2–4.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

[Plaintiffs] do[] not have enough evidence of an essential element to carry [their] ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

## ARGUMENT

Plaintiffs acknowledge that the remand concerns a single element of their Section 1557 claim: whether the coverage denials discriminated "on the basis of sex." Mot. 21. The Ninth Circuit answered the question Plaintiffs litigated for five years: because the exclusions turn on diagnosis, "sex is not a but-for cause of the exclusions' operation." *Pritchard*, 159 F.4th at 670.

Plaintiffs' motion therefore switches to a theory of "discriminatory purpose," under which the diagnosis-based exclusions were a "proxy or pretext" for animus against transgender people. Mot. 24.[2] That theory is forfeited, and Plaintiffs are estopped from pursuing it, *infra* Part I. It also fails on the merits because the record contains no evidence that BCBSIL acted for a discriminatory reason, and considerable evidence that it did not, *infra* Part II. The Spending Clause independently bars liability, *infra* Part III. And S.L.'s individual claim fails for the same reason as the class claim, *infra* Part IV.

### I. Plaintiffs forfeited the discriminatory-motivation theory presented in their Motion and are estopped from pursuing it now.

The theory on which Plaintiffs' motion rests was never pleaded, never pursued in discovery, and never presented until Plaintiffs' post-*Skrmetti* supplemental brief on appeal.

Across two amended complaints, Plaintiffs alleged that the exclusions discriminate on the basis of sex because BCBSIL applies them by diagnosis code. Dkt. 189 ¶¶130, 132–33. They did not allege that BCBSIL harbored a discriminatory motive; took no discovery on that question; sought class certification on a theory that made sponsors' and BCBSIL's motives irrelevant, Dkt.

[2] Plaintiffs occasionally call the diagnosis-based exclusions a "proxy for sex discrimination," Mot. 22, but they do not advance a facial proxy theory—a form of facial discrimination that would let them "bypass" the intent inquiry. Dkt. 235 at 9 (citations omitted). They instead accept the burden to prove "intentional discrimination, including proxy discrimination," from "the totality of the relevant facts." Mot. 24 (cleaned up). *Skrmetti* forecloses a facial proxy theory in any event. *See* Dkt. 235 at 14–16.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

99 at 2, 5; and won summary judgment on a facial theory under which "no greater proof of mental state [is] necessary." *Pritchard*, 159 F.4th at 664 (quoting *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002)); *see* Dkt. 235 at 10–11. Plaintiffs' motion now turns 180 degrees and asks the Court to apply *Arlington Heights* and find that "the Exclusions were adopted and implemented for no other purpose than to discriminate against transgender persons." Mot. 24–26.

A theory that first appears in a summary judgment motion is "not properly before the … court." *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1073 (9th Cir. 2023); *see Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings."). The rule has special force in discrimination cases, where "[a] complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce," and where different theories carry "different burdens and defenses." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). Thus, in *Coleman*, the Ninth Circuit held that plaintiffs who pleaded only a disparate-treatment theory and never disclosed another during discovery could not raise a disparate-impact theory at summary judgment. *Id.* at 1292–94; *see also id.* at 1292 ("[A]dding a new theory of liability at the summary judgment stage would prejudice the defendant who faces different burdens and defenses under this second theory of liability."). And in *Lavelle-Hayden v. Legacy Health*, 744 F.Supp.3d 1135 (D. Or. 2024)—just like this case—plaintiffs pleaded and took discovery on a theory under which the defendant's motive was not relevant. *Id.* at 1149–50. When, at summary judgment, plaintiffs tried "to bring into play Defendant's alleged discriminatory motive and thus maintain a new theory of liability," the court held that claim had been forfeited. *Id.* (cleaned up). This Court should hold the same here.

The remand does not excuse Plaintiffs' forfeiture. The panel merely identified pretext/proxy as a question *Skrmetti* "potentially left open," observed that the parties had not fully briefed it, and "express[ed] no view about the appropriate outcome." *Pritchard*, 159 F.4th at 671–72. In particular, the panel made clear that it was *not* addressing whether that pretext/proxy



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

argument had been preserved, flagging that, on remand, "[i]t may be necessary to decide whether Plaintiffs or BCBSIL forfeited any of their arguments[.]" *Id.* at 672.

Plaintiffs' forfeiture is especially clear because they affirmatively told this Court and the Ninth Circuit that BCBSIL's motives were commercial. BCBSIL administered the exclusions, they said, because it considered "the interests of [the plan sponsor] and its own financial interests" paramount, Dkt. 20 at 24; because it placed "its corporate, financial interests" above what Plaintiffs then claimed were its legal obligations, Pls.' CA9 Br. 48; and out of "commercial interests" and "a general business interest in pleasing others," *id.* at 1, 57; Dkt. 96 at 5. The exclusions themselves, Plaintiffs said, reflected sponsors' "personal preference[s]," Dkt. 78 at 9, and sponsors' motivations were a "red herring," Dkt. 99 at 5. Only when *Skrmetti* and *Pritchard* defeated the theory those positions served did Plaintiffs swap theories.

The Ninth Circuit also indicated that this Court could consider "whether any forfeiture should be excused by *Skrmetti*." *Pritchard*, 159 F.4th at 672. It should not be. From the outset, Plaintiffs knew that a pretext- and motive-based theory of discrimination is distinct from their facial, but-for theory. *See Bostock v. Clayton County*, 590 U.S. 644, 657 (2020) (contrasting the two). *Skrmetti* did not change the law on pretext or even address pretext substantively. The Supreme Court simply declined to reach any pretext issue because the challengers did not raise it. The same is true here. Plaintiffs made a strategic choice to advance a facial theory because it relieved them of proving intent, and they used that theory as the predicate for class certification. *See* Dkt. 236 at 9–10. It would be severely prejudicial to BCBSIL—which has spent five years and considerable resources defending against the theory Plaintiffs chose—to allow a different theory now. Summary judgment for BCBSIL may be entered on the basis of forfeiture alone.

