The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; S.L. by and through her parents, S.R. and R.L.; EMMETT JONES, each individually and on behalf of similarly situated others; and PATRICIA PRITCHARD, individually,<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>Defendant. | No. 3:20-cv-06145-DGE<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Note on Motion Calendar:** November 20, 2026 |



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

I. ARGUMENT ........ 1

A. BCBSIL's Exclusions Are Proxy or Pretext for Discrimination Against Transgender Persons ........ 1

B. The *McDonnell Douglas* Framework Is Inapposite. ........ 10

C. Even if the *Mcdonnell Douglas* Framework Applied to this Case, BCBSIL Would Not Be Entitled to Summary Judgment ........ 14

D. The Court Should Reject BCBSIL's Plea for this Court to Evade the Questions the Ninth Circuit Has Identified for Consideration on Remand ........ 17

E. BCBSIL's Reliance on *Anderson v. Crouch* Is Misplaced. ........ 19

F. BCBSIL Has Waived and Forfeited Any Spending Clause Defense. ........ 21

G. BCBSIL Applied the Exclusions to Plaintiff S.L. Because of Her Sex. ........ 26

II. CONCLUSION ........ 28

Local Civil Rule 7(e)(6) Certification ........ 29




SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## TABLE OF AUTHORITIES

### CASES

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) .......... 14, 15, 16

*Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026) .......... 19, 20, 21

*Arce v. Douglas*, 793 F.3d 968 (9th Cir. 2015) .......... 3

*Barton v. New York City Comm'n on Hum. Rts.*, 140 Misc. 2d 554, 531 N.Y.S.2d 979 (Sup. Ct. 1988), *aff'd as modified*, 151 A.D.2d 258, 542 N.Y.S.2d 176 (1989) .......... 9, 16

*Bates v. UPS*, 511 F.3d 974 (9th Cir. 2007) .......... 11

*Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020) .......... 9, 13

*Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018) .......... 25

*Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887 (7th Cir. 2023) .......... 23

*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) .......... 2

*Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146 (9th Cir. 2016) .......... 24

*Campbell v. United States*, 878 F.2d 385 (9th Cir. 1987) .......... 22

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348 (Fed. Cir. 2009) .......... 23

*Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908 (7th Cir. 2010) .......... 9

*Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041 (9th Cir. 2007) .......... 11

*Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170 (3d Cir. 2005) .......... 19, 20



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Comm'n on Hum. Rts. & Opportunities v. Edge Fitness*, No. HHBCV196056021, 2020 WL 5607779 (Conn. Super. Ct. July 23, 2020) ..... 10

*Costa v. Desert Palace, Inc.*, 299 F.3d 838 (9th Cir. 2002) ..... 12

*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) ..... 24, 25

*Davis v. Guam*, 932 F.3d 822 (9th Cir. 2019) ..... 2, 3, 4, 19

*Díaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971) ..... 9

*Doe v. CVS Pharm., Inc.*, 982 F.3d 1204 (9th Cir. 2020) ..... 25

*Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545 (3d Cir. 2017) ..... 25

*E.S. by & through R.S. v. Regence BlueShield*, No. C17-1609-RAJ, 2024 WL 1173805 (W.D. Wash. Mar. 19, 2024) ..... 3-4

*Equal Emp. Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018) ..... 9

*Fernandez v. Wynn Oil Co.*, 653 F.2d 1273 (9th Cir. 1981) ..... 10

*Firth v. United States*, 554 F.2d 990 (9th Cir. 1977) ..... 19

*Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840 (9th Cir. 2004) ..... 15

*Gerdom v. Cont'l Airlines*, 692 F.2d 602 (9th Cir. 1982) ..... 20

*Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) ..... 9

*Guinn v. United States*, 238 U.S. 347 (1915) ..... 20

*Hittle v. City of Stockton*, 101 F.4th 1000 (9th Cir. 2024) ..... 16

*Hollis v. Morgan State Univ.*, 153 F.4th 369 (4th Cir. 2025) ..... 12, 14, 15



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Int'l Union v. Johnson Controls*,
499 U.S. 187 (1991) .......... 20

*Ismael v. Roundtree*,
161 F.4th 752 (11th Cir. 2025) .......... 12, 13

*L.B. v. Premera Blue Cross*,
781 F. Supp. 3d 1128, 1137 (W.D. Wash. 2025) .......... 11

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) .......... 10, 15

*McGinest v. GTE Service Corp.*,
360 F.3d 1103 (9th Cir. 2004) .......... 12, 15

*McWright v. Alexander*,
982 F.2d 222 (7th Cir. 1992) .......... 2, 20

*Med. Ctr. Pharmacy v. Holder*,
634 F.3d 830 (5th Cir. 2011) .......... 22

*Miller v. Boys & Girls Clubs of Snohomish Cnty.*,
No. C15-2027-JCC, 2017 WL 897811 (W.D. Wash. Mar. 7, 2017) .......... 13

*Odima v. Westin Tucson Hotel*,
53 F.3d 1484 (9th Cir. 1995) .......... 19

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) .......... 2, 3, 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) .......... 24, 26

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979) .......... 2, 19

*Platner v. Cash & Thomas Contractors, Inc.*,
908 F.2d 902 (11th Cir. 1990) .......... 9

*Price Waterhouse v. Hopkins*,
490 U.S. 228 (1989) .......... 14

*Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*,
159 F.4th 646 (9th Cir. 2025) .......... *passim*

*Quigg v. Thomas Cnty. Sch. Dist.*,
814 F.3d 1227 (11th Cir. 2016) .......... 14

*Rice v. Cayetano*,
528 U.S. 495 (2000) .......... 20



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Sargent v. Sch. Dist. of Philadelphia*,
165 F.4th 727 (3d Cir. 2026) .......... 13

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
965 F.3d 945 (9th Cir. 2020) .......... 3, 4

*Sengupta v. Morrison-Knudsen Co.*,
804 F.2d 1072 (9th Cir. 1986) .......... 15

*Shell Oil Co. v. United States*,
123 Fed. Cl. 707 (2015) .......... 23

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) .......... 20

*Texas Dept. of Community Affairs v. Burdine*,
450 U.S. 248 (1981) .......... 16, 17

*Tovar v. Essentia Health*,
857 F.3d 771 (8th Cir. 2017) .......... 25

*TWA v. Thurston*,
469 U.S. 111 (1985) .......... 11

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) .......... 22

*United States v. Morris*,
259 F.3d 894 (7th Cir. 2001) .......... 22

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002) .......... 23

*United States v. Skrmetti*,
605 U.S. 495 (2025) .......... 2, 5

*Util. Air Regul. Grp. v. E.P.A.*,
573 U.S. 302 (2014) .......... 26

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) .......... 3, 13

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
510 F.3d 474 (4th Cir. 2007) .......... 23

*W. Virginia v. B.P.J. by Jackson*,
146 S. Ct. 2356 (2026) .......... 14

*Washington v. Davis*,
426 U.S. 229 (1976) .......... 3, 10



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## STATUTES

42 U.S.C. § 18116(a) .......... 25

## RULES

Fed. R. Evid. 801(d)(2) .......... 28

## OTHER DOCUMENTS

Appellant's Brief (Doc. 68.1), *Pritchard v. Blue Cross Blue Shield of Illinois*, No. 23-4331 (9th Cir., filed Aug. 2, 2024) .......... 18

Plaintiffs' Answering Brief (Doc. 42.1), *Pritchard v. Blue Cross Blue Shield of Illinois*, No. 23-4331 (9th Cir., filed June 12, 2024) .......... 18

Plaintiffs' Suppl. Brief (Doc. 91.1), *Pritchard Blue Cross Blue Shield of Illinois*, No. 23-4331 (9th Cir., filed July 9, 2025) .......... 18



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## INTRODUCTION

The only remaining questions before the Court on Defendant Blue Cross Blue Shield of Illinois's ("BCBSIL") liability are narrow and straightforward: "whether BCBSIL adopted a policy that looked to class members' transgender status rather than their gender-dysphoria diagnoses and whether BCBSIL discriminated based on gender-dysphoria treatment as a pretext/proxy for anti-transgender discrimination." *Pritchard on behalf of C.P. v. Blue Cross Blue Shield of Illinois*, 159 F.4th 646, 664 n.11 (9th Cir. 2025). BCBSIL attempts to distract from these narrow questions by recycling rejected and forfeited arguments previously made before this Court and before the Ninth Circuit. To the extent that BCBSIL addresses the questions identified by the Ninth Circuit, it fails to establish that its categorical exclusions of gender-affirming medical care (hereafter the "Exclusions") are not a pretext/proxy for anti-transgender discrimination.

For these reasons, as well as the reasons explained in Plaintiffs' Motion for Summary Judgment, the Court should deny BCBSIL's Renewed Motion for Summary Judgement and grant Plaintiffs' Motion for Summary Judgment.

## I. ARGUMENT[1]

### A. BCBSIL's Exclusions Are Proxy or Pretext for Discrimination Against Transgender Persons.

In its motion, BCBSIL seeks to divorce pretext from proxy discrimination as if

[1] Plaintiffs incorporate by reference their statement of material facts and arguments in their motion for summary judgment. *See* Dkt. 239.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

these are two independent theories that cannot operate in tandem. But when remanding this matter back to the Court for its assessment of the remaining questions in this case following *United States v. Skrmetti*, 605 U.S. 495 (2025), the Ninth Circuit recognized what is evident from *Skrmetti* and cases before it: A plaintiff may demonstrate that a medical condition/procedure classification is a proxy for sex discrimination—which is *facial*[2] – if it can show that the medical condition/procedure classification was adopted for a discriminatory or invidious purpose (*i.e.*, if the plaintiff can show pretext). In other words, if a party shows that the use of a gender dysphoria classification is pretext for transgender status discrimination (and therefore sex discrimination), then the gender dysphoria classification operates as a proxy for *facial* sex discrimination.

A policy is facially discriminatory when it uses seemingly neutral criteria so closely associated with a disfavored group that it acts as a "proxy" for that group and discrimination can be inferred. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013); *see McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) (gray hair as a discriminatory proxy for age, exclusion of service animals as a discriminatory proxy for disability); *see also Rice v. Cayetano*, 528 U.S. 495, 514 (2000) (Polynesian ancestry as a discriminatory proxy for race); *cf. Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993) ("[a] tax on wearing yarmulkes is a tax on Jews."); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272 (1979) (race classifications are

[2] In its motion, BCBSIL acknowledges, as it must, that "[p]roxy discrimination is a form of facial discrimination." Dkt. 235 at 9 (quoting *Davis v. Guam*, 932 F.3d 822, 837-38 (9th Cir. 2019)).



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

presumptively invalid, including when a seemingly neutral classification is "obvious pretext" for race).

In this context, a discriminatory purpose may be adduced from the "totality of the relevant facts," *Washington v. Davis*, 426 U.S. 229, 242 (1976), and weighing those facts "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). As Plaintiffs explain in their motion for summary judgment, courts and enforcement agencies look to several factors or indicators to adduce whether a purported facially neutral policy was adopted for a discriminatory purpose. *See* Dkt. 239, at 24-25. Among these factors are the impact of the challenged policy, including its foreseeability; its historical background; the sequence of events leading up to its adoption; any procedural or substantive departures; contemporary statements and actions of key stakeholders; and the availability of less discriminatory alternatives. *See Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015). "These factors are non-exhaustive." *Pac. Shores Props.*, 730 F.3d at 1159.

Often, "the crucial question is whether the proxy's fit is sufficiently close to make a discriminatory inference plausible." *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 959 (9th Cir. 2020) (citation modified). That is, when an alleged proxy is so closely intertwined with the protected characteristic, it can be readily understood to be "discriminatory in purpose and operation." *Davis*, 932 F.3d at 838 (citation modified); *see also E.S. by & through R.S. v. Regence BlueShield*, No. C17-1609-RAJ, 2024 WL 1173805 at



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*3 (W.D. Wash. Mar. 19, 2024) (holding that the proxy question is whether the healthcare denied "primarily affects" the disfavored group (quoting *Schmitt*, 965 F.3d at 959)). An exact match between the proxy and the protected trait is not required. *Davis*, 932 F.3d at 837 ("That ancestry is not always a proxy for race does not mean it never is.").

Here, it is well-understood that "[t]he fit between transgender people and people suffering from gender dysphoria is strong." *Pritchard*, 159 F.4th at 672. Sure, pursuant to *Skrmetti* and *Pritchard*, this close fit does not itself prove proxy discrimination in this context, but it is nevertheless sufficient to raise questions of whether something else may be afoot. And when coupled with other evidence, it is a substantial indicator of proxy discrimination.

Here, consideration of the context of the Exclusions and the circumstances surrounding their application demonstrates that BCBSIL's administration of the Exclusions is a pretext for invidious discrimination against transgender enrollees via proxy. For example, BCBSIL adopted and implemented the Exclusions here: (a) without a known legitimate reason; (b) after BCBSIL determined for its own insured plans that the Exclusions were improper under Section 1557 and unsupported by medical evidence; (c) only after BCBSIL ensured that it would bear no financial or litigation risk associated with the Exclusions by insisting on the indemnification provisions; and (d) throughout the litigation, BCBSIL offered no justification for the Exclusions and no employer with a legitimate non-discriminatory reason for the Exclusions.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Additional factors weigh in favor of this conclusion. ***First***, BCBSIL knew that Exclusions, as designed and implemented, would impact only transgender persons. Indeed, "[o]nly transgender people can suffer from gender dysphoria." *Pritchard*, 159 F.4th at 672; *see also Skrmetti*, 605 U.S. at 497.

***Second***, as the Ninth Circuit observed, though "BCBSIL's policy admits that the treatments Plaintiffs seek can be medically necessary for treating [transgender persons] with gender dysphoria[,] … in many of the health plans at issue, BCBSIL categorically excludes those treatments." *Pritchard,* 159 F.4th at 672. BCBSIL repeatedly admits gender-affirming medical care can be medically necessary. Dkt. 85-3, at 7; Dkt. 97-10, at 40:12-41:20; Dkt. 85, at 60:19-62:3 ("Based on the records that I reviewed and the medical policy, yes, I believe it [C.P.'s chest surgery] would have been covered [because it is medically necessary]."). BCBSIL conceded C.P.'s gender-affirming medical care met the medical necessity criteria under their medical policy yet continued to deny coverage. Dkt. 85, at 52:19-53:9, 60:5-62:3. Consistent with its own medical necessity determination, BCBSIL removed its categorical exclusion of coverage for gender-affirming healthcare from its insured plans and has covered medically necessary gender-affirming care in its insured plans and self-funded plans without an express exclusion. Dkt. 85, at 11:7-18, 13:15-14:8, 20:3-21; Dkt. 85-3; Dkt. 85-5, at 3:4-15; Dkt. 85-5, at 24:1525:11. Further, in response to Plaintiffs' 30(b)(6) deposition notice, BCBSIL explicitly stated "that its administration of the Exclusion is not based on medical and scientific information, and as such no witness can provide" testimony as to "[t]he medical and scientific information



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

relied upon to justify the Exclusion…." Declaration of Omar Gonzalez-Pagan ("Gonzalez-Pagan Decl."), *Ex. A* at 6 (BCBSIL's Responses and Objections to Plaintiffs' Amended Rule 30(b)(6) Notice (Apr. 18, 2022)). BCBSIL cannot dispute that gender-affirming treatment can be medically necessary.

***Third***, the Exclusions are not justified by cost considerations. The record establishes that the "the cost of providing gender-affirming care is generally very low, particularly in the context coverage through group health plans." Dkt. 134-1, at 16-17; *see also Karnoski v. Trump*, No. C17-1297-MJP, 2017 WL 6311305, at *8 (W.D. Wash Dec. 11, 2017) (noting "these costs are exceedingly minimal"). BCBSIL never offered any evidence that cost was a justification. Indeed, BCBSIL stated that "its administration of the Exclusion is not based on any financial or actuarial information, and as such no witness can provide" testimony as to "[t]he financial or actuarial information relied upon to justify the Exclusion…." Gonzalez-Pagan Decl., *Ex. A* at 6.

***Fourth***, while BCBSIL argues that it simply "administers the benefit packages that self-funded employers select because that is what those customers hire a TPA to do" and that that is "a straightforward, non-discriminatory business rationale," Dkt. 235, at 12, the history of and process leading up to the adoption of the Exclusions reveals that they were adopted and administered for a discriminatory purpose. BCBSIL designed, implemented, and enforced the Exclusions notwithstanding its determination that doing so as part of its insured plans would have constituted unlawful discrimination under Section 1557. Dkt. 189-7, at 2; *see also* Dkt. 85, at 46:17-21. By doing so, BCBSIL designed,



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

implemented, and enforced the Exclusions even though it understood that they were discriminatory. *Id*. And not only has BCBSIL, when acting as a TPA, continued to agree to administer the Exclusions when requested by its employer-customers, *see* Dkt. 85-1, at 16:19-17:17; Dkt. 85-5, at 26:13-18; Dkt. 85-11, at 56, but when an employer asks to include an Exclusion in its plan, the overwhelming majority of the employers (378 of the 398 plans at issue) use the version of Exclusion drafted and proffered by BCBSIL. *See* Dkt. 85-5, at 6:16-22, 8:12-24; Dkt. 85-8, at 6:4-8:15; Dkt. 85-11, at 14-23.

Moreover, BCBSIL never asks employers for a justification or reason when agreeing to administer an Exclusion. Dkt. 85-5, at 14:21-15:7; Dkt. 85-8, at 9:10-23. And the record makes clear that BCBSIL would administer the Exclusions even if the employer expressed overtly discriminatory reasons for it. Dkt. 85-8, at 10:11-16. Indeed, BCBSIL does not require employers to have a genuine medical, scientific, or even a religious basis before it will administer the Exclusions. Dkt. 85-8, at 9:3-10:25. An employer's justification for enforcing the Exclusion could be arbitrary, and BCBSIL would not conduct any investigation into the reason for the request to enforce the Exclusion. *Id*. at 28:3-29:25. Even then, BCBSIL will only administer the Exclusions once it has a special indemnification in place to protect itself from the legal and financial consequences of discrimination. Dkt. 160-3, at 8:22-12:3.

***Fifth***, as Plaintiffs explain in their motion, their experiences illustrate that the Exclusions are pretext for discrimination based on transgender status via proxy. S.L.'s healthcare provider obtained pre-approval from BCBSIL for her treatment with puberty-



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

delaying medications, which are medically necessary to treat both her diagnosed gender dysphoria and her diagnosed precocious puberty. Dkt. 176, ¶¶ 8, 6-7; Supplemental Declaration of S.R. ("Suppl. S.R. Decl.") ¶¶ 11-12. Despite the preauthorization, BCBSIL denied coverage for the puberty-delaying medication pursuant to an Exclusion. Dkt. 176, ¶¶ 9, 10, 16; Suppl. S.R. Decl. ¶¶ 12-13. It did so because her "transsexual surgery and related psychiatric care are not covered." Dkt. 176, ¶¶ 11-12 & *Ex. 3*; Suppl. S.R. Decl. ¶ 13. And BCBSIL told S.L.'s mother that had S.L. been diagnosed *only* with early-onset puberty (*i.e.*, not gender dysphoria ***and*** early-onset puberty), BCBSIL would have likely covered the puberty blocker. *Id.*, at ¶ 13; Suppl. S.R. Decl. ¶ 14; *see also* Section I.G, *infra*. The decision to deny coverage thus turned not whether it was medically indicated to treat medical condition, gender dysphoria or another condition, but rather on the fact that it would have provided care to transgender person that would have had the *incidental* effect of facilitating their *gender transition*. In other words, BCBSIL applied the Exclusion to S.L. because of her transgender status, which did "alter the application of" the Exclusion, and illustrated that "sex is a but-for cause of the exclusion's operation." *Pritchard*, 159 F.4th at 671.

***Sixth, and finally***, throughout the history of this case BCBSIL has not offered a single non-discriminatory reason for the Exclusions, and it is too late for BCBSIL to attempt to add one into the record now. That BCBSIL's employer-customers asked it to administer Exclusions (which BCBSIL designed) is no legitimate justification for the Exclusions. BCBSIL never asks employers for a legitimate reason why they should



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

administer the Exclusion when agreeing to do so. Dkt. 85-5, at 14:21-15:7; Dkt. 85-8, at 9:3-10:25; *see also* Dkt. 235, at 13. BCBSIL cannot be willfully blind to its employers' desire to discriminate and use that claimed ignorance to avoid liability when following such directives. *See Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766-68 (2011).

In any event, the law does not "allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid." *Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 586 (6th Cir. 2018) (quoting *Díaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 389 (5th Cir. 1971)), *aff'd sub nom. Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020). To the contrary, "***it is well settled that customer preference can never be the basis for discrimination***." *Barton v. New York City Comm'n on Hum. Rts.*, 140 Misc. 2d 554, 563, 531 N.Y.S.2d 979, 985 (Sup. Ct. 1988), *aff'd as modified*, 151 A.D.2d 258, 542 N.Y.S.2d 176 (1989) (citing *Díaz*, 442 F.2d 385) (rejecting customer preference as a defense in case involving refusal to lease office to dentist who would treat patients living with HIV/AIDS) (emphasis added); *see also Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 913 (7th Cir. 2010) ("It is now widely accepted that a company's desire to cater to the perceived racial preferences of its customers is not a defense under Title VII for treating employees differently based on race."); *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 n.5 (11th Cir. 1990) ("An employer may not illegally discriminate simply because some third party urges or pressures him to do so."); *Fernandez v. Wynn Oil Co.*, 653 F.2d 1273, 1276 (9th Cir. 1981) (rejecting customer preference defense in sex discrimination context even though



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

defendant argued that doing so would "'destroy the essence' of [its] business"); *Comm'n on Hum. Rts. & Opportunities v. Edge Fitness*, No. HHBCV196056021, 2020 WL 5607779, at *6 (Conn. Super. Ct. July 23, 2020) ("[T]here are no circumstances where pure business interests or customer preferences alone can be used to justify sex based discrimination. ***We cannot allow customer preferences or prejudices, or purely business interests based on those customer preferences alone, to justify discrimination***." (emphasis added)), *rev'd on other grounds*, 342 Conn. 25, 268 A.3d 630 (2022) (holding there is no implied customer gender privacy exception to Connecticut's Public Accommodation Act).

**B. The *McDonnell Douglas* Framework Is Inapposite.**

BCBSIL urges application of the burden shifting framework under a *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[3] as if it was the *required* framework for the determination of "pretext" in this context involving facial discrimination. Not so.

As Plaintiffs have already explained, the proper framework to determine whether the Exclusions use the proxies of gender dysphoria/gender-affirming care as pretext for purposeful discrimination based on transgender status is to look at the "totality of the relevant facts." *Washington*, 426 U.S. at 242.

The *McDonnell Douglas* framework therefore simply does not apply here, where Plaintiffs have supplied direct and circumstantial evidence of discrimination. *See Pac. Shores Props.*, 730 F.3d at 1158 (*McDonnell Douglas* framework is not necessary to prove

[3] To be clear, BCBSIL really asks that the Court apply only *some* aspects of the *McDonnell Douglas* framework, as it argues that the burden should not ever shift to BCBSIL. *See* Dkt. 235, at 12 n.4.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

discrimination, a plaintiff "may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant ….") (citation modified); *see also TWA v. Thurston,* 469 U.S. 111, 112 (1985) ("the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1049 (9th Cir. 2007) ("[t]he *McDonnell Douglas* test is inapplicable to Fair Housing Act challenges to a facially discriminatory policy."); *Bates v. UPS*, 511 F.3d 974, 988 (9th Cir. 2007) (declining to use a burden-shifting framework because "[t]he fact to be uncovered by … a [burden-shifting] protocol--whether the [defendant] made an employment decision on a proscribed basis … --is not in dispute"); *L.B. v. Premera Blue Cross*, 781 F. Supp. 3d 1128, 1137 n.4 (W.D. Wash. 2025) ("The *McDonnell Douglas* standard does not apply to facial discrimination claims."), *adhered to*, 795 F. Supp. 3d 1311 (W.D. Wash. 2025), *appeal pending*, Nos. 25-6143, 25-5803 (9th Cir.).[4] Nor is the *McDonnell Douglas* framework particularly instructive with regards to the questions that this Court faces on remand. Here, the pretext that must be elucidated is not whether BCBSIL's reasons for its actions are *false*, but rather whether BCBSIL, based on the totality of the evidence, designed, adopted, or administered the Exclusions because, at least *in part*, they would effectuate

[4] It further does not apply "[b]ecause the *McDonnell Douglas* framework was designed for use in a bench trial" and "the language [the Supreme] Court has used to describe the framework does not neatly track the plaintiff's summary-judgment task." *Hittle v. City of Stockton*, 145 S. Ct. 759, 761 (2025) (Thomas, J., dissenting from the denial of certiorari). Indeed, "a plaintiff need not establish or prove any elements—by a preponderance or otherwise—to survive summary judgment," because "[a]t that stage, he need only offer enough evidence to create a genuine dispute of material fact." *Id.*



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

discrimination based on transgender status.

Moreover, even in the employment discrimination context, the *McDonnell Douglas* framework is but one possible "*avenue* to demonstrate the defendant's illicit motive," it is not, however, "the end-all be-all" of what a plaintiff needs to show to survive summary judgment or prevail. *Ismael v. Roundtree*, 161 F.4th 752, 762 (11th Cir. 2025); *see also Hollis v. Morgan State Univ.*, 153 F.4th 369, 390 (4th Cir. 2025) (Quattlebaum, J., concurring) (noting the Supreme Court "has never said *McDonnell Douglas* is the only way a plaintiff can establish a Title VII claim through circumstantial evidence"); *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002) ("[I]t should be noted that questions of pretext may arise in any Title VII case, regardless of whether it is analyzed under *McDonnell Douglas*."), *aff'd*, 539 U.S. 90 (2003).

And "although the *McDonnell Douglas* burden shifting framework is a useful tool … nothing compels the parties to invoke the *McDonnell Douglas* presumption." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004) (citation and internal quotation marks omitted). Instead, "when responding to a summary judgment motion[,] [a] plaintiff may proceed by using the *McDonnell Douglas* framework, or alternatively, may simply produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated [the defendant]." *Miller v. Boys & Girls Clubs of Snohomish Cnty.*, No. C15-2027-JCC, 2017 WL 897811, at *5 (W.D. Wash. Mar. 7, 2017) (citation modified). Indeed, a plaintiff may present "a convincing mosaic of discriminatory intent" based on "more general evidence of discriminatory intent" even



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

if they cannot meet the narrow standard under *McDonnell Douglas*. *Ismael*, 161 F.4th at 762 & n.4.

Furthermore, BCBSIL ignores that Section 1557 prohibits *any* consideration of a person's transgender status in determining whether such person is entitled to health benefits.[5] As such, Plaintiffs need only demonstrate that a purpose to discriminate based on transgender status was a *motivating factor* – not the sole reason – for BCBSIL's adoption and implementation of the Exclusions. "[W]hen a discriminatory purpose has been a motivating factor in a[n] … actor's decision to enact a facially neutral policy that produces a discriminatory impact," such policy cannot be justified. *Sargent v. Sch. Dist. of Philadelphia*, 165 F.4th 727, 741 (3d Cir. 2026); *see also see Arlington Heights*, 429 U.S. at 266 ("[d]etermining whether invidious discriminatory purpose was a *motivating factor* demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.") (emphasis added). This applies in the statutory context, just as much as it does in the equal protection context. As Justice Gorsuch explained recently, "[t]he statutory phrase 'because of' does not require biological sex to be the only cause animating discrimination. Instead, that phrase merely requires biological sex to be one such cause." *W. Virginia v. B.P.J. by Jackson*, 146 S. Ct. 2356, 2383 (2026) (Gorsuch, J., concurring). The *McDonnell Douglas* framework "is fatally inconsistent with the mixed-

[5] Notably, and understandably given the binding caselaw, BCBSIL does not dispute that "'discrimination based on … transgender status necessarily entails discrimination based on sex.'" *Pritchard*, 159 F.4th at 669 (quoting *Bostock*, 590 U.S. at 669).



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

motive theory of discrimination." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1237 (11th Cir. 2016); *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 321 (2025) (Thomas, J., concurring) ("The Court has also held that the framework does not apply in Title VII mixed-motive cases." (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989)). Here, two things can be true at once, that BCBSIL designed, adopted, and administered the Exclusions to effectuate discrimination against transgender persons and that BCBSIL does so to protect its bottom line.

In sum, BCBSIL's attempts to cabin the Court's analysis to the *McDonnell Douglas* framework are misguided and the Court should reject them.

**C. Even if the *Mcdonnell Douglas* Framework Applied to this Case, BCBSIL Would Not Be Entitled to Summary Judgment.**

Even if the Court were to analyze pretext under the *McDonnell Douglas* framework (and it should not) BCBSIL would not be entitled to summary judgment. Importantly, when courts "apply *McDonnell Douglas* at summary judgment, they must modify the framework to match the applicable legal standard." *Ames*, 605 U.S. at 323 (Thomas, J., concurring); *see also Hollis*, 153 F.4th at 393 (Quattlebaum, J., concurring) ("Of course, if *McDonnell Douglas* is used at summary judgment, courts should apply Rule 56's standard … Courts should only require a plaintiff to create a genuine dispute of material fact as to the *McDonnell Douglas* factors—not to prove them.").

Here, Plaintiffs easily meet the *McDonnell Douglas* framework's "initial burden" of "establishing a prima facie case" by producing enough evidence to support an



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

inference of discriminatory motive. *McDonnell Douglas*, 411 U.S. at 802.[6] Indeed, this first step "is not onerous." *Ames*, 605 U.S. at 308 (cleaned up).[7] Here, it is undisputed that Plaintiffs: (1) are members of a protected class (*i.e.*, transgender enrollees); (2) were qualified for the health benefits (*i.e.*, they were/are enrollees in BCBSIL-administered health plans); and (3) experienced an adverse action by BCBSIL (*i.e.*, they were excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of healthcare services). Furthermore, Plaintiffs have shown that (4) other enrollees are provided coverage for the same services that they are denied, *see, e.g.*, Dkt. 85-5, at 124:24-125:5, 127:5-22 (mastectomies and Vantas implants covered when provided for another diagnosis), as well as documented "circumstances surrounding" BCBSIL's actions that "give rise to an inference of discrimination" based on transgender status (and therefore sex). *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 847 (9th Cir. 2004); *see also* Section I.A, *supra*; *cf. Hittle v. City of Stockton*, 101 F.4th 1000, 1012 (9th Cir. 2024) ("A plaintiff may demonstrate an inference of discrimination through comparison to similarly situated individuals, or any other circumstances surrounding the adverse employment action that give rise to an inference of discrimination." (citation modified), *cert. denied*, 145 S. Ct. 759 (2025).

---

[6] Again, in opposing summary judgment, "[t]here's no need for a plaintiff to show—i.e., prove—elements of the prima facie case." *Hollis*, 153 F.4th at 392 (Quattlebaum, J. concurring).

[7] It is "widely recognized that the [*McDonnell Douglas*] test is a flexible one," *McGinest*, at 1122 n.17, and that it is "adaptable to different factual situations," *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075 (9th Cir. 1986).



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

As to step two under *McDonnell Douglas*, which shifts the burden to BCBSIL to "articulate some legitimate, nondiscriminatory reason for the challenged action," BCBSIL cannot meet its burden. *Hittle*, 101 F.4th at 1012. The only reason that BCBSIL has proffered is that it is doing its customers' bidding. *See* Dkt. 235, at 12-13. But, as noted, "it is well settled that customer preference can never be the basis for discrimination." *Barton*, 140 Misc. 2d at 563, 531 N.Y.S.2d at 985; *see also* Section I.A, *supra*. Moreover, the Ninth Circuit has already addressed BCBSIL's specific argument as to its motivations, ruling that "intentional discrimination based on sex violates Section 1557, *even if intended only to comply with the terms selected by the plan sponsor*." *Pritchard*, 159 F.4th at 664 (emphasis added). And importantly, the Ninth Circuit explicitly held that BCBSIL has forfeited any argument that Plaintiffs failed to show that it acted with discriminatory intent. *Id.* at 663-64.

And, as to the third step, even assuming *arguendo* that BCBSIL has proffered a legitimate, nondiscriminatory reason for its design, adoption, and administration of the Exclusions, "the question for the court cannot be whether the plaintiff has proved by a preponderance of the evidence that the legitimate reasons offered by the defendant were a pretext for discrimination." *Ames*, 605 U.S. at 323 (Thomas, J., concurring) (citation modified, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Rather, Plaintiffs "need only present sufficient evidence to create a genuine dispute as to whether [BCBSIL's] stated reason was pretextual." *Id.* And here, for the reasons outlined



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

in Section I.A, *supra*, to the extent *McDonnell Douglas* applies, there is a genuine dispute as to whether BCBSIL's proffered reason is genuine.

**D. The Court Should Reject BCBSIL's Plea for this Court to Evade the Questions the Ninth Circuit Has Identified for Consideration on Remand.**

In its motion, BCBSIL ask this Court to forgo addressing the questions the Ninth Circuit identified under the misbegotten theory that Plaintiffs forfeited any pretext/proxy arguments because they did not plead a "discriminatory motive" and "did not make any allegations as to the 'true reasons'" of the exclusion. Dkt. 235, at 11; *id.* at 15. The Court should reject BCBSIL's plea, as it is wrong both as a matter of law and a matter of fact.

As a matter of law, district courts are not free to ignore the mandate of an appellate court in a given case. Here, the Ninth Circuit was clear: "On remand, the district court will have the opportunity to consider the issues potentially left open by *Skrmetti* and to conduct further proceedings consistent with our opinion." *Pritchard*, 159 F.4th at 673; *see also id.* 664 n.11 ("[O]n remand, the district court ***will consider*** two arguments: whether BCBSIL adopted a policy that looked to class members' transgender status rather than their gender-dysphoria diagnoses and whether BCBSIL discriminated based on gender-dysphoria treatment as a pretext/proxy for anti-transgender discrimination."). The Ninth Circuit has made clear this Court should address these questions on remand; it is inappropriate for BCBSIL to suggest that the Court should sidestep them.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

As a matter of fact, Plaintiffs did not forfeit their pretext/proxy theory. Throughout this case, Plaintiffs have argued that BCBSIL's use of gender dysphoria has been a proxy for transgender status. *See*, *e.g.*, Dkt. 20 (Opp'n to Mot. to Dismiss) (filed Mar. 31, 2021) at 10-11 ("Discrimination based on gender dysphoria is inextricably based on transgender status, such that ***the categorical exclusion at issue here***, of all treatment 'related to gender reassignment surgery' and by its terms encompassing more than just surgery, ***is a proxy for discrimination on the basis of transgender status***."); Plaintiffs' Answering Brief (Doc. 42.1) at 24-27, *Pritchard*, No. 23-4331 (9th Cir., filed June 12, 2024) (arguing that "discrimination based on gender dysphoria is a ***proxy*** for discrimination based on transgender status") (emphasis added); Plaintiffs' Suppl. Brief (Doc. 91.1) at 5, *Pritchard*, No. 23-4331 (9th Cir., filed July 9, 2025) (arguing that "the Exclusions are a form of discrimination by ***proxy***" and that "BCBSIL's post-litigation justifications are a pretext for 'invidious discrimination'") (emphasis added). The Ninth Circuit acknowledged this. *See Pritchard*, 159 F.4th at 671 ("Plaintiffs argue that BCBSIL's justifications for its actions 'are a pretext for 'invidious discrimination.'' Their argument is based on a proxy-discrimination theory."). Even BCBSIL's briefing at the Ninth Circuit acknowledges Plaintiffs' claim. *See* Appellants' Reply Br. (Doc. 68.1) at 40, *Pritchard*, No. 23-4331 (9th Cir., filed Aug. 2, 2024) ("Plaintiffs claim that varying coverage based on the gender dysphoria diagnosis is … facially a 'proxy' for discrimination based on transgender status."). A theory that the Ninth Circuit recognized as viable, live issue and that it remanded to the district court for consideration is not forfeited. *See, e.g.*, *Odima v. Westin*



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995) (quoting *Firth v. United States*, 554 F.2d 990, 993-94 (9th Cir. 1977)).

**E. BCBSIL's Reliance on *Anderson v. Crouch* Is Misplaced.**

BCBSIL relies on *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026), to argue that this Court must ask if there is a nondiscriminatory basis for the proxy. Dkt. 235, at 17. But the proxy test BCBSIL invites this Court to use is not the law of the Circuit and is not the test actually used when considering statutory discrimination claims, even by the *Anderson* court. Mistakenly, BCBSIL would have this Court adopt *Anderson*'s ***Equal Protection Clause*** proxy analysis here, along with its requirement that the challenged proxy must be "inexplicable on grounds other than an intent to discriminate against a suspect class[,]" even though *Anderson* did not apply that test to the Section 1557 claim. 169 F.4th at 490 (citing, *inter alia*, *Feeney*, 442 U.S. at 272). Importantly, when the Fourth Circuit reached the Section 1557 claim, it did not apply a proxy standard.

*First*, *Anderson* is an out-of-circuit decision that does not bind the Court.

*Second*, under the binding precedents in this Circuit, proxy discrimination is itself a form of facial discrimination. *See Pritchard*, 159 F.4th at 664 n.11; *see also Davis*, 932 F.3d at 837; *Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 177 (3d Cir. 2005). And if Plaintiffs succeed in proving facial discrimination via proxy, including through a showing of pretext, "no greater proof of mental state is necessary because intentional discrimination is synonymous with discrimination resulting in disparate treatment." *Pritchard*, 159 F.4th at 664 (citation modified). For facial discrimination, courts consider



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

the explicit terms of the discrimination, not why it is allegedly justified. *See Int'l Union v. Johnson Controls*, 499 U.S. 187, 199 (1991).

Indeed, Title IX "prohibits a recipient of federal funds from intentionally treating any individual worse even in part because of" sex "and without regard to any other reason or motive the recipient might assert." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 290 (2023) (Gorsuch, J., concurring) (discussing Title VI, upon which Title IX was modeled). As such, "a recipient of federal funds may never discriminate," *id.*, on the basis of sex under Title IX and facial sex discrimination cannot be immunized by an alleged nondiscriminatory justification. *See, e.g.*, *Cmty. Servs., Inc.*, 421 F.3d at 177; *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) (policy excluding service dogs or wheelchairs would be discrimination based on disability, "even if the stated purpose of the policy were a benign one"); *Gerdom v. Cont'l Airlines*, 692 F.2d 602, 608 (9th Cir. 1982). Applying *Anderson*'s Equal Protection Clause proxy analysis to this *statutory* discrimination case would conflict with these binding precedents.[8]

*Third*, *Anderson* was about a state's Medicaid cost-rationing program, and the court repeatedly credited the state's "legitimate, nondiscriminatory reasons … including cost and efficacy concerns." 169 F.4th at 490–491. A private insurer administering

[8] *Anderson* also arguably conflicts with binding equal protection precedents as it reduces proxy discrimination to mere rational basis review, such that heightened scrutiny can never be applied to law or policy that discriminates based on a protected characteristic via proxy. This is, however, counter to precedent. *See*, *e.g.*, *Rice v. Cayetano*, 528 U.S. 495, 509-10 (2000); *Guinn v. United States*, 238 U.S. 347, 364-65 (1915).



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

federally assisted commercial coverage advances no comparable sovereign interest in protecting public funds. And as noted, BCBSIL's reasons are *irrelevant* if Plaintiffs succeed in demonstrating proxy discrimination, including through pretext.

*Fourth*, *Anderson*'s premise that "legitimate, nondiscriminatory explanations for the [insurance] [e]xclusion exist" is absent here. 169 F.4th at 490. Rather, unlike *Anderson* where West Virginia offered cost and medical-evidence justifications for its Medicaid exclusion, BCBSIL is not offering any justifications based on cost or medical necessity. *See* Gonzalez-Pagan Decl., *Ex. A* at 6 (renouncing any cost or medical/scientific justification for the exclusions). Indeed, BCBSIL has conceded medical necessity. *See Pritchard*, 159 F.4th at 672 (9th Cir. 2025) ("Because BCBSIL admits [gender-affirming care] treatments are sometimes necessary, it cannot justify its categorical exclusion by citing medical necessity.").

Simply put, *Anderson* has no bearing on this case.

**F. BCBSIL Has Waived and Forfeited Any Spending Clause Defense.**

In its Renewed Motion for Summary Judgment, BCBSIL makes a last-ditch plea that "BCBSIL did not have 'adequate notice, when [it] accepted federal funding,' that its TPA activities were within the scope of Section 1557 and so did not consent to liability for such activities." Dkt. 235, at 19. This argument is foreclosed. The Ninth Circuit has made clear that "BCBSIL waived this argument by failing to raise it in its opening brief" on appeal and "forfeited this argument by failing to make it to the district court" previously. *Pritchard*, 159 F.4th at 660.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

It is well-settled that "[w]hen the district court addresses a case on remand, the 'law of the case' generally requires it to confine its discussion to the issues remanded." *United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001); *see also Campbell v. United States*, 878 F.2d 385 (9th Cir. 1989) ("The law of the case doctrine precludes a district court from reconsidering on remand any issues decided explicitly or by necessary implication by the Court of Appeals."). Likewise, "the waiver doctrine … holds that an issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand." *Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011).

Here, the Ninth Circuit already *expressly* ruled that BCBSIL waived and forfeited its Spending Clause argument. It simply is not a live issue on remand, which is limited, and the Court need not consider it.

BCBSIL reasons that its argument may be resurrected on remand because the Ninth Circuit did not address it "on the merits." Dkt. 235, at 19. Not so. Waiver and forfeiture are not merely procedural quirks that may be ignored; to the contrary, they represent a permanent foreclosure on relitigating an issue even if the appellate court never addressed the argument on the merits.[9] Indeed, "where an issue was ripe for review at the time of an initial appeal but was nonetheless foregone, it is considered

---

[9] BCBSIL argues that the Ninth Circuit's decision was not permanent, citing *United States v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000), for the notion that "mandates require respect for what the higher court decided, not for what it did not decide." But the Ninth Circuit *did* decide: the argument was waived and forfeited. *Pritchard*, 159 F.4th at 660-61.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

waived and the law of the case doctrine bars the district court on remand … from reopening such issues unless the mandate can reasonably be understood as permitting it to do so." *United States v. Quintieri*, 306 F.3d 1217, 1229 (2d Cir. 2002) (citation modified); *see also id.* at 1225 ("The 'mandate rule' ordinarily forecloses relitigation of all issues previously waived by the defendant or decided by the appellate court."); *Bradley v. Vill. of Univ. Park, Illinois*, 59 F.4th 887, 896 (7th Cir. 2023) ("When a party explicitly waives an issue, that waiver shapes the law of the case and the scope of any remand. Put another way, an issue or argument that a party has waived permanently, and not solely for purposes of appeal, is simply not part of a remanded case."); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1357 (Fed. Cir. 2009) (holding that pursuant to the mandate rule a defendant could not raise defenses on remand that were deemed waived or forfeited by the court of appeals because the defendant did not previously pursue them at trial or properly raise them on the initial appeal); *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 481 (4th Cir. 2007) ("The [mandate] rule forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." (citation modified)); *Shell Oil Co. v. United States*, 123 Fed. Cl. 707, 721 (2015) ("[T]he court has determined that the Government's insurance offset is an affirmative defense that the Government has knowingly waived and consideration thereof at this late juncture would exceed the scope of the mandate."), *aff'd*, 896 F.3d 1299 (Fed. Cir. 2018). To do otherwise would incentivize parties to treat remands as "do-overs" and waste limited judicial



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

resources. *See Brown v. Rawson-Neal Psychiatric Hosp.*, 840 F.3d 1146, 1149 (9th Cir. 2016). BCBSIL cannot evade its failure to assert a Spending Clause argument four years ago in this Court or later before the Ninth Circuit by treating this limited remand as a fresh slate.

BCBSIL's final effort is a plea that it would be unjust for the Court to hear Plaintiffs' pretext/proxy argument but not its waived/forfeited Spending Clause argument, wrongly asserting that Plaintiffs also forfeited their argument.[10] Dkt. 235, at 19. BCBSIL's framing overlooks the clear parameters for and purpose of this remand as dictated by the Ninth Circuit: to determine if BCBSIL discriminated based on gender dysphoria as a proxy for transgender discrimination. *Pritchard*, 159 F.4th at 664 n.11. It also overlooks that the Ninth Circuit expressly barred their Spending Clause argument. *Id.* at 660-61. The Ninth Circuit was explicit, and BCBSIL's distorted understanding of that court's ruling cannot change the scope of the remand to this Court.

Regardless, BCBSIL's Spending Clause argument holds no merit. True, Spending Clause legislation must give recipients "clear notice" of the conditions attached to federal funds. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 220–22 (2022). But the conditions imposed by Section 1557 are not obscure. The text of Section 1557 is pellucidly clear. Section 1557 plainly covers "any health program or activity, ***any part of which is receiving Federal***

---

[10] As noted, Plaintiffs have not forfeited their pretext/proxy argument. *See* Section I.D., *supra*.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

***financial assistance***." 42 U.S.C. § 18116(a) (emphasis added). There is no ambiguity here. *See Cummings*, 596 U.S. at 218 (Section 1557 prohibits discrimination "by healthcare entities receiving federal funds"). *Cf. Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 553-54 (3d Cir. 2017) (rejecting argument that "education programs or activities" should be read to apply to "educational institutions" only).

BCBSIL also had notice based on the caselaw. In *Tovar*, the Eighth Circuit determined that a third-party administrator that received "claims, complaints, and appeals of claim denials" for an enrollee's employer-sponsored health plan is a proper defendant in a Section 1557 discrimination suit. *Tovar v. Essentia Health*, 857 F.3d 771, 778-79 (8th Cir. 2017). In other words, as long as the third-party administrator is involved "in the administration of the plan," it may be liable. *Id.* So had the U.S. District Court for the Western District of Wisconsin. *See Boyden v. Conlin*, 341 F. Supp. 3d 979, 998 (W.D. Wis. 2018) (finding defendant liable under Section 1557 for administration of plans for employees based on its receipt of Medicare subsidies). And the Ninth Circuit had implicitly held as much, when it confirmed that a Section 1557 claim may be pursued against a covered entity that administers a benefit design that results in discrimination. *See Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1212 (9th Cir. 2020). Of course, BCBSIL had such notice – that is why it insisted on indemnification before it would administer any of the exclusions. Dkt. 160-3, at 8:22-12:3.

In any event, it is Congress (not HHS) that placed this clear condition on federal financial assistance. BCBSIL makes much of the political zigzag between



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

administrations. But no executive agency may override via regulation the clear terms of a Congressionally-enacted statute. It is a fundamental principle that "an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 328 (2014). And because the statute set out the conditions of which BCBSIL complains "unambiguously," BCBSIL can be held liable for its activities as a third-party administrator. *Pennhurst*, 451 U.S. at 17.

**G. BCBSIL Applied the Exclusions to Plaintiff S.L. Because of Her Sex.**

BCBSIL erroneously asserts for the first time that the record does not indicate that BCBSIL denied coverage to an enrollee with a secondary diagnosis that warranted treatment. Dkt. 235, at 16.[11] The Ninth Circuit saw the issue differently. It wrote that Plaintiff S.L. was diagnosed with both gender dysphoria and precocious puberty, BCBSIL denied coverage of medical care to treat either condition, and during the appeals process BCBSIL Membership Services told S.L.'s mother that BCSIL would have likely covered the care if S.L. only had a precocious puberty diagnosis absent her gender dysphoria diagnosis. *Pritchard*, 159 F.4th at 671; Dkt. 176, ¶¶ 9-13; Dkt. 97-3, at 22; Suppl. S.R. Decl. ¶¶ 5-6, 12, 14.

Here, despite S.L.'s qualifying diagnosis of precocious puberty, BCBSIL denied her healthcare coverage because she is transgender. It is no mystery why BCBSIL now

[11] This argument ignores (1) BCBSIL's ownership of all relevant information and (2) that the uniform application of the Exclusion will prejudice claims data as any gender dysphoria code will result in an automatic denial.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

raises a "Hail Mary" argument that S.L. did not present a qualifying diagnosis, despite what the record demonstrates.

BCBSIL claims that the record does not prove that BCBSIL denied S.L. coverage because of her gender dysphoria diagnosis because one of its records lists S.L.'s "Primary Diagnosis" as "F64.2 – Gender identity disorder of childhood," and that S.L.'s appeal letter does not identify precocious puberty as a submitted diagnosis. However, BCBSIL's provided records are incomplete. *See* Dkt. 242; Dkt. 242-1. These documents are not the claims, adjudications, denials, or appeals of S.L.'s claim; rather, they are merely two they are two screen shots from BCBSIL's utilization-management system, each of which records a single "Primary Diagnosis"; and each of which, on its face, shows approval for the requested treatment as "Criteria Met." *Id*. They do not establish that no provider ever communicated a diagnosis of precocious puberty to BCBSIL, or that BCBSIL did not know about the precocious puberty diagnosis. In fact, the records show the contrary as noted below. *See infra*. In any event, a system screen shot from BCBSIL's utilization management software bearing a single diagnosis is not proof that BCBSIL was told of only one diagnosis. Treating these incomplete documents as the complete record of S.L.'s health would be illogical.

The record in this case establishes that BCBSIL knew of S.L.'s precocious puberty diagnosis. S.L.'s mother testified that BCBSIL Membership Services told her that had S.L. been diagnosed *only* with early-onset puberty (*i.e.*, not gender dysphoria *and* early-onset puberty), BCBSIL would have likely covered the puberty blocker. Dkt. 176, ¶ 13; Suppl.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

S.R. Decl. ¶¶ 8, 11, 12, 14.[12] Indeed, the screen shots from BCBSIL's utilization-management system note that the request for puberty delaying medication for S.L. "appears to meet criteria per Blue Cross Blue Shield Illinois Medical Policy RX501.041 (Gonadotropin-Releasing Hormone (GnRH) Agonists and Antagonists)." Dkt. 242, *Exh. A,* at BCBSIL_CP_0023625 (under comment dated 2/21/2022 at 3:45 pm, identifying that S.L.'s treatment met the criteria for BCBSIL Medical Policy RX501.041); *see also* Gonzalez-Pagan Decl., *Ex. B* at 3-4, 16-17, 18 (BCBSIL Medical Policy RX501.041 describes the approved use of Lupron and Supprelin to treat precocious puberty in children and notes their use to treat precocious puberty through age 11).[13] At no point throughout litigation has BCBSIL offered a contrary declaration or evidence. BCBSIL cannot, at the eleventh hour, claim that one incomplete record definitively proves that they were unaware of S.L.'s secondary diagnosis when Plaintiffs offer contradictory evidence.

At a minimum, this raises a genuine dispute of material fact sufficient to defeat BCBSIL's motion for summary judgment on this score.

## II. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Renewed Motion for Summary Judgment.

---

[12] BCBSIL dismisses that statement as "hearsay," Dkt. 235, at 19, but it is nothing of the kind: it is a statement of BCBSIL's own agent, made within the scope of their job, and so it is definitionally not hearsay. Fed. R. Evid. 801(d)(2).

[13] Based on BCBSIL's medical policy, an 11-year-old experiencing puberty like Plaintiff S.L. might require puberty blockers like Supprelin even without a diagnosis of gender dysphoria. *See* Suppl. S.R. Decl. at ¶ 7; Gonzalez-Pagan Decl., *Ex. B* at 3-4, 16-17, 18.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**Local Civil Rule 7(e)(6) Certification**

The undersigned counsel certify that the foregoing contains 7,574 words, in compliance with the Local Civil Rules.

DATED: October 9, 2026.

LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan, *Pro Hac Vice*
Charlie Ferguson, *Pro Hac Vice*
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585
ogonzalez-pagan@lambdalegal.org
cferguson@lambdalegal.org

Jennifer C. Pizer, *Pro Hac Vice*
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Tel. (213) 382-7600
jpizer@lambdalegal.org

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

*/s/ Eleanor Hamburger*
Eleanor Hamburger, WSBA #26478
Jeremiah Miller, WSBA #40949
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com
jmiller@sylaw.com

*Attorneys for Plaintiffs and the Class*