The Honorable David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

C. P., by and through his parents, Patricia Pritchard and Nolle Pritchard; S.L. by and through her parents, S.R. and R.L.; EMMETT JONES, each individually and on behalf of similarly situated others; and PATRICIA PRITCHARD, individually,

Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF ILLINOIS,

Defendant.

No. 3:20-cv-06145-DGE

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO AMEND THE CLASS CERTIFICATION ORDER TO EXCLUDE THE NINTH CIRCUIT'S REMAND ISSUES**

**ORAL ARGUMENT REQUESTED**

**Note on Motion Calendar:**
November 20, 2026



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## TABLE OF CONTENTS


TABLE OF CONTENTS ..... ii

TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

RELEVANT BACKGROUND ..... 3

A. BCBSIL designed, implemented, and administered exclusions for gender-affirming care uniformly across hundreds of health plans. ..... 3

B. BCBSIL's assertion that the class is improper on very similar grounds has already been rejected by the Court. ..... 4

ARGUMENT ..... 4

A. The class was properly certified four years ago; no intervening change in the law or facts justify disturbing certification. ..... 5

B. The existence of individual factual variations in this case does not support amendment or decertification. ..... 8

C. Proving pretext or proxy requires no individualized, plan-by-plan inquiry and is amenable to class-wide resolution. ..... 10

D. The alternative-qualifying-diagnosis method of proof is available to prove class claims. ..... 14

1. *Proving that BCBSIL denies coverage for those with a second qualifying diagnosis does not require individualized assessments.* ..... 14

2. *S.L. is a proper class representative for individuals denied coverage despite a second qualifying diagnosis.* ..... 15

CONCLUSION ..... 16




SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 2

*Anderson v. Crouch*,
169 F.4th 474 (4th Cir. 2026) .......... 12, 13

*Bates v. UPS*,
511 F.3d 974, 988 (9th Cir. 2007) .......... 11

*Davis v. Guam*,
932 F.3d 822 (9th Cir. 2019) .......... 13

*Dennis F. v. Aetna Life Ins.*,
No. 12–cv–02819–SC, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013) .......... 9

*Des Roches v. Cal. Physicians' Serv.*,
320 F.R.D. 486 (N.D. Cal. 2017) .......... 9

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .......... 5

*Hart v. Colvin*,
310 F.R.D. 427 (N.D. Cal. 2015) .......... 9

*Hartman v. United Bank Card, Inc.*,
291 F.R.D. 591 (W.D. Wash. 2013) .......... 5

*Int'l Union v. Johnson Controls, Inc.*,
499 U.S. 187 (1991) .......... 11, 13

*Latta v. Otter*,
771 F.3d 456 (9th Cir. 2014) .......... 11

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
330 F.R.D. 284 (S.D. Cal. 2019) .......... 5

*Pac. Shores Props., LLC v. City of Newport Beach*,
730 F.3d 1142 (9th Cir. 2013) .......... 10, 11, 12, 13

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 9

*Pritchard v. Blue Cross Blue Sheild of Ill.*,
No. 22-80136 (9th Cir. Jan 27, 2023) .......... 1

*Pritchard v. Blue Cross Blue Shield of Ill.*,
159 F.4th 646 (9th Cir. 2025) .......... *passim*



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ........ 13

*United States v. Skrmetti*, 605 U.S. 495 (2025) ........ 1, 14

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) ........ 11, 12

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ........ 7

*Washington v. Davis*, 426 U.S. 229 (1976) ........ 11

**RULES**

Fed. R. Civ. P. 23(c)(1) ........ 2

Fed. R. Civ. P. 23(c)(1)(B) ........ 3

Fed. R. Civ. P. 23(c)(1)(C) ........ 4

Fed. R. Civ. P. 23(f) ........ 1



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

## INTRODUCTION

The Court should deny Defendant Blue Cross Blue Shield of Illinois's ("BCBSIL") motion to "amend" the class certification order to "exclude" the two "questions *Skrmetti* potentially left open" and that the Ninth Circuit remanded to this Court – a remand that BCBSIL admits is limited to "only" those questions. Dkt. 236, at 1. The class was certified based on the common contention that BCBSIL's uniform policy to administer employer-provided health plans excluding gender-affirming medical treatment for enrollees diagnosed with gender dysphoria violates Section 1557 of the Affordable Care Act ("ACA"). *See* Dkt. 113. Neither *United States v. Skrmetti*, 605 U.S. 495 (2025), nor the Ninth Circuit's remand to this Court in *Pritchard v. Blue Cross Blue Shield of Ill.*, 159 F.4th 646 (9th Cir. 2025), requires a different result. Those decisions at most affect the class's method of prevailing on the ***merits***; neither disturbs ***certification***, which BCBSIL chose not to appeal.

The instant motion is most properly understood as BCBSIL's untimely second motion to decertify the class.[1] In granting certification under Rule 23 the Court found that the class was bound together by a "common contention;" namely that BCBSIL implements and administers exclusions for gender-affirming care ("exclusions") through a uniform policy. Dkt. 113, at 8–9. As the Court correctly observed, "[t]he class seeks to challenge this standard conduct." *Id*.

BCBSIL incorrectly reads the Ninth Circuit's order vacating ***summary judgment*** in this case based on *Skrmetti* but otherwise affirming this Court's other conclusions and rejecting every other argument made by BCBSIL amounted to an invitation to decertify

---

[1] BCBSIL states that the standard under which it moves "is the same as a motion for class certification," Dkt. 236, at 8 (citation modified), thus it is seeking decertification for the second time. BCBSIL previously sought interlocutory review of the certification order per Federal Rule of Civil Procedure 23(f), and the Ninth Circuit declined to accept review. *Pritchard v. Blue Cross Blue Sheild of Ill.*, No. 22-80136 (9th Cir. Jan 27, 2023). Nor did BCBSIL appeal class certification as part of its merits appeal.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

the class. But nothing in the Ninth Circuit's decision changes the nature of the BCBSIL's conduct and actions challenged here.

The Ninth Circuit's decision only had a singular effect: to prove that BCBSIL's uniform policy and practice to design, implement, and administer employer-provided self-funded plans with Exclusions amounted to sex discrimination, Plaintiffs may no longer, pursuant to *Skrmetti*, count on gender dysphoria *automatically* serving as a proxy for transgender status. Instead, Plaintiffs must show more. They can do so by showing either that the adoption of the proxy utilized by BCBSIL is pretext for purposeful discrimination based on transgender status (*i.e.*, the proxy/pretext theory) or that BCBSIL's administration of the Exclusions directly turned on transgender status such as by demonstrating denials of coverage notwithstanding a second qualifying diagnosis (*i.e.*, the second diagnosis theory). Put simply, the Ninth Circuit's order does not change the standard conduct that is being subjected to class treatment. Rather, it affects *how* Plaintiffs may show that the *same* conduct amounts to unlawful discrimination under Section 1557 of the ACA. BCBSIL's uniform practice of administering plans that exclude gender-affirming care and doing so through denying claims for treatment for gender dysphoria, the actual basis for certification, is undisputed, common to the class, and remains unchanged.

Ultimately, through its motion to "amend," BCBSIL invites a merits inquiry at the certification stage. But "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and a common question, even where its answer is disputed, is still a common question. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see* Fed. R. Civ. P. 23(c)(1) advisory committee's note to 2003 amendment ("an evaluation of the probable outcome on the merits is not properly part of the certification decision ...."). Class certification defines "the class claims, issues, or defenses;" it does not enumerate the arguments a class may use to prove or defeat them.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

Fed. R. Civ. P. 23(c)(1)(B). The motion to "amend" the class certification should be denied.

## RELEVANT BACKGROUND

### A. BCBSIL designed, implemented, and administered exclusions for gender-affirming care uniformly across hundreds of health plans.

BCBSIL presents itself as a passive administrator of nearly 400 disparate plans for employers with divergent contents and motives. Dkt. 236 at 3-5. The record shows otherwise. BCBSIL drafted the standard exclusion, 378 of 398 plans use BCBSIL's own template language, and it administers the exclusion on nothing more than the "personal preference of that particular client" without asking the employer for any justification. Dkt. 239 at 4–5. Tellingly, BCBSIL itself, after reviewing the available medical and scientific literature (including the World Professional Association for Transgender Health's Standards of Care), removed these exclusions from its own insured plan as inappropriate. *Id*. at 3-4.

What is more, BCBSIL decided to administer the Exclusions even though it had determined that administering such exclusions in its insured plans would have been discriminatory. Dkt. 189-7, at 2; *see also* Dkt. 85, at 46:17-21. Indeed, operating pursuant to that understanding, it only administers the Exclusions in self-funded plans once it has a special indemnification in place to protect itself from the legal and financial consequences of discrimination. Dkt. 160-3, at 8:22-12:3.

Put simply, far from having clean hands, BCBSIL has actively sought to discriminate based on transgender status if it helps its bottom line. And as Plaintiffs have explained in their summary judgment, its administration of the Exclusions through the use of a codes for gender dysphoria or gender reassignment is pretext for this purposeful discrimination, demonstrating that the codes are proxies for transgender status.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

### B. BCBSIL's assertion that the class is improper on very similar grounds has already been rejected by the Court.

In November 2022, over BCBSIL's objection that individual questions would drive the litigation, the Court certified a class of participants and beneficiaries in the self-funded plans BCBSIL administers that categorically exclude gender-affirming care, under Rule 23(a) and Rule 23(b)(1)(A), (b)(1)(B), and (b)(2). Dkt. 113 at 7–14.

BCBSIL had argued that the plans were too varied to present common questions and that C.P.'s claim was atypical, pointing to differences in plan language, the availability of alternative coverage, plans that had never denied a claim, and plan-specific defenses. Dkt. 93 at 8–15, 22–23. The Court rejected those contentions: the variations did not defeat commonality or typicality because the common contention was BCBSIL's uniform application of the exclusions, which operated regardless of plan language. Dkt. 113 at 9.

BCBSIL then moved to decertify. Dkt. 156. The Court denied that motion in December 2023, again finding that BCBSIL administers the exclusions uniformly, that the class challenges that standard conduct, and that "no further individualized inquiries or findings are necessary." Dkt. 206 at 7, 13. The Court granted the class declaratory and injunctive relief and ordered reprocessing. Dkt. 207. BCBSIL appealed but did not challenge class certification on appeal.

On appeal, the Ninth Circuit held BCBSIL bound by Section 1557, rejected its Religious Freedom Restoration Act and Spending Clause defenses, and vacated this Court's summary-judgment order in light of *Skrmetti*. *Pritchard*, 159 F.4th at 660–62, 672–73. It did not disturb class certification, and the mandate issued in January 2026. *See* Dkt. 227.

## ARGUMENT

Rule 23(c)(1)(C) permits a court to alter or amend a certification order "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). It does not, however, amount to an open invitation



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

to relitigate settled issues; a motion to revisit certification must demonstrate subsequent developments sufficient to disturb the decision. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). The standard for modifying or decertifying is the same as for certification: whether the Rule 23 requirements are met. *Ms. L. v. U.S. Immigr. & Customs Enf't*, 330 F.R.D. 284, 287 (S.D. Cal. 2019). Accordingly, as a threshold matter, courts modify a certification only in light of an actual subsequent development that bears on that inquiry. *See Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 597 (W.D. Wash. 2013) (parties seeking to amend a class "must show some justification for filing a second motion, and not simply a desire to have a second or third run at the same issues."). Nor does it matter that Plaintiffs, as the parties now defending certification, bear the Rule 23 burden. This Court already made the findings Rule 23 requires, after a rigorous analysis, twice and on a full record, Dkt. 113, at 7–14; Dkt. 206, and those findings remain untouched by subsequent developments in this case.

BCBSIL asks the Court to "amend" the certification order to declare two ***legal theories*** outside "the scope of the class certification." Dkt. 236, at 1, 2, 7, 19. Rule 23 contains no such device. A court certifies a claim and a common question. It does not enumerate the arguments or legal theories a plaintiff class may make to prove them.

Because nothing in the Ninth Circuit's remand of this case impacts this Court's prior, unappealed class certification findings, BCBSIL's motion should be denied.

### A. The class was properly certified four years ago; no intervening change in the law or facts justify disturbing certification.

Plaintiffs demonstrated that they satisfied Rule 23's requirements years ago and these requirements remain satisfied. This Court found numerosity per Rule 23(a)(1), because the class comprises "over 60 individuals (maybe as many as 1740)." Dkt. 113, at 7–8. It found typicality, per Rule 23 (a)(3), based on concluding that C.P.'s "injury is the same or is similar to other class members," BCBSIL's "conduct is not unique to Plaintiff



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

C.P.," and "[h]is claim is identical to the claims of the class." *Id.* at 11–12. Denying decertification, this Court found the later-added plaintiffs typical, holding that "S.L. is typical" and that "Mr. Jones, like S.L., is a typical class member for the portion of the class seeking prospective relief." Dkt. 206, at 7, 10. And it found adequacy, per Rule 23(a)(4), because "C.P. and his counsel will 'fairly and adequately protect the interests of the class,'" that "[t]here are no conflicts of interest with other class members," and that counsel would "prosecute the case vigorously." Dkt. 113, at 12–13. In denying the motion for decertification, this Court found that S.L. and Mr. Jones were adequate class representatives. Dkt. 206, at 7, 10.

The Court found commonality, per Rule 23(a)(2) based on a single "common contention": "that a third-party administrator… that is subject to… Section 1557 anti-discrimination provisions cannot permissibly 'administer discriminatory exclusions of gender-affirming care contained in ERISA self-funded plans.'" *Id*. at 8. That contention is "capable of classwide resolution," because determining "its truth or falsity will resolve an issue that is central to the validity" of the claims "in one stroke." *Id.* The Court cited BCBSIL's own testimony that 'it administers exclusions consistently," reviewing each claim's "diagnosis code" and "procedural code" and denying coverage when "the services are for gender reassignment," and concluded that "[t]he class seeks to challenge this standard conduct." *Id.* at 9.

This Court further found that this class action could be maintained on three separate grounds. It held that because BCBSIL "as an ERISA fiduciary, is obligated to apply plan provisions consistently with respect to similarly situated enrollees," and hundreds of enrollees "could file suit… [m]ultiple suits would create a risk of 'inconsistent or varying adjudications' resulting in 'incompatible standards of conduct' for" BCBSIL, satisfying Rule 23(b)(1)(A). Dkt. 113 at 14. It also concluded that "independent adjudications" as to whether BCBSIL is subject to Section 1557 as a third-



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

party administrator "as a practical matter, 'would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests,'" satisfying Rule 23(b)(1)(B). *Id.* Finally, this Court held that because the "class seek[s] declaratory and injunctive relief from" BCBSIL's "practice of administering exclusions for gender affirming care… [i]ndividualized inquiries are unnecessary…." *Id.*[2]

Notably, BCBSIL's motion addresses only commonality under Rule 23(a)(2) and cohesion under Rule 23(b)(2). *See* Dkt. 236 at 2 (arguing (wrongly) that "determining pretext or proxy discrimination" is not compatible with "Rules 23(a)(2) and 23(b)(2)"). BCBSIL's motion says nothing at all about Rule 23(b)(1)(A) or (b)(1)(B), each of which independently supports classwide adjudication here and neither of which turns on the purported individualized inquiries that BCBSIL posits. A motion that ignores two of the three certification grounds that the Court has determined have been met (*see* Dkt. 113 at 14; Dkt. 203 at 2; and Dkt. 207 at 10) untouched cannot support the relief it seeks.

In any event, this Court correctly concluded that "Rule 23(b)(2) requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." Nothing in the formation or certification of the class turned on how Plaintiffs might prove that BCBSIL's decision to administer plans with Exclusions and the standard practice it utilizes when doing so might violate Section 1557, the only proper

[2] BCBSIL obliquely suggests that the evidence in this case would not satisfy *Wal-Mart*'s requirement for "significant proof" that it "operated under a general policy of discrimination." Dkt. 236, at 12 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 353 (2011)). This case presents exactly the "significant proof" *Wal-Mart* requires: BCBSIL's standard practice is facial and is established by the defendant's own admitted, uniform practice of screening codes and denying coverage. The "glue" is the practice itself, which BCBSIL concedes it applies the same way to every plan. *Compare Wal-Mart*, 564 U.S. at 353 (no significant proof of a general policy of discrimination where the class's theory was built on thousands of discretionary supervisory decisions, not uniform practice.).



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

subject of the Ninth Circuit's remand in this case. The remand did not shrink the class, render any named Plaintiff's denial atypical, or cast doubt on Plaintiffs' or counsels' adequacy.

And, critically, though BCBSIL repeatedly asserts that the Ninth Circuit rejected Plaintiffs' theory that a standard practice is responsible for the denial of class members' coverage, Dkt. 236, at 1, 9, the *Pritchard* opinion contains no such holding. Indeed, the *Pritchard* court accepted that BCBSIL had a standard practice of denying claims based on diagnostic and service codes indicating gender reassignment. 159 F.4th at 665. The Ninth Circuit's remand only affected *how* Plaintiffs may prove that the challenged conduct amounts to unlawful discrimination under Section 1557 (*i.e.*, what is needed to prove the class's claims on the ***merits***), it did not change anything at all pertaining to what is necessary for class certification under Rule 23.

**B. The existence of individual factual variations in this case does not support amendment or decertification.**

At the core of its Motion, BCBSIL claims that reaching the merits will require individualized fact-finding that makes a Rule 23 class inappropriate. BCBSIL is incorrect. Variations in plan design, language, or the individual diagnoses of plan participants and beneficiaries are not relevant to Rule 23(a) prerequisites or Rule 23(b)(1)(A), (b)(1)(B), or (b)(2), the bases on which the class was certified.

BCBSIL argues that the plans "contain materially different exclusions, and reflect different benefit-design choices, including religious and cost considerations," so that proof would be plan specific. Dkt. 236, at 2, 14–15. Similarly, BCBSIL argues that "whether [an] alternative diagnosis actually support[s] a different resolution of the claim depends on individualized medical proof." *Id.* at 16.

These variations were previously raised and rejected in the certification and decertification motions, and BCBSIL did not raise any of these issues when the case was



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

appealed to the Ninth Circuit. Importantly, the class did not ask this court to adjudicate the medical necessity of any patient's care. Dkt. 99 at 4; see *id*. (citing *Dennis F. v. Aetna Life Ins.*, No. 12–cv–02819–SC, 2013 WL 5377144 (N.D. Cal. Sept. 25, 2013)). The challenged harm is "one of process, not outcome," *Hart v. Colvin*, 310 F.R.D. 427, 435 (N.D. Cal. 2015), so "harm and causation can be resolved on a class-wide basis," *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 499 (N.D. Cal. 2017) (citation modified). Resolving whether BCBSIL's uniform administration of a facial exclusion is unlawful "does not require [the Court] to determine the effect of [that policy] upon any individual class member . . . or to undertake any other kind of individualized determination." *Parsons v. Ryan*, 754 F.3d 657, 678 (9th Cir. 2014). This Court has so held, finding "[i]ndividualized assessments are not required," Dkt. 113, at 10, and that "no further individualized inquiries or findings are necessary," Dkt. 206, at 13, because the relief the class seeks requires BCBSIL itself to reprocess the denied claims "without discrimination," providing coverage only "when[] medically necessary and meeting other terms and conditions under the relevant plans …." *Id.*; Dkt. 113, at 10. Whatever the variations in plans or patient diagnoses, if the class proves that BCBSIL's standard practice violates Section 1557 of the ACA, class wide relief is both possible and appropriate.[3] The theory used to prove such violation is therefore irrelevant to class certification concerns; it simply goes to the merits of the claims.

---

[3] BCBSIL's claim that certification through Rule 23(b)(2) is inappropriate because a single injunction cannot offer relief where proof violations would have to be plan specific, Dkt. 236 at 13, is wrong. Rule 23(b)(2)'s cohesion requirement is satisfied here for the same reason it was at certification. The class seeks one indivisible remedy: an injunction against BCBSIL's standard practice of administering the exclusions and an order directing non-discriminatory reprocessing of the affected claims. Dkt. 113 at 14; Dkt. 207. That relief runs to the class as a whole and does not vary plan by plan, because it operates on the uniform practice, not on any member's individual claim. Dkt. 206 at 13. BCBSIL's assertion that the injunction would be "divisible" simply restates its individualized-inquiry argument, which this Court has twice rejected.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**C. Proving pretext or proxy requires no individualized, plan-by-plan inquiry and is amenable to class-wide resolution.**

BCBSIL's Motion depends, in large part, on an assertion that proving pretext or proxy in the context of a Section 1557 claim requires individualized inquiries into the motives of the employers who fund the plans. Dkt. 236, at 11–16. This assertion is wrong.

Plaintiffs are not challenging employers' decisions to adopt the Exclusions in their plans. An individualized inquiry into employers' motives is thus not necessary nor particularly relevant. Rather, Plaintiffs challenge BCBSIL's decision to administer plans with Exclusions and the standard practice it utilizes when doing so. Thus, any proxy or pretext inquiry is focused on BCBSIL and the totality of facts and circumstances related to its standard conduct. The answers to these questions are common to the Class and require no individualized, plan-by-plan inquiry.

BCBSIL's argument that proxy discrimination proven through pretext cannot be facial discrimination is meritless. In the Ninth Circuit, proxy discrimination is a form of facial discrimination. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n.23 (9th Cir. 2013). And, ***in this case***, the Ninth Circuit has already held that a proxy theory for discrimination based on transgender status is "facial discrimination" for which "no further proof of intent is needed." *Pritchard*, 159 F.4th at 664 & n.11.

To be sure, BCBSIL's motives may help prove that the proxy at issue was adopted as a pretext for purposeful discrimination based on transgender status. However, that does not mean that such evidence is *necessary* to prove proxy or pretext. Indeed, facial discrimination requires no individualized state-of-mind inquiry, no comparator, and no *McDonnell Douglas* burden-shifting. *Pac. Shores. Props.*, 730 F.3d at 1158; *see Bates v. UPS*, 511 F.3d 974, 988 (9th Cir. 2007) (*en banc*) (a "burden-shifting protocol is, however, unnecessary" where "[t]he fact to be uncovered … whether the employer made an employment decision on a proscribed basis … is not in dispute."); *see Latta v. Otter*, 771 F.3d 456, 468 (9th Cir. 2014) (a proffered justification does not overcome facial



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

discrimination). Whether a policy discriminates by its terms "does not depend on why the [defendant] discriminates but rather on the explicit terms of the discrimination." *Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 199 (1991).[4]

Moreover, the class may prove proxy discrimination and pretext in ways that turn on evidence common to the class. In this context, a discriminatory purpose may be adduced from the "totality of the relevant facts," *Washington v. Davis*, 426 U.S. 229, 242 (1976), and weighing those facts "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). As Plaintiffs explain in their motion for summary judgment, courts and enforcement agencies look to several factors or indicators to adduce whether a purported facially neutral policy was adopted discriminatory purpose. *See* Dkt. 239, at 24-25.

First, as the Ninth Circuit has already stated in this case, a "crucial question is whether the proxy's fit is sufficiently close to make a discriminatory inference plausible" and here "only transgender people can suffer from gender dysphoria." *Pritchard*, 159 F.4th at 672 (citation modified). And while fit, by itself, may not establish facial proxy discrimination after *Skrmetti* and *Pritchard*, what matters here is that "fit" is one of the factors that courts look to in determining whether there is proxy discrimination at play and that it is established by evidence common to every class member. Thus, here, Plaintiffs may show that the challenged criterion driving the standard practice here (codes for gender dysphoria or gender-reassignment) is so closely associated with

---

[4] Relatedly, BCBSIL asserts that the class "disclaimed any inquiry into motive at certification." Dkt. 236 at 12. Not so. What the class asserts is that the individual motives of employers were not relevant; rather, BCBSIL's uniform conduct across all plans, administering Exclusions denying coverage for gender-affirming care formed and remains the gravamen of the case. Dkt. 99 at 8. This Court agreed, holding that "variations in the plans do not defeat commonality" because BCBSIL administers the challenged exclusions "consistently" across its plans. Dkt. 113 at 9. The class's focus on "process, not outcome," Dkt. 99 at 9, is mis-cited by BCBSIL; that statement goes to the remedy of reprocessing, not the proof of liability.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

transgender status that discrimination is "constructively, facial discrimination." *Pac. Shores Props.*, 730 F.3d at 1160 n.23.

The class may also show that the exclusion is a proxy or pretext for discrimination against transgender persons through additional factors, such as the policy's impact and foreseeability, its historical background, the sequence of events leading to its adoption, and the availability of less discriminatory alternatives. *Pac. Shores. Props.*, 730 F.3d at 1159 (citing *Arlington Heights*, 429 U.S. 266–68). Plaintiffs have outlined each of those factors at length in their motion for summary judgment (Dkt. 239, at 24-33) and in their contemporaneously filed opposition to BCBSIL's renewed motion for summary judgment (at pp. 1-10). Such facts concern BCBSIL's own uniform conduct – how it designed, adopted, and administers the exclusions – and not the motive of any individual employer or the circumstances of any individual claim. In other words, none of this proof varies by plan or patient; all of it concerns BCBSIL's own conduct and is classwide.

In addition to (wrongly) asserting that evidence necessary to show proxy/pretext varies based on plan-to-plan differences, BCBSIL relies on *Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026), to argue that "Plaintiffs must show that the distinctions based on the claim's diagnostic code 'both overwhelmingly affect[] a [protected] class and there's no logical reason for the distinction[s] … other than targeting that [protected] class.'" Dkt. 236, at 12 (quoting *Anderson*, 169 F.4th at 484). Not so. As Plaintiffs explain in their contemporaneously filed opposition to BCBSIL's renewed motion for summary judgment, the language that BCBSIL relies on from *Anderson*, which is an out-of-circuit decision that does not bind the Court, pertains to its analysis under the equal protection clause and is inapposite here for a number of reasons. ***First***, while constitutional discrimination cases like *Arlington Heights* are helpful in determining the contours of a



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

statutory proxy discrimination case does not mean that legal standard for equal protection governs the burden of proof in statutory cases.

***Second,*** *Anderson* conflicts with the binding precedents in the Ninth Circuit. As noted, these precedents hold that proxy discrimination is itself a form of facial discrimination, *see Pritchard*, 159 F.4th at 664 n.11; *Davis v. Guam*, 932 F.3d 822, 837 (9th Cir. 2019), and that, "no greater proof of mental state is necessary because intentional discrimination is synonymous with discrimination resulting in disparate treatment." *Pritchard*, 159 F.4th at 664 (citation modified). Indeed, statutory cases, like this one, require only ordinary proof: "plaintiffs who allege disparate treatment under statutory anti-discrimination laws" need only produce "direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant…." *Pac. Shores Props.*, 730 F.3d at 1158 (citation modified). And for facial discrimination in such statutory cases, courts consider the explicit terms of the discrimination, not why it is allegedly justified. *See Johnson Controls* at 199; *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 290 (2023) (Gorsuch, J., concurring) (discussing Title VI, upon which Title IX was modeled).

Nothing about the proxy/pretext theory requires any individualized plan-by-plan or employer-by-employer inquiry. The closeness of fit between gender dysphoria diagnoses and transgender status, taken together with the additional common evidence relevant to proxy/pretext suffice to establish discrimination.[5] Accordingly, a class is the appropriate vehicle to resolve this case.

---

[5] BCBSIL's claim that there is no "typical" plaintiff for the remand issues, Dkt. 236 at 16-18, is incorrect. The proxy theory needs no special representative, because it turns on the exclusion's facial operation and reaches every class member alike. C.P., S.L., and Mr. Jones were each denied coverage by the same standard practice, relying on a gender-dysphoria or gender-reassignment code, and each is therefore typical of the class on the proxy theory. Dkt. 206 at 7, 10. S.L. additionally represents the subset with an independent qualifying diagnosis. *See infra*.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

**D. The alternative-qualifying-diagnosis method of proof is available to prove class claims.**

**1. Proving that BCBSIL denies coverage for those with a second qualifying diagnosis does not require individualized assessments.**

As with proxy and pretext, permitting the class to proceed and prove violation of Section 1557 of the ACA by showing that BCBSIL applied its exclusion to transgender enrollees who had an independent qualifying basis for coverage invites no individualized inquiry inconsistent with a class action, and the facts show a proper representative for the theory.

In *Skrmetti*, the Court explained that excluding treatment of gender dysphoria is not sex discrimination where a patient denied a treatment for that diagnosis could still obtain it for another diagnosis, and no other evidence shows discrimination. Because a transgender boy seeking testosterone could receive it under a different qualifying diagnosis "such as a congenital defect, precocious puberty, disease, or physical injury," he "could obtain the testosterone regardless of his sex or transgender status." *Skrmetti*, 605 U.S. at 520–21. This case is the mirror image. S.L "has a qualifying diagnosis other than gender dysphoria," namely, precocious puberty, "but she still cannot get the puberty blocker" because BCBSIL "categorically excludes" the treatment when it is connected to gender dysphoria, even for a patient who independently qualifies. *Pritchard*, 159 F.4th at 672. That categorical denial exposes the discrimination: "because changing her sex, and thus her transgender status, does alter the application of" the exclusion, "sex is a but-for cause of the exclusion's operation." *Id.* (citation modified).

Thus, beneficiaries or participants in plans administered by BCBSIL with an alternative qualifying diagnosis who were excluded from coverage of their gender-affirming care needs by operation of BCBSIL's standard practice have been discriminated against. Pursuing this theory will not require any individualized



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

assessment of patient diagnoses. To the extent that those inquiries are necessary, they will occur during reprocessing of class members' claims by BCBSIL.[6]

**2. S.L. is a proper class representative for individuals denied coverage despite a second qualifying diagnosis.**

S.L. is a named plaintiff diagnosed with two conditions, gender dysphoria and early-onset precocious puberty. Dkt. 176, at ¶ 2; Supplemental Declaration of S.R. ("Suppl. S.R. Decl.") at ¶ 5. BCBSIL's utilization reviewers approved her puberty blockers finding the request "appears to meet criteria per Blue Cross Blue Shield Illinois Medical Policy RX501.041 (Gonadotropin-Releasing Hormone (GnRH) Agonists)," the policy under which precocious puberty is treated. Dkt. 242, at 5. BCBSIL then denied the $140,122.91 claim on the sole ground that "transgender services … are not covered." Dkt. 176, *Ex. 2*. And BCBSIL told S.L.'s mother that, diagnosed with precocious puberty alone, S.L. "would likely have [been] covered…." Dkt. 176, at ¶ 13. The Ninth Circuit identified this as the very scenario the second remand issue concerns. *Pritchard*, 159 F.4th at 671–72. S.L. is not atypical of that issue. She is its paradigm.

BCBSIL argues that S.L.'s claim carried only the gender-dysphoria code based on screen shots listing it as the primary diagnosis, but not the actual claims, medical records, adjudications, denials, or appeals of S.L.'s claim. Dkt. 236, at 18; Dkt. 237, at ¶¶ 3–4; Dkt. 242-1, at 4. This answers nothing before the Court here. Whether BCBSIL was aware of S.L.'s diagnosis with precocious puberty goes to the merits of her individual claim, not whether the class is properly certified. *See supra*. BCBSIL's own reviewers recognized that S.L. qualified for treatment due to her diagnosis of precocious puberty. *See* Dkt. 242,

[6] Even if the alternative-diagnosis issue presented more individualized questions than the proxy and pretext issues, BCBSIL's motion should be denied. Rule 23(c)(4) permits certification of particular issues, and Rule 23(c)(5) permits subclasses. A class may be maintained on the common question whether BCBSIL's uniform administration of the exclusions violates Section 1557, with any genuinely individualized question reserved.



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

*Ex. A*, at BCBSIL_CP_0023625 (under comment dated 2/21/2022 at 3:45 pm, noting that S.L. "appears to meet criteria per Blue Cross Blue Shield Illinois Medical Policy RX501.041 (Gonadotropin-Releasing Hormone (GnRH) Agonists and Antagonists)"). And BCBSIL told S.L.'s mother that treatment would have followed had that been the only code submitted. Dkt. 176, at ¶ 13; Suppl. S.R. Decl. at ¶ 14. BCBSIL cannot manufacture atypicality out of coding on a single form it created. Indeed, BCBSIL has not offered any declaration or evidence that contradicts S.R.'s declaration that BCBSIL Membership Services told her that had S.L. been diagnosed *only* with early-onset puberty (*i.e.*, not gender dysphoria *and* early-onset puberty), BCBSIL would have likely covered the puberty blocker. Dkt. 176, at ¶ 13; Suppl. S.R. Decl. at ¶ 14.

BCBSIL's numerosity and overbreadth arguments fail for the same reasons. Numerosity is neither speculative nor derivative of the merits. The class reaches only those denied coverage "solely based on" an exclusion, Dkt. 206 at 14, and the record documents hundreds of such denials under the standard practice. Dkt. 239 at 5. The Court found numerosity satisfied on that record uncontested. Dkt. 113, at 8. Nothing in the remand changes the number of people affected. Further, Rule 23(a)(1) applies to the class, not to each evidentiary sub-question within it, and BCBSIL cites no authority for an issue-by-issue approach. Further, the claims data understates the class because BCBSIL dissuaded members from submitting claims it said would be denied. Dkt. 99, at 9.

**CONCLUSION**

BCBSIL did not appeal this Court's prior class certification decisions to the Ninth Circuit as part of its merits appeal after the Ninth Circuit previously declined its request for interlocutory review of the class certification. And as BCBSIL admits, the resulting Ninth Circuit decision asked this Court to consider only two questions, namely, the alternative theories it found were left open when deciding whether BCBSIL engaged in



SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC
3101 WESTERN AVENUE, SUITE 350
SEATTLE, WASHINGTON 98121
TEL. (206) 223-0303 FAX (206) 223-0246

sex discrimination in violation of Section 1557 of the ACA. Its decision has no bearing on this Court's certification of the Class, and it does not justify BCBSIL's attempt to limit the Class under the guise of "amendment." BCBSIL's motion is its second attempt to decertify this class on an unchanged Rule 23 record; it fails for the reasons its first attempt failed as well as those set forth herein. The motion should be denied.

**Local Civil Rule 7(e)(6) Certification**

The undersigned counsel certify that the foregoing contains 7,574 words, in compliance with the Local Civil Rules.

DATED: October 9, 2026.

LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan, *Pro Hac Vice*
Charlie Ferguson, *Pro Hac Vice*
120 Wall Street, 19th Floor
New York, NY 10005
Tel. (212) 809-8585
ogonzalez-pagan@lambdalegal.org
cferguson@lambdalegal.org

Jennifer C. Pizer, *Pro Hac Vice*
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Tel. (213) 382-7600
jpizer@lambdalegal.org

SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC

*/s/ Eleanor Hamburger*
Eleanor Hamburger, WSBA #26478
Jeremiah Miller, WSBA #40949
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com
jmiller@sylaw.com

*Attorneys for Plaintiffs and the Class*