Alternatively, Plaintiffs' affirmative representations that BCBSIL was motivated by business considerations estop them from advancing their new animus-based theory. Judicial estoppel prohibits "parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001). All three of the judicial-estoppel factors are met. First, Plaintiffs' new position—that BCBSIL acted "for no other purpose



**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

than to discriminate," Mot. 25–26—is "clearly inconsistent" with the commercial-motivations account they gave for five years, *New Hampshire*, 532 U.S. at 750. Second, Plaintiffs obtained a significant litigation advantage based on their prior position: this Court certified the class after Plaintiffs assured it that the case would rise or fall based on "BCBSIL's standard conduct," rather than anyone's motivations, and entered judgment on a theory that required no proof of intent. Dkt. 99 at 2. Finally, the switch would hand Plaintiffs an unfair advantage: their earlier position made motive discovery immaterial, and they now claim (inaccurately) that BCBSIL has "offered no justification." Mot. 32; *see Perez v. Discover Bank*, 74 F.4th 1003, 1009 (9th Cir. 2023).

Whether addressed as forfeiture or estoppel, Plaintiffs' new theory is barred. The Court should deny their motion and enter judgment for BCBSIL.

## II. Plaintiffs have no evidence that BCBSIL administered the exclusions because of a discriminatory motive, and the record shows it did not.

Even if Plaintiffs' new theory were properly before the Court, the record defeats it in two independent ways. First, Plaintiffs have no evidence that a discriminatory purpose motivated BCBSIL, so BCBSIL is entitled to judgment. Second, the record contains substantial evidence that BCBSIL's motives were commercial, so at a minimum Plaintiffs cannot make the one-sided showing their own motion requires.

Start with what Plaintiffs have. Their motion devotes five pages to six points: the "fit" between gender dysphoria and transgender status; BCBSIL's medical policy; the asserted absence of a cost justification; the "history and process" by which the exclusions were adopted; the named Plaintiffs' claim histories; and BCBSIL's supposed failure to offer any nondiscriminatory reason. Mot. 26–30. None supplies the "more" the panel required, and several point the other way. Where a plaintiff has not "produce[d] evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was [unlawfully] motivated," summary judgment must be entered for the defendant. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 754 (9th Cir. 2001) (alterations omitted) (quoting *FDIC v. Henderson*, 940 F.2d 465, 473 (9th Cir. 1991)).



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Faced with this record, Plaintiffs try to infer discriminatory purpose from BCBSIL's very willingness to administer the exclusions. They contend that discriminatory purpose may be inferred because BCBSIL "implemented the Exclusions" and "offered no justification for the Exclusions." Mot. 25. They likewise assert "discriminatory purpose" could be determined because BCBSIL "enforced the Exclusions even though it understood that they were discriminatory," "has continued to agree to administer the Exclusions," and "has consistently administered the Exclusions." *Id.* at 28. That fights the holdings in *Skrmetti* and the panel opinion. The panel held that the exclusions are not inherently discriminatory, so BCBSIL's willingness to administer them proves nothing. Concluding that the exclusions were diagnosis-based, the Ninth Circuit remarked that "[w]ithout more, sex is not a but-for cause of the exclusions' operation." *Pritchard*, 159 F.4th at 670. To show sex discrimination, Plaintiffs need to add "more": they need to "prove an invidious discriminatory intent." *Id.* at 671 (cleaned up).

Second, and at a minimum, Plaintiffs cannot win summary judgment on this record. They would have to show circumstantial evidence so one-sided that no reasonable factfinder could conclude anything but animus, *see S. Cal. Gas Co.*, 336 F.3d at 888, and their motion simply ignores the substantial evidence pointing the other way.

Among other things, the record shows that BCBSIL's default, off-the-shelf plan covers gender-affirming care and that an exclusion appears only when an employer asks for one—hardly the design of a TPA harboring discriminatory animus. *Infra* Part II.E.1. The record likewise provides undisputed evidence that BCBSIL covers the excluded care when it is the insurer. *Infra* Part II.C. BCBSIL administers the gender-dysphoria exclusion as it administers every other term its customers select. *Infra* Part II.E.2. And throughout this case, BCBSIL has stated that commercial reasons explain its willingness to administer plans containing exclusions or expenditure caps for gender-affirming care. That record illustrates why Plaintiffs themselves attributed BCBSIL's conduct to its "corporate, financial interests." Pls.' CA9 Br. 48. A record on which the movant has itself argued the opposing inference is not one on which that inference is "beyond controversy." That alone defeats Plaintiffs' motion.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

### A. Under any framework, Plaintiffs must prove that BCBSIL itself acted "because of" transgender status—and they concede they have no direct evidence.

Plaintiffs proceed under *Arlington Heights*, which asks whether "invidious discriminatory purpose was a motivating factor" in the challenged decision. Mot. 24–25 (quoting 429 U.S. at 266). To prevail, they must "produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1158 (9th Cir. 2013) (quotation marks omitted). Discriminatory purpose means that the decisionmaker acted "at least in part 'because of,' not merely 'in spite of,'" the action's adverse effects on the protected group. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979); *Darensburg v. Metro. Transp. Comm'n*, 636 F.3d 511, 523 (9th Cir. 2011). And the purpose must be the defendant's own. Section 1557 borrows Title IX's enforcement scheme, under which a funding recipient answers for "its own official decision[s]" and its own intent, and for no one else's. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998); *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999); *see infra* Part II.E.2.

The question on remand is whether Plaintiffs can carry their burden of proving their new theory that BCBSIL "adopted and implemented [the exclusions] for the *purpose* of discriminating against transgender persons." Mot. 24 (emphasis added). On that issue, Plaintiffs use a lot of rhetoric but identify no evidence. Plaintiffs do not attempt to present *direct* evidence of discriminatory motive. They point to no statement by any BCBSIL decisionmaker and no internal document that displays any anti-transgender sentiment or purpose.

Plaintiffs instead rest on circumstantial inference from the *Arlington Heights* factors: the "historical background of the decision," the "specific sequence of events" leading to it, "[d]epartures from the normal procedural sequence," substantive departures, and contemporaneous statements. 429 U.S. at 266–68.[3] For a plaintiff to win summary judgment on

[3] Although this framework "was developed to detect discriminatory animus in the context of a Fourteenth Amendment equal protection claim," it may also be used to prove "statutory discrimination." *Pac. Shores Props.*, 730 F.3d at 1158 n.21.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

motive, the circumstantial evidence must be so one-sided that no reasonable factfinder could read it any other way. *S. Cal. Gas Co.*, 336 F.3d at 888. The opposite is true here. The circumstantial evidence does not support Plaintiffs' animus argument, much less rule out the explanation Plaintiffs themselves once advanced: that BCBSIL was motivated by commercial objectives.

Plaintiffs' scattered references to "pretext" do not lighten that burden—indeed, it is not clear what role "pretext" has in Plaintiffs' argument. "Pretext" is the middle step of the *McDonnell Douglas* framework, which Plaintiffs do not invoke and whose burden-shifting structure their arguments do not follow.[4] *See Costa v. Desert Palace, Inc.*, 299 F.3d 838, 855 (9th Cir. 2002) (en banc), *aff'd*, 539 U.S. 90 (2003). Even under that framework, a defendant's burden to articulate a nondiscriminatory reason is one of production only, and it arises only after the plaintiff establishes a prima facie case. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). And "it is not enough … to disbelieve the defendant; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) (cleaned up).

### B. *Skrmetti* and the Ninth Circuit already accounted for the overlap between gender dysphoria and transgender status.

Plaintiffs begin with the "fit" between gender dysphoria and transgender status, while acknowledging that "a close fit … does not prove" discriminatory motive. Mot. 26. Nor does it suggest one here. *Skrmetti* and the panel both recognized that "only transgender individuals seek treatment for gender dysphoria," and both held that the overlap does not make a diagnosis-based exclusion sex-based, because there is a "lack of identity" between transgender status and the excluded diagnosis. 605 U.S. at 519; *Pritchard*, 159 F.4th at 669–70.[5] Both courts required something "more" precisely because the overlap cannot supply it.

---

[4] BCBSIL's Renewed Motion for Summary Judgment focused on Plaintiffs' inability to satisfy *McDonnell Douglas* and not the *Arlington Heights* framework only because Plaintiffs' complaint and discovery failed to put BCBSIL on notice of any motive-based theory, let alone a specific one. Dkt. 235 at 8–9, 12–14. The result is the same under either framework.

[5] Plaintiffs cite *Davis v. Guam*, 932 F.3d 822 (9th Cir. 2019), for the proposition that a proxy "so closely intertwined with the protected characteristic" can be "readily understood" as



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

The panel's observation that the fit is "strong" does not change that. 159 F.4th at 672. The panel asked only whether the fit was close enough "to make a discriminatory inference plausible" and remand not obviously "futile." *Id.* (quoting *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 959 (9th Cir. 2020)). On their own motion, Plaintiffs must prove the inference "beyond controversy," *S. Cal. Gas Co.*, 336 F.3d at 888, and the panel was explicit that it was "not holding that *Skrmetti* favors Plaintiffs." 159 F.4th at 672.

Nor does the record show anything but diagnosis-based administration. BCBSIL covers the very same services—hormone therapy, chest surgery, puberty-delaying medication—when they are prescribed for any other diagnosis. Dkt. 85-6 at 124:10–125:14, 127:5–22; Mot. 7. That practice is the diagnosis-based line-drawing *Skrmetti* described as permissible in "the medical context." 605 U.S. at 512.

### C. BCBSIL's acknowledgment that certain excluded treatments may be "medically necessary" is evidence of a *nondiscriminatory* motive, not a discriminatory one.

The Ninth Circuit noted that BCBSIL, in its capacity as an insurer, has a medical policy that treats gender-affirming treatments as "medically necessary." *Pritchard*, 159 F.4th at 672. The Ninth Circuit said the gap between this policy and the exclusions might be suggestive of pretext because the policy is inconsistent with an attempt by BCBSIL to "justify its categorical exclusion by citing medical necessity," and so remanded for that fact-intensive inquiry. *Id.* But to clarify, BCBSIL does not identify "medical necessity" as the basis for its administration of the exclusions. It never has. Rather, BCBSIL has consistently explained that it administered the exclusions because that fits with its business model as a TPA—TPAs administer health plans consistent with the design selected by the plan sponsor, including any coverage exclusions the sponsor selects. And, consistent with its medical-necessity determination, BCBSIL covers gender-affirming

---

discriminatory. Mot. 26. *Davis* concerns facial proxy discrimination, not the "fact-intensive inquiry" needed to prove motive. *Anderson v. Crouch*, 169 F.4th 474, 484 (4th Cir. 2026). Even in facial proxy cases, overlap is only a threshold consideration; stating a claim requires additional facts that "speak to intent." *E.S. ex rel. R.S. v. Regence BlueShield*, No. C17-1609-RAJ, 2024 WL 1173805, at *3–4 (W.D. Wash. Mar. 19, 2024).



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

treatments in its own insured plans and in self-funded plans whose sponsors do not elect to exclude or limit coverage.

Plaintiffs' "medical necessity" argument misses the mark in any event. Plaintiffs present an insurer's or TPA's "medical necessity" finding as if it were a determination that all other approaches lack "medical justification." Mot. 2; *see also id.* at 31. It is not. As the record spells out, a healthcare service is considered "medically necessary"—and therefore covered, absent an exclusion—when the service is an "exercis[e] [of] prudent clinical judgment," "[p]rovided in accordance with generally accepted standards of medical practice," "[c]linically appropriate," and "considered effective for the patient's Illness." Dkt. 88-1 at 125 ("General Conditions of Coverage"). A judgment that a treatment is "medically necessary" means that it is a reasonable-enough course of action to be covered.

Consequently, an employer-sponsored plan need not cover every service that is "medically necessary" under the circumstances. ERISA does not "require coverage for all care consistent with GASC [*i.e.*, generally accepted standards of care]." *Wit v. United Behav. Health*, 79 F.4th 1068, 1088 (9th Cir. 2023). Plan sponsors routinely exclude or cap coverage for treatments—bariatric surgery, say, or routine vision care, Dkt. 88-1 at 98–99, 122—that a prudent provider might find reasonable in many circumstances. The whole point of an employer-imposed exclusion is to supersede any case-specific determination of medical necessity; that BCBSIL would administer a plan differently absent the exclusion says nothing about BCBSIL's motives.

Ultimately, the distinction Plaintiffs press—that BCBSIL covers gender-affirming care when it is the insurer but administers exclusions when an employer-customer is the payor, Mot. 27, 31—*helps* BCBSIL. A company hostile to transgender beneficiaries would not cover their care wherever it controls the coverage decision and exclude it only where a customer controls the coverage decision. The commercial and legal role of a TPA explains that pattern. *Infra* Part II.G; *see also* Dkt. 235 at 13–14. Far from ruling out a nondiscriminatory explanation—as is Plaintiffs' summary judgment burden, *see S. Cal. Gas Co.*, 336 F.3d at 888—the record confirms that BCBSIL had a legitimate, nondiscriminatory motive for administering the challenged exclusions.



**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Plaintiffs nonetheless emphasize the contrast between BCBSIL's decision to cover gender-affirming care as "medically necessary" in its own plans and certain plan sponsors' decisions to exclude, or limit, that coverage in *their* plans. For several reasons, that compare-and-contrast argument fails. First, Plaintiffs did not sue the plan sponsors and sought no discovery from them, and so cannot litigate here the medical rationales (if any) behind any sponsor's decisions. Second, even if the Court were to assume that sponsors had medical rationales that were unfounded, that would not be a basis to foist liability onto BCBSIL, which may not be held liable under Section 1557 for the plan sponsors' motives. *Infra* Part II.E.2. Third, a judgment that a treatment is "medically necessary" is not tantamount to a judgment that every other course of action is unreasonable, let alone presumptively discriminatory. *See Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc) (recognizing that "two alternative courses of medical treatment" often fall "within the boundaries of modern medicine"). BCBSIL's conclusion that gender-affirming treatment may be "medically necessary" given certain criteria thus does not address whether an *alternative* treatment plan would also be "prudent," "in accordance with generally accepted standards," and "clinically appropriate"—*i.e.*, "medically necessary."

**D. Plaintiffs' cost argument is irrelevant because BCBSIL is not the party that bears the costs of coverage.**

Plaintiffs claim that "the Exclusions are not justified by cost considerations." Mot. 27. That argument is misplaced. This class action concerns only self-insured plans, not fully insured plans that BCBSIL actually underwrites. For those self-insured plans, BCBSIL did not bear ultimate financial responsibility for medical claims and so had no financial interest for or against the challenged exclusions, or any other plan term. Like any other TPA, BCBSIL simply administers the plan terms chosen by the sponsor for a fee. The party that takes into account the costs or benefits of any particular plan term is the plan sponsor, who bears responsibility for any costs in excess of insurance premiums paid by plan participants. Plaintiffs chose to sue the TPA rather than the plan sponsors, so the sponsors' cost considerations are not relevant; nor were they explored in discovery.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

In any event, Plaintiffs' opinion that employer-selected exclusions are not cost-justified is not supported by the record. Plaintiffs cite a single expert report they produced, which estimated that the exclusion of gender-affirming care *would* lower monthly premiums but only slightly. Dkt. 134-1 ¶55. Plaintiffs fail to grapple with how changes to individuals' monthly payments are "multiplied" across the entire group health plan, so even small changes to individuals' monthly premiums can equate to substantial costs *for the plan*. *See* Decl. of Gwendolyn C. Payton ("Payton Decl."), Ex. C at 63:24–64:8. Plaintiffs also nowhere reconcile their assertion of a small effect with their own claim that S.L.'s excluded treatments cost $200,000 and that she was one of "hundreds" who had similar claims denied. Mot. 5, 9. And, ultimately, whether cost savings are justified depends on one's view of the added *benefit* of the excluded care (if any), which is itself subject to debate, *see Skrmetti*, 605 U.S. at 524–25, and courts have rejected the argument that such savings are too small to matter. *E.g.*, *Anderson*, 169 F.4th at 491 (Defendant "can reasonably decide that certain gender-dysphoria services are not cost-justified …."). And though discovery did not focus on sponsors' motivations, there are indications some sponsors were concerned about cost: several plans at issue had "exclusions" that covered gender-reassignment services subject only to financial caps. *E.g.*, Dkt. 94-1, Addendum A at 13, 16–18, 20, 22.

**E. The "history and process leading up to the adoption of the Exclusions" show BCBSIL did not have a discriminatory motive.**

Plaintiffs next point to the "history and process" by which the exclusions were adopted. Mot. 28–29. The *Arlington Heights* factors Plaintiffs invoke here—sequence of events, procedural departures, contemporaneous statements—favor BCBSIL. Plaintiffs cite no statement by any BCBSIL employee evincing hostility toward transgender people. They identify no departure from BCBSIL's normal procedures; rather, their complaint is that BCBSIL followed normal procedures. And the sequence of events shows sponsors choosing exclusions and BCBSIL implementing those choices without regard to the sponsors' reasons.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

### 1. Plan sponsors chose the exclusions; BCBSIL merely assisted with technical drafting and implementation.

There is no dispute that, in self-funded plans, the plan sponsor "decides which healthcare costs [it] will cover for employees." *Pritchard*, 159 F.4th at 654; Dkt. 88-1 at 11. The record shows how that works. Sponsors "depict what benefits they would like" and "are able to customize at any time." Payton Decl., Ex. B, at 23:18–25. When BCBSIL onboards an employer, it either presents "a standard listing of benefits" and asks the employer "whether they would like to include or exclude those benefits," Dkt. 237-4 at 32:8–15, or takes "what they had covered with their prior carrier" and translates it into terms its claims system can apply, *id.* at 32:25–33:11; *see also* Payton Decl., Ex. A, at 13:4–7 ("We work to understand what the client wants, what they are asking for in terms of their plan, and make sure that our systems internally are set up to do that."). BCBSIL will then "sit down with the client and talk about those nuances that we need additional clarification on." Dkt. 237-4 at 33:12–16. At all times, the sponsor controls the scope of coverage.

Though the language is "customizable based on the benefits the employer chooses," BCBSIL does have an "off-the-shelf" summary plan description that is used as a starting point. Payton Decl., Ex. B, at 43:4–11; Dkt. 85-5 at 44:18–45:3. The off-the-shelf plan does not exclude treatment of gender dysphoria. Instead, it provides that "benefits for Covered Services received for gender reassignment Surgery, including related services and supplies, *will be provided* the same as any other condition." Dkt. 85-7 at 65; Payton Decl., Ex. B, at 48:8–17. Coverage is the default; an employer that wants an exclusion must ask for one. Dkt. 85 at 282 (26:15–21). BCBSIL also offers "standard language … to employers when they want a gender affirming care exclusion," but employers must first make that preference known. *Id.* Many employers customize their exclusions yet further. *See id.* at 26:12–14. For example, in 2018, CHI—the plan sponsor for two of the named Plaintiffs—narrowed its exclusion to exclude only surgery while covering other forms of gender-affirming care. Payton Decl., Ex. B, at 142:10–19.

Plaintiffs mention none of this. They say BCBSIL "designed" the exclusions and offers "standard language" for them. Mot. 5, 28. If "designed" means BCBSIL was the moving force



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

behind the exclusions, the record refutes it: coverage is BCBSIL's default, and an exclusion appears only when a sponsor requests one. If it means only that BCBSIL drafts the technical language that implements a sponsor's request, it is accurate but says nothing about motive. Plaintiffs overlook how BCBSIL's off-the-shelf plan *includes* the very gender-affirming treatments they seek. The record shows that BCBSIL maintains standard exclusion language for gender-affirming care for the same reason it maintains standard language for every common plan term: standard language is easier to code into its claims-administration system. Payton Decl., Ex. B, at 39:17–25, 85:11–13. Administrative convenience is not animus.

**2. BCBSIL was neutral toward sponsors' motives, and sponsors' reasons cannot be imputed to BCBSIL.**

Plaintiffs next fault BCBSIL for not asking sponsors why they want the exclusions, and for testifying that it would administer the exclusion "even if the employer wanted the exclusion due to discrimination." Mot. 3, 5–6, 28–29. No reasonable juror could find that this testimony evidences a discriminatory motive by BCBSIL.

Nothing in the record suggests any sponsor ever disclosed to BCBSIL that it wanted the exclusion for a discriminatory reason. In the deposition testimony Plaintiffs cite, a BCBSIL-employee witness answered a set of hypotheticals concerning BCBSIL's policy of treating every plan term alike. After the witness explained that BCBSIL does not require sponsors "to provide a reason for their decision to exclude gender affirming care," Plaintiffs' counsel asked whether the sponsor's decision could "just be [an] individual preference" or "an arbitrary decision" or, as the last in a list of hypotheticals, "even if the employer wanted the exclusion due to discrimination." Dkt. 85-9 at 28:10–29:16. Because BCBSIL does not know a sponsor's reasons, the answer to each was necessarily "yes"—and in none of the hypotheticals had the employer disclosed a discriminatory reason to BCBSIL. The testimony thus reflects the undisputed fact that BCBSIL does not ask sponsors to justify *any* plan term and administers the gender-dysphoria exclusion as it administers the rest. *Id.* at 28:3–29:25.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

BCBSIL's policy of treating gender-affirming care exclusions the same way as any other plan term does not support Plaintiffs' animus theory. No rational finder of fact could conclude otherwise. A decisionmaker whose conduct does not vary with the customer's reasons is acting on a reason independent of them—here, the commercial and legal reasons every TPA has to administer a plan as written. *Infra* Part II.G. Plaintiffs never explain how a policy of neutrality toward sponsors' motives becomes evidence of BCBSIL's animus.

Plaintiffs' argument appears to be that the plan sponsors' hypothetically discriminatory motives should be imputed to BCBSIL. Putting aside how that argument fatally undermines the class certification order, *see* Dkt. 236 at 14–15, it fails because Section 1557 does not permit sponsor motives to be imputed to the funding recipient. Section 1557 incorporates Title IX's enforcement mechanisms, and Title IX—unlike Title VII, *see* 42 U.S.C. § 2000e(b)—contains no agent liability. *Gebser*, 524 U.S. at 283. Rather, a funding recipient is liable only for "its own official decision[s]," *id.* at 290–91, and only for "its own misconduct," *Davis*, 526 U.S. at 640. Courts accordingly refuse to substitute "imputed discriminatory intent for actual discriminatory intent in Title IX cases." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 652–53 (5th Cir. 1997); *see Bose v. Bea*, 947 F.3d 983, 990–94 (6th Cir. 2020) (university not liable where adverse action was set in motion by employee's animus); *see also City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 195–96 (2003) (City not liable under Fourteenth Amendment and Fair Housing Act for facilitating referendum using a "facially neutral petitioning procedure" even though citizen-driven referendum had "discriminatory purpose"). Imputing principals' discriminatory purpose would make agents liable for animus they cannot control and may not even know of—precisely what *Davis* forbids.[6] *See Davis*, 526 U.S. at 645.

[6] For the same reason, BCBSIL cannot be liable under a deliberate-indifference standard. Because a funding recipient can be held liable "only for its own misconduct," proving deliberate indifference requires clearing a "high bar." *Davis*, 526 U.S. at 640; *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 966 (9th Cir. 2021). Among other things, the defendant must (1) have "knowledge that a harm to a federally protected right is substantially likely" and (2) "fail[] to act upon that … likelihood." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001); *see also Bax v. Drs. Med. Ctr. of Modesto, Inc.*, 393 F.Supp.3d 1000, 1012 (E.D. Cal. 2019) (applying this standard under Section 1557). The defendant's actions must also be "clearly unreasonable in



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Plaintiffs' invocation of "willful blindness," Mot. 31–32 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)), does not change the analysis. Willful blindness is a substitute for knowledge of a fact, not motive, and it requires that the defendant "subjectively believe that there is a high probability that a fact exists" and "take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. Plaintiffs identify no evidence that BCBSIL subjectively believed any sponsor was likely motivated by animus. But even knowledge of a sponsor's motive—which is all "willful blindness" could stand in for—would not make that motive BCBSIL's own. *Gebser* and *Davis* forbid imputing that motive to BCBSIL, which may be why Plaintiffs never took discovery from any plan sponsor at all.

**3. BCBSIL never "determined" that enforcing the exclusions violates Section 1557.**

Plaintiffs assert that "BCBSIL designed, implemented, and enforced the Exclusions notwithstanding its determination that doing so as part of its insured plans would have constituted unlawful discrimination under Section 1557." Mot. 28. Putting aside that *Pritchard* said the opposite about Section 1557, BCBSIL made no such determination. The only document Plaintiffs cite in support of that claim is a note in BCBSIL's 2019 medical policy stating that state antidiscrimination law "may apply" to exclusions in insured plans. Dkt. 189-7 at 2. That note then cites Illinois Administrative Code title 50, § 2603.35 as a state law that requires coverage of "Gender Reassignment Surgery … for Illinois insured policies." *Id.* That regulation does prohibit (and define as discriminatory) certain provisions that exclude coverage for gender dysphoria. Ill. Admin. Code tit. 50, § 2603.35(a)(2), (a)(5) (2019). But that does not mean BCBSIL "determin[ed]" that coverage exclusions "constituted unlawful discrimination under Section

---

light of the *known* circumstances." *Davis*, 526 U.S. at 648 (emphasis added). And the defendant must "exercise[] substantial control over … the context in which the known [discrimination] occur[red]." *Id.* at 645. Here, the exclusions—which turn on medical diagnosis and not sex—were *lawful*, so any harm to a federally protected right was not "substantially likely" and BCBSIL's conclusion to that effect was not "clearly unreasonable." Moreover, for self-funded plans, it is the sponsor who "exercise[s] substantial control," not the TPA. In any case, the deliberate-indifference standard is outside the scope of this case: Plaintiffs never invoked a deliberate-indifference test, nor did they seek discovery on it.



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

1557." A caution that a *state* law prohibits a provision in a benefit plan is not remotely the same as determining that the provision violates *federal* law. Indeed, the Ninth Circuit has now taken a view different from Illinois's and held that the exclusions are not sex discrimination under Section 1557.

**4. Discriminatory purpose may not be inferred from indemnification.**

Plaintiffs also treat the indemnification provisions in BCBSIL's administrative-services agreements as evidence that BCBSIL "knew that the Exclusions were discriminatory but proceeded to implement them anyway." Mot. 6, 29. The inference fails. A contracting party that allocates the cost of foreseeable litigation is simply recognizing the possibility that a third party might bring a claim relating to the subject of the contract, not conceding liability or animus.

Indeed, Plaintiffs offer this evidence for a purpose the Rules of Evidence forbid. Rule 411 bars evidence that a person "was or was not insured against liability" to prove that the person "acted negligently or otherwise wrongfully," and indemnification serves the same risk-allocation function as liability insurance. Fed. R. Evid. 411; *see In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1014 (9th Cir. 2008).

**F. The named Plaintiffs' claim histories show BCBSIL administering the exclusions by diagnosis.**

Plaintiffs' fifth contention is that the experiences of the named Plaintiffs "illustrate that the Exclusions are [a] pretext or proxy for discrimination based on transgender status," not on the basis of medical diagnosis. Mot. 29. But the assertion relies entirely on misstatements of fact and leaps of logic. The claim files show BCBSIL doing what the exclusions say.

***S.L.*** Plaintiffs say BCBSIL denied S.L.'s puberty blockers even though they would treat "both her diagnosed gender dysphoria and her diagnosed precocious puberty." *Id.* But neither S.L. nor her providers ever asked BCBSIL to cover the medication for precocious puberty. The claim records for both the Lupron and Supprelin requests list a single diagnosis: F64.2, gender identity disorder of childhood. Dkt. 237-1; Dkt. 237-2. S.L.'s mother's appeal likewise did not identify precocious puberty as a diagnosis or as a basis for payment. Dkt. 176 at 22–23. BCBSIL therefore



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

never denied coverage for a precocious-puberty diagnosis; it applied a plan exclusion to the only diagnosis before it: gender dysphoria. That is diagnosis-based claims administration, which *Skrmetti* and *Pritchard* hold lawful. Nothing in the file suggests that BCBSIL looked past the diagnosis to S.L.'s transgender status.

***C.P.*** Plaintiffs also cite BCBSIL's denial of C.P.'s Vantas implant under CHI's exclusion of "treatments, drugs, medicines, therapy, counseling services or supplies" for, or leading to, gender-reassignment surgery. Dkt. 84-13 at 67; Mot. 30. C.P. does not claim a second qualifying diagnosis. And the denial was a straightforward application of the exclusion's text: the implant is placed under the skin, is "surgical in nature," and was prescribed for gender dysphoria. Payton Decl., Ex. B, at 83:14–17, 142:4–6.

***Absent class members.*** The record identifies no absent class member whose claim presented both a gender-dysphoria diagnosis and a separate qualifying diagnosis and was denied notwithstanding the latter. Plaintiffs bear the burden to come forward with probative evidence, not "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). They have not done so. Thus, the panel's second open question—whether BCBSIL denied claims that presented an independently qualifying diagnosis, *Pritchard*, 159 F.4th at 671—is not implicated by this record.

### G. BCBSIL's nondiscriminatory rationales for administering the Exclusions as written are well-supported and preserved.

Plaintiffs' last point is that BCBSIL "has not offered a single non-discriminatory reason for the Exclusions," which, they say, compels "the inevitable inference" of animus under *Romer v. Evans*, 517 U.S. 620, 634 (1996), and *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886). Mot. 3, 30–32. In those cases, the Supreme Court inferred discriminatory purpose because it found the challenged action was "inexplicable by anything but animus." *Romer*, 517 U.S. at 632; *see Arlington Heights*, 429 U.S. at 266 (pattern must be "unexplainable on grounds other than" the protected trait). This case is the opposite. BCBSIL's conduct has been explained, consistently,



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

from the start as motivated by a nondiscriminatory commercial purpose. Even Plaintiffs embraced that explanation until it became inconvenient for them.

BCBSIL's reason is the one any TPA would give. Self-funded employers decide what their plans cover, *Pritchard*, 159 F.4th at 654, and they hire a TPA to administer those choices—to build the network, process the claims, and apply the plan's terms as written. Dkt. 88-1 at 11. A TPA that substituted its own coverage judgments for its customers' would not keep those customers; HHS itself has recognized that insurers who refuse to implement an employer's exclusion face "a competitive disadvantage." Nondiscrimination in Health Programs and Activities, 89 Fed. Reg. 37522, 37625–26 & n.277 (May 6, 2024). BCBSIL said as much in its answer, Dkt. 41 ¶¶5, 12–14, and has said it in every brief since, *e.g.*, Dkt. 235 at 12–14. Plaintiffs' assertion that competitive considerations are a "post-hoc justification[]," Mot. 30 n.1, is therefore unfounded. It would also be beside the point: a defendant may explain its motive in response to the first motion that puts its motive at issue.

The reason is also a legal one. ERISA requires a plan fiduciary to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The Ninth Circuit rejected BCBSIL's ERISA defense by reasoning that this duty yields to a conflicting federal obligation, and Section 1557 might have supplied one; BCBSIL, the panel reasoned, "could have refused to administer plans for employers requesting potentially illegal plan exclusions." *Pritchard*, 159 F.4th at 661–63. But the panel then held that the exclusions are not illegal: "sex is not a but-for cause of the exclusions' operation." *Id.* at 670. With no conflicting obligation, ERISA's directive to follow the plan applies with full force—and, as the panel itself noted, "[a]n administrator who strictly adheres to the *lawful* terms of an employee benefit plan may not be found to have acted arbitrarily and capriciously." *Id.* at 662 (emphasis in original) (quoting *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 284 (3d Cir. 2005)). Plaintiffs cannot convert compliance with that directive into evidence of animus.



**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

Finally, Plaintiffs themselves supplied this explanation until now. *Supra* Part I. A party cannot describe its opponent's motive as commercial for five years and then, when its legal theory fails, ask the Court to find on summary judgment that the same conduct was animus.

* * *

Plaintiffs have not produced anything "more" than that BCBSIL administered the challenged exclusions, *Pritchard*, 159 F.4th at 670–71, let alone shown, as *Arlington Heights* requires, that "a discriminatory reason more likely than not motivated" BCBSIL. *Sw. Fair Hous. Council*, 17 F.4th at 972. The record before the Court contains no evidence of discriminatory purpose. Rather, it "conclusively reveal[s] some other, nondiscriminatory reason" for BCBSIL's conduct—the ordinary commercial reasons Plaintiffs themselves gave. *Reeves*, 530 U.S. at 148. BCBSIL is therefore "entitled to judgment as a matter of law." *Id.*

## III. The Spending Clause independently bars liability on Plaintiffs' new theory.

Plaintiffs' "law of the case" section, Mot. 33–34, largely attacks defenses BCBSIL does not raise here. BCBSIL does not dispute that Section 1557 reaches its TPA operations after *Pritchard*, does not invoke RFRA, and does not contend that ERISA preempts Section 1557.

BCBSIL does submit, however, that the Spending Clause bars liability on the theory Plaintiffs newly advance. Section 1557 is Spending Clause legislation, so "liability does not arise … unless the … conditions [of liability] were set out unambiguously." *Roe v. Critchfield*, 137 F.4th 912, 929 (9th Cir. 2025) (internal quotation marks omitted). As explained in BCBSIL's renewed motion, BCBSIL did not have "adequate notice, when [it] accepted federal funding," that its TPA activities were within the scope of Section 1557 and so did not consent to liability for such activities. Dkt. 235 at 19. For much of the class period, HHS's implementing regulations told insurers that their TPA operations were outside Section 1557 altogether; for the rest, they disclaimed enforcement against TPAs that did not design the benefit at issue. *Id.* at 21–22. That lack of notice and consent is a complete defense to liability, and Plaintiffs do not argue otherwise.

Instead, Plaintiffs say the defense is forfeited because BCBSIL did not raise it in its opening appellate brief and in prior proceedings. Mot. 34. Plaintiffs misunderstand the Ninth Circuit's



KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

mandate. "[M]andates require respect for what the higher court decided, not for what it did not decide." *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000). The panel held only that the argument was forfeited as to the motion and order then on appeal; it did not address the Spending Clause on the merits. *Pritchard*, 159 F.4th at 660–61. Plaintiffs now bring a new motion on a new theory that this Court has "the first opportunity to assess." *Id.* at 672. The panel itself anticipated that this Court might need to decide "whether any forfeiture should be excused." *Id.* If Plaintiffs may raise on remand a theory they never pleaded or advanced in this Court, BCBSIL may raise a defense to it; due process guarantees "an opportunity to present every available defense." *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932). The mandate does not say otherwise.

## IV. S.L.'s individual claim fails for the same reason the class's does.

Plaintiffs ask, in the alternative, for summary judgment for S.L. alone, on the theory that her puberty blockers would have treated "early-onset puberty" as well as gender dysphoria. Mot. 34. The panel's second open question was whether *Skrmetti* is distinguishable where a beneficiary "had diagnoses (other than gender dysphoria) that entitled them to hormones or other treatment—but BCBSIL still would not treat them." *Pritchard*, 159 F.4th at 671. S.L. is not that beneficiary. The only diagnosis her providers ever submitted was gender dysphoria. *Supra* Part II.F. BCBSIL applied a plan exclusion to the diagnosis before it—exactly the diagnosis-based administration the panel held lawful.

The statement S.L.'s mother attributes to a membership-services representative—that BCBSIL "would have likely covered the puberty blocker" had S.L. "been diagnosed only with early-onset puberty," Dkt. 176 ¶13—supports BCBSIL's account. The statement describes coverage that turns on the diagnosis submitted. It does not report that a claim presenting a precocious-puberty diagnosis was denied, and none was. Because sex is no more a but-for cause of the exclusion's operation for S.L. than for the class, *Pritchard*, 159 F.4th at 670, her individual request fails with the class's.



**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

## CONCLUSION

This Court should deny Plaintiffs' motion and grant summary judgment to BCBSIL.

Respectfully submitted this 9th day of October, 2026.

KILPATRICK TOWNSEND & STOCKTON LLP

By*/s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
John R. Neeleman, WSBA No. 19752
jneeleman@kilpatricktownsend.com
1420 Fifth Ave., Suite 3700
Seattle, WA 98101
Telephone: (206) 626-7714
Facsimile: (206) 623-6793

*Counsel for Blue Cross Blue Shield of Illinois*

*I certify that this memorandum contains 8,389 words, in compliance with the Local Civil Rules.*

# CERTIFICATE OF SERVICE

I certify that on the date indicated below I electronically filed the foregoing, DEFENDANT BLUE CROSS BLUE SHIELD OF ILLINOIS'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| **Eleanor Hamburger**<br>**Jeremiah Miller**<br>SIRIANNI YOUTZ SPOONEMORE HAMBURGER<br>3101 WESTERN AVENUE STE 350<br>SEATTLE, WA 98121<br>206-223-0303<br>Fax: 206-223-0246<br>Email: ehamburger@sylaw.com<br>Email: jeremiah@sylaw.com | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Jennifer C. Pizer**<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC<br>4221 WILSHIRE BLVD., STE 280<br>LOS ANGELES, CA 90010<br>213-382-7600<br>Email: jpizer@lambdalegal.org | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |
| **Omar Gonzalez-Pagan**<br>**Charles Ferguson**<br>LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC. (NY)<br>120 WALL STREET<br>19TH FLOOR<br>NEW YORK, NY 10005<br>212-809-8585<br>Email: ogonzalez-pagan@lambdalegal.org<br>Email: cferguson@lambdalegal.org | ☑ by CM/ECF<br>☐ by Electronic Mail<br>☐ by Facsimile Transmission<br>☐ by First Class Mail<br>☐ by Hand Delivery<br>☐ by Overnight Delivery |

DATED: October 9, 2026.

**Kilpatrick, Townsend & Stockton LLP**

By: */s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA #26752
gpayton@ktslaw.com

*Counsel for Blue Cross and Blue Shield of Illinois